**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY, Plaintiff, | ) | CA 06 404 S |
| v. | ) | C.A. NO. 06- |
| CONSTELLATION ENERGY COMMODITIES GROUP, INC. Defendant. | ) | |

**COMPLAINT**

The Narragansett Electric Company ("NEC") brings this action to establish that (1) under a settlement agreement approved by the Federal Energy Regulatory Commission ("FERC") and (2) under four power purchase agreements between NEC and Constellation Energy Commodities Group, Inc. ("Constellation"), Constellation may not shift to NEC any increase in costs that it might incur to purchase certain wholesale electric market products in the New England wholesale power markets as administered by the Independent System Operator of New England ("ISO New England").

**PARTIES**

1. Plaintiff, NEC, is a corporation organized and existing under the laws of Rhode Island with its principal place of business at 280 Melrose Street, Providence, Rhode Island.

2. Defendant, Constellation, is a corporation organized and existing under the laws of Delaware with its principal place of business at 111 Market Place, Suite 500, Baltimore, Maryland.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332, because NEC and Constellation are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

### THE POWER PURCHASE AGREEMENTS

5. NEC is a retail electric distribution company that supplies and delivers electricity to retail end-use customers in Rhode Island.

6. Constellation is an electricity supplier. Under the four power purchase agreements ("PPAs") with NEC, and pursuant to authorization granted by FERC under the Federal Power Act, 16 U.S.C. § 824 et seq., Constellation sells wholesale power to NEC for distribution to Rhode Island residents, businesses, government entities, and other organizations taking Standard Offer Service.

7. Standard Offer Service under the PPAs is firm all-requirements electric power service, including installed capacity and reserves necessary to fulfill electricity obligations.

8. "Installed capacity," which is now known as unforced capacity or "UCAP," is the amount of electricity a generator has available through its power plant to satisfy electricity demands and to ensure reliability. Suppliers of electricity, including Constellation, must obtain a certain amount of UCAP from generators as a requirement of, and based on formulae established by, ISO New England. ISO New England is the independent entity that is charged, among other things, with establishing requirements for suppliers to ensure that the region's electricity demands are reliably served. ISO New England fulfills this responsibility by establishing requirements and markets for electric energy, capacity, and reserves that operate subject to rules regulated by FERC.

9. Constellation, as a supplier, has the obligation to obtain UCAP from generators and pay for it at the rates that may be approved by FERC from time to time. NEC, in turn, pays Constellation for Standard Offer Service under the PPAs. The PPAs leave the UCAP obligation, and the costs of meeting that obligation, with Constellation.

10. Subject to the approval of the Rhode Island Public Utilities Commission, the cost for power under the PPAs that is charged to NEC by Constellation is typically passed through to Rhode Island ratepayers in the rate for Standard Offer Service under retail electric service tariffs. Thus, to the extent authorized by the Rhode Island Public Utilities Commission under applicable ratemaking principles, any increase in wholesale power costs under the PPAs will affect the retail power rate for consumers in Rhode Island.

11. The PPAs provide for certainty in price and do not allow for price adjustments based on changes in the cost of meeting UCAP obligations.

THE SETTLEMENT AGREEMENT

12. Responding to concerns that New England's deregulated electricity market has not provided sufficient incentives for investment in new electric capacity, FERC in early 2003 asked ISO New England to develop, for FERC's review and approval, a mechanism to meet the region's future power needs.

13. In 2004, ISO New England proposed a "locational installed capacity" market ("LICAP"). Under LICAP, ISO New England was to allocate capacity payments to generators of electricity by geographic zones based on a formula designed to reflect that capacity is worth more when it is scarce. All of the New England states, including their entire congressional delegations, and many others involved in the electricity market opposed LICAP because, in part, they believed payments to generators would be too high.

14. As a result of this strong opposition, FERC delayed implementation of LICAP pending the negotiation of another type of framework to address the concerns about New England's future electric capacity.

15. Starting in the Fall of 2005 and continuing through the late Winter of 2006, with the active participation of a FERC administrative judge, representatives of all six New England states, transmission owners, power generators, power traders and marketers, and suppliers, among others, negotiated a Settlement Agreement that proposed a Forward Capacity Market ("FCM"), as an alternative to the LICAP.

16. The FCM includes an auction process at which generators of electricity will bid the number of Kilowatts (one thousand watts) that they will be willing to supply. The first commitment period of the FCM auction is scheduled to commence on June 1,

2010. The Settlement Agreement provides that prior to this date, from December 1, 2006 through May 31, 2010 (the "Transition Period"), suppliers like Constellation must continue to purchase UCAP and do so under a schedule of fixed prices for each year of the Transition Period ("Transition Period UCAP Costs"). The PPAs terminate just prior to the end of the Transition Period.

17. Among the parties who participated in the Settlement Agreement negotiations were: Constellation; the State of Rhode Island; NEC's parent, National Grid USA; and FPL Energy, LLC, whose affiliate Florida Power & Light Company was, and still is, pursuing a merger with Constellation.

18. FERC established the settlement process to pursue an alternative to LICAP in response to concerns that the New England states expressed. For this reason, support for the Settlement Agreement from as many of the New England states as possible was recognized to be instrumental for FERC's acceptance of the Settlement Agreement.

19. Under the PPAs, Constellation is responsible for supplying the capacity necessary to serve NEC's customers and to bear all costs associated with doing so, whether or not costs are incurred under the current UCAP market or under the fixed prices for UCAP established under the Settlement Agreement.

20. The State of Rhode Island made it clear that, in order to support the Settlement Agreement, it required confirmation that Constellation would continue to meet the UCAP obligations and payments for UCAP during the Transition Period in the manner provided under the PPAs, and that Constellation and other standard offer wholesale suppliers would not shift the burden of such costs to Rhode Island ratepayers.

21. To gain Rhode Island's support, Section VIII(A) was added to the Settlement Agreement to confirm that Transition Period UCAP Costs would be borne by the entities with the obligation to supply UCAP, including Constellation and other suppliers of capacity for the needs of Rhode Island customers, and would not be "shifted" to NEC and the ratepayers.

22. As a party to the FERC settlement proceeding, Constellation knew that the State of Rhode Island agreed to support the proposed Settlement Agreement because of the addition of Section VIII(A). Section VIII(A) of the Settlement Agreement provides that, during the transition into the FCM, "[t]he current UCAP products shall be retained for the period commencing on December 1, 2006 and ending on May 30, 2010 . . . [p]ayments will be made to UCAP [unforced capacity] entitlement holders, and made by UCAP obligation holders including wholesale standard offer suppliers in Rhode Island as under the current Market Rules and tariffs; it being understood that the agreement of wholesale standard offer suppliers in Rhode Island to make UCAP payments is contingent upon the agreement of the state of Rhode Island utility regulatory authorities to support the settlement."

23. Section VIII(A) was intended to confirm, and does confirm, that suppliers like Constellation retained the obligation to obtain and pay for UCAP, and that those suppliers can not pass on the Transition Period UCAP Costs to distributors and ratepayers, like NEC and the Rhode Island ratepayers. The Settlement Agreement did not shift those costs to distributors and ratepayers.

24. On March 6, 2006, the proposed Settlement Agreement, including the Section VIII(A) language, was filed with FERC for its approval.

25. To the extent that Constellation had any objections to the proposed Settlement Agreement, it consented to being listed as a party "waiving any and all objections" under the April 5, 2006, New England Power Pool Participants Committee Reply Comments to the Settlement Agreement, which were filed with FERC. The Report of the FERC Settlement Judge dated April 11, 2006 also noted that Constellation "did not in the end oppose [the Settlement]." Under FERC's regulations at 18 C.F.R. § 385.602(f)(3), any failure by a party "to file a comment [on a settlement] constitutes a waiver of all objections to the offer of settlement."

26. The State of Rhode Island, National Grid USA, including its subsidiaries, and FPL Energy, LLC are signatories to the Settlement Agreement.

27. In a June 16, 2006 written order, FERC approved the Settlement Agreement. In its Order, FERC noted that the proceeding was opposed by eight parties – none of which was Constellation – and accepted the proposed Settlement Agreement as a "just and reasonable outcome for this proceeding consistent with the public interest."

28. Constellation did not appeal or seek rehearing on any part of the Settlement Agreement.

29. Pursuant to federal law, specifically FERC Rule 602, codified at 18 C.F.R. § 385.602, the Settlement Agreement is binding upon NEC and Constellation.

CONSTELLATION'S DEMAND

30. In breach of the terms of the PPAs and contrary to the terms of Section VIII(A) of the Settlement Agreement, on August 1, 2006, Constellation wrote to NEC demanding additional compensation under the PPAs to pay for the Transition Period UCAP Costs.

31. Constellation is not entitled to recover any additional compensation from NEC because (1) the Settlement Agreement confirms that the Transition Period UCAP Costs remain an obligation of Constellation, and that Constellation cannot pass those costs onto NEC and the Rhode Island ratepayers; (2) the PPAs provide that Constellation is responsible for the UCAP obligation and payments, and Constellation is not entitled to pass on those costs, whether determined under LICAP, the Settlement Agreement, or some other method, to NEC and the Rhode Island ratepayers; and (3) Constellation has waived any right to recover Transition Period UCAP Costs from NEC and the ratepayers.

32. In its August 1, 2006 letter, Constellation also demanded additional compensation from NEC on the basis of higher costs arising out of changes in the ancillary services market ("ASM") Phases I and II.

33. Under the PPAs, Constellation, in providing Standard Offer Service, has the obligation to provide and pay for reserves or ASM, which provide electricity reserves that are ready to meet power demands in a short period of time. Costs associated with ASM fall outside of the scope of the Settlement Agreement but are covered by the PPAs. The PPAs do not allow for price adjustments based on changes in the cost of meeting ASM obligations.

## COUNT I
## DECLARATORY JUDGMENT

34. Count I incorporates by reference Paragraphs 1 through 33.

35. Pursuant to federal law, specifically FERC Rule 602, codified at 18 C.F.R. § 385.602, the Settlement Agreement is binding upon NEC and Constellation.

36. The terms of the Settlement Agreement preclude Constellation from recovering Transition Period UCAP Costs from NEC.

37. An actual controversy exists concerning whether the terms of the Settlement Agreement preclude Constellation from recovering the Transition Period UCAP Costs from NEC.

38. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court should declare that the Settlement Agreement precludes Constellation from recovering Transition Period UCAP Costs from NEC.

**COUNT II**
**WAIVER**

39. Count II incorporates by reference Paragraphs 1 through 38.

40. Constellation waived its right to recover Transition Period UCAP Costs because Constellation, inter alia: participated in the negotiation of the Settlement Agreement; knew that Rhode Island's support of the Settlement Agreement was based on the understanding that the Settlement Agreement precluded Constellation from either seeking or recovering such costs; and failed to object to Section VIII(A) and, in fact, waived its objections to the Settlement Agreement as a whole.

41. Constellation's actions and/or inactions during the Settlement Agreement negotiations resulted in a waiver of any known right it had to recover Transition Period UCAP Costs.

42. Therefore, Constellation cannot now obtain additional compensation under the PPAs for these costs.

**COUNT III**
**DECLARATORY JUDGMENT**
**(TRANSITION PERIOD UCAP COSTS/PPAS)**

43. Count III incorporates by reference Paragraphs 1 through 42.

44. Constellation is not entitled under the PPAs to recover Transition Period UCAP Costs.

45. An actual controversy exists concerning whether Constellation is entitled to recover Transition Period UCAP Costs under the PPAs, and whether Constellation will in fact incur additional Transition Period UCAP Costs due to the Settlement Agreement.

46. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court should declare that the PPAs preclude Constellation from recovering Transition Period UCAP Costs.

**COUNT IV**
**DECLARATORY JUDGMENT**
**(ASM /PPAS)**

47. Count IV incorporates by reference Paragraphs 1 through 46.

48. Constellation is not entitled to receive additional compensation from NEC under the PPAs for any alleged additional costs arising from the implementation of ASM Phases I and II.

49. An actual controversy exists concerning whether Constellation is entitled to additional compensation under the PPAs based on any additional costs attributable to the implementation of ASM Phases I and II, and whether Constellation will in fact incur additional costs from the implementation of ASM Phases I and II.

50. Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, the Court should declare that the PPAs preclude Constellation from recovering any costs attributable to the implementation of ASM Phases I and II.

**COUNT V**
**BREACH OF CONTRACT**
**(THE PPAs)**

51. Count V incorporates by reference Paragraphs 1 through 50.

52. Constellation has breached the PPAs by demanding payment of $150,000,000 from NEC as Transition Period UCAP Costs and additional ASM Phases I and II costs.

53. NEC has and will suffer damage as a direct and proximate result of Constellation's breach of the PPAs for which Constellation is liable.

**REQUEST FOR RELIEF**

**Wherefore,** NEC respectfully requests that this Court:

A. Declare, pursuant to 28 U.S.C. § 2201, that Section VIII(A) and/or other provisions of the Settlement Agreement and the PPAs preclude Constellation from obtaining any additional compensation attributable to market changes, including compensation for the Transition Period UCAP Costs;

B. Declare, pursuant to 28 U.S.C. § 2201, that the PPAs preclude Constellation from obtaining any additional compensation attributable to implementation of ASM Phases I and II;

C. Enter judgment in favor of NEC on Count II, finding that Constellation cannot obtain any additional compensation under the PPAs on account of the Transition Period UCAP Costs;

D. Enter judgment in favor of NEC on Count V, and award NEC compensatory damages for all damages caused by Constellation's breaches;

E. Award NEC attorneys' fees, interest, and costs; and

F. Award NEC such other relief as this Court may deem just and proper.

**NEC HEREBY DEMANDS TRIAL BY JURY**

THE NARRAGANSETT ELECTRIC COMPANY

By its attorneys,

Robin L. Main

Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com

Dated: September 11, 2006.

743772