# EXHIBIT E – Part 3

Resource accepts all of the associated capacity obligations of a "listed" Resource.

7. **Poorly Performing Units.** The availability score of a Resource in a given year shall be calculated as the number of hours of availability during Shortage Events divided by the total number of Shortage Event hours during a year. In the event that there are no Shortage Event hours during a year, the availability score is 100 percent. Prior to qualifying a Resource to participate in the FCA, the ISO shall determine whether a Resource meets the following two criteria: (a) if, in any four year period, a Resource received three availability scores of less than or equal to 40 percent; and (b) the Resource has failed to be available during at least ten Shortage Events during that same four-year period. If both of these criteria are met, the Resource shall be considered a Poorly Performing Unit and shall not be eligible to participate in the FCA or be designated as a capacity Resource until (as a non-capacity Resource) it either achieves an availability score of 60 percent or higher in three consecutive years or has demonstrated to the satisfaction of the ISO that the source of the inadequate availability score has been remedied. For the purposes of determining whether a Resource is a poorly performing unit, its availability score while it is de-listed shall not be considered. For the purposes of returning from poorly performing status, the ISO, at the request of the Resource owner, may consider performance while de-listed. The ability to request consideration of performance while de-listed in support of returning from poor performing status shall not be construed as to imply an ability to choose non-consecutive years for evaluation.

8. **Intermittent Resources and Demand Resources.** Intermittent Resources and demand Resources shall be exempt from the availability penalties and credits of this Part V.C.

9. **Self-Supplied FCA Resources.** Self-Supplied FCA Resources are subject to the same availability penalties and credits as other Resources participating in the FCA. If a Self-Supplied FCA Resource is unavailable during a Shortage Event, the LSE designating that Resource shall be responsible for paying the associated availability penalty based upon the Capacity Clearing Price for that Commitment Period. Self-Supplied FCA Resources shall be eligible to receive their pro-rata share of availability penalties paid by other capacity Resources.

## VI. Agreements Regarding External Resources.

Market Rules, operating procedures and manuals shall be changed to allow External Resources to participate in the Forward Capacity Market and Transition Period on a basis comparable to internal generation Resources. Among the changes that are required are that the timing for Real Time contract submittals be modified to allow them to be made after the Day Ahead Energy Market closes and

as soon as one hour before an operating hour in order to allow for the purchase of required transmission.

**VII. Agreements Regarding Gas Availability.** For the winter season of the first Commitment Period under the FCA and for each subsequent winter season, the following provisions shall apply:

**A. Adjustment of Deadlines.** The normal times for the Day-Ahead Energy Market bid and offer deadlines, the posting of Day-Ahead Energy Market results and the initial Resource Adequacy Assessment ("RAA") process shall be rolled back to earlier time periods during the peak winter months of December, January and February such that the results of the Day-Ahead Energy Market and initial RAA are available by a target completion time of 10:30 a.m. of the day prior to the electric Operating Day. The Day-Ahead Energy Market will normally be cleared and posted within four hours of the deadline for submitting Day-Ahead Energy Market bids and offers. The initial RAA will be run after the posting of the Day-Ahead Energy Market results with a scheduled completion of at 10:30 a.m. The start of the Re-offer period shall be open immediately after the initial RAA run.

**B. Procurement of Supplement Reserves and Payments.** For days that the ISO forecasts a Cold Weather Warning or Cold Weather Event (as currently described in Appendix H of Market Rule 1) for the next Operating Day, the ISO shall include in the initial RAA process the procurement of an additional 1000 MW per hour of Supplemental Reserves for peak load periods of the day from gas fired resources that are required to rely exclusively on gas for their operations that Operating Day and not already participating in the Forward Reserve Market. At the completion of the initial RAA, the ISO shall notify Resources of the expected energy schedule incremental to the Day-Ahead Energy Market results, if any, plus the applicable reserve MWHs, for the respective unit. For such Cold Weather operating conditions, the outcome of this initial RAA shall be financially binding for the incremental gas fired generation (i.e., gas-fired generation beyond that gas-fired generation scheduled in the Day-Ahead Energy Market) scheduled in the initial RAA. In addition, the MWHs of Supplemental Reserves scheduled from gas-fired generation scheduled for these Cold Weather Warning periods in accordance with the understandings in this part will be compensated pursuant to the formula below (or similar method) for resale of gas reserved, purchased and nominated for such Supplemental Reserves. The natural gas volume (Scheduled Volume) obtained by Resources eligible for such compensation shall be based upon the particulars of the noticed schedule: (the total hours of requested service, total MWs per hour and the unit's applicable heat rate). If the ISO does not dispatch energy from the scheduled Supplemental Reserves to the full extent committed pursuant to this understanding, then those generators will be compensated for the portion of the Supplemental Reserves not dispatched for energy in accordance with the following formula:

(Daily Gas Index for Gas Day scheduled flow date – Daily Gas Index for first Gas Day for which flow orders have been removed to allow the sale of the gas that was held for reserve service) x (Undispatched reserved gas volume).

The Daily Gas Index applicable to each gas-fired Resource shall be based on the index used by the Market Monitor for establishing Reference Levels for that Resource under Section III.A.5.6.1(b)(i) of Appendix A of Market Rule 1. The ISO shall establish a methodology for determining applicable prices from the appropriate index that are reasonably designed to reflect the difference between (1) prices on the scheduled flow date and (2) prices for the resale of gas scheduled to meet that Resource's binding obligations but not burned to generate electricity at the location of the affected Resource during Cold Weather Warnings and Cold Weather Events. The ISO shall communicate that methodology for determining prices from the applicable index to the Governance Participants for consideration pursuant to the stakeholder process for considering Market Rules and changes, and shall file the methodology with FERC pursuant to Section 205 of the FPA.

**C.** **Confirmations**. For days that the ISO forecasts Cold Weather Warnings and Cold Weather Events, sufficiently in advance of pipeline gas nominating deadlines, all gas-fired Resources shall confirm to the ISO that they will nominate sufficient fuel to be able to deliver the energy and Supplemental Reserves scheduled in the Day-Ahead Energy Market and initial RAA results respectively. Following the Initial RAA but no later than 6:00 p.m. of the day preceding the electric Operating Day, each gas-fired Resource shall provide to the ISO confirmation and evidence of gas volume nomination of sufficient fuel to be able to deliver the energy scheduled for such Resource in the Day-Ahead Energy Market and the Supplemental Reserves that were identified for that Resource in the initial RAA.

## VIII. Agreements Regarding Transition Period.

**A.** The current UCAP products shall be retained for the period commencing on December 1, 2006 and ending on May 30, 2010 (the "Transition Period") as provided for in Part VIII.I. Payments will be made to UCAP entitlement holders, and made by UCAP obligation holders including wholesale standard offer suppliers in Rhode Island as under the current Market Rules and tariffs; it being understood that the agreement of wholesale standard offer suppliers in Rhode Island to make UCAP payments is contingent upon the agreement of the state of Rhode Island utility regulatory authorities to support the settlement.

**B.** All listed ICAP Resources shall receive the following fixed payments, based on their seasonal UCAP ratings:

| | |
|---|---|
| December 1, 2006 to May 31, 2007 | $3.05/kW-month |
| June 1, 2007 to May 31, 2008 | $3.05/kW-month |
| June 1, 2008 to May 31, 2009 | $3.75/kW-month |

| | |
|---|---|
| June 1, 2009 to May 31, 2010 | $4.10/kW-month |

These payments are fixed and shall not be adjusted for changes in UCAP quantity.

**C.** There shall be no PER adjustments to any of the above payments.

**D.** Availability shall be measured by a weighted EFORd approach, as follows:

| **Outage Period** | **Weighting Factor** |
|---|---|
| Off-Peak Hour | 0.0 |
| On-Peak Hour | 1.0 |
| Seasonal Peak Hour | 20.0 |
| Shortage Hour | 40.0 |

<u>Outage Period definitions:</u>

**On-Peak** Hours-ending 8:00 a.m. through 11:00 p.m. on all non-NERC holiday weekdays.

**Off-Peak** All hours that are not On-Peak hours.

**Seasonal Peak** The 200 hours pertaining to the highest 100 hourly system loads during the Summer Period (for this purpose, June through September) and the highest 100 hourly system loads during the Winter Period (for this purpose, October through May).

**Shortage Hour** Periods of system-wide OP4, Action 6 or 11 or OP7 implementation.

Weighting factor shall not be additive (i.e., a Shortage Hour does not have a weighting factor equal to 61). A Resource's availability factor for purposes of UCAP ratings (*i.e.*, UCAP settlement credit) in settlement shall be a rolling average of the unit's seasonal weighted EFORd, with seasons as defined in the Seasonal Peak provision above. In months in which the Resource is de-listed, the unweighted EFORd shall apply. Weighted EFORd shall be phased-in over the first two seasons of the Transition Period. For the first six calendar months of the Transition Period, corresponding to the remaining portion of the 2006/2007 winter season, the ISO will gather the data necessary to calculate weighted EFORd for this season. However, for payment purposes during this time, the availability score will be based on twelve-month rolling unweighted EFORd. During the 2007 summer season, the availability score will be calculated as 50 percent weighted EFORd from the 2006/2007 Winter Period (i.e, October 2006 through May 2007) and 50 percent unweighted EFORd, calculated using six

months of data prior to transition (i.e., April 2006 through September 2006). At the conclusion of the 2007 summer season, a weighted EFORd score shall be calculated for that season, and that score shall replace the unweighted EFORd score in the calculation above. For the remainder of the Transition Period, the weighted EFORd score of each Resource shall be updated coincident with each new winter and summer season, using the process described above.

The method for converting the ICRs in Section 1.4 of Manual 20 shall continue to be based on the EFORd determined under the current equal weighting of all hours.

If additional measures need to be taken by the ISO to protect reliability during the Transition Period, the ISO retains its right to make filings pursuant to Section 205 of the FPA as appropriate, subject to stakeholder process.

**E.** Unless otherwise agreed in a FERC-approved settlement, transition payments shall be netted against RMR payments. Transition payments shall be considered capacity payments for purposes of netting in the LFRM markets.

**F.** For the purpose of any RMR agreements that have provisions that terminate such RMR agreements upon the implementation or effectiveness of a locational ICAP mechanism, the Transition Period shall not be considered to be the implementation or effectiveness of a locational ICAP mechanism and the beginning of the first Commitment Period of the FCA shall be considered to be the implementation or effectiveness of a locational ICAP mechanism. Notwithstanding the foregoing, and absent an FERC-approved settlement, nothing herein prejudices the rights of any party to challenge, seek to terminate or support an RMR agreement on any other grounds or restrict any party's rights to seek, agree to or oppose any RMR modifications.

**G.** Suppliers shall be permitted to partially delist or export their units.

**H.** Commitment periods shall be seasonal, summer (May - October) and winter (November - April). For 2006, the Winter Commitment Period shall begin on December 1, 2006. Imports qualify with a minimum 2-month commitment (consecutive months in the same season). Exports do not receive payment.

**I.** **2010/2011 Commitment Period Special Pricing Rule**. If the ISO conducts the first FCA in the first quarter of 2008 for the Commitment Period beginning June 1, 2010, and the FCA fails either the Inadequate Supply or Insufficient Competition test, then any New Capacity Resources selected in the FCA shall be paid the FCA starting price or FCA Capacity Clearing Price, as appropriate, in the 2010/2011 Commitment Period and Existing Capacity shall be paid the average of all Successful FCAs held prior to the 2010/2011 Commitment Period. If subsequent FCAs also fail, or if the 2010/2011 FCA cannot be held, all existing listed ICAP Resources in the 2010/2011 Commitment Period shall be paid $4.70 per kW-month in accordance with the provisions of this Part VIII.

**J. Intermittent and Demand Resources.**

1. **Intermittent Resources**. During the Transition Period, Intermittent Resources shall continue to receive the treatment for determining capacity and availability in effect under the current Market Rules, Tariffs and Manuals.

2. **Demand Resources.**

   a. Real Time Demand Response during the Transition Period shall remain as qualifying capacity Resources subject to Market Rule 1 Appendix E and the Load Response Manual. As such, the role of demand response resources in the market will continue to evolve as Market Rule 1 Appendix E and the Load Response Manual are revised.

   b. During the Transition Period, new (as of the Effective Date) demand side management installations (both energy efficiency and demand response, other than Real Time Demand Response) undertaken as part of merchant, utility, or state sponsored programs will be considered as qualified capacity and subject to the ISO review of the verification process. Details concerning how these programs qualify as capacity Resources will be reflected in the Market Rules.

**K. Phase I/II HQ Interconnection**. During the Transition Period, the total transfer limit of the HQ Phase I/II interconnection with Hydro-Quebec shall be fixed at 1800 MW for UCAP purposes, as set forth below. Except as set forth below in this subsection, the total MWs of HQICCs shall be fixed at 1200 MW March through November and zero MW December through February, shall receive payment in the non-zero months under Part VIII.B and I, and otherwise continue to receive the treatment for determining capacity and availability in effect under the Market Rules (Market Rule 1 Section III 8.3.2 (a) (v)), Tariffs and Manuals as of March 6, 2006. The remaining 600 MW of transmission may be used for UCAP over the Phase I/II interconnection by any supplier that arranges for transmission over the interconnection without reductions in the HQICCs. UCAP above 600 MW may be transmitted only in those months when the HQICCs are 1,200 MW and will result in reductions in HQICCs as provided for under current procedures. Only the remaining HQICCs will receive UCAP payments under Part VIII.B and I. UCAP delivered over the Phase I/II facilities shall receive payment under this Part VIII.B and I. Non-HQICC UCAP delivered over the Phase I/II facilities shall continue to receive the treatment for determining capacity and availability in effect under the Market Rules as they may be modified pursuant to Part VI of this agreement.

**IX. Consideration of Expedited Treatment for Challenges to Certain ISO Determinations that Must Be Final Prior to the FCA.** Not later than 90

calendar days prior to the conduct of each FCA, the ISO shall make an informational filing at the FERC in which the ISO shall identify the determinations listed below in Part IX.A through C and provide supporting documentation for each such determination. Interested entities will have 15 days thereafter to file comments on or challenges to the determinations in that informational filing. Unless the FERC issues an order to the contrary within 75 calendar days following that informational filing, such determinations contained in the filing shall be used by the ISO in the next FCA, and the Capacity Clearing Price derived through that FCA shall be subject to the finality provisions of Section 4.C. If the FERC does issue an order to the contrary, absent further direction from the FERC, the ISO shall use the revised determinations reflected in that order in the ensuing FCA, which shall be conducted no earlier than 15 days following that order. Once the ISO has used such a revised determination in the FCA in accordance with the provisions of this Part IX, the Capacity Clearing Price derived through the applicable FCA shall be subject to the finality provisions of Section 4.C.

**A.** The ISO's determinations pursuant to Part III.A.

**B.** Resources that satisfy the qualifications in this Settlement Agreement and the Market Rules that address the terms of this Settlement Agreement to participate in an FCA or reconfiguration auction specifically.

**C.** Market Monitor conclusions concerning acceptability of Bids in any FCA.

*Docket Nos. ER03-563-030 and -055*
*Privileged and Confidential Pending Final Execution*

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

American National Power, Inc.
Settling Party

By [signature]

Its Duly Authorized Vice President and General Counsel

Date: 3/2/2006

51334127.2

*Docket Nos. ER03-563-030 and -055*
*Privileged and Confidential Pending Final Execution*

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Associated Industries of Massachusetts
Settling Party

By Robert Rio

Its Duly Authorized Representative

Date: 3/6/06

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Boston Generating, LLC,
Mystic Development, LLC,
Mystic I, LLC
Fore River Development, LLC

Settling Party

By: [signature]
Paul Hamilton

Their Duly Authorized: Director of Operations

Date: March 3, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Calpine Eastern Corporation
___________________________
Settling Party

By ___________________________

Its Duly Authorized Vice President

Date: 3/6/2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Calpine Energy Services, L.P.
Settling Party

RAM By ____________________

Its Duly Authorized President

Date: 3-06-2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

**Cape Wind Associates, LLC**
Settling Party

By ______________________

Its Duly Authorized V. P.

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Central Vermont Public Service Corporation
Settling Party

By [signature]
William J. Deehan
VP,Transmission,Generation Planning and Regulatory Affairs

Subscribed and sworn to before me this 3rd day of March, 2006.

Its Duly Authorized [signature: Andrea V. Bore]
NOTARY PUBLIC
My Commission expires: 2/10/2007

Date: March 3, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Connecticut Department of Public Utility Control
Settling Party

By ______________________________

Its Duly Authorized Counsel, pursuant to March 3, 2006 Department Resolution

Date: March 3, 2006

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

The Connecticut Light and Power Company
Settling Party

By [signature]

Its Duly Authorized Attorney

Date: March 1, 2006

*Docket Nos. ER03-563-030 and -055*
*Privileged and Confidential Pending Final Execution*

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Connecticut Municipal Electric Energy Cooperative
Settling Party

By Brian E. Forshaw

Its Duly Authorized Director of Energy Markets

Date: March 6, 2006

*Docket Nos. ER03-563-030 and -055*
*Privileged and Confidential Pending Final Execution*

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

State of Connecticut
Office of Consumer Counsel
Settling Party

By Mary J. Healey
Consumer Counsel

Its Duly Authorized Consumer Counsel

Date: 3/2/06

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Conservation Services Group
Settling Party

By [signature]

Its Duly Authorized CEO

Date: 3/3/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Consolidated Edison Energy, Inc.
Settling Party

By Kenneth Bekman
[signature]

Its Duly Authorized Representative

Date: March 1, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Dominion Energy Marketing, Inc
Settling Party

By Paul L. Koonce

Its Duly Authorized CEO

Date: March 3, 2006

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Dominion Nuclear Connecticut, Inc.
Settling Party

By [signature]

Its Duly Authorized President and CEO

Date: 3/3/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Dominion Resources, Inc.
Settling Party

By James L. Sanderlin

Its Duly Authorized Senior Vice-President Law

Date: March 3, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Duke Energy North America, LLC
Settling Party

By Lee Barnett /s/ [signature]

Its Duly Authorized Officer

Date: 02 March 2006

***Docket Nos. ER03-563-030 and -055***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

**Energy Management, Inc.**
Settling Party

By ________________________

Its Duly Authorized V. P.

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

EnerNOC, Inc.
Settling Party

By David B. Brewster
David Brewster

Its Duly Authorized President

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

ENTERGY NUCLEAR GENERATION CO
Settling Party

By Ronald B. Mirkovich

Its Duly Authorized NEPOOL PARTICIPANTS COMMITTEE MEMBER

Date: 3/2/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

ENTERGY NUCLEAR VERMONT YANKEE, LLC
Settling Party

By Ronald B. Mc[illegible]

Its Duly Authorized NEPOOL Participants Committee Member

Date: 3/6/06

*Docket Nos. ER03-563-030 and -055*
*Privileged and Confidential Pending Final Execution*

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Exelon Generation Co., LLC
Settling Party Exelon New England Holdings, LLC

nht/cen
By JMcclean

Its Duly Authorized Executive Vice President Exelon Corporation & President Power Team

Date: 3/6/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

FPL Energy, LLC
Settling Party

By [signature]
Joel D. Newton

Its Duly Authorized Assistant Secretary & Senior Attorney

Date: March 3, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Granite Ridge Energy, LLC
Settling Party

By ______________________

Its Duly Authorized Asset Manager

Date: 3/06/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

HQ. Energy Services US.
Settling Party

By [signature]
ARIANE CONNOR

Its Duly Authorized Representative

Date: March 1st, 2006

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

ISO New England Inc.
Settling Party

By [signature]

Its Duly Authorized President + CEO.

Date: March 6th, 2006

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Lake Road Generating Company, LP
Settling Party

By _______________ President & COO

Its Duly Authorized Officer

Date: March 3, 2006

51334127.2
51334320.1

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

MASS Power
Settling Party

By Chris Fleming

Its Duly Authorized Christopher Fleming President

Date: 3/3/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

MILFORD POWER COMPANY, LLC.
Settling Party

By [signature]

Its Duly Authorized VICE PRESIDENT

Date: MARCH 6, 2006

***Docket Nos. ER03-563-030 and -055***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

**Mirant Americas Energy Marketing, LP**
**Mirant Canal, LLC**
**Mirant Kendall, LLC**

John L. O'Neal
Settling Party

By JOHN L. O'NEAL

Its Duly Authorized VICE PRESIDENT

Date: 3/3/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

National Grid (on behalf of itself and its subsidiaries that are intervenors in this proceeding)
Settling Party

By [signature]

Its Duly Authorized Attorney

Date: March 3, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

**New England Power Pool Participants Committee**
Settling Party

By ______________________________
Peter D. Fuller

Its Duly Authorized Chair

Date: March 3, 2006

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

New Hampshire Public Utilities Commission
Settling Party

By [signature]

Its Duly Authorized Chairman

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Devon Power, Middletown Power, Montville Power LLC, Norwalk Harbor and NRG Power Marketing, Inc.

Settling Parties

By ____________________ SBC

Treasurer (George Schaefer)

Their Duly Authorized Treasurer

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Pinpoint Power LLC
Settling Party

By Thomas E. Atk Thomas E. Atkins

Its Duly Authorized Manager

Date: 3/6/06

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Public Service Company of New Hampshire
Settling Party

By: [signature]

Its Duly Authorized Attorney

Date: March 1, 2006

***Docket Nos. ER03-563-030 and -055***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Rhode Island Division of Public Utilities and Carriers
Settling Party

By Paul J. Roberti /pmg

Its Duly Authorized Attorney

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Rhode Island Public Utilities Commission
Settling Party

By Elia Germani

Its Duly Authorized Chairman

Date: March 6, 2006

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Select Energy, Inc.
Settling Party

By Andrew S. Katz

Its Duly Authorized Attorney

Date: March 1, 2006

ATTN: Dave Doot

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Sempra Energy Trading Corp.

______________________________
Settling Party

Barry S. Trayers

By ______________________________

Its Duly Authorized Barry S. Trayers

3/5/2006

Date: ______________________________

51334127.2
51334320.1

MAR. 6.2006 11:55AM SEMPRA ENERGY TRAD NO.873 P.2

**Docket Nos. ER03-563-030 and -055**
**Privileged and Confidential Pending Final Execution**

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

TRANSCANADA POWER MARKETING LTD.
Settling Party

By ________________
WILLIAM C. TAYLOR.

Its Duly Authorized VICE-PRESIDENT

Date: MARCH 1, 2006.

By ________________

Its Duly Authorized Director - Power Marketing

Date: March 3, 2006

***Docket Nos. ER03-563-030 and -055***
***Privileged and Confidential Pending Final Execution***

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

The United Illuminating Company
Settling Party

By Dennis E Hadded

Its Duly Authorized Vice President Corporate Affairs

Date: 3/3/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Vermont Department Public Service
Settling Party

By [signature] Commissioner

Its Duly Authorized agent

Date: 3/2/06

**SETTLEMENT AGREEMENT**
**COUNTERPART SIGNATURE PAGE**

Vermont Public Power Supply Authority
Settling Party

By Brian Evans-Mongeon

Its Duly Authorized Representative

Date: 1 March 2006

**SETTLEMENT AGREEMENT
COUNTERPART SIGNATURE PAGE**

Vermont Public Service Board
Settling Party

By [signature], Chair

Its Duly Authorized Agent

Date: 3-2-06