# EXHIBIT E – Part 5

"Will NETA Ensure Generation Adequacy?" with Alex Henney. Platts *Power UK,* Issue 122, April 2004, McGraw Hill, London. This article is the first part of the study listed next.

"Will NETA Ensure Generation Adequacy?" with Alex Henny. This study was supported by various organisations including Energywatch. April 29, 2004. The first third if this study has been published in *Power UK.*

"Reliability Options: A Market-Oriented Approach to Long-Term Adequacy." *The Electricity Journal,* Vol 18, issue 5, June 2005

"Generation Adequacy Study for European Regulators," with Alex Henney. This confidential study consists of three reports, Report 1: A Review of Practices and Proposals in Various Jurisdictions; Report 2: The Behaviour of Energy-Only Markets: Will They Ensure Generation Adequacy? Report 3: The RO Method of Assuring Adequacy. August 2005

**POWER**
ECONOMICS

**TESTIMONY**

| | |
|---|---|
| N.C. Utilities Commission | "Electricity Pricing." Expert witness testimony before the North Carolina Utilities Commission, Raleigh, North Carolina, December 18, 1975. |
| N.C. Utilities Commission | "Rebuttal Testimony to Duke Power Testimony of Forecasting Future Electricity Demand." Expert witness testimony before the North Carolina Utilities Commission, Raleigh, North Carolina, January 27, 1976. |
| U.S. Nuclear Regulatory Commission | "Projecting Future Demand for Electricity." Expert witness testimony before United States Nuclear Regulatory Commission hearings on the proposed Duke Power Company Perkins Station (includes original econometric analysis of electricity demand in North Carolina). Mocksville, North Carolina, April 27, 1976. |
| U.S. Nuclear Regulatory Commission | Additional expert testimony on econometric models and applications, United States Nuclear Regulatory Commission hearings, Mocksville, North Carolina, April 29, 1976. |
| N.C. Utilities Commission | "The Use of Econometrics in Forecasting Electricity Demand." Expert witness testimony presented before the North Carolina Utilities Commission in hearings on the Investigation, Analysis and Estimation of Future Growth in the Use of Electricity, Raleigh, North Carolina, January 25, 1977. |
| U.S. Nuclear Regulatory Commission | "The Future Demand for Electricity and the Misuse of Forecasting Methodology." Expert witness testimony presented before the United States Nuclear Regulatory Commission, Charlotte, North Carolina, March 10, 1977. |
| NYPSC Case 27350 | New York Telephone—1978. |
| NYPSC Case 27344 | Orange & Rockland Utilities—1979. |

| | |
|---|---|
| NYPSC Case 27215-16 | Niagara Mohawk Power Corporation—1979. |
| NYPSC Case 27353 | Consolidated Edison Company—1980. |
| NYPSC Case 27353 | Consolidated Edison Company—1980 (Rebuttal). |
| NYPSC Case 27626 | Central Hudson Gas & Electric Corporation—1980. |
| NYPSC Case 27909 | Orange & Rockland Utilities—1981. |
| NYPSC Case 27986 | Niagara Mohawk Power Corporation—1981. |
| NYPSC Case 27774 | Long Island Lighting Company—1982. |
| NYPSC Case 28525 | Long Island Lighting Company—Shoreham 1983. |
| NYPSC Case 28470 | Central Hudson Gas & Electric Corporation—1983. |
| NYPSC Case 28598 | Niagara Mohawk—Imprudence 1984. |
| NYPSC Case 29069 | Niagara Mohawk 1985—Nine Mile II Phase In. |
| NYPSC Case 29433 | Central Hudson Gas and Electric Corporation—1987. |
| NYPSC Case 29541-42 | New York State Electric & Gas Corporation—1987. |
| NYPSC Case 29541-42 | New York State Electric & Gas Corporation—1987 (Rebuttal). |
| NYPSC Case 29469 | New York Telephone—1987 (Reply). |
| Minnesota PUC Docket P-421/CI-86-354 | Northwestern Bell—1987 (Rebuttal). |
| NYPSC Case 29674-76 | Rochester Gas & Electric—1987. |
| NYPSC Case 29674-76 | Rochester Gas & Electric—1988 (Surrebuttal). |
| NYPSC Case 29670-71 | Niagara Mohawk Power Corporation—1988 (Rebuttal). |
| Federal Court | Expert's Report and Deposition Testimony in the United States District Court for the Eastern District of New York, In Re: LILCO Securities Litigation, on materiality and causation, 1988. |

**POWER**
**ECONOMICS**

| | |
|---|---|
| Federal Court | Expert's Report and Deposition Testimony in the United States District Court for the Eastern District of New York, In Re: LILCO RICO litigation, on materiality, 1988. |
| New York State Board on Electric Generation Siting | Testimony on Certificate of Environmental Compatibility and Public Need—1988. |
| NYPSC Case 88-E-077 | Central Hudson Gas & Electric Corporation—1988. |
| NYPSC Case 88-E-077 | Central Hudson Gas & Electric Corporation—1988 (Rebuttal). |
| PSC Article VIII Application | Halfmoon Cogeneration Project—9/88. |
| Federal Court | Long Island Lighting Company: Testimony and Expert Report before the U.S. District Court for the Eastern District of New York, County of Suffolk v. LILCO, et al., concerning the materiality of charges against LILCO in a RICO action, November 1988. |
| NYPSC Case 28860 | New York Telephone Company—1988 |
| Federal Court | Long Island Lighting Company: Testimony and Expert Report before the U.S. District Court for the Eastern District of New York, Suffolk County, et. al. v. Long Island Lighting Company, et. al., concerning the expected time required for a nuclear power plant to go from fuel load to commercial operation, January, 1989. |
| Case No.: 88-T-132 | Pursuant to Article VII of the Public Service Law, New York Public Service Commission. Testified on behalf of Empire State Pipeline before the New York Public Service Commission on "Need," competition, economically efficient rate structures and depreciation, March, 1989. |
| FERC, Case ER88-630-000, ER88-631-000, and ER89-38-000 | New England Power Company—4/89 (Rebuttal). Testimony on the economic efficiency of marginal cost pricing of electricity. |

POWER ECONOMICS

| | |
|---|---|
| | This testimony supported the first successful FERC decision allowing marginal cost pricing of wholesale electricity. |
| NYPSC Case 89-F-107 | Central Hudson Gas & Electric Company—October 6, 1989. |
| NYPSC Case 89-F-107 | Central Hudson Gas & Electric Company—October 19, 1989 (Additional Direct). |
| NYPSC Case 89-E-166 | Rochester Gas & Electric Corporation on behalf of Multiple Intervenors—December 15, 1989. |
| Missouri Case TR-89-196 | Contel of Missouri, Inc.—December 29, 1989 (Surrebuttal). |
| VT PSC Docket No. 5372 | Central Vermont Public Service Corporation—February 8, 1990 (Rebuttal). |
| Iowa Docket No. RPU-89-9 | Iowa Electric Light and Power Company—March 8, 1990 (Rebuttal). |
| NYPSC Case No. 80010 | Inter-Power of New York, Incorporated—April 13, 1990 (Rebuttal). |
| NYPSC Case 89-E-175, 89-E-176 | Orange & Rockland Utilities, Inc. on behalf of Multiple Intervenors—April 19, 1990. |
| NYPSC Case No. 80010 | Inter-Power of New York, Incorporated—April 27, 1990 (Supplemental). |
| NYPSC Case No. 90-C-0191 | New York Telephone Company—July 24, 1990 (Rebuttal). |
| NYPSC Case No. 80010 | Inter-Power of New York, Incorporated—July 30, 1990 (Rebuttal). |
| NYPSC Case No. 90-C-0191 | New York Telephone Company—August 3, 1990 (Rejoinder). |
| NYPSC Case 90-E-0647, 90-E-1648 & 90-G-0649 | Rochester Gas & Electric Corporation on behalf of Multiple Intervenors—December 3, 1990. |
| NYPSC Case 90-E-0647, | |

**POWER**
**ECONOMICS**

| | |
|---|---|
| 90-E-1648 & 90-G-0649 | Rochester Gas & Electric Corporation on behalf of Multiple Intervenors—December 3, 1990 (Rebuttal). |
| NYPSC Case 91-W-0505 | Long Island Water Corporation—May 15, 1991 (Direct). |
| NYPSC Case 91-W-0505 | Long Island Water Corporation—August 26, 1991 (Supplemental Direct). |
| NYPSC Case 91-E-0506 | Central Hudson Gas & Electric Corporation on behalf of Multiple Intervenors—September 20, 1991 (Direct Testimony). |
| NYPSC Case 91-W-0505 | Long Island Water Corporation—October 10, 1991 (Rebuttal). |
| NYPSC Case Nos. 91-E-0785, 91-E-0766 & 91-G-0767 | Rochester Gas & Electric Corporation—December, 1991 (Rebuttal). |
| NYS Regulatory Filing | A section of a filing before the New York State Regulatory Commission. The section presents and explains the cost and demand models used to calculate the effects of the rate restructuring and explains why the restructuring will increase the economic welfare of New York Telephone customers—June 5, 1992 |
| NYPSC Case Nos. 92-T-0114 & 92-T-0252 | Independence Station-Clay 345kV Transmission Line Project—November 4, 1992 (Rebuttal Testimony). |
| NYPSC Case Nos. 92-T-0114 & 92-T-0252 | Independence Station-Clay 345kV Transmission Line Project—November 4, 1992 (Additional Rebuttal Testimony). |
| NYPSC Case Nos. 92-E-0814 & 88-E-082 | Niagara Mohawk Power Corporation Petition for Approval of Curtailment Procedures and Proceeding on Motion of the Commission to Establish Conditions Governing Curtailment Clauses in Contracts for On-site Generation—February 24, 1993 (Direct Testimony on behalf of Falcon Seaboard Power Corporation.) |

POWER
ECONOMICS

| | |
|---|---|
| NYPSC Case Nos. 92-E-0814 & 88-E-082 | Niagara Mohawk Power Corporation Petition for Approval of Curtailment Procedures and Proceeding on Motion of the Commission to Establish Conditions Governing Curtailment Clauses in Contracts for On-site Generation—March 19, 1993 (Rebuttal Testimony on behalf of Falcon Seaboard Power Corporation.) |
| NYPSC Case Nos. 92-E-1055 & 92-G-1056 | Central Hudson Gas & Electric Corporation on behalf of Multiple Intervenors—March, 1993 (Direct Testimony) |
| NYPSC Case Nos. 92-E-1055 & 92-G-1056 | Central Hudson Gas & Electric Corporation on behalf of Multiple Intervenors—April, 1993 (Rebuttal Testimony) |
| NYPSC Case Nos. 92-E-1055 & 92-G-1056 | Central Hudson Gas & Electric Corporation on behalf of Multiple Intervenors—April, 1993 (Additional Rebuttal Testimony) |
| Georgia PSC Docket No. 4451-U | Atlanta Gas Light Company—September 2, 1993 (Rebuttal Testimony) |
| FCC Case No. ENF-93-44 | BellSouth Corporation, BellSouth Telecommunications, Inc. & BellSouth Enterprises, Inc.—November 1, 1993—Petition to Impose Conditional Grant to Create a Competitive Market, or Deny as Filed (Affidavit) |
| Georgia PSC Docket No. 4132-U | Atlanta Gas Light Company—December 30, 1993 (Direct Testimony) |
| NYPSC Case No. 94-E-0136 | Sithe Independence Station—May 20, 1994—Petition for Original Certificates of Public Convenience and Necessity Under Public Service Law ¶ 68 to Provide Electric Service to Alcan Rolled Products Company and Liberty Paperboard, L.P. (Direct Testimony) |

| | |
|---|---|
| NYPSC Case No. 94-E-0136 | Sithe Independence Station—June 24, 1994—Petition for Original Certificates of Public Convenience and Necessity Under Public Service Law ¶ 68 to Provide Electric Service to Alcan Rolled Products Company and Liberty Paperboard, L.P. (Rebuttal Testimony) |
| Vermont Public Service Board - Docket No. 5744 | Green Mountain Power Corporation on behalf of International Business Machines Corporation (IBM)—August 1, 1994—Petition of Green Mountain Power Corporation for a change in rates. (Direct Testimony) |
| NYPSC Case Nos. 94-E-0098, 94-E-0099 and 94-G-0100 | Niagara Mohawk—August 31, 1994—Regarding Competition Issues on behalf of Independent Power Producers of New York, Inc. (Direct Testimony) |
| NYPSC Case Nos. 94-E-0098, 94-E-0099 and 94-G-0100 | Niagara Mohawk—September 21, 1994—Regarding Competition Issues on behalf of Independent Power Producers of New York, Inc. (Rebuttal Testimony). |
| Iowa Docket RPU-94-2 | IES Industries, Inc.—December 12, 1994—Examine IES Industries' proposed price changes and explore the consequences of equalizing electricity prices throughout the IES service territory (Direct Testimony). |
| NYPSC Case Nos. 95-E-0673 and 95-G-0674 | Rochester Gas & Electric Corporation on behalf of Multiple Intervenors—January, 1996 (Direct Testimony). |
| NYPSC Case Nos. 95-E-0673 and 95-G-0674 | Rochester Gas & Electric Corporation on behalf of Multiple Intervenors—January, 1996 (Rebuttal Testimony). |
| NYPSC Case No. 95-C-0341 | Pole Attachment Proceedings—Policy Issues, on behalf of Seven Investor Owned Electric Utilities—October 28th 1996. |
| NYPSC Case No. 95-C-0341 | Pole Attachment Proceedings—Fact Issues, on behalf of Seven Investor Owned Electric Utilities—January 27th 1997. |
| NYPSC Case Nos. 96-E-0134 | |

**POWER**
ECONOMICS

| | |
|---|---|
| and 96-E-0135 | Proceeding on Motion of the Commission as to the Rates, Charges, Rules and Regulations of the Niagara Mohawk Power Corporation for Electric Service on behalf of IPPNY—January, 1997. |
| State of New York Supreme Court, County of Warren | Seventeen Independent Hydro Power Producers vs. Niagara Mohawk Power Corporation re: contract issues—January 28th 1997. |
| NYPSC Case No. 96-E-0897 | In the Matter of Consolidated Edison Company of New York, Inc.'s plans for electric rate/restructuring pursuant to Opinion No. 96-12, Direct Testimony on behalf of IPPNY and ENRON—February 12, 1997. |
| NYPSC Case No. 96-E-0897 | In the Matter of Consolidated Edison Company of New York, Inc.'s plans for electric rate/restructuring pursuant to Opinion No. 96-12, Direct Testimony re: the Proposed Settlement, on behalf of IPPNY and ENRON—April 8th 1997. |
| NYPSC Case No. 96-E-0891 | In the Matter of New York State Electric & Gas Corporation's plans for electric rate/restructuring pursuant to Opinion No. 96-12. Direct testimony on behalf of IPPNY and ENRON—February 12th 1997. |
| NYPSC Case No. 96-E-0909 | In the Matter of Central Hudson Company of New York, Inc.'s plans for electric rate/restructuring pursuant to Opinion No. 96-12. Direct testimony on behalf of IPPNY and ENRON—April 11th 1997. |
| NYPSC Case No 96-E-0900 | In the Matter of Orange & Rockland Utilities, Inc. Direct testimony on behalf of IPPNY and ENRON. April 24th 1997. |

**POWER**
**ECONOMICS**

---

| | |
|---|---|
| NYPSC Case No. 96-E-0891 | In the Matter of New York State Electric & Gas Corporation's plans for electric rate/restructuring pursuant to Opinion No. 96-12. Rebuttal testimony on behalf of IPPNY and ENRON—May 5th 1997. |
| NYPSC Case No. 96-E-0898 | In the Matter of Rochester Gas and Electric Corporation plans for electric rate/restructuring pursuant to Opinion No. 96-12. Direct testimony on behalf of IPPNY and ENRON. May 6th 1997. |
| FERC Docket Nos. ER97-1523-000 and OA97-470-000 | Direct testimony on behalf of Enron Power Marketing, Inc. in opposition to the request for market based authority by Central Hudson Gas & Electric Corp., et al and New York Power Pool. October 31st 1997. |
| NYPSC Case Nos. 94-E-0098 and 94-E-0099 | In the Matter of Niagara Mohawk Power Corporation PowerChoice Settlement. Direct testimony on behalf of Enron Capital & Trade Resources Corp. November 3rd 1997. |
| NYPSC Case | In the Matter of New York State Electric & Gas Corporation. Affidavit on behalf of New York State Electric & Gas Corporation, regarding measurement of customer costs and introducing competitive billing and metering. April 2001. |
| FERC | FERC 95 Rebuttal Testimony (with Carl Pechman) on behalf of The California Parties before the Federal Energy Regulatory Commission in San Diego Gas & Electric Company, Complainant v. Sellers of Energy and Ancillary Services into Markets Operated by the California Independent System Operator Corporation and the California Power Exchange (Dockets EL00-95-045, EL00-98-042) February 2002 |
| FERC | Rebuttal Testimony on behalf of Public Utility District No. 1 of Snohomish County, WA, and Southern California Water Company. FERC Docket Nos. EL02-26-000, et al. September 2002. |

**POWER**
**ECONOMICS**

| | |
|---|---|
| FERC | Prepared Direct Testimony on behalf of PacifiCorp. Docket Nos. EL02-80-000, et al. October 2002. |
| FERC | Prepared Rebuttal Testimony on behalf of PacifiCorp. Docket Nos. EL02-80-000, et al. November 2002. |
| FERC | Prepared Direct Testimony of Miles O. Bidwell, Ph.D. on behalf of the City of Tacoma and the Port of Seattle, Washington. Docket No. EL01-10-005. March 2003 |
| FERC | Prepared Direct and Answering Testimony of Carl Pechman and Miles Bidwell on behalf of the Connecticut Department of Public Utility Control, et al. Docket No. ER03-563-030. November 4, 2004 |
| FERC | Cross Answering Testimony of Carl Pechman and Miles Bidwell on behalf of the Connecticut Department of Public Utility Control, et al. Docket No. ER03-563-030. January 10, 2005 |

February, 2006

# ATTACHMENT 4

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

***Devon Power LLC*, et al.** ) **Docket No. ER03-563-030**

**AFFIDAVIT OF**

**PETER CRAMTON., Ph.D.,**
**on behalf of ISO New England, Inc.,**

**5 March 2006**

## Qualifications

1. My name is Peter Cramton. I am Professor of Economics at the University of Maryland and Chairman of Market Design Inc. Over the last 20 years, I have published research on auction theory and practice in the leading peer-reviewed economics journals. During the last 12 years, I have applied this research in the design and implementation of auction markets worldwide, especially in North America and Europe. I have led the design and implementation of dozens of high-stake electricity auctions in the United States, France, and Belgium, using the simultaneous clock format, as well as gas auctions in France and Germany. I have advised several energy companies on auction strategy in major energy and capacity auctions in the United States and Canada. I have advised several countries in the design and implementation of spectrum auctions. I have advised telecommunications firms on bidding strategy in more than 25 spectrum auctions (all simultaneous ascending auctions). Since 1998, I have advised ISO New England on electricity market design, and I am one of two lead experts, with Steven Stoft, retained by the ISO for the proposed forward capacity market in New England. I received my B.S. in Engineering from Cornell University and my Ph.D. in Business from Stanford University. My vita, which includes a list of my publications and other experience, is attached.

## Introduction

2. I have participated fully in the development and negotiation of the capacity market design that is included in the proposed settlement agreement filed in *Devon Power, LLC* (FERC Docket No. ER03-563-030) on 6 March 2006.

3. I have reviewed the document entitled, "Settlement Agreement Resolving All Issues" dated 6 March 2006, and Section VI of the "Explanatory Statement," which describes the Forward Capacity Market ("FCM").

4. The FCM provides a sound framework for a successful capacity market. The design in the settlement contains the essential ingredients, such as robust price formation, protections against monopoly and monopsony market power, and strong performance incentives. Market participants, and ultimately the electricity consumers of New England, will benefit from the important innovations in New England's forward capacity market.

5. The framework laid out in the settlement agreement appears sound. However, great care and attention to the details will be required to assure a successful implementation.

**Price Formation**

6. The FCM adopts an approach consistent with my underlying philosophy of a good capacity market—that it rely on the unmitigated bids of new entry for price formation.

7. A major challenge of the auction design is assuring that the clearing price is determined from competitive forces, rather than the exercise of market power. The challenge is great, because in every year the quantity of existing capacity dwarfs the quantity of new capacity, the concentration of ownership is high, and the elasticity of demand is zero resulting in a vertical demand curve. For much of the existing capacity, going forward costs are small relative to the cost of new entry (CONE), as a result of substantial sunk costs. Thus, it is tempting for existing capacity to withhold, either physically or economically, to achieve a high clearing price. The FCM does a good job of mitigating this possibility without distorting the competitive price-setting forces. It does this in two ways.

8. First, at qualification, existing suppliers must enter all import/export, Permanent De-list, and De-list bids that are above .8 CONE. For transparency, these bids are posted one day after the qualification bid deadline. If a unit's Permanent De-list bid is accepted in the auction, the unit is not eligible to receive capacity payments in this or any future commitment period. Permanent De-list bids above 1.25 CONE and De-list bids above .8 CONE must be reviewed and qualified by the ISO's Internal Market Monitoring Unit before the bids are entered into the forward capacity auction.

9. Second, the ISO conducts a descending clock auction for the required new capacity, recognizing bids from existing supply. The descending clock auction determines the clearing price paid to all capacity procured in the primary auction. Since the bids from existing supply are submitted at qualification, the ISO knows the quantity of new capacity required to reach the installed capability requirement as a function of price, recognizing any accepted bids from existing supply. Bids from existing supply (import/export, Permanent De-list, and De-list bids) at or below .8 CONE can be directly entered into the descending clock. These bids do not require approval of the market monitor and are eligible to set the price. De-list bids at or below .8 CONE may be rationed, if so designated by the supplier.

10. I support this approach to price formation. It mitigates both monopoly and monopsony market power without interfering with the competitive process.

**Protections in the Event of Auction Failure**

11. The forward auction approach presumes that potential new projects will produce a competitive auction. Nonetheless, it is important to have rules that address what happens if the presumption is not realized. The failures can take two forms: inadequate supply and

insufficient competition. Inadequate supply occurs when too little new capacity participates in the auction to cover demand at any price; insufficient competition occurs when there is adequate supply, but not enough new entry to presume a competitive auction.

12. The FCM has important remedies in the event of either inadequate supply or insufficient competition. In each case, an auction is used to the extent possible; that is, the remedy is limited to the zones with inadequate supply or insufficient competition. In addition, the remedy is chosen so as to encourage the development of new projects, since it is the absence of new projects that has created the auction failure.

**Performance Incentives**

13. The final key element of New England's forward capacity market is performance incentives. Performance incentives are needed to motivate (1) efficient investment in the right mix of resource technologies and characteristics, and (2) efficient operation of resources.

14. The absence of the demand side and concerns about market power have led most electricity markets to adopt an energy price cap. This capping of the energy spot price takes money from the energy market, resulting in: (1) the wrong quantity of resources, (2) the wrong mix of resources, and (3) the wrong operating incentives. The forward capacity auction gets the quantity right, but performance incentives are needed to induce (1) the right mix of resources, and (2) the efficient operation of resources.

15. The FCM relies on two instruments for performance incentives: Shortage Hour Availability (SHA) and a Peak Energy Rent (PER) hedge. SHA restores some of the incentives for resource mix and better operation that have been lost to price capping. Of

at least equal importance, the PER hedge, though it provides no performance incentives beyond the spot energy market, mitigates market power in the energy market and reduces risk for both load and supply by shifting a large portion of compensation during times of scarcity from the spot energy market to the FCM.

16. I fully support the SHA approach and PER hedge. Together they will send the correct price signals at times of system stress and will provide a large reduction in spot market power and a large reduction in risk premiums passed through to consumers.

## Conclusion

17. The Forward Capacity Market presented in the proposed settlement agreement provides a sound basis for a successful capacity market. Indeed, the auction design includes numerous innovations that should be adopted in other regions. Market participants and ultimately the electricity consumers of New England will benefit from the chosen auction design.

18. With respect to price formation, the design adequately addresses market power concerns on both the buy side and sell side of the market. The market should enjoy robust price formation based on the cost of new entry. The design also includes the necessary safeguards in the event of either inadequate supply or insufficient competition.

19. With respect to performance incentives, the proposed settlement has the essential features of a good capacity market. I support the performance incentive approach adopted in settlement. It provides performance incentives that are adequate and stronger than the performance incentives seen in any other US electricity market.

**AFFIDAVIT**

Peter Cramton, being duly sworn, deposes and says: that he is the witness in the foregoing Affidavit and is familiar with its contents. He states further that the facts contained in said Affidavit are true to the best of his knowledge and belief.

Peter Cramton
Peter Cramton

Subscribed and sworn to before me,
This 5th day of March, 2006

Notary Public Mary H Coleman

My Commission Expires 4.14.07

# ATTACHMENT 5

**NEPOOL PARTICIPANTS COMMITTEE**
**MARCH 3, 2006 MEETING**
**VOTE TALLY**
**LICAP SETTLEMENT AGREEMENT**

**TOTAL**

| SECTOR | VOTE |
|---|---|
| GENERATION | 17.07 |
| TRANSMISSION | 9.75 |
| SUPPLIER | 11.38 |
| ALTERNATIVE RESOURCES | 14.67 |
| PUBLICLY OWNED ENTITY | 17.07 |
| END USER | 8.53 |
| **% IN FAVOR** | **78.46** |

**GENERATION SECTOR**

| Participant Name | Vote |
|---|---|
| | |
| ANP Funding I, LLC | F |
| Boston Generating, LLC | F |
| Consolidated Edison Energy, Inc. | F |
| Dominion Energy Marketing, Inc. | F |
| Duke Energy North America, LLC | F |
| Entergy Nuclear Generation Company | F |
| FPL Energy LLC | F |
| Lake Road Generating Company, LP | F |
| Milford Power Company, LLC | F |
| Millennium Power Partners | F |
| Mirant Energy Trading, LLC | F |
| TransCanada Power Marketing Ltd. | F |
| | |
| IN FAVOR (F) | 12 |
| OPPOSED (O) | 0 |
| TOTAL VOTES | 12 |
| ABSTENTIONS ( A) | 0 |

**TRANSMISSION SECTOR**

| Participant Name | Vote |
|---|---|
| | |
| Bangor Hydro-Electric Company | O |
| Boston Edison Company | O |
| Central Maine Power Company | O |
| New England Power Company | F |
| Northeast Utilities System Companies | F |
| The United Illuminating Company | F |
| Vermont Electric Power Company, Inc. | F |
| | |
| IN FAVOR (F) | 4 |
| OPPOSED (O) | 3 |
| TOTAL VOTES | 7 |
| ABSTENTIONS (A) | 0 |

**SUPPLIER SECTOR**

| Participant Name | Vote |
|---|---|
| | |
| BOC Energy Services, Inc. | O |
| Citadel Energy Products, LLC | A |
| Constellation Energy Commodities Group, Inc. | O |
| Cross Sound Cable Company, LLC | A |
| Edison Mission Marketing and Trading | A |
| El Paso Merchant Energy, LP | A |
| Energy America, LLC | O |
| Epic Merchant Energy, L.P. | F |
| Exelon Generation, LLC | F |
| H.Q. Energy Services (U.S.) Inc. | F |
| LIPA | A |
| NRG Power Marketing, Inc. | F |
| PPL EnergyPlus, LLC | A |
| PPM Energy Inc. | F |
| Strategic Energy Ltd. | F |
| Unitil Corporation Participant Cos. | A |
| | |
| IN FAVOR (F) | 6 |
| OPPOSED (O) | 3 |
| TOTAL VOTES | 9 |
| ABSTENTIONS (A) | 7 |

**ALTERNATIVE RESOURCES SECTOR**

| Participant Name | Vote |
|---|---|
| **Renewable Generation Sub-Sector** | |
| Calpine Energy Services, LP | F |
| Gas Recovery Systems, Inc. | F |
| Indeck Maine | F |
| Ridgewood Rhode Island | F |
| | |
| **Distributed Generation Sub-Sector** | |
| Pinpoint Power LLC | F |
| Seneca Energy II, LLC | F |
| | |
| **Load Response Sub-Sector** | |
| Conservation Services Group | F |
| Energy Federation Inc. | F |
| | |
| IN FAVOR (F) | 8 |
| OPPOSED (O) | 0 |
| TOTAL VOTES | 8 |
| ABSTENTIONS (A) | 0 |

**NEPOOL PARTICIPANTS COMMITTEE**
**MARCH 3, 2006 MEETING**
**VOTE TALLY**
**LICAP SETTLEMENT AGREEMENT**

**PUBLICLY OWNED ENTITY SECTOR**

| Participant Name | Vote |
|---|---|
| | |
| Ashburnham Municipal Light Plant | A |
| Belmont Municipal Light Department | A |
| Boylston Municipal Light Department | A |
| Braintree Electric Light Department | A |
| Chicopee Municipal Lighting Plant | A |
| Concord Municipal Light Plant | A |
| Conn. Municipal Electric Energy Cooperative | F |
| Danvers Electric Division | A |
| Georgetown Municipal Light Dept. | A |
| Groton Electric Light Department | A |
| Hingham Municipal Lighting Plant | A |
| Holden Municipal Light Department | A |
| Holyoke Gas & Electric Department | A |
| Hudson Light and Power Department | A |
| Hull Municipal Lighting Plant | A |
| Ipswich Municipal Light Department | A |
| Littleton (MA) Electric Light Department | A |
| Mansfield Municipal Electric Department | A |
| Marblehead Municipal Light Department | A |
| Mass. Municipal Wholesale Electric Co. | A |
| Middleborough Gas and Electric Dept. | A |
| Middleton Municipal Electric Dept. | A |
| North Attleborough Electric Department | A |
| Pascoag Utility District | A |
| Paxton Municipal Light Department | A |
| Peabody Municipal Light Plant | A |
| Rowley Municipal Lighting Plant | A |
| Shrewsbury's Electric Light Plant | A |
| Sterling Municipal Electric Light Dept. | A |
| Taunton Municipal Lighting Plant | A |
| Templeton Municipal Lighting Plant | A |
| Vermont Public Power Supply Authority | F |
| Wakefield Municipal Gas and Light Dept | A |
| West Boylston Municipal Lighting Plant | A |
| Westfield Gas & Electric Light Dept. | A |
| | |
| IN FAVOR (F) | 2 |
| OPPOSED (O) | 0 |
| TOTAL VOTES | 2 |
| ABSTENTIONS (A) | 33 |

**END USER SECTOR**

| Participant Name | Vote |
|---|---|
| | |
| Associated Industries of Massachusetts | F |
| Connecticut Office of Consumer Counsel | F |
| Energy Management Inc. | F |
| Harvard Dedicated Energy Limited | A |
| Industrial Energy Consumer Group | O |
| J&L Electric | O |
| Maine Skiing, Inc. | O |
| NH Office of Consumer Advocate | A |
| Texas Instruments | A |
| The Energy Consortium | O |
| The Energy Council of Rhode Island | A |
| UPC Wind Management, LLC | F |
| | |
| IN FAVOR (F) | 4 |
| OPPOSED (O) | 4 |
| TOTAL VOTES | 8 |
| ABSTENTIONS (A) | 4 |

# ATTACHMENT 6

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

**Devon Power LLC, et al.** ) **Docket No. ER03-563-030**

## AFFIDAVIT OF DAVID LAPLANTE

## I. INTRODUCTION

1. My name is David LaPlante. I am Vice President of Wholesale Markets Strategy with ISO New England Inc. (the "ISO" or "ISO-NE"). My business address is One Sullivan Road, Holyoke, Massachusetts 01041. I previously testified in this docket on behalf of the ISO and my qualifications and background are contained in my August 31, 2004, direct testimony.

2. The purpose of this affidavit is to compare the transition payments under the proposed settlement with the projected capacity clearing prices under the LICAP market design approved in the Initial Decision in this proceeding. This comparison shows that payments under the transition proposal will be significantly lower than would have been the case had the LICAP mechanism approved in the Initial Decision been adopted by the Commission.

3. I will also describe the range of possible Forward Capacity Auction ("FCA") prices in the first auction.

## II. COST COMPARISON OF THE TRANSITION PAYMENTS UNDER THE SETTLEMENT AND LICAP

4. In my Prepared Rebuttal Testimony in this proceeding,[1] I provided projected LICAP clearing prices. To derive those estimates I used the then current data concerning Local Sourcing Requirements, Installed Capacity Requirements, available generation resources, and existing installed capacity. I also used the LICAP demand curve proposed by the ISO. The multi-year pricing model used to create these projections is the same as that used in the LICAP case and is described in the Prepared Rebuttal Testimony of Mark Karl filed in this proceeding.[2]

5. On May 9, 2005, in Docket No. ER05-715-000, the Commission issued an order which accepted revised Installed Capacity Requirements for the ISO for Power Year 2005/2006.[3]

6. In addition, since my February testimony was filed, the ISO has issued 2005 Regional System Plan ("RSP05"). The executive summary of this document was submitted to the Commission to provide background for the September 20, 2005 oral argument in this proceeding.[4]

---

[1] Prepared Rebuttal Testimony of David LaPlante, Exhibit No. ISO-23 at 60-62.1

[2] Prepared Rebuttal Testimony of Mark Karl, Exhibit No. ISO-39 at 49:20-57:16.

[3] *ISO New England Inc.*, 111 FERC ¶61,185 (2005).

[4] Notice of Proposed Speakers and Time allocation for Oral Argument, September 13, 2005.

7. In light of these and other developments, for purposes of this affidavit, I have updated the assumptions used in my earlier testimony to project LICAP prices. The projections in this affidavit assume:

1. the projections of Installed Capacity Requirements contained in RSP05;
2. the addition of 200 MW of capacity in Connecticut in 2007/08 in response to RFPs issued under recent legislation enacted in Connecticut;
3. the Local Sourcing Requirements set forth in Table 1 below;
4. the annual capacity imports set forth in Table 2 below; and
5. a Peak Energy Rent deduction to ensure that the comparison to transition payments is correct.

8. The LICAP price projections in this affidavit use the estimate of Local Sourcing Requirements shown in Table 1 below. The methodology used to derive these Local Sourcing Requirements is as described in my testimony in this proceeding.[5]

Table 1

Local Sourcing Requirements (MW)

| Zone | 2006/07 | 2007/08 | 2008/09 | 2009/10 |
|---|---|---|---|---|
| Connecticut | 6169 | 6295 | 6466 | 6749 |
| NEMA/Boston | 2192 | 2202 | 2112 | 2352 |
| Rest of Pool | 12614 | 12719 | 12935 | 13159 |
| Maine | 0 | 0 | 0 | 0 |

[5] Prepared Direct Testimony of David LaPlante, Exh No. ISO-1, at 38:8-43:12.



{W0137225; 1}

9. Table 2 below summarizes the annual capacity imports assumed for these projections.

Table 2

Annual Capacity Imports (MWs)

| | 2006/07 | 2007/08 | 2008/09 | 2009/10 | |
|---|---|---|---|---|---|
| Connecticut | 0 | 0 | 0 | 0 | |
| NEMA Boston | 0 | 0 | 0 | 0 | |
| Rest of Pool | 360 | 600 | 600 | 600 | |
| Maine | 200 | 200 | 200 | 200 | |
| Total | 560 | 800 | 800 | 800 | |

10. In deriving these assumptions, capacity imports are assumed starting upon market implementation in 2006/07. Imports from New York were added when capacity prices in the Rest-of-Pool region reached $5.00. Imports from New Brunswick, via Maine, were assumed when prices in Maine reached $3.00. Imports from New York are limited to 600 MW and imports from New Brunswick are limited to 200 MW.

11. The following estimated LICAP prices result from applying updated assumptions described above to the demand curve approved in the Initial Decision:

Table 3

LICAP Clearing Price Less PER[6]

($Kw-Month)

| Zone | 2006/07 | 2007/08 | 2008/09 | 2009/10 |
|---|---|---|---|---|
| Connecticut | $4.13 | $5.14 | $6.39 | $11.15 |
| NEMA/Boston | $4.13 | $5.14 | $6.39 | $7.84 |
| Rest of Pool | $4.13 | $5.14 | $6.39 | $7.84 |
| Maine | $4.13 | $5.14 | $6.39 | $7.84 |

12. The following Table 4 shows the transition payment rates in the final settlement agreement. Transition payments, like LICAP payments, are made to all capacity resources.

Table 4

Transition Payment Rates

($Kw-Month)

| 2006/07 | 2007/08 | 2008/09 | 2009/10 |
|---|---|---|---|
| $3.05 | $3.05 | $3.75 | $4.10 |

[6] The PER deduction was $.48/kw-month, the same as that used in the LICAP price projections and described in Mr. David LaPlante's testimony, Exhibit ISO-NE 1 at page 23.

13. A comparison of Table 3 and Table 4 shows that the transition payment rates are significantly less than the projected LICAP prices. Table 5 summarizes how much lower the transition payments are than the projected price of LICAP for each year of the transition.

Table 5

Percentage Savings of Transition Agreement Compared to LICAP

| Year | Percentage reduction for Maine, NEMA Boston and Rest of Pool | Percentage reduction For Connecticut |
|---|---|---|
| 2006/07 | 26% | 25% |
| 2007/08 | 41% | 40% |
| 2008/09 | 41% | 41% |
| 2009/10 | 48% | 63% |

14. It is worth noting that, in this price projection, as compared to the prior projections contained in the LICAP hearing record, due to transmission enhancements described in RSP05 that have increased the transfer limits into Southwest Connecticut by about 300 MW and the changes in the forecasted Installed Capacity Requirements, the pool clears all zones on a single price basis, except for Connecticut in the last year of the projections. This means that under these LICAP projections the Maine and NEMA/ Boston zones, and for all years except one the Connecticut zones, would have paid the same price as the rest of the region. Since there is limited transmission out of Maine and a good deal of generation in Maine, some have speculated that Maine might be an export-constrained zone. These results show that Maine is in fact not an export-constrained zone and therefore appropriately pays the same prices as the rest of New England.

15. The Connecticut prices were based on the assumptions described above. However, there are possible transmission improvements and generation additions not yet included in RSP05 that may eliminate the need for a separate zone in Connecticut. The transmission enhancements, which would likely increase the transfer limits into Connecticut, are being investigated as part of the Southern New England Reinforcement Project but were not included in RSP05 because they are only in the initial planning stages. The studies did not include any additional generation that would be built pursuant to the forward reserve market filed by the ISO on February 6, 2006 (Docket No. ER06-613-000). If these transmission enhancements or additional generation pursuant to the forward reserve market materialize, then a separate zone for Connecticut may not be necessary and therefore, Connecticut's prices may be the same as the other regions in 2009/2010.

## III. THE RANGE OF CAPACITY PRICES PERMITTED BY THE SETTLEMENT

16. Section III. G. 4.of the settlement provides that:

> For the lesser of five [Forward Capacity Auctions ("FCAs")] or three successful FCAs: (a) if the Capacity Clearing Price is above 1.4 times [the Cost of New Entry ("CONE")], Existing Capacity shall be paid 1.4 times CONE, and New Capacity shall be paid the Capacity Clearing Price; and (b) the Capacity Clearing Price shall not fall below 0.6 times CONE.

17. As agreed upon in the settlement, the CONE for 2010/11 will be $7.50/kW-mo. This means that the first year auction results will be between a floor price of $4.50/kW-mo. and a ceiling price of $10.50/kW-mo. for existing capacity.



{W0137225; 1}

# ATTESTATION

David LaPlante, being duly sworn, deposes and states: That the Affidavit of David LaPlante attached hereto was prepared under his supervision and control. Affiant further states under penalty of perjury under the laws of the United States of America that the statements therein are true and correct to the best of his knowledge, information, and belief.

Executed on March 6, 2006

David LaPlante

Commonwealth of Massachusetts )
)
County of Hampden )

On this 6th day of March, 2006, before me, the undersigned notary public, appeared David LaPlante, personally known to me to be the person whose name is signed on the preceding document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Lorraine M. Brady
Notary Public

LORRAINE M. BRADY
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
MY COMMISSION EXPIRES 7/23/2010



{W0137195; 1}

**ATTACHMENT 7**

**UNITED STATES OF AMERICA**
**BEFORE THE**
**FEDERAL ENERGY REGULATORY COMMISSION**

Devon Power LLC, et al. ) Docket No. ER03-563-000, *et al.*

**NOTICE OF FILING**

Take notice that on March 6, 2006, the Settling Parties[1] filed an Explanatory Statement of the Settling Parties and Request for Expedited Consideration ("Explanatory Statement") and Settlement Agreement Resolving All Issues ("Settlement Agreement") pursuant to Rule 602 of the Commission's Rules of Practice and Procedure for approval by the Commission in the captioned proceedings. 18 C.F.R. § 385.602 (2005).

The filing was made under Docket Nos. ER03-563-000, -030, and -055. Copies of these materials were sent to all participants to this proceeding by electronic mail pursuant to the listserv established in this proceeding. The foregoing has also been served on the NEPOOL Participants Committee members by electronic mail, pursuant to section 17.11(e) of the NEPOOL Participants Agreement.

In accordance with Rule 602(f) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.602(f), any person desiring to comment on this Settlement Agreement should file its comments with the Federal Energy Regulatory Commission, 888 First Street, N.E., Washington, D.C. 20426, by March 27, 2006. Reply comments will be due no later than April 5, 2006. This filing is available for review at the Commission in the Public Reference Room or may be viewed on the Commission's website at http://www.ferc.gov using the "eLibrary" link. Enter the docket number excluding the last three digits in the docket number field to access the document. For assistance with any FERC Online service, please email ferconlinesupport@ferc.gov or call toll-free (866) 208-3676, for TTY, call (202) 502-8659.

Comment Date: March 27, 2006.

Magalie R. Salas
Secretary

---

[1] The parties to the Settlement Agreement as of the date of the Settlement Agreement are identified in Section V of the Explanatory Statement.

# ATTACHMENT 8

**In Reply Refer To:**
ISO New England, Inc.
Docket Nos. ER03-563-000, *et al.*

Attn: Sherry A. Quirk
Sullivan & Worcester LLP
1666 K Street, NW
Washington, DC 20006

Dear Ms. Quirk:

On March 6, 2006, you filed a Settlement Agreement in the above-referenced dockets on behalf the Settling Parties in Docket Nos. ER03-563-000, *et al.*[1] Comments in this proceeding were filed by _________on _____, 2006. Reply comments were filed by ____________ on ______, 2006. On ______, 2006, the settlement judge certified the settlement to the Commission.

The subject settlement is in the public interest and is hereby accepted. The Commission's acceptance of this settlement does not constitute approval of, or precedent regarding, any principle or issue in this proceeding. The Commission retains the right to investigate the rates, terms and conditions under the just and reasonable and not unduly discriminatory or preferential standard of Section 206 of the Federal Power Act, 16 U.S.C. § 824e.

By direction of the Commission.

Secretary

Enclosure

cc: To All Parties

[1] The parties to the Settlement Agreement as of the date of the Settlement Agreement are identified in Section V of the Explanatory Statement.



{B0496875; 1}