# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY, STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,** | |
| **Plaintiffs** | |
| **v.** | **C.A. NO. 06-404S** |
| **CONSTELLATION ENERGY COMMODITIES GROUP, INC.,** | |
| **Defendant.** | |

## COMPLAINT

The State of Rhode Island and Providence Plantations ("State of Rhode Island") and the Rhode Island Division of Public Utilities and Carriers ("Division"),[1] by and through Patrick C. Lynch, Rhode Island Attorney General, bring this action to seek a declaratory judgment, among other relief, that the defendant, Constellation Energy Commodities Group, Inc. ("Constellation"), is barred under a Federal Energy Regulatory Commission ("FERC") approved and accepted settlement agreement (the "Agreement") and FERC Order dated June 16, 2006 (the "Order") from obtaining any increase in costs that Constellation might incur to purchase certain wholesale electric market products in

[1] The State of Rhode Island and the Division are collectively referred to herein as the "State".

the New England power markets as administered by the Independent System Operator of New England ("ISO New England").

**PARTIES**

1. The Narragansett Electric Company ("Narragansett Electric") is a corporation duly organized and existing under the laws of the State of Rhode Island with its principal place of business located at 280 Melrose Street, Providence, Rhode Island.

2. The Division is statutorily mandated to represent the interests of Rhode Island ratepayers in proceedings before the FERC. The Rhode Island General Laws provides: "The administrator shall represent the state in proceedings before the agencies of the federal government on *all* matters affecting public utility services rendered or to be rendered in this state . . ." G.L. § 39-1-29 (emphasis supplied). G.L. § 39-1-29 additionally requires specific participation by the Division in proceedings affecting or relating to regional transmission issues in an effort to promote the "coordination of power systems to achieve low . . . transmission costs and possible regionalization of regulation." The Division intervened in Devon Power LLC, et al., Docket Nos. ER03-563-030 & ER03-563-055 before FERC, participated in settlement negotiations and is a Settling Party to the Agreement.

6. The State of Rhode Island is a sovereign State with all of the rights, privileges and immunities inuring to said status. The State of Rhode Island, by reason of its agency's status as a Settling Party, is a necessary and indispensable party to this proceeding.

7. On information and belief, Constellation is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 11 Market Place, Suite 500, Baltimore, Maryland.

## JURISDICTION AND VENUE

6. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because Narragansett Electric and Constellation are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7. This Court also has federal question jurisdiction under 28 U.S.C. § 1331 the action arises under the laws of the United States.

8. This Court also possesses supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTS

10. In 2004, ISO New England proposed a locational installed capacity ("LICAP") market. Under this market, ISO New England proposed to allocate capacity payments to electricity generators by geographic zones (*i.e.* by location) based on certain formula that were designed to provide an incentive for the creation of generation capacity.

11. State regulatory bodies, public utilities and municipal load serving entities, and many others objected to the LICAP market for, among other reasons, it was estimated that imposition of a market would cost New England electric ratepayers many

hundreds of millions, if not several billion of dollars, without providing adequate capacity or reliability.

12. As a consequence of this vehement opposition, FERC postponed the implementation of the LICAP market in the proceeding then pending before FERC, giving the parties an additional opportunity to pursue a settlement.

13. In or about the Fall of 2005 and into early 2006, regulatory and consumer representatives of the six New England States, generators, transmission owners, power suppliers, among others, negotiated the Agreement that proposed the adoption of a Forward Capacity Market ("FCM"), as an alternative to the LICAP market.

14. The Agreement was the end product of a series of over 30 formal settlement conferences and negotiations, involving 115 parties, taking place over about a four-month period with the active participation and involvement of Administrative Law Judge Lawrence Brenner.

15. The Division participated in the settlement negotiations and conferences.

16. Narragansett Electric's parent, National Grid USA, on behalf of itself and its subsidiaries that were intervenors in the proceeding, participated in these conferences and negotiations.

17. Constellation and FPL Energy, LLC, an affiliate of Florida Power & Light, which was pursuing a merger with Constellation, also participated in these conferences and negotiations.

18. During the course of these conferences negotiations, the State became a "swing" settlement participant. Without the State's agreement to become a Settling

Party, neither ISO-New England would recommend the FCM to FERC, nor would FERC approve the FCM.

19. Without the State's agreement to become a Settling Party, the FCM would not have been created in New England, and Rhode Island standard offer wholesale suppliers (of which Constellation was one), among others, would have faced or incurred continued vigorous opposition to the proposed LICAP market, endless litigation and substantial monetary detriment.

20. Settlement participants, including Rhode Island standard offer wholesale suppliers, therefore, included language (*i.e.*, Section VIII(A)) in the Agreement to induce the State to become a Settling Party to the Agreement.

21. Section VIII(A) of the Agreement provides as follows:

> The current UCAP products shall be retained for the period commencing on December 1, 2006 and ending on May 30, 2010 (the "Transition Period") as provided for in Part VIII.I. Payments will be made to UCAP entitlement holders including wholesale standard offer suppliers in Rhode Island as under the current Market Rules and tariffs; it being understood that the agreement of wholesale standard offer suppliers in Rhode Island to make UCAP payments is contingent upon the agreement of the state of Rhode Island utility regulatory authorities to support the settlement.

22. The clear and unequivocal language of Section VIII(A) reflects settlement participants', including Rhode Island standard offer wholesale suppliers', understanding that they would not be able to seek or obtain the recovery of Transition Period UCAP Costs or any other similar costs from Narragansett Electric and/or Rhode Island electric ratepayers.

23. The Agreement was filed on March 6, 2006, and by and among others, was executed on behalf of the State of Rhode Island by the Division, National Grid USA,

on behalf of itself and its subsidiaries that were intervenors in the proceeding, and by FPL Energy, LLC, which as previously mentioned, is an affiliate Florida Power & Light Company that was pursuing a merger with Constellation.

24. By the Order dated June 16, 2006, FERC approved the Agreement, accepting the Agreement as “a just and reasonable outcome of this proceeding consistent with the public interest.”

25. Constellation is not listed as an Objecting Party to the Agreement and did not object to the Agreement or the Order.

26. Constellation did not file opposing comments, supporting comments or any comments, for that matter, expounding any position whatsoever regarding the Agreement.

27. Constellation did not appeal or seek a rehearing regarding the Order, and the time within which Constellation could appeal the Order has expired.

28. On August 1, 2006, Constellation wrote to Narragansett Electric demanding additional compensation under certain power purchase agreements (“PPAs”) to pay for Transition Period UCAP Costs, among other additional compensation under the PPAs.

29. Pursuant to FERC Rule 602, codified at 18 C.F.R. § 385.602 and federal law, the Agreement and the Order are binding upon, Narragansett Electric, Constellation and the State, among others.

## **CLAIMS**

### **COUNT I – DECLARATORY JUDGMENT**

30. The State realleges herein the facts set forth in Paragraph Nos. 1-29, above.

31. The terms of the Agreement and Order accepting the Agreement, including but not limited to Section VIII(A) of the Agreement, bar Constellation from recovering Transition Period UCAP Costs and other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers.

32. The bar reflected by the express language of the Agreement and by the Order provides the Court with an actual case or controversy, enforceable by the State against Constellation since the State is a Settling Party and Constellation is bound to the terms of the Agreement.

### **COUNT II – WAIVER**

33. The State realleges herein the facts set forth in Paragraph Nos. 1-29, above.

34. Constellation waived its right to recover Transition Period UCAP Costs and any other similar costs because Constellation, among other actions or inactions participated in the negotiation of the Agreement; knew that the State's support of the Settlement Agreement was given in consideration for the Settling Parties' agreement not to recover Transition Period UCAP Costs or any other costs in Rhode Island; failed to comment upon, object to, appeal or otherwise preserve its rights regarding the Agreement, including but not limited to Section VIII(A).

**COUNT III – ESTOPPEL**

35. The State realleges herein the facts set forth in Paragraph Nos. 1-29, above.

36. During the course of the settlement negotiations, it became apparent that the State was a "swing" settlement participant. Without the State's agreement to become a Settling Party, ISO-New England would neither recommend the Forward Capacity Market ("FCM") regime to FERC nor would FERC approve the FCM regime.

37. To induce the State to become a Settling Party to the Agreement, FERC settlement participants, including Rhode Island standard offer wholesale suppliers, included Section VIII(A) in the Agreement.

38. In exchange for the inclusion of Section VIII(A) in the Agreement, the State agreed to sign the Agreement and become a Settling Party.

39. The clear and unequivocal language of Section VIII(A) reflects settlement participants', including Rhode Island standard offer wholesale suppliers', agreement that they would not attempt to obtain, and would be barred from obtaining, the recovery of Transition Period UCAP Costs or any other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers.

40. As one of Rhode Island's standard offer wholesale suppliers, Constellation knew of the inclusion of Section VIII(A) in the Agreement, did not object to the Agreement or to the inclusion of Section VIII(A) in the Agreement, did not file comments regarding the Agreement and did not take any other action to preserve its rights to object to the Agreement or Section VIII(A).

41. The State reasonably relied on Constellation's conduct to the State's substantial detriment.

42. The State has suffered substantial detriment and prejudice based on this reasonable reliance.

43. Constellation is estopped from recovering Transition Period UCAP Costs and any other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers.

**REQUESTS FOR RELIEF**

WHEREFORE, the State requests that the Court enter an Order and Judgment in favor of the State:

(i) declaring that the Settlement Agreement and FERC Order precludes Constellation from recovering Transition Period UCAP Costs or any other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers;

(ii) enjoining Constellation from undertaking any act, action or conduct whatsoever that seeks to obtain the recovery of Transition Period UCAP Costs or any other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers;

(iii) an award of the State's reasonable costs;

(iv) an award of the State's reasonable attorneys' fees; and

(v) such other relief as the Court deems is just and proper.

**The State hereby Demands Trial by Jury**

Respectfully submitted,

STATE OF RHODE ISLAND
PROVIDENCE PLANTATIONS and
the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

______________________________
Leo J. Wold, # 3613
Richard Woolley, # 1452
150 South Main Street,
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

Dated: January __, 2007

## CERTIFICATE OF SERVICE

I certify that on January __, 2007, a copy of the within complaint was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

______________________________
Leo J. Wold, # 3613
Richard B. Woolley # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov