**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| The Narragansett Electric Company, Plaintiff, | ) | |
| v. | ) | Dkt. No. 06-404S |
| Constellation Energy Commodities Group, Inc., Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO MOTION OF STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS TO INTERVENE AND TO JOIN A CLAIM**

Defendant Constellation Energy Commodities Group, Inc. ("Constellation") opposes the motion of the State of Rhode Island and Providence Plantations ("Rhode Island") and the Rhode Island Division of Public Utilities and Carriers ("PUC") (collectively, the "State") to intervene and join a claim. Intervention by the State is premature as two of the PPAs (the 2001 and 2002 Contracts) require arbitration and the same issue under the other contracts should be referred to arbitration pursuant to the Court's powers under the FAA.[1] Until the Court decides the

[1] The "PPAs" are four power purchase agreements (attached as Exhibits A-D to Constellation's Motion for Lease to File Under Seal, dated October 23, 2006):

- Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998, and amended on January 27, 2003 and June 3, 2003) **(the "20% Contract")**. Ex. A.
- Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998, and amended on January 27, 2003 and June 3, 2003) **(the "36% Contract")**. Ex. B.
- Power Supply Agreement between The Narragansett Electric Company and Constellation Power Source, Inc. (dated October 5, 2001) **(the "2001 Contract")**. Ex. C.
- Power Supply Agreement between Narragansett Electric Company and Constellation Power

(continued...)

arbitration issue it is premature for the Court to rule on intervention as it is for the arbitrators—not the Court—to decide whether intervention is appropriate in a matter subject to arbitration.

In addition, the State's intervention is needlessly disruptive and portends of future delays.[2] The State does not hold any interest that justifies intervention in counts I and II of the complaint of The Narragansett Electric Company ("NEC"). It stands merely as an incidental beneficiary under the PPAs not entitled to sue for breach, and it has no cognizable claim against Constellation under the Settlement Agreement or for estoppel. Moreover, the State admits ratepayers face no risk because NEC's rates may include only "reasonably and prudently incurred" costs, which interest NEC can readily protect.

## ARGUMENT

Intervention by the State is premature as the 2001 and 2002 Contracts require arbitration, and the same issue under the other contracts should be referred to arbitration pursuant to the Court's powers under the Federal Arbitration Act ("FAA"). Until the Court decides the arbitration issue it is premature for the Court to rule on intervention. In addition, no cause exists for allowing the State to intervene in this proceeding. The State has no cognizable interest in bilateral contractual dealings on Constellation's request for an equitable adjustment due to the regulatory changes ordered by the Federal Energy Regulatory Commission ("FERC"). It stands merely as an incidental beneficiary to the PPAs, with no right to sue for breach. The State's contention that it is an intended beneficiary under the Settlement Agreement—for a promise or a

---

Source, Inc. (dated August 23, 2002, and amended August 23, 2002) (**the "2002 Contract"**).

[2] The State's motion recognizes that should the Court determine not to allow the State to intervene, the joinder motion would be moot. State's Mot. at 13 ("assuming the Court grants the State's request to intervene . . . the Court should also permit the State to join Count III of its proposed Complaint to the two 'original claims' to which it has intervened."). Accordingly, the Court need not reach the joinder question unless it finds cause for granting the State's intervention motion.

waiver that Constellation (not a party to that agreement) did not make—fails to justify intervention because the Court has no subject matter jurisdiction to hear that claim, and because the State cannot meet the impairment or inadequacy requirements of Federal Rule of Civil Procedure 24(a) or (b). The State also fails to establish cause for burdening this proceeding with joining the State's proffered estoppel claim.

The State's only cognizable interest is ensuring that NEC's rates include only reasonably and prudently incurred costs, but that interest is not at stake here. To the extent NEC incurs an obligation to Constellation that is not reasonable or prudent, the State need not allow NEC to include that in its rates. Nothing from this suit will impair or impede the State's interest in protecting ratepayers against unreasonable or imprudent costs.

## I. INTERVENTION IS FOR THE ARBITRATORS TO DECIDE

The State's motion to intervene is premature because the 2002 and 2001 Contracts direct the dispute to arbitration and the same issue under the other contracts should be referred to arbitration pursuant to the Court's powers under the FAA. Mot. to Dismiss NEC's Compl. at 25-33. Nothing the State (or NEC) raises establishes any doubt about the arbitrability of the dispute over Constellation's right to an equitable adjustment. Constellation's Reply in Support of Mot. to Dismiss at 16-20. Whether to permit the State (a non-party to the PPAs) to intervene concerns contract interpretation and arbitration procedures, which arbitrators are well suited to answer and which the 2002 and 2001 Contracts commit to arbitration; it is not an issue for the Court. *County Concrete Corp v. Burns & Russell Co. of Balt. City, Inc.*, 2005 U.S. Dist. LEXIS 17913 at *3 (D. Wis. 2005) (relying on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 453 (2003)); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557 (1964) (procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the

judge, but for an arbitrator to decide). Intervention being a procedural issue, *Trbovich v. UMW*, 404 U.S. 528, 537 n.7 (U.S. 1972), whether to allow it must be determined by the arbitrator, not the court. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 82-85 (2002); *cf. Emplrs. Ins. Co. v. Century Indem. Co.*, 443 F.3d 573, 575 (7th Cir. 2006) (arbitrator, not the court, decides whether consolidation is permitted under parties' arbitration agreement). Accordingly, the Court should deny the State's motion.

## II. NO CAUSE EXISTS TO ALLOW THE STATE TO INTERVENE

The dispute before the Court is whether Constellation is entitled to an equitable adjustment under the PPAs due to regulatory changes mandated by FERC. To intervene as of right, the State must demonstrate it holds an interest in Constellation's right to an equitable adjustment that is legally cognizable, proprietary, and significantly protectable. *Donaldson v. United States*, 400 U.S. 517, 530-31 (1971). Rule 24(a) requires the State's interest be direct; a contingent interest does not suffice. *Pub. Serv. Co. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998) (noting the insufficiency of an interest in lower electric rates expected to result from restructuring). The State must also show that disposition of this dispute may impair or impede its ability to protect the State's interest, and that NEC will not adequately protect that interest. *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544-45 (1st Cir. 2006).

To intervene permissively, the State must demonstrate it has a claim or defense against Constellation that shares a common question of law or fact with this lawsuit, that NEC will not adequately represent its interests, and that its intervention will not result in undue delay or prejudice to Constellation and NEC. *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992). Rule 24(b) requires an independent basis for subject matter jurisdiction over the State's claims

against Constellation; supplemental jurisdiction is not available. *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

The State does not meet either test.

**A. For three reasons, the State does not hold an interest that satisfies Rule 24(a) or (b)**

**1. The Court lacks subject matter jurisdiction over the State's claims**

The State does not have a cognizable interest justifying intervention because the filed rate doctrine bars this Court from granting the relief sought by NEC's counts I and II. *See* Def.'s Mot. to Dismiss at 14-19 (relying on, among others, *Mont.-Dakota Util. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951)); Def.'s Reply in Support of Mot. to Dismiss at 3-7 (relying on, among others, *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986)); *cf. Narragansett Elec. Co. v. Burke*, 381 A.2d 1358, 1361 (R.I. 1977) (jurisdiction to determine the reasonableness of wholesale rates rests exclusively with FERC). The Court likewise lacks subject matter jurisdiction over the State's proffered estoppel claim (count III of the proposed complaint) because that claim requires the Court to usurp FERC's exclusive authority by presuming what FERC would deem reasonable under the circumstances here. *Miss. Power & Light Co. v. Mississippi*, 487 U.S. 354, 371 (1988) (FERC's power includes the exclusive authority to determine the reasonableness of wholesale rates); *Ark. La. Gas Co. v. Hall (Arkla)*, 453 U.S. 571, 577 (1981) (under the filed rate doctrine courts may not substitute their own judgment for that of FERC).

The Court has no authority to make assumptions about what FERC would do under these circumstances, and it can order no relief that would affect the regulatory regime FERC has approved. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (filed rate doctrine preempts any state law that conflicts with, alters, or even impinges on FERC's authority);



WDC99 1338701-9.070626.0036

*Nantahala Power & Light Co.*, 476 U.S. at 971 (state PUC's imposition of allocation of entitlements barred by filed rate doctrine); *Arkla*, 453 U.S. at 577-79 (filed rate doctrine barred state law breach of contract claim that assumed FERC would have approved rates as reasonable); *Grays Harbor v. IdaCorp.*, 379 F.3d 641 (9th Cir. 2004) (claims based on duress, mistake and seeking equitable relief barred by filed rate doctrine); *Snohomish County v. Dynegy Power Mktg., Inc.*, 384 F.3d 756 (9th Cir. 2004) (claims under state antitrust and consumer protection laws barred by filed rate doctrine). *Transmission Agency of N.Ca. v. Sierra Pac. Power Co. (TANC)*, 295 F. 3d 918, 922 (9th Cir. 2002) (filed rate doctrine bars claims requiring court to assume how FERC would act).

Two cases involving claims asserted by the California governor and attorney general in response to the 2000-2001 energy crisis make clear the filed rate doctrine bars the State's claims. In *California v. Dynegy*, the Ninth Circuit ruled the filed rate doctrine barred claims by the California attorney general against wholesale suppliers for unfair competition and seeking to enforce provisions of the California ISO's tariff:

> California's unfair competition claims are based on the companies' agreement to provide ancillary services, the terms of which are embodied in, and governed by, the ISO tariff, including its remedial provisions. Accordingly, we conclude that [the] California claims are preempted because they encroach upon the substantive provisions of the tariff, an area reserved exclusively to FERC, both to enforce and to seek remedy.
>
> * * *
>
> "[T]he filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the [regulated entity] provides . . . the services covered by the tariff." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (internal citations omitted). To the extent that California is seeking to enforce the penalty provisions of the tariff, or to have them expanded, this conflicts with the filed rate doctrine and the exclusive authority conferred to FERC to enforce its tariff.

375 F.3d 831, 852-53 (9th Cir. 2004) (alterations in original) (internal footnotes omitted).

In *Duke Energy Trading & Mktg. v. Davis*, the Ninth Circuit ruled the filed rate doctrine barred the California governor from interfering with wholesale energy contracts:

> [I]t is not enough that California agrees to pay the same rate to Duke or requires Duke to continue to supply electricity for a duration no longer than the block forward contracts provide. Indeed, in that respect, California is a complete substitute for SCE and PG & E. However, by commandeering the block forward contracts, Duke (and, derivatively, the CalPX) lost its FERC-protected right to standard financial protection, *i.e.*, to liquidate its collateral if the buyers default on their obligations. It is Governor Davis's interference with the block forward contracts' security provisions that is preempted by the federal scheme. FERC preempts regulation of the contracts' economics of administration, which, by destroying Duke's ability to exercise its rights to assure payment for third party sales, is exactly why Governor Davis's executive order cannot stand. Hence, Governor Davis's commandeering orders to the extent that they conflict with FERC requirements are void under the Supremacy Clause of the United States Constitution.

267 F.3d 1042, 1058 (9th Cir. 2001).

Those cases demonstrate the breadth of the FERC' exclusive authority, and no distinction exists for finding that the State's claims are not likewise barred by the filed rate doctrine. Constellation's rights under the PPAs are subject to FERC's exclusive authority and may only be changed (absent mutual assent) by FERC determining that the public interest requires abrogation of Constellation's rights—which FERC has not done. *Ne. Utils. Serv. Co. v. FERC*, 55 F.3d 686, 689-91 (1st Cir. 1995). NEC's and the State's claims ask this Court to exert authority over substantive provisions of the FERC-approved market changes. Granting relief on those claims depends not on the Court enforcing a clear, unambiguous FERC order, but rather on the Court presuming that FERC would find it reasonable to bar Constellation from seeking an equitable adjustment in light of Rhode Island's support for the Settlement Agreement. Because the filed

rate doctrine squarely prohibits the Court from making any such assumption, the Court should deny the State's motion for lack of subject matter jurisdiction.

**2. The State does not have a cognizable interest under the PPAs**

Even if the Court has subject matter jurisdiction over NEC's counts I and II, the State's basis for intervention does not satisfy Rule 24. The State claims a right to intervene based on the alleged need to defend the interests of NEC's ratepayers, Mot. to Intervene at 6, but a generalized economic interest like that does not create a protectable interest sufficient for intervention. *Patch,* 136 F.3d at 205 (questioning the strength of a claim based solely on economic interest and finding theory of economic interest too general to qualify as an interest);[3] *see also Montana v. Envtl. Prot. Agency*, 137 F.3d 1135, 1142 (9th Cir. 1998) (explaining that a speculative and purely economic interest does not create a protectable interest); *Athens Lumber Co. v. Fed. Election Comm'n*, 690 F.2d 1364, 1366 (11th Cir. 1982) (unions' financial interest in federal elections did not support intervention in action challenging section of the Federal Election Campaign Act).

The State's reliance on *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York (NYPIRG)* for the proposition that it is entitled to intervene as of right to protect ratepayers' financial interests is misplaced. 516 F.2d 350 (2d Cir. 1975) (per curiam). *NYPIRG* held that the Pharmaceutical Society of New York and three individual pharmacists could intervene in a case evaluating regulations of the pharmacy profession because the pharmacists' interests in the continued health of their profession, *combined with* the

---

[3] While *Patch* observes that "[p]otential economic harm to a would-be intervenor is a factor that warrants serious consideration in the interest inquiry," it holds that it is "settled" that an "undifferentiated, generalized interest in the outcome of an ongoing action is too porous a foundation on which to premise intervention as of right." *Pub. Serv. Co. v. Patch*, 136 F.3d 197, 205 (1st Cir. 1998).

economic impact the rules would have on them, justified intervention. *Id.* at 352. Nothing like the challenged regulatory prohibition on advertising and its immediate impact on the pharmacist intervenors in *NYPIRG* exists here because this bilateral contract dispute does not challenge the State's right to ensure NEC's rates include only reasonably and prudently incurred costs.

The State's interest in protecting NEC's ratepayers does not satisfy Rule 24 because "every electricity consumer in [a state] and every person who does business with any electricity consumer yearns for lower electric rates." *Patch*, 136 F.3d at 205; *see also New Orleans Pub. Serv. Inc. v. United Gas Pipe Line Co.(NOPSI III)*, 732 F.2d 452, 466 (5th Cir. 1984) (denying intervention as of right because, among other things, the city officials were not third party beneficiaries to a contract between a gas supplier and an electric utility, and thus had no legally protectable interest). Generalized interests like the State's do not suffice for intervention because having "a stake in the outcome of any litigation . . . alone is insufficient to imbue [the applicant] with the degree of 'interest' required for Rule 24(a) intervention." *Gould v. Alleco, Inc.*, 883 F.2d 281, 285 (4th Cir. 1989). To be an intervenor, the State must possess by substantive law the right it seeks to enforce, and the State has no such interest in the PPAs.

The State's interest here is too incidental to warrant even permissive intervention. The State is not a party to the PPAs, and does not hold any right to sue for enforcement or breach of those wholesale power contracts. *See Moosehead Sanitary Dist. v. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979) (denying the State of Maine's intervention application in the pleading stage of litigation, in a private contractual dispute, despite its claim to third party beneficiary status based on it contributing money to construction costs). Because the State is not an intended third party beneficiary under the PPAs, the State and ratepayers stand only as incidental beneficiaries to the contracts. *See, e.g., NOPSI III*, 732 F.2d at 468-69 & n.34 (ratepayers (or the government

officials acting on their behalf) were not intended third party beneficiaries to a wholesale contract providing for the delivery of gas despite obligations of utility buyer to ratepayers for the sale and delivery of electricity).[4]

Neither Massachusetts nor Rhode Island (the law governing the PPAs) recognizes any right of incidental beneficiaries to sue for breach or to enforce contracts. *Rhode Island v. Med. Malpractice Joint Underwriting Assoc.*, 2005 LEXIS 97, at *5-6 (R.I. Super. 2005) (unreported) (only parties and intended third party beneficiaries have a legally cognizable interest in the contract); *Miller v. Mooney*, 725 N.E.2d 545, 549-50 (Mass. 2000) (citing *Rae v. Air-Speed, Inc.*, 435 N.E.2d 628 (Mass. 1982)). The right of an intended third party beneficiary to enforce a contract is contingent on the third party assenting to or ratifying the contract. *Curato v. Brain*, 715 A.2d 631, 635 (R.I. 1998). The language and circumstances of the contract must show that the contracting parties clearly intended the third party to benefit from the promised performance. *Anderson v. Fox Hill Vill. Homeowners Corp.*, 676 N.E.2d 821, 822 (Mass. 1997); *Rhode Island*,

---

[4] *NOPSI III* applies Louisiana contract law, which the court concluded was consistent with the common law rules. 732 F.2d at 469. The general common law rule regarding third party beneficiaries is as follows:

> [I]n any case where A is under a contractual duty to C the performance of which requires labor or materials, and B promises A to supply to him such labor or material; C has no action against B on this promise. In such cases the performance promised by B does not in itself discharge A's duty to C or in any other way affect the legal relations of C. It may, indeed, tend toward C's getting what A owes him, since it supplies A with the money or material that will enable A to perform, but such a result requires the intervening voluntary action of A. B's performance may take place in full without C's ever getting any performance by A or receiving any benefit whatsoever. In such cases, therefore, C is called an 'incidental' beneficiary and is held to have no right. It would be possible for A to make his contract with B in such terms as to show that A was making it for C's benefit and intended C to have an enforceable right. C would be a donee of the right though not of the promised performance. But in fact such contracts are never so worded.

*Id.* at 469 & 469 n.34 (quoting 4 Corbin on Contracts § 779D at 45-46 (1951)).

2005 LEXIS at *9 ((“Rhode Island follows the Restatement (Second) of Contracts rule . . . that the parties directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended beneficiary”) (citation omitted)). The PPAs do not make the State an intended third party beneficiary, so the State has no cognizable interest upon which to justify intervention.

### 3. The State does not have a cognizable interest under the Settlement Agreement against Constellation

Even if the Court has subject matter jurisdiction over NEC’s counts I and II, the State has no cognizable interest against Constellation under the Settlement Agreement because neither that agreement, nor FERC’s order approving it grants the State any claim or defense to Constellation’s right to an equitable adjustment under the PPAs. The language of Section VIII(A) upon which the State relies says nothing about the right of the State to bar Constellation from seeking an equitable adjustment under the PPAs; nor does the FERC order approving the Settlement Agreement. Constellation is not a party to the Settlement Agreement and, in approving the Settlement Agreement, FERC said nothing about abrogating Constellation’s equitable adjustment rights under the PPAs.

Moreover, the State’s alleged economic impact to ratepayers is too hypothetical and speculative to justify intervention because the State retains full authority to ensure that NEC’s retail rates include only reasonably and prudently incurred costs. The State lacks standing to sue Constellation under the Settlement Agreement and, in this case, that lack of standing warrants denying the State’s intervention. Because the State need not allow NEC to increase rates, the State faces no injury-in-fact (defined as a harm that is concrete and actual or imminent, not conjectural or hypothetical) fairly traceable to Constellation’s alleged conduct. *Steel Co. v. Citizens for a Better Env’t*, 523 U.S. 83, 103 (1998); *Munoz-Mendoza v. Pierce*, 711 F.2d 421,

428 (1st Cir. 1983) (no standing exists if plaintiff's injuries are implausible or "purely speculative").

A "generalized grievance shared in substantially equal measure by all or a large class of citizens [ ] alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Id.* (citations omitted). Here, the prospect that NEC's rates will increase because of the disposition of NEC's counts I and II does not constitute the concrete actual or imminent interest needed to allow the State's intervention. *See, e.g., Commonwealth Edison Co. v. Allis-Chalmers Mfg.*, 315 F.2d 564, 567 (7th Cir. 1963) (state denied intervention because rate impact from alleged antitrust violations lacked direct impact on consumers).

The State also contends that it has a right to intervene because it was involved in the drafting of the Settlement Agreement provision at issue. However, that the State was one of many settling parties does not mean the State has a cognizable interest here. *See Patch*, 136 F.3d at 206 (no *per se* "administrative proceeding interest" formed within the purview of Rule 24(a)(2) arising out of prior participation in or anticipated opportunity for future participation in related administrative proceedings). The State's legal support, *Michigan State v. Miller*, 103 F.3d 1240 (6th Cir. 1997), is inapposite because the Sixth Circuit confined *Miller* to its facts. Moreover, the First Circuit has not adopted the expansive notion used by the Sixth Circuit to allow intervention even where the intervenor does not have standing. While the First Circuit has not stated that an applicant must have standing to intervene, the court recognizes that it is generally unnecessary to determine standing where an applicant satisfies the interest requirement for intervention. *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers*, 219 F.3d 31, 33-

34 (1st Cir. 2000), *cert. denied*, 531 U.S. 1072 (2001); *see also Mangual v. Angel E. Rotger-Sabat*, 317 F.3d 45, 61-62 (1st Cir. 2003) (recognizing circuit split on whether intervenors must show standing and declining to decide issue because intervenor had standing). Other circuits have explicitly stated that standing is required for intervention as of right and permissive intervention. *See, e.g., United States v. Napper*, 887 F.2d 1528, 1532 (11th Cir. 1989); *South Dakota v. Ubbelohde*, 330 F.3d 1014, 1023 (8th Cir. 2003). Moreover, where the applicant lacks standing, district courts of this circuit have denied intervention. *See, e.g., Brook Village N. Assoc. v. Jackson*, 2006 U.S. Dist. LEXIS 82763, at *12-13 (D.N.H. Nov. 13, 2006) (denying intervention as of right and permissively for lack of standing). Accordingly, the State does not have an interest upon which to justify intervention.

**B. Denying intervention does not impair or impede the State's ability to protect its interests**

The State's request for intervention rests on its interest in ensuring NEC's rates include only reasonably and prudently incurred costs, but that interest will not be impaired or impeded by disposition of this case. The Rhode Island Supreme Court in *Narragansett Elec. Co. v. Burke* recognized that, notwithstanding the exclusive authority of FERC over wholesale energy transactions and the attendant obligation to treat that wholesale rate as an actual operating expense, the PUC could "choose to adjust Narragansett's existing retail rates to reflect the changed cost of interstate power, but it need not do so." 381 A.2d 1358, 1361-63 (R.I. 1977). The Supreme Court regarded that right as "undoubted." *Nantahala,* 476 U.S. at 968-70 (discussing *Narragansett*).

Regardless of the disposition of this lawsuit, the State has the power to "investigate the overall financial structure of Narragansett to determine whether the company has experienced savings in other areas which might offset the increased price for power." *Narragansett Elec.*

*Co.*, 381 A.2d at 1363. Accordingly, because the State retains the ability to protect consumers by operation of the PUC's review of any application NEC may file to recover costs incurred as a result of this lawsuit—as the State acknowledges, State Mot. to Intervene at 12—denying intervention does not impair or impede the State's ability to protect its interest.

**C. Any interest the State has is adequately represented by NEC**

The State's intervention rests on the need to protect NEC's ratepayers, but NEC can adequately protect that interest. *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 18 (1st Cir. 2001); *Daggett v. Comm'n of Govt'l Ethics*, 172 F.3d 104, 111 (1st Cir. 1999) (stating that "the applicant for intervention must identify any inadequacy of representation"). When—as here—the party seeking to intervene has the same ultimate goal as a party already in the suit, courts presume adequate representation. To overcome that presumption, the State must establish "adversity of interest, collusion, or nonfeasance." *Moosehead Sanitary Dist.*, 610 F.2d at 54. The State does not meet this requirement.

The State baldly asserts that its incentives are stronger than NEC's to bar Constellation from receiving an equitable adjustment. That contention, however, does not square with the State's prohibition on NEC's rates including anything other than reasonably and prudently incurred costs *and* the State's right to review the overall financial structure of NEC to determine whether NEC has experienced savings in other areas which might offset any increased price of power. *Wash. Elec. Coop. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 98 (2d Cir. 1990) (stating that differing motives do not satisfy the inadequacy requirement of Rule 24).

The State's contention that its participation could assist the Court also does not suffice to justify intervention. *Cajun Elec. Power Coop. v. Gulf States Utils.*, 940 F.2d 117, 120 (5th Cir. 1991) (state public service commission's contention that "parties will not present information to



WDC99 1338701-9.070626.0036

the district court on the impact of its decision on ratepayers" did not meet the inadequacy requirement for intervening). The State adduces nothing that overcomes the presumption of adequate representation considering that both NEC and the State have the same ultimate goal. *Moosehead Sanitary Dist.*, 610 F.2d at 54; *see also Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1235 (D.C. Cir. 2004) (where proposed intervenor asserts duplicative or weak claims, courts accord greater weight to considerations of delay and prejudice). Therefore, the Court should deny the State's motion to intervene.

## III. JOINDER OF COUNT III IS INAPPROPRIATE

Even if the Court permits the State to intervene in NEC's counts I and II, no cause exists to permit the State to join count III of its proposed complaint as a new claim against Constellation. Federal Rule of Civil Procedure 18 specifies that permitting joinder rests with the Court's discretion, but independent subject matter jurisdiction is required for each joined claim. *King Fisher Marine Serv. v. 21st Phoenix Corp.*, 893 F.2d 1155, 1158 (10th Cir. 1990) ("a court may decide claims joined under rule 18(a) only if independent jurisdiction and venue requirements are satisfied"); *Frantz v. United Powerlifting Fed'n*, 836 F.2d 1063, 1067 (7th Cir. 1987); Moore's Fed. Practice 3D 18.02[4][a] (3d ed. 2006).

As set forth above, this Court lacks subject matter jurisdiction over the State's proffered estoppel claim because it would require the Court to presume what FERC would deem reasonable under the circumstances here. *Supra* at 5-8. Constellation not objecting to the Settlement Agreement does not suffice to meet the requirements of *Mobile-Sierra* for abrogating Constellation's equitable adjustment rights under the PPAs. *Boston Edison Co. v. FERC*, 233 F.3d 60, 68 (1st Cir. 2000) (FERC may only override contract rates protected by the *Mobile-Sierra* doctrine "by determining that they are contrary to the public interest"); *Texaco, Inc. v.*

*FERC*, 148 F.3d 1091, 1096-97 (stating that "the public interest necessary to override a private contract . . . requires analysis of the manner in which ***the contract*** harms the public interest and of the extent to which abrogation or reformation mitigates ***the contract's*** deleterious effect") (emphasis added). Granting relief on the State's claims would entail the Court presuming that FERC would find it reasonable to bar Constellation from seeking an equitable adjustment, but the filed rate doctrine prohibits the Court from granting such relief. Consequently, no independent grounds for jurisdiction exist upon which to allow the State to join its claim.

Even if subject matter jurisdiction exists, the Court should deny the State's joinder request because the State's proffered count III fails to plead a claim upon which relief can be granted. The State fails to allege facts, which if proven, would establish grounds for estopping Constellation from seeking an equitable adjustment under the PPAs. *Clickner v. City of Lowell*, 422 Mass. 539, 544 (1996); *Lichtenstein v. Parness*, 81 R.I. 135, 138 (1953). The State's proffered claim seeks to use estoppel improperly as creating a substantive modification of Constellation's rights under the PPAs, when only FERC can grant such contract relief and it has not done so. *Rubano v. DiCenzo*, 759 A.2d 959, 968 (R.I. 2000); *see also Ne. Utils. Serv. Co.*, 55 F.3d at 689-91; Def.'s Motion To Dismiss NEC Compl. at 22-24.

The State contends that "Rhode Island standard offer suppliers" included Section VIII(A) in the Settlement Agreement to induce the State to become a Settling Party, State's Proposed Compl. at ¶ 37, but no where alleges that Constellation gave that promise or intentionally induced the State to believe Constellation would forego its right to an equitable adjustment. The omission of any allegation that Constellation intentionally induced the State's prejudicial reliance is fatal to the State's count III. *See El Marocco Club, Inc. v. Richardson*, 746 A.2d 1228, 1233 (R.I. 2000); *Clickner*, 422 Mass. at 544 (citations omitted); *Martinelli v. Travelers*

*Ins. Cos.*, 687 A.2d 443, 447 (R.I. 1996); *Tpk. Motors, Inc. v. Newbury Group, Inc.*, 413 Mass. 119, 125 (1992). Also, the State has not alleged that it has or will suffer any prejudice; nor can it since the State retains full authority to ensure NEC's rates include only reasonably and prudently incurred costs.

The State's count III further fails because it omits any allegation that the State's reliance on the action of Constellation—a non-signatory to the Settlement Agreement—was reasonable. *See El Marocco Club*, 746 A.2d at 1233. Constellation is not a party to the Settlement Agreement, and nothing in the State's proffered complaint alleges that any reliance by the State on Constellation's conduct was reasonable. Because the *Mobile-Sierra* doctrine protects the PPAs and the Settlement Agreement expressly states that nothing a Settling Party did with respect to the Settlement Agreement shall be construed as contrary to or a waiver of any right under existing contract (Settlement Agreement ¶ 7), Constellation's alleged conduct is not the type of unambiguous conduct required to establish estoppel. *See, e.g., R.I. Hosp. Trust Nat'l Bank v. Varadian*, 419 Mass. 841, 848 (1995) (explaining that it is essential that the representation be unambiguous). Accordingly, even if the Court permits the State to intervene in NEC's counts I and II, no cause exists to permit the State to join count III of its proposed complaint.

**CONCLUSION**

For the foregoing reasons, the Court should deny the State's motion to intervene and to join a claim.

Dated: January 26, 2007

Respectfully Submitted,

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

Kenneth W. Irvin (DC Bar ID #439395)
Teresa M. Goody
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202.756.8116
Fax: 202.756.8087
E-mail: kirvin@mwe.com
E-mail: tgoody@mwe.com

*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2007, I electronically filed the foregoing *Defendant's Opposition to Motion to Intervene and Join Claim and to Extend Hearing Date of State of Rhode Island and Providence Plantations and Rhode Island Division of Public Utilities and Carriers,* with the Clerk of the Court for the District of Rhode Island using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Hinkley Allen & Snyder, LLP
50 Kennedy Plaza
Providence, RI 02903

*Counsel for Narragansett Electric Co.*

Leo J. Wold, Esq.
Richard Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

*Counsel for State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers*

/s/ Stacey P. Nakasian