**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| The Narragansett Electric Company, Plaintiff, v. Constellation Energy Commodities Group, Inc., Defendant. | C.A. No. 06-404S |

**MOTION OF DEFENDANT CONSTELLATION ENEGY COMMODITIES GROUP TO DISMISS PROPOSED COMPLAINT OF STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS**

Defendant Constellation Energy Commodities Group, Inc. moves this Court pursuant to Federal Rule of Civil Procedure 12(b) to dismiss all counts of the proposed complaint of the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively, the "State"). Constellation files this motion on a conditional basis, pending determination of the State's motion to intervene, pursuant to the Court's January 19, 2007 order. As set forth in the attached memorandum, the Court should dismiss the State's proposed complaint for lack of subject matter jurisdiction, lack of standing, and failure to state a claim on which relief can be granted.

Dated: January 29, 2006

Respectfully Submitted,

/s/ Stacey P. Nakasian

Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

Kenneth W. Irvin (DC Bar #439395)
Teresa M. Goody
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202.756.8116
Fax: 202.756.8087

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| The Narragansett Electric Company, Plaintiff, v. Constellation Energy Commodities Group, Inc., Defendant. | ) | C.A. No. 06-404S |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

Constellation Energy Commodities Group, Inc. ("Constellation") moves this Court under Federal Rule of Civil Procedure 12(b) to dismiss all counts in the proposed complaint filed by the State of Rhode Island and Providence Plantations ("Rhode Island") and the Rhode Island Division of Public Utilities and Carriers ("PUC") (collectively, the "State") for lack of subject matter jurisdiction, lack of standing, and for failure to state a claim on which relief can be granted.[1] Constellation files this motion on a conditional basis pursuant to the Court's January 19, 2007 order, pending determination of the State's motion to intervene and join claim [docket no. 14].

## INTRODUCTION

The issue before the Court is Constellation's right to an equitable adjustment under four wholesale power purchase agreements (the "PPAs")[2] with The Narragansett Electric Company

[1] In support of its motion to dismiss the State's complaint, Constellation incorporates by reference its motion to dismiss NEC's complaint [docket no. 6] and the reply in support of thereof [docket no. 13].

[2] The PPAs are attached as Exhibits A-D to Constellation's Motion for Lease to File Under Seal, dated October 23, 2006 [docket no. 7]:

- Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company,

("NEC") due to changes mandated by the Federal Energy Regulatory Commission ("FERC"). Rule changes ordered by FERC alter the duties and cost of performing the PPAs.[3] Those changes triggered "Change in Market Rules" provisions in each PPA, which clauses bind NEC and Constellation to negotiate adjustments needed to restore the parties to their relative economic positions before the change. Two of the PPAs (the 2001 and 2002 Contracts) require arbitration for equitable adjustment disputes, and the same issue under the other contracts should be referred to arbitration pursuant to the Court's powers under the Federal Arbitration Act. *See* Def.'s Mot. to Dismiss NEC's Compl. at 25-33; Def.'s Reply in Support of Motion to Dismiss NEC Compl. at 16-20.

The State (like NEC) seeks to bar Constellation from exercising its right to an adjustment. The State's suit fails for the same reasons that NEC's complaint fails, *plus* the State has no standing:

- The filed rate doctrine bars the Court from granting the State any relief because all its claims depend on abrogating Constellation's right under the PPAs or assuming FERC would find it reasonable to do so under the circumstances.

- The State has no right to sue for breach or enforcement of the PPAs. The State's only cognizable interest—ensuring that NEC's rates include only reasonably and prudently incurred costs—is not at stake here. Should NEC incur an obligation

---

Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998, and amended on January 27, 2003 and June 3, 2003) (the "20% Contract"). Ex. A.

- Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998, and amended on January 27, 2003 and June 3, 2003) (the "36% Contract"). Ex. B.

- Power Supply Agreement between The Narragansett Electric Company and Constellation Power Source, Inc. (dated October 5, 2001) (the "2001 Contract"). Ex. C.

- Power Supply Agreement between Narragansett Electric Company and Constellation Power Source, Inc. (dated August 23, 2002, and amended August 23, 2002) (the "2002 Contract").

[3] *See Devon Power LLC*, 115 FERC ¶ 61,340 at P 71 (2006).

that is not reasonable or prudent, the State retains full authority not to allow NEC to include that in its rates, so the State has no injury-in-fact.

- Each of the State's counts fails to plead a legally sufficient claim.

**STATEMENT OF THE CASE**

Constellation incorporates by reference the Statement of the Case in its motion to dismiss NEC's complaint [docket no. 6].

The State's complaint pleads claims for a declaratory judgment, waiver and estoppel, but largely reiterates allegations made by NEC. The State also includes allegations about the extensive regulatory proceedings that preceded FERC's approval of the Settlement Agreement. *See, e.g.*, State's Compl. at ¶¶ 10-19. Those allegations show FERC's extensive involvement with the regulatory concerns governing the New England wholesale energy market. The State contends that "[w]ithout the State's agreement to become a Settling Party, the [Forward Capacity Market] would not have been created." *Id.* at ¶ 19. The State further alleges that "[s]ettlement participants, including Rhode Island standard offer wholesale suppliers, therefore, included language (Section VIII(a)) in the [Settlement] Agreement." *Id.* at ¶ 20.

But nowhere does the State allege that ***Constellation*** made any statement or took action intended to induce the State to rely to its detriment. The State's complaint omits any allegations of fact, which if proven, would establish that ***Constellation*** did or said things that reasonably led the State to believe Constellation would not seek an equitable adjustment under the PPAs. Nor does the complaint identify any consideration that ***Constellation*** allegedly received for the State's support of the Settlement Agreement.

The complaint includes the bald assertion that the State "reasonably relied on Constellation's conduct," Compl. at ¶ 41, but does not allege any facts supporting that conclusion. The complaint does not allege that the State and Constellation ever specifically

discussed the PPAs. Nor does the complaint allege that FERC found grounds for abrogating Constellation's rights under the PPAs. The complaint alleges the State relied on Constellation "not object[ing] to the [Settlement] Agreement or the inclusion of Section VIII(A)," but omits any factual allegations that would impose a duty on Constellation to dispel misapprehensions the State may have had about the effect of the Settlement Agreement on the PPAs. *Id.* at ¶ 40.

Lastly, the complaint alleges that the State "has suffered substantial detriment and prejudice based on [its] reasonable reliance," Compl. at ¶ 42, but provides no allegations of fact identifying the particulars of this alleged injury. The State does not allege any facts showing it has suffered injury-in-fact; nor does the State allege any grounds for concluding that its right to review NEC's rates cannot adequately protect the State's interest.

## ARGUMENT

### I. THE STATE'S COMPLAINT SHOULD BE DISMISSED UNDER RULE 12(b)(1) FOR LACK OF SUBJECT MATTER JURISDICTION

#### A. Legal standard for Rule 12(b)(1) motion to dismiss

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Subject matter jurisdiction is both an Article III and a statutory requirement; therefore, "no action of the parties can confer subject-matter jurisdiction upon a federal court." *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinee*, 456 U.S. 694, 702 (1982).

On a motion to dismiss pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court should construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff. *See Murphy v. United States*, 45

F.3d 520, 522 (1st Cir. 1995). However, a claim may not rest merely on "'unsupported conclusions or interpretations of law.'" *Id.* (quoting *Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 971 (1st Cir. 1993)). "Subjective characterizations or conclusory descriptions of a general scenario which could be dominated by unpleaded facts" will not defeat a motion to dismiss. *Id.* (quoting *Coyne v. City of Somerville*, 972 F.2d 440, 444 (1st Cir. 1992) (internal quotations omitted)). Subject matter jurisdiction focuses on the court's power to hear the claim, and thus, motions attacking the subject matter jurisdiction of the court may rely on materials outside the pleadings. *Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363-64 (1st Cir. 2001).

**B. FERC has exclusive jurisdiction over the relief the State seeks**

The Federal Power Act, 16 U.S.C. §§ 824-824m ("FPA"), grants FERC "exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce." *Pub. Util. Dist. No. 1 v. IDACORP Inc.* (*Grays Harbor*), 379 F.3d 641, 646 (9th Cir. 2004) (citations and emphasis omitted). Through the FPA, Congress granted FERC plenary authority over all sales of electric energy at wholesale in interstate commerce. *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986). FERC's power includes the exclusive authority to determine the reasonableness of wholesale rates. *Miss. Power & Light Co. v. Miss.*, 487 U.S. 354, 371 (1988); 16 U.S.C. § 824e(e)(2).

In recognition of Congress's determination to repose exclusive authority over rates in an agency, the Supreme Court long ago recognized the filed rate doctrine. *See Mont.–Dakota Util. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951). Under this doctrine, courts may not substitute their own judgment for that of FERC. *Arkansas La. Gas Co. v. Hall (Arkla)*, 453 U.S. 571, 577 (1981). Although FERC and courts enjoy concurrent jurisdiction over matters of

contract interpretation and enforcement, FERC has exclusive jurisdiction to determine rates for the sale of wholesale power. *Arkla*, 453 U.S. at 583; *Pub. Util. Dist. No. 1 v. Dynegy Power Mktg., Inc.* (*Snohomish PUD*), 384 F.3d 756, 761-62 (9th Cir. 2004); *Utilimax.com, Inc. v. PPL Energy Plus, LLC*, 378 F.3d 303 (3d Cir. 2004).

FERC's exclusive authority is not limited to rates *per se*, but extends to matters affecting wholesale rates. *Nantahala*, 476 U.S. at 966-67. In addition to barring court-imposed ***changes*** to filed rates, the filed rate doctrine bars suits that ***affect*** the filed rate. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300 (1988) (filed rate doctrine preempts any state law that conflicts with, alters, or even impinges on FERC's authority); *Nantahala*, 476 U.S. at 971 (state PUC's imposition of allocation of entitlements barred by filed rate doctrine); *Arkla*, 453 U.S. at 577-79 (filed rate doctrine barred state law breach of contract claim that assumed FERC would have approved rates as reasonable); *Transmission Agency of N. Ca. v. Sierra Pac. Power Co. (TANC)*, 295 F.3d 918, 922 (9th Cir. 2002) (filed rate doctrine bars claims requiring court to assume how FERC would act).

As applied here, the filed rate doctrine bars this Court from granting relief on the State's three claims because each requires the Court to usurp FERC's exclusive authority by presuming what FERC would deem reasonable under the circumstances. FERC's exclusive authority over the Settlement Agreement cannot seriously be doubted—it resulted from multi-year proceedings before FERC, "over 30 formal settlement conferences and negotiations, involving 115 parties, taking place over about a four-month period with the active participation and involvement of [FERC] Administrative Law Judge Lawrence Brenner," and FERC has on-going proceedings implementing it. *See* Compl. at ¶14; *Devon Power LLC,* 117 FERC ¶ 61,132 (2006). The Court has no authority to make assumptions about what FERC meant or would do for the

circumstances here, and it can order no relief that would affect the regulatory regime FERC implemented.

The Ninth Circuit's disposition on filed rate grounds of several cases arising from the 2000-2001 energy crisis confirms the breadth of FERC's exclusive authority. In those cases, the Ninth Circuit held that the filed rate doctrine barred all manner of claims aimed at modifying wholesale supplier rates. In *California v. Dynegy*, the Ninth Circuit ruled the filed rate doctrine barred claims by the California attorney general against wholesale suppliers for unfair competition and seeking to enforce provisions of the California ISO's tariff:

> California's unfair competition claims are based on the companies' agreement to provide ancillary services, the terms of which are embodied in, and governed by, the ISO tariff, including its remedial provisions. Accordingly, we conclude that [the] California claims are preempted because they encroach upon the substantive provisions of the tariff, an area reserved exclusively to FERC, both to enforce and to seek remedy.
>
> * * *
>
> "[T]he filed rate doctrine's purpose is to ensure that the filed rates are the exclusive source of the terms and conditions by which the [regulated entity] provides . . . the services covered by the tariff." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1170 (9th Cir. 2002) (internal citations omitted). To the extent that California is seeking to enforce the penalty provisions of the tariff, or to have them expanded, this conflicts with the filed rate doctrine and the exclusive authority conferred to FERC to enforce its tariff.

375 F.3d 831, 852-53 (9th Cir. 2004) (second alteration in original).

In *Duke Energy Trading & Marketing v. Davis*, the court ruled the filed rate doctrine barred the California governor's interference with wholesale energy contracts:

> [I]t is not enough that California agrees to pay the same rate to Duke or requires Duke to continue to supply electricity for a duration no longer than the block forward contracts provide. Indeed, in that respect, California is a complete substitute for SCE and PG & E. However, by commandeering the block forward contracts, Duke (and, derivatively, the CalPX) lost its FERC-

> protected right to standard financial protection, *i.e.*, to liquidate its collateral if the buyers default on their obligations. It is Governor Davis's interference with the block forward contracts' security provisions that is preempted by the federal scheme. FERC preempts regulation of the contracts' economics of administration, which, by destroying Duke's ability to exercise its rights to assure payment for third party sales, is exactly why Governor Davis's executive order cannot stand. Hence, Governor Davis's commandeering orders to the extent that they conflict with FERC requirements are void under the Supremacy Clause of the United States Constitution.

267 F.3d 1042, 1058 (9th Cir. 2001).

The Ninth Circuit also found the filed rate doctrine barred claims for unfair competition, antitrust violation, equitable relief, and breach of contract. *See*, *e.g.*, *Grays Harbor*, 379 F.3d 641 (claims based on duress, mistake and seeking equitable relief barred by filed rate doctrine); *Snohomish PUD*, 384 F.3d 756 (claims under state antitrust and consumer protection laws barred by filed rate doctrine).

No distinction exists for finding that the State's claims here are not likewise barred by the filed rate doctrine. Constellation is not a signatory to the Settlement Agreement, so its effect on Constellation can only be as FERC orders. But the FERC order approving the Settlement Agreement says nothing about abrogating or waiving Constellation's right to an equitable adjustment under the PPAs. Neither the Settlement Agreement, nor any FERC order provide the type of clear, executable guidance needed for the Court to grant the State relief here. Granting relief on the State's claims requires the Court to presume that FERC would find it reasonable to bar Constellation from seeking an equitable adjustment, which the filed rate doctrine squarely prohibits the Court from doing. Accordingly, the Court should dismiss the State's complaint for lack of subject matter jurisdiction.

## II. THE STATE'S COMPLAINT IS NON-JUSTICIABLE AND SHOULD BE DISMISSED FOR LACK OF STANDING

### A. Legal standard for standing

Standing is an essential, unchanging predicate to federal court jurisdiction. *Defenders of Wildlife*, 504 U.S. at 560. That prerequisite reflects the common understanding of what it takes to make a justiciable case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Because standing implicates its jurisdiction, the Court must address standing before reaching the merits of the case before it. *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv.*, 528 U.S. 167, 180 (2000).

As the party invoking federal jurisdiction, the State bears the burden of establishing standing. *Defenders of Wildlife*, 504 U.S. at 561. The State must allege that it has or will imminently suffer a concrete injury-in-fact; conjectural or hypothetical harm does not suffice. *Steel Co.*, 523 U.S. at 103. The State's injury must be "fairly traceable" to the conduct alleged of Constellation, and it must be likely "that the requested relief will redress the alleged injury." *Id.* No standing exists where a plaintiff's injuries are implausible or "purely speculative." *Munoz-Mendoza v. Pierce*, 711 F.2d 421, 428 (1st Cir. 1983). The State must assert its own rights; its claims cannot rest on the legal rights or interests of third parties. *Warth v. Seldin*, 422 U.S. 490, 499 (1975). A generalized grievance shared in substantially equal measure by all or a large class of citizens does not confer standing. *Id.*

### B. The State lacks standing under the PPAs

The State is not a party to the PPAs and does not hold any right to sue for enforcement of those contracts. *See Moosehead Sanitary Dist. v. Phillips Corp.*, 610 F.2d 49 (1st Cir. 1979) (denying State of Maine's intervention at the pleading stage in private contractual dispute, despite its claim to third party beneficiary status based on it contributing money to construction

costs). For wholesale energy contracts like the PPAs, the State and ratepayers stand merely as incidental beneficiaries to the contracts, with no rights to sue for breach or enforcement of them. *See, e.g.*, *New Orleans Pub. Serv. Inc. v. United Gas Pipe Line Co. (NOPSI III)*, 732 F.2d at 452 (5th Cir. 1984) (neither ratepayers nor government officials acting on their behalf were intended third party beneficiaries to contract for delivery of wholesale natural gas and did not have any rights to enforce the contract).[4]

Neither Massachusetts nor Rhode Island recognizes any right of incidental beneficiaries to sue to enforce contracts. *Miller v. Mooney*, 725 N.E.2d 545, 549-50 (Mass. 2000) (citing *Rae v. Air-Speed, Inc.*, 435 N.E.2d 628 (Mass. 1982)). The right of an intended third party beneficiary to enforce a contract is contingent on the third party assenting to or ratifying the contract. *Curato v. Brain*, 715 A.2d 631, 635 (R.I. 1998); *Rhode Island v. Med. Malpractice Joint Underwriting Assoc.*, No. 03-0743, 2005 R.I. Super. LEXIS 97 at *5-6 (June 7, 2005) (stating that only parties and intended third party beneficiaries have a legally cognizable interest in the contract that confers standing). The language and circumstances of the contract must show

---

[4] This case applies Louisiana contract law, which the court concluded was consistent with the common law rules. The general common law rule regarding third party beneficiaries is as follows:

> in any case where A is under a contractual duty to C the performance of which requires labor or materials, and B promises A to supply to him such labor or material; C has no action against B on this promise. In such cases the performance promised by B does not in itself discharge A's duty to C or in any other way affect the legal relations of C. It may, indeed, tend toward C's getting what A owes him, since it supplies A with the money or material that will enable A to perform, but such a result requires the intervening voluntary action of A. B's performance may take place in full without C's ever getting any performance by A or receiving any benefit whatsoever. In such cases, therefore, C is called an 'incidental' beneficiary and is held to have no right. It would be possible for A to make his contract with B in such terms as to show that A was making it for C's benefit and intended C to have an enforceable right. C would be a donee of the right though not of the promised performance. But in fact such contracts are never so worded.

*Id.* at 469 & 469 n.34 (quoting 4 Corbin on Contracts § 779D at 45-46 (1951)).

that the parties to the contract clearly and definitely intended the beneficiaries to benefit from the promised performance. *Anderson v. Fox Hill Village Homeowners Corp.*, 676 N.E.2d 821 (Mass. 1997); *Rhode Island*, 2005 R.I. Super. LEXIS 97 at *9 (stating that "Rhode Island follows the Restatement (Second) of Contracts rule . . . that the parties directly and unequivocally intend to benefit a third party in order for that third party to be considered an intended third party beneficiary") (citation omitted)). The PPAs do not make the State an intended beneficiary, so the State has no standing to sue Constellation under the PPAs.

### C. The State lacks standing under the Settlement Agreement

The State claims that "by reason of its agency's status as a Settling Party [it] is a necessary and indispensable party" to the litigation between NEC and Constellation. Compl. at ¶ 6. That claim, however, does not suffice to establish standing for several reasons. First, the State has no injury-in-fact fairly traceable to Constellation's conduct. The Settlement Agreement does not confer any cause of action on the State to sue Constellation, and the language of Section VIII(A) says nothing about any right of the State to bar Constellation from seeking an equitable adjustment from NEC under the PPAs. The State's only cognizable interest is ensuring NEC's rates include nothing but reasonably and prudently incurred costs. That interest faces no risk here because the State retains full authority to review NEC's overall financial structure. *Narragansett Elec. Co. v. Burke*, 381 A.2d 1358, 1361 (R.I. 1977). If NEC is liable to Constellation, the State can "choose to adjust Narragansett's existing retail rates to reflect the changed cost of interstate power, but it need not do so." *Id.* at 1363. Since the State retains the authority to ensure that NEC's rates include only reasonably and prudently incurred costs, the State has no injury-in-fact fairly traceable to Constellation's alleged conduct. *Steel Co.*, 523 U.S. at 103.

Moreover, the State's claim does not assert its own legal rights, but rather purports to assert the rights of NEC. The State's concern about ratepayer impact offers nothing more than a generalized interest, which does not suffice to confer standing. *Warth*, 422 U.S. at 499. The prospect that NEC may pass its share of the financial burden under the PPAs to ratepayers is too removed from the instant dispute and too speculative; it is not actual harm. *Pierce*, 711 F.2d at 428 (no standing exists if plaintiff's injuries are implausible or "purely speculative"). Accordingly, the State has no standing to bring any of the counts in its complaint.

## III. THE STATE'S COMPLAINT FAILS TO PLEAD A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A. Legal standard for Rule 12(b)(6) motion to dismiss

A defendant may test the legal sufficiency of a complaint under Federal Rule of Civil Procedure 12(b)(6). *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The complaint need only set forth a short and plain statement of the claim giving the defendant fair notice of the claim and grounds on which it rests. Fed. R. Civ. P. 8(a)(2); *Conely*, 355 U.S. at 47. The plaintiff's complaint must, however, state factual allegations (either direct or inferential) regarding each material element necessary to sustain recovery under some actionable legal theory. *Platten v. HG Berm. Exempted Ltd.*, 437 F.3d 118, 127 (1st Cir. 2006).

A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46; *Greene v. Rhode Island*, 398 F.3d 45, 48 (1st Cir. 2005). Thus, in resolving a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts alleged by the plaintiff in its complaint and draws in its favor all reasonable inferences fitting their stated theories of liability. *Platten*, 437 F.3d at 127. The Court, however, need not accept as true "bald assertions," inferences unsupported by facts set out in the complaint, or legal

conclusions cast as factual allegations. *Abbott v. United States*, 144 F.3d 1, 2 (1st Cir. 1998) (citation omitted).[5]

**B. The State fails to plead a legally sufficient claim that the Settlement Agreement bars Constellation from recovering an equitable adjustment under the PPAs**

Count I of the State's complaint fails to plead a claim upon which relief could be granted. Despite the obvious fact that Constellation is not a signatory to the Settlement Agreement, the State's complaint pleads that Section VIII(A) of the Settlement Agreement and the FERC order approving it bar Constellation from its right to an equitable adjustment. Compl. at ¶¶ 31-32. But the plain language of Section VIII(A), on its face, contradicts the State's contention. That section does not provide that Constellation cannot or will not exercise contractual rights under the PPAs to seek an equitable adjustment. Section VIII(A) merely states an "understanding" among the signatories to the Settlement Agreement that wholesale standard offer suppliers would "make" UCAP payments if "the state of Rhode Island utility regulatory authorities" supported the settlement.

The provision does not say that Constellation agrees to bear the full brunt of increased costs under the new regulatory regime or that Constellation agrees to forego its valuable rights under the PPAs. Indeed, the provision states that the signing suppliers' commitment to make the payments is contingent on the Rhode Island regulatory authorities supporting the settlement, not vice versa as the State avers.

Moreover, FERC's silence on the question of whether the Settlement Agreement abrogated Constellation's right to an equitable adjustment is fatal to the State's claim because the

---

[5] Courts may also consider matters fairly incorporated within the complaint and matters susceptible to judicial notice (*e.g.*, public records) without converting the motion into one for summary judgment. *Greene*, 398 F.3d at 48 (quoting *In re Colonial Mortgage Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

PPAs are protected by the filed rate doctrine. Neither the Settlement Agreement nor the FERC order approving it can modify the PPAs without explicit FERC findings under the *Mobile-Sierra* "public interest" test. *United Gas Pipe Line Co. v. Mobile Gas Serv. Corp.* (*Mobile*), 350 U.S. 332 (1956); *Federal Power Comm'n v. Sierra Pac. Power* (*Sierra*), 350 U.S. 348 (1956). *Mobile-Sierra* "denies either party the right to change [ ] prices or charges unilaterally" unless the public interest test is met. *Texaco*, 148 F.3d at 1095 (citing *Pennzoil Co. v. FERC*, 645 F.2d 360, 373 (5th Cir. 1981)); *Oglesby v. FERC*, 610 F.2d 897, 899-900 (D.C. Cir. 1979); *Appalachian Power Co. v. Federal Power Comm'n*, 529 F.2d 342, 348 (D.C. Cir. 1976); *see also Boston Edison Co. v. FERC* (*BECo*), 233 F.3d 60, 67-68 (1st Cir. 2000) (specification of the rate implicates *Mobile-Sierra* and FERC may abrogate contracts only if public interest so requires).

The State's complaint fails to allege that FERC made the requisite findings under *Mobile-Sierra*—because FERC made no such finding. While the State avers that FERC approved the Settlement Agreement as "a just and reasonable outcome of this proceeding consistent with the public interest," Compl. ¶ 24, that finding does not suffice to make the particularized *Mobile-Sierra* findings required to abrogate rights under the PPAs. *Mobile-Sierra* requires specific findings about the adverse public impact caused by the PPAs in order to abrogate contractual rights. *Ne. Utils. Serv. Co. v FERC*, 55 F.3d 686, 689-91 (1st Cir. 1995) (describing the "public interest" test). The PPAs cannot be modified *sub silencio* or by implication. *BECo*, 233 F.3d at 68 ((FERC may only override contract rates protected by the *Mobile-Sierra* doctrine "by determining that ***they*** are contrary to the public interest") (emphasis added)); *Texaco*, 148 F.3d at 1096-97 (("the public interest necessary to override a private contract . . . requires analysis of the manner in which ***the contract*** harms the public interest and of the extent to which abrogation or reformation mitigates ***the contract's*** deleterious effect") (emphasis added)).

Because neither the Settlement Agreement nor the FERC order approving it abrogates the right to an equitable adjustment afforded by the PPAs, the State's count I fails to state a claim on which relief can be granted.

**C. The State fails to plead a cognizable claim for waiver**

Count II of the State's complaint fails to plead a cognizable claim that Constellation consensually waived its right to an equitable adjustment under the PPAs. The State's complaint omits any allegation of fact, which if proven, would tend to establish that Constellation did knowingly and for due consideration waive its valuable rights under the PPAs. Indeed, by the unambiguous terms of the PPAs and the Settlement Agreement, Constellation's determination not to object to the Settlement Agreement cannot form the basis for finding that Constellation waived an express right in the PPAs.

The 2002 and 2001 Contracts permit amendments only when made in writing, signed by all parties (Constellation did not sign the Settlement Agreement), and all the PPAs specify that the failure of a party to insist on strict performance does not waive any rights. 2002 Contract, Art. 14; 2001 Contract, Art. 13; 36% Contract, Art. 20(5); 20% Contract, Art. 20(5).

As for the Settlement Agreement, it expressly provides:

> Neither support for this Settlement Agreement, nor the Term Sheet relating hereto, nor the submission of this Settlement Agreement and the concurrence in, **or failure to comment on,** the described settlement, shall constitute an admission by any Settling Party that any allegations or contentions . . . were true or valid **or that any Settling Party had acted consistent with, or contrary to, contract provisions,** the FPA, or any other federal or state law or regulation.

Settlement Agreement at ¶ 7 (emphasis added). By this express provision, Constellation (if it was a settling party) would not have acted inconsistently with the PPAs by not commenting on or opposing the Settlement Agreement, so as a non-settling party Constellation certainly could not

waive any rights by action or inaction. Because the State's complaint alleges no facts that, if true, would excuse compliance with this provision of the Settlement Agreement, the State's bald legal conclusion does not satisfy the requirements of Rule 12(b)(6). *See In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 45 (1st Cir. 2005) (stating that on motion to dismiss, the "court is free . . . to disregard bald assertions, unsupportable conclusions, and opprobrious epithets").

To survive a motion to dismiss, the State must allege facts sufficient to establish each material element to recover under an actionable legal theory. *Platten*, 437 F.3d at 127. Apart from failing to allege a knowing and intentional waiver for due consideration by Constellation, the State's count II even fails to allege that there was offer and acceptance of the contract change; mutual assent to the change; or that the parties intended to be bound by the change—all of which are required to plead a waiver claim. *Bourg v. Bristol Boat Co.*, 705 A.2d 969, 971 (R.I. 1998); *Tri-City Concrete Co. v. A.L.A. Constr. Co.*, 179 N.E.2d 319, 320 (Mass. 1962); *Costonis v. Medford Hous. Auth.*, 176 N.E.2d 25, 28 (Mass. 1961).

Governing law provides that claims for unilateral contract modification lie only where the other party provides due consideration for the modification. *Tri-City Concrete Co.,* 179 N.E.2d at 320; *see also Doujotos v. Leventhal*, 171 N.E. 445, 445-46 (Mass. 1930) (citation omitted); *Violet v. Travelers Express Co., Inc.*, 502 A.2d 347 (R.I. 1985). The State's complaint identifies no consideration for Constellation to waive its valuable rights.

Furthermore, to overcome an express contract provision (as both the 2001 and 2002 Contracts require) that all modifications be in a writing signed by the parties, the State must show that the parties waived their contractual right to that condition. *Costonis*, 176 N.E.2d at 28; *see also A.T. Cross Co. v. Royal Selangor(s) PTE, Ltd.*, 217 F. Supp. 2d 229, 232-33 (D. R.I. 2002). The State fails to allege any facts sufficient to establish that Constellation waived the

requirement that all contract modifications be in writing. Accordingly, the Court should dismiss count II.

### D. The State fails to plead a cognizable estoppel claim

The State's count III fails to plead a claim on which relief can be granted because it fails to allege all required elements of estoppel. *Clickner*, 663 N.E.2d 852, 856 (Mass. 1996); *Lichtenstein v. Parness*, 99 A.2d 3, 5 (R.I. 1953). The State's estoppel claim is really one for promissory estoppel, yet the State nowhere alleges Constellation made any promise or commitment to the State. The State paints with overly inclusive brush strokes to improperly use estoppel as creating a substantive modification of Constellation's rights under the PPA, but only FERC can grant such relief and it has not done so. *Rubano v. DiCenzo*, 759 A.2d 959, 968 (R.I. 2000); *see also Ne. Utils. Serv. Co.*, 55 F.3d at 689-91.

To plead a cognizable estoppel claim, the State must allege that: (1) Constellation made a representation or conducted itself in a way intended to induce the State to support the Settlement Agreement; (2) the State supported the Settlement Agreement as a result of Constellation's representation or conduct, not other reasons; (3) the State's reliance on Constellation's representation or conduct was reasonable; and (4) the State suffered detriment as a result. *El Marocco Club, Inc. v. Richardson*, 746 A.2d 1228, 1233 (R.I. 2000); *Clickner*, 663 N.E.2d at 856 (citations omitted); *Martinelli v. Travelers Ins. Cos.*, 687 A.2d 443, 447 (R.I. 1996); *Tpk. Motors, Inc. v. Newbury Group, Inc.*, 596 N.E.2d 989, 993 (Mass. 1992).

The State's estoppel claim omits any allegation that Constellation (as opposed to other unnamed parties) intentionally induced the State's prejudicial reliance—a fatal omission from the State's claim. *El Marocco Club*, 746 A.2d at 1234. The State ignores completely that Constellation is not a party to the Settlement Agreement. The State contends that "Rhode Island

standard offer suppliers" included Section VIII(A) in the Settlement Agreement to induce the State to become a Settling Party, Compl. at ¶ 37, but nowhere does the State allege that Constellation acted or did not act intentionally to lull the State into a misapprehension of the effect of Section VIII(A). Indeed, as a non-party to the Settlement Agreement Constellation obviously had no ability to insert language into that document. Nor does the State allege that Constellation's conduct was the sole reason for the State supporting the Settlement Agreement.

The State's count III also omits any allegations showing that the State's reliance on the statements or actions of Constellation would be reasonable. The State's bald allegation that its reliance was reasonable does not suffice because its complaint admits facts that call into question why the State would rely on a non-party to the Settlement Agreement. Nothing in the State's proffered complaint explains why the State's reliance on a non-party's conduct was reasonable or why the State was excused from taking steps to investigate and confirm the Settlement Agreement worked as it hoped.

Because the Settlement Agreement expressly states that nothing a settling party did with respect to the Settlement Agreement shall be construed as contrary to or a waiver of any right under an existing contracts (Settlement Agreement ¶ 7) *and* because the complaint does not allege the State ever asked Constellation about the PPAs, Constellation's alleged conduct is not the type of unambiguous conduct required to establish estoppel. *See, e.g., R.I. Hosp. Trust Nat'l Bank v. Varadian*, 647 N.E.2d 1174, 1178 (1995) (explaining that it is essential that the representation be unambiguous). Moreover, the State has not alleged that it has or will suffer any prejudice; nor can it since the State retains full authority to ensure NEC's rates include only reasonably and prudently incurred costs. Accordingly, the Court should dismiss count III for failure to state a claim on which relief can be granted.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the State's complaint with prejudice for lack of subject matter jurisdiction, lack of standing and failure to state a claim upon which relief can be granted.

Dated: January 29, 2007

Respectfully Submitted,

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

Kenneth W. Irvin (DC Bar ID #439395)
Teresa M. Goody
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202.756.8116
Fax: 202.756.8087
E-mail: kirvin@mwe.com
E-mail: tgoody@mwe.com

*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2007, I electronically filed the foregoing *Motion of Defendant Constellation Energy Commodities Group, Inc. to Dismiss Proposed Complaint of the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers and supporting Memorandum of Points and Authorities* with the Clerk of the Court for the District of Rhode Island using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Hinkley Allen & Snyder, LLP
50 Kennedy Plaza
Providence, RI 02903

*Counsel for Narragansett Electric Co.*

Leo J. Wold, Esq.
Richard Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

*Counsel for State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers*

/s/ Stacey P. Nakasian