UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.<br><br>Defendant. | ) | C.A. NO. 06-404S |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION TO INTERVENE AND TO JOIN CLAIM OF THE STATE OF RHODE ISLAND AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS**

Plaintiff, The Narragansett Electric Company ("NEC"), submits this memorandum of law in support of the Motion to Intervene of the State of Rhode Island and the Rhode Island Division of Public Utilities and Carriers (collectively, "the State"). Because the State fulfills the criteria for intervention as of right as well as for permissive intervention, the Court should allow the State to intervene in this proceeding. Additionally, the Court should permit the State to join its estoppel claim against Constellation Energy Commodities Group, Inc. ("Constellation"). Constellation's arguments in opposition – most of which are inappropriate for consideration on a motion to intervene – prove unavailing.

## I. The Court should permit the State to intervene as of right.

The criteria for intervention as of right, as correctly set forth in the State's supporting memorandum, should "'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation." Inmates of the R.I. Training

School v. Martinez, C.A. No. 71-4529-L, 2006 WL 3505847, at *5 (D.R.I. Dec. 5, 2006). Here, the State meets all four of the requirements for intervention as of right.

**A. The State's application for intervention was timely.**

The State has made timely application for intervention. No discovery has taken place, and NEC filed this action only a few months ago. Intervention at this point in the proceeding will cause no prejudice to Constellation, and contrary to Constellation's allegations, is not premature.

Constellation incorrectly argues that the State's motion to intervene is premature because, it alleges, the dispute is subject to arbitration. However, as detailed in NEC's memorandum in opposition to Constellation's motion to dismiss, this dispute is not subject to arbitration for several reasons.[1] First, the Settlement Agreement did not trigger the "Change in Market Rules" provision upon which Constellation relies to claim a right to arbitration. Further, a court can not order arbitration of a dispute that the parties have not clearly and unambiguously agreed to arbitrate. See e.g., Rockel v. Cherry Hill Dodge, 847 A.2d 621, 624-25 (N.J. Super. 2004) (refusing to compel arbitration when the two documents at issue contained separate and disparate arbitration clauses, and therefore, waiver of a court proceeding was not clear and unambiguous); McNeer v. Thomson McKinnon Securities, Inc., 729 F. Supp. 1306, 1307-1308 (D. Kan. 1990) (refusing to compel arbitration when one arbitration clause was susceptible to two interpretations – one making arbitration non-mandatory and subject to the parties' agreement and the other requiring mandatory arbitration at the plaintiff's election); Independent Oil Workers v. Mobil, 441 F.2d 651, 653-54 (3rd Cir. 1971) (holding that

[1] See Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings at 10-14, 16-19.

arbitration was optional when one contract provision mandates arbitration and another reserves the right of the parties to apply to a court for relief).

Here, only one of the four PPAs provides for mandatory arbitration. The 20% and 36% Contracts reserve NEC's right to relief in court, providing for non-mandatory arbitration, and the 2001 Contract fails to order either voluntary or mandatory arbitration. Since NEC is plainly entitled to judicial resolution of the same issue under three of the PPAs, referral of this identical issue to arbitration under the fourth contract would be inefficient and illogical. Moreover, to compel arbitration of this issue under the fourth PPA would violate NEC's right to a judicial determination of this same issue under the other three contracts.[2]

### B. The State has a direct and substantial interest relating to the property or transaction that is the subject of this action.

An applicant for intervention as of right possesses an interest relating to the property or transaction of the action when it seeks to uphold an agreement to which it is part. See Roeder v. Islamic Republic of Iran, 333 F.3d 228, 233 (D.C. Cir. 2003) (holding that the United States was entitled to intervene in a lawsuit that implicated an executive agreement between the United States and Iran).

The State has a direct and substantial interest in the enforcement, and correct interpretation of, Section VIII(A) of the Settlement Agreement. The State conditioned its approval of the Settlement Agreement upon the inclusion of Section VIII(A), and therefore, possesses bargained-for rights attendant to that Agreement. Specifically, the State negotiated Section VIII(A) to ensure that entities like Constellation could not recover Capacity Costs from Rhode Island ratepayers. Like the Court in Roeder, this

[2] Since this dispute is not subject to arbitration, the Court, and not an arbitrator, is the appropriate individual to decide the State's motion to intervene and join claim.

Court should allow intervention because the lawsuit implicates an agreement to which the State is part.

Constellation's allegation that the State possesses no interest in Counts I and II of the Complaint is incorrect. Count I of the Complaint requests a declaratory judgment from the Court that the Settlement Agreement precludes Constellation from recovering Capacity Costs from NEC. As a signatory to the Settlement Agreement, and as a party that detrimentally relied on Constellation's conduct during the negotiation process, the State has an interest in the enforcement of Section VIII(A). Moreover, the State has an interest in protecting the Rhode Island ratepayer who will bear the electric rate increase if Constellation were to succeed in recovering costs from NEC.

The State likewise possesses an interest in Count II of the Complaint. During the negotiation of the Settlement Agreement, Constellation's actions or inactions resulted in a waiver of any right it had to recover Capacity Costs. Constellation's actions or inactions resulted in a waiver vis à vis the State just as they did NEC.[3]

Constellation's contention that the filed rate doctrine divests the Court of subject matter jurisdiction over the State's claims is likewise meritless.[4] As noted in NEC's memorandum opposing Constellation's motion to dismiss, the filed rate doctrine is irrelevant to this case. The filed rate doctrine applies when parties seek to alter, either directly or indirectly, or challenge the reasonableness of, a filed rate approved by a regulatory agency. Montana-Dakota Co. v. Pub. Serv. Co., 341 U.S. 246 (1951). The

[3] Constellation's arguments relative to the merits of Counts I and II are not properly before this Court. Constellation has conveniently and frequently interjected "motion to dismiss" arguments in opposition to the State's motion to intervene and join a claim. The Court should disregard these arguments as they are inappropriate at this juncture and irrelevant to the motion at issue.

[4] The Court should also note that this argument is, yet again, an inappropriate consideration in ruling on the State's motion to intervene.

filed rate doctrine "does not preclude courts from interpreting the provisions of a tariff and enforcing that tariff." See Brown v. MCI Worldcom Network Servs., Inc., 277 F.3d 1166, 1170-71 (9th Cir. 2002) (emphasis added). In this proceeding, the State, like NEC, does not seek to alter the Settlement Agreement; rather, it seeks to have the Court enforce the Settlement Agreement. Further and contrary to Constellation's allegations, the State's estoppel claim does not require the Court to "presum[e] what FERC would deem reasonable under the circumstances here." It asks the Court, instead, to uphold and enforce the State's bargained-for rights under the Settlement Agreement. The filed rate doctrine, therefore, has no bearing on this matter, and the Court may properly exercise jurisdiction over the State's claims.[5]

In another futile attempt to convince the Court that the State does not have an interest in this proceeding, Constellation overemphasizes that the State is not a party to the PPAs. The State does not rely on a contractual right relative to the PPAs for its interest in this proceeding and notably has not sought to join Counts III, IV, and V of NEC's complaint.

Finally, Constellation incorrectly brands the State's interest in this proceeding as "hypothetical and speculative," and invites the Court to close its eyes and pretend that the $150,000,000 that Constellation seeks to recover will have no impact on the State's ratepayers. See Constellation's Mem. at 11. Constellation is wrong. The Capacity Costs that Constellation seeks to recover under the PPAs will pass through directly to the Rhode Island ratepayers. In accordance with R.I. Gen. Laws § 39-1-27.3(b),

[5] The cases that Constellation cites in support of the filed rate doctrine's application are inapposite. See e.g., Duke Energy Trading and Marketing, LLC v. Davis, 267 F.3d 1042, 1045-46 (9th Cir. 2001) (holding that FERC-approved rates preempted the California Governor's orders commandeering electric supply contracts).

> [t]he rates that are charged by the electric distribution company to customers for standard offer service shall be approved by the commission and shall be designed to recover the electric distribution company's costs and no more than the electric distribution company's costs .... The electric distribution company will be entitled to recover its costs incurred from providing the standard offer arising out of: (1) wholesale standard offer supply agreements with power suppliers in effect prior to January 1, 2002; (2) power supply arrangements that are approved by the commission after January 1, 2002; (3) power supply arrangements made pursuant to §§ 39-1-27.3 and 39-1-27.8; and (4) any other power supply related arrangements prudently made after January 1, 2002 to provide standard offer supply . . . .

(Emphasis added.) The statute is very clear. Only contracts made after January 1, 2002 that do not fall under subsections (2) and (3) are subject to prudency review.

Accordingly, pursuant to § 39-1-27.3(b)(1), costs incurred under the 20% Contract, the 36% Contract, and the 2001 Contract will pass directly to the Rhode Island ratepayers – the Commission does not have the authority to conduct even a prudency review. Arguably, only the costs incurred under the 2002 Contract that is dated after January 1, 2002 could be subject to a prudency review under subsection (4). However, even this possibility is remote because that contract merely replaced the "wholesale supplier" under a previous contract in effect prior to 2002 and maintained identical pricing. Further, every dollar of cost incurred under the PPAs for the past 9 years has been recovered in rates and has never been questioned in any proceeding over that period. Thus, there is no reason to credit Constellation's self-serving speculation that "maybe this time" the Rhode Island Public Utilities Commission ("PUC') will deny recovery.[6]

---

[6] With narrow exceptions, "[t]he electric distribution company shall not be entitled to recover any profit margin on the sale of standard offer power." R.I. Gen. Laws § 39-1-27.3(b). That NEC makes no profit margin on the sale emphasizes the interest of the Rhode Island ratepayer in this action. The costs that

**C. <u>The State is situated such that disposition of this action may impair or impede its ability to protect its interest.</u>**

The disposition of this action may impair or impede the State's ability to protect its interest. Failure to enforce or properly interpret the Settlement Agreement will impair the State's negotiated contractual rights. In agreeing to the Settlement Agreement, the State bargained for the inclusion of Section VIII(A). Should the Court deny the State's motion to intervene, the State will not be able to protect its interest in enforcing Section VIII(A), and consequently, in protecting the Rhode Island ratepayer.

Constellation wrongfully contends that the State's interest will suffer no impairment or impediment because the PUC has the authority to review any costs that NEC might seek to pass through to the Rhode Island ratepayers for prudence and reason. As noted above, Constellation is incorrect. Moreover, even if the PUC were to so review the costs, Constellation has provided no reason to believe, nor does prior experience suggest, that the PUC would ever find such costs imprudent or unreasonable.

**D. <u>The State possesses an interest that the existing parties do not adequately represent.</u>**

"An intervenor need only show that representation may be inadequate, not that it is inadequate." <u>Conservation Law Found. of New England, Inc. v. Mosbacher</u>, 966 F.2d 39, 44 (1st Cir. 1992). The State, unlike NEC, possesses a unique interest relative to the enforcement of Section VIII(A): the protection of the Rhode Island ratepayer from an increase in electric rates. Should Constellation succeed in recovering Capacity Costs, these costs will be borne by the Rhode Island ratepayers. The State has a unique interest

---

Constellation seeks to recover under the PPAs are pass through costs, and in most respects the ratepayers and the State are the real parties in interest.

in protecting the ratepayers.[7] Additionally, the State, in agreeing to the Settlement Agreement, detrimentally relied on Constellation's conduct during negotiations, and consequently, asserts an estoppel claim to which NEC is not a party. The State, therefore, meets the minimal showing that representation could be inadequate.

## II. The Court should allow the State to intervene permissively in this proceeding.

The decision to allow permissive intervention pursuant to Fed. R. Civ. P. 24(b) is committed to the broad discretion of the district court judge. Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 641 (1st Cir. 1989). "In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). The Court may also consider "whether the intervenors will significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." Langone v. Flint Ink North America Corp., 231 F.R.D. 114, 121 (D. Mass. 2005).

The State's claim and the main action have a question of law or fact in common; to wit, whether the Settlement Agreement bars Constellation's attempted recovery of Capacity Costs. Rather than delaying the adjudication of the rights of the original parties, the State's intervention will streamline the adjudication process by including all of the key players in one proceeding in a timely fashion. The State, like NEC and Constellation, was involved in the negotiation of the Settlement Agreement, and

[7] Constellation dismisses the State's contention that it has a stronger incentive to enforce Section VIII(A) and preclude Constellation's recovery of Capacity Costs, claiming that NEC can pass to the Rhode Island ratepayer only reasonably and prudently incurred costs. As noted above, no such review will occur, and even if it did, it is certain that the PUC will continue to find costs incurred under these contracts to be reasonable, just as they have consistently found for the past 9 years.

therefore, possesses valuable information concerning the parties' underlying intent and conduct. Additionally, a just and equitable adjudication of the legal questions presented dictates that the State – the party that ultimately will suffer should Constellation succeed – be permitted to intervene. As stated earlier, the State's intervention at this juncture – when discovery has not even started - will not prejudice the adjudication of rights of the original parties. Allowance of the State's motion to intervene falls well within the Court's broad discretion.

## III. The Court should allow the State to join its estoppel claim against Constellation.

"A party asserting a claim to relief as an original claim … may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime as that party has against an opposing party." Fed. R. Civ. P. 18(a). The rationale underlying Rule 18 is efficiency: "[t]he goal of open-ended claim joinder is to permit a claimant to assert an entire dispute in a single case, thus enabling the parties to present the whole array of their disagreement before one court." 4 Moore's Federal Practice § 18.02[1]. For reasons of efficiency, the Court should properly join the State's estoppel claim. The State's Count III involves the same Settlement Agreement and factual circumstances as NEC's claims.

Constellation's arguments concerning the merits of the State's estoppel claim are inappropriate at this point. Whether the State's estoppel claim pleads a claim upon which relief may be granted is a proper consideration for this Court on a motion to dismiss, not on the motion to intervene and join a claim that is currently before the Court. Additionally, as noted above, the filed rate doctrine has no bearing on this case, and

therefore, does not divest the Court of subject matter jurisdiction over the State's estoppel claim.

THE NARRAGANSETT ELECTRIC COMPANY

By its attorneys,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com

Dated: February 5, 2007.

**CERTIFICATION**

I hereby certify that on February 5, 2007, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com

778542