**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CONSTELLATION ENERGY COMMODITIES GROUP, INC.,**<br><br>**Defendant.** | **C.A. NO. 06-404S** |

**REPLY OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS TO CONSTELLATION'S OPPOSITION TO THE STATE'S MOTION TO INTERVENE**

## I. INTRODUCTION

For the vast bulk of its opposition papers, Constellation Energy Commodities Group, Inc. ("Constellation") treats the motion of the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively referred to herein as the "State") to intervene as a motion to dismiss and argues and/or reargues points that are contained in the papers that Constellation has filed in support of its motions to dismiss. See Constellation Opposition to Motion to Intervene at 5-8 (Constellation reargues Filed Rate Doctrine); at 16-17 (Constellation contends that

Count III "fails to plead a claim upon which relief can be granted"); at 11-13 (Constellation argues that neither the FERC Order nor the Settlement Agreement approving it grants the State any claim or defense to Constellation's right to an equitable adjustment). Constellation further erroneously asserts that the State's action consists of claims that are simply not raised by the State in its proposed Complaint. See Constellation Opposition to Motion to Intervene at 3-4 (Constellation argues that intervention is for Arbitrators to decide under the PPAs); at 8-11 (Constellation alleges that the State claims it is an incidental beneficiary under the PPAs).

The State respectfully believes the Court has already ruled in its Scheduling Order that, Constellation's contentions relating the Court's jurisdiction, whether the FERC Order grants the State a substantive bar to Constellation's alleged right to equitable adjustment under the PPAs, and the merits of Count III, are more appropriately addressed in the State's response to Constellation's motion to dismiss. The State will address these contentions in that filing (due February 12, 2007), which the Court will hear on March 5, 2007, as previously ordered. The State, moreover, will not address contentions that simply do not form the basis of the proposed Complaint.

Constellation, however, does raise three points, which the State will address. First, Constellation contends that the State does not have "standing to sue Constellation under the Settlement Agreement…" Constellation Opposition at 11. Second, Constellation contends that the State does not possess a "cognizable interest" in this proceeding because of the possibility of review by the Rhode Island Public Utilities Commission ("Commission") of a filing by The Narragansett Electric Company ("Narragansett Electric") relating to Constellation's claims under the PPAs.

Constellation Opposition at 14. Thirdly, Constellation contends that Narragansett Electric can represent the interests of ratepayers in this proceeding. Constellation Opposition at 14-15. Each contention is without merit.

## II. ARGUMENT

### A. THE STATE POSSESSES STANDING IN THIS PROCEEDING.

To allege a cognizable action under the Declaratory Judgment Act, 28 U.S.C. § 2201, a plaintiff must show that it possesses a justiciable "case or controversy." The United States Supreme Court has summarized the "case or controversy" requirement as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Medimmune, Inc. v. Genentech, Inc., 127 S.Ct. 764, 771 (2007). See also Comtec Information Systems, Inc. v. Monarch Marking Systems, Inc., 962 F. Supp. 15, 17 (D.R.I. 1997). Expounding upon this standard, the First Circuit Court of Appeals has held that "a party invoking the Court's authority" in a declaratory judgment context must show:

> (1) that he or she has suffered some actual or threatened injury as a result of the defendant's putatively illegal conduct;
>
> (2) that the injury may fairly be traced to the challenged action; and
>
> (3) that a favorable decision will likely redress the injury.

New Hampshire Right to Life Political Action Committee v. Gardner, 99 F.3d 8, 13 (1st Cir. 1996); Vote Choice, Inc. v. DiStefano, 4 F.3d 26, 36 (1st Cir. 1993). In the case at bar, the proposed Complaint more than satisfies each of these requirements.

**1. <u>Constellation Has Engaged In Putatively Illegal Conduct By Violating The Terms Of The Settlement, And Therefore, The Order.</u>**

In its proposed Complaint, the State alleges that a Settlement Agreement that was filed with FERC on March 6, 2006 (the "Settlement") and accepted and approved by the agency by Order on June 16, 2006 (the "Order") legally binds Constellation. Section VIII(A) of the Settlement, further, bars Constellation from recovering capacity payments from Narragansett Electric and Rhode Island ratepayers for the period between December 1, 2006 and May 30, 2010. As pled in the State's proposed Complaint, Constellation's conduct, representations, and inaction, led the State to execute the Settlement, which was approved by FERC in the Order. Constellation, moreover, has violated, and continues to violate, Section VIII(A) of the Settlement, and, thus, the Order, by seeking (by Constellation's own estimates) between $100 million to $150 million from Narragansett Electric and Rhode Island ratepayers. The State, therefore, has more than adequately shown that Constellation has engaged in putatively illegal conduct by violating the terms of the Settlement, and therefore, the Order.

**2. <u>The State's "Actual Or Threatened" Substantial Harm Is Fairly Traceable to Constellation's Putatively Illegal Conduct.</u>**

As discussed above, Constellation's action in violating Section VIII(A) of the Settlement poses substantial harm to the State and the ratepayers. In addition, Constellation's conduct, representations and inaction before FERC and the State have caused, and will continue to cause, the State substantial harm. As pled in the State's proposed Complaint, Constellation's conduct, representations, and inaction, led the State

to execute the Settlement, which was approved by FERC in the Order. As a result of the State's entry into the Settlement, the Forward Capacity Market ("FCM") was created in New England. It is the creation of this market, which led Constellation to assert its alleged rights under the PPAs to collect the $100 to $150 million from Narragansett Electric and Rhode Island ratepayers. The State, thus, has forever lost the unique opportunity (worth many millions of dollars to ratepayers) to defeat the imposition of the FCM. Further, the State, continues to run the imminent risk (in the absence of redress by this Court) that Constellation will obtain these substantial sums of money from Narragansett Electric, which, in turn, will pass them on to ratepayers. The State, therefore, has more than adequately shown that its actual and imminently threatened injuries are fairly traceable to Constellation's illegal conduct.

**3. A Favorable Decision Will Redress The State's Injuries.**

In its proposed Complaint, the State has requested the Court to enter an Order and Judgment in favor of the State: declaring that the Settlement Agreement and FERC Order precludes Constellation from recovering Transition Period UCAP Costs or any other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers; enjoining Constellation from undertaking any act, action or conduct whatsoever that seeks to recover of Transition Period UCAP Costs or any other similar costs from Narragansett Electric and/or Rhode Island's electric ratepayers; an award of the State's reasonable costs; and such other relief as the Court deems is just and proper.

By declaring that the Order bars Constellation's claims, the Court will relieve ratepayers of a rate increase that could reach $150 million. At the same time, the Court will affirm the position that the State took before FERC as a "swing" settlement

participant when it gave up its right to object to the Settlement in exchange for the inclusion of Section VIII(A) in the Agreement. A decision by the Court in favor of the State clearly will redress the State's past and future imminent injuries.

## B. A DECISION BY THE RHODE ISLAND PUBLIC UTILITIES COMMISSION ON A FUTURE RETAIL RATE FILING BY NARRAGANSETT ELECTRIC IS IRRELEVANT TO, AND DOES NOT IMPACT, THE STATE'S STANDING IN THIS PROCEEDING.

On Page 14 of its opposition papers to the State's motion to intervene, Constellation contends that "because the State retains the ability to protect consumers by operation of the PUC's [Rhode Island Public Utility Commission's] review of any application NEC [Narragansett Electric] may file to recover costs incurred as a result of this lawsuit, denying intervention does not impair or impede the State's ability to protect its interest." As shown above, the State has already suffered, and continues to suffer, significant harm. Accordingly, any review the Commission may undertake regarding a future Narragansett Electric retail rate filing does not have any relevance to the State's claims against Constellation.

Constellation's allegation, in this regard, moreover, is erroneous as a matter of law. G.L. § 39-1-27.3 expressly provides that, "The electric distribution company will be entitled to recover its costs incurred from providing the standard offer arising out of: (1) wholesale standard offer supply agreements with power suppliers in effect prior to January 1, 2002; (2) power arrangements that are approved by the commission after January 1, 2002 . . . (4) any other power supply related arrangements prudently made after January 1, 2002 to provide standard offer supply…"

Pursuant to the literal language of § 39-1-27.3[1], cost increases relating to the PPAs in effect prior to January 1, 2002 are simply passed through to retail customers[2], and so are other costs increases associated with any other power supply related arrangements made after January 1, 2002, unless a showing of imprudent action is made. To date, there is no evidence whatsoever that Narragansett Electric has engaged in imprudent behavior. Accordingly, Constellation's contention that the Commission retains the ability to protect consumers by denying cost recovery to Narragansett Electric in either scenario is completely unfounded.[3]

### C. CONSTELLATION'S CONTENTION THAT NARRAGANSETT ELECTRIC CAN ADEQUATELY REPRESENT RATEPAYERS INTERESTS IS ABSURD.

On Page 14 of its Memorandum in Opposition to the State's Motion to Intervene, Constellation asserts that "any interest the State has is adequately represented by Narragansett Electric." By the terms of G.L. § 39-1-27.3 any costs relating wholesale standard offer supply agreements with power suppliers in effect prior to January 1, 2002 "pass-through" to ratepayers. Further, to date, no evidence of imprudence on the part of

[1] Neither the Rhode Island Supreme Court nor the Commission has had occasion to construe this statute. The Rhode Island Supreme Court is the ultimate arbiter of Rhode Island law. Under Rhode Island law, statutes must be given their "plain" and "ordinary" meaning. E.g., Arnold v. Rhode Island Dept of Labor and Training Bd., 822 A.2d 164, 168 (R.I. 2003); Cummings v. Shorey, 761 A.2d 680, 684 (R.I. 2000).

[2] Three of the PPA's existed prior to January 1, 2002, and one was executed in 2002.

[3] Constellation's contention that the State has the power to "investigate the overall financial structure of Narragansett Electric to determine whether the company has experienced savings in other areas which might offset the increase price for power" is absurd and erroneous. Constellation Opposition to State's Motion to Intervene at 13. Through 2009, Narragansett Electric is subject to a Commission approved rate plan that contains a "rate freeze." Further, Narragansett's distribution service revenues over which the PUC has regulatory jurisdiction are approximately $230 million. It is absurd to state that the Commission could offset the price increase for power with other savings. The disputed amount could equate to as much as 65% of Narragansett's total annual distribution revenues. The Commission simply cannot do as Constellation alleges.

Narragansett Electric exists to deny the company cost recovery. Thus, as compared to the State, Narragansett Electric possesses little incentive to protect the ratepayers in this proceeding, particularly with respect the rights that accrue to ratepayers via Section VIII(A) of the Agreement. Constellation's contention to the contrary is absurd.

## III. CONCLUSION

For the reasons set forth herein and in the State's Memorandum in Support of its Motion to Intervene and to Join Claim, the Court should grant the State Motion to Intervene and to Join Claim.

Respectfully submitted,

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS and
the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Dated: February 5, 2007

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**CERTIFICATE OF SERVICE**

I certify that on February 5, 2007, a copy of the within Reply was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov