**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,** <br> **Plaintiff,** <br> **v.** <br> **CONSTELLATION ENERGY COMMODITIES GROUP, INC.,** <br> **Defendant.** | **C.A. NO. 06-404S** |

**OBJECTION OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS TO THE DEFENDANT'S MOTION TO DISMISS PROPOSED COMPLAINT**

The State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively referred to herein as the "State"), by and through their legal counsel, Patrick C. Lynch, Rhode Island Attorney General, object to the Defendant's Motion to Dismiss the State's Proposed Complaint.

In support of its objection, the State submits the accompanying memorandum of law.

Respectfully submitted,

STATE OF RHODE ISLAND
PROVIDENCE PLANTATIONS and
the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Dated: February 12, 2007

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**CERTIFICATE OF SERVICE**

I certify that on February 12, 2007, a copy of the within objection was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **C.A. NO. 06-404S** |
| **CONSTELLATION ENERGY COMMODITIES GROUP, INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS IN SUPPORT OF THEIR OBJECTION TO THE DEFENDANT'S MOTION TO DISMISS PROPOSED COMPLAINT**

## I. INTRODUCTION

In 2004, the Independent System Operator for New England ("ISO New England") proposed a locational installed capacity ("LICAP") market. Under this market, ISO New England proposed to allocate capacity payments to electricity generators by geographic zones (*i.e.*, by location) based on certain formulas that were designed to provide an incentive for the creation of generation capacity. Complaint[1], Para. 10. State regulatory bodies, public utilities and municipal load serving entities, and many others objected to the LICAP market for, among other reasons, it was estimated

[1] Except where the context clearly denotes otherwise, the term "Complaint," as used herein, refers to the State's proposed Complaint. A copy of the Complaint is attached hereto and marked "Exhibit A."

that imposition of a market would cost New England electric ratepayers many hundreds of millions without providing adequate capacity or reliability. Exhibit A, Para. 11. As a consequence of this vehement opposition, the Federal Energy Regulatory Commission ("FERC") postponed the implementation of the LICAP market in the proceeding then pending before FERC[2], giving the parties an additional opportunity to pursue a settlement. Exhibit A, Para. 12.

In or about the Fall of 2005 and into early 2006, regulatory and consumer representatives of the six New England States, generators, transmission owners, and power suppliers, among others, negotiated a settlement agreement that proposed the adoption of a Forward Capacity Market ("FCM"), as an alternative to the LICAP market.[3] Exhibit A, Para. 13. The Settlement Agreement was the end product of a series of over 30 formal settlement conferences and negotiations, involving 115 parties, taking place over about a four-month period with the active participation and involvement of Administrative Law Judge Lawrence Brenner. Exhibit A, Para. 14.

The Rhode Island Division of Public Utilities and Carriers ("Division") intervened in the proceeding before FERC, and participated in the settlement negotiations and conferences. Exhibit A, Para 15. The parent of The Narragansett Electric Company ("Narragansett Electric"), National Grid USA, on behalf of itself and its subsidiaries that were intervenors in the proceeding, also participated in these conferences and negotiations. Exhibit A, Para 16. Constellation Energy Commodities Group, Inc. ("Constellation") and FPL Energy, LLC ("FPLE"), an affiliate of Florida Power & Light,

[2] Devon Power LLC, et al., Docket Nos. ER03-563-030 & ER03-563-055 ("Devon Power LLC, et al.").

[3] The terms "Settlement," "Settlement Agreement" or "Agreement," as used herein, refers to the Settlement Agreement that was filed with FERC on March 6, 2006, and approved by FERC on June 16, 2006.

that signed a merger agreement with Constellation, also participated in these conferences and negotiations. Exhibit A, Para. 17.

## II. MATERIAL FACTS

During the course of these conferences and negotiations, the State of Rhode Island and Providence Plantations ("State of Rhode Island"), through its representative before FERC, the Division,[4] became a "swing" settlement participant. Exhibit A, Para. 18. Without the State's agreement to become a Settling Party, ISO-New England would not recommend the FCM to FERC, and FERC would not approve the FCM. Exhibit A, Para. 18. Further, without the State's agreement to become a Settling Party, the FCM would not have been created in New England, and Rhode Island standard offer wholesale suppliers (of which Constellation was one), among others, would have faced or incurred continued vigorous opposition to the proposed LICAP market, endless litigation and substantial monetary detriment. Exhibit A, Para. 19.

Settlement participants, including Rhode Island standard offer wholesale suppliers, therefore, included language (***i.e.***, Section VIII(A)) in the proposed Settlement Agreement to induce the State to become a Settling Party to the Agreement. Exhibit A, Para. 20. Section VIII(A) of the Agreement provides as follows:

> The current UCAP products shall be retained for the period commencing on December 1, 2006 and ending on May 30, 2010 (the "Transition Period") as provided for in Part VIII.I. Payments will be made to UCAP entitlement holders, and made by UCAP obligation holders including wholesale standard offer suppliers in Rhode Island as under the current Market Rules and tariffs; it being understood that the agreement of wholesale standard

[4] The State of Rhode Island and the Division are referred to collectively hereinafter as "the State".

> offer suppliers in Rhode Island to make UCAP payments is contingent upon the agreement of the state of Rhode Island utility regulatory authorities to support the settlement.

Notice of Errata, Para. 21.[5]

On January 31, 2006, Constellation orally represented to Judge Brenner and to the State, among others, that the company would oppose the FCM contained in the Settlement. Report by Settlement Judge Issued January 31, 2006 at 2, Para. 6[6]. By the conclusion of the discussion before Judge Brenner, Constellation was to report back to the Judge and counsel for National Grid (Narragansett Electric's parent) and the State if the company had any opposition to Section VIII(A) of the Settlement. Constellation did not report back to the State (and on information and belief, did not report back to Judge Brenner) that it had any opposition to Section VIII(A) of the Agreement, and did not file any comments or objection regarding the Settlement as required by FERC rules. Report on Contested Settlement by Settlement Judge Issued April 11, 2006 at 2.[7] The State relied on the conduct, representations and inaction of Constellation and FPLE in executing the Settlement, and in not taking any further action before Judge Brenner or FERC. Had the State known that Constellation opposed Section VIII(A), the State never would have executed the Settlement.

---

[5] Section VIII(A) of Exhibit A contained a typographical error. The error was corrected in a Notice of Errata filed with the Court on January 24, 2007. A copy of the Notice of Errata is attached hereto and marked "Exhibit B."

[6] A copy of the Order of Chief Judge Extending Time to File Settlement Issued February 1, 2006 and Continuing Settlement Judge Procedures and the Report by Settlement Judge Issued January 31, 2006 is attached hereto and marked "Exhibit C."

[7] A copy of the Report on Contested Settlement by Settlement Judge Issued April 11, 2006 is attached hereto and marked "Exhibit D."

National Grid USA, on behalf of itself and its subsidiaries that were intervenors in the proceeding, and FPLE, which as previously mentioned, is an affiliate of Florida Power & Light Company ("FPL") that was pursuing a merger with Constellation, also executed the Settlement. Exhibit A, Para. 23.

By the Order dated June 16, 2006, FERC approved the Agreement, accepting the Agreement as "a just and reasonable outcome of this proceeding consistent with the public interest" (hereinafter referred to as the "Order"). Exhibit A, Para. 24.

Constellation did not file any comments or objection to the Order. Constellation did not appeal or seek a rehearing regarding the Order, and the time within which Constellation could appeal the Order has expired. The State relied on the conduct of Constellation in not taking any further action before FERC regarding the Order.

On August 1, 2006, Constellation wrote to Narragansett Electric demanding additional compensation under certain power purchase agreements ("PPAs") to pay for Transition Period UCAP Costs, among other additional compensation under the PPAs. Exhibit A, Para 28.

## III. TRAVEL OF CASE

On September 11, 2006, Narragansett Electric filed a five Count Complaint against Constellation: Count I (Declaratory Judgment), Count II (Waiver), Count III (Declaratory Judgment – UCAP Costs/PPAS), Count IV (ASM/PPAS) and Count V (Breach of Contract). On October 23, 2006, Constellation filed a Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings. Narragansett Electric filed its opposition papers to Constellation's motion on December 13, 2006. Constellation filed a reply to Narragansett Electric's opposition on January 8, 2007.

On January 9, 2007, the State, by and through their legal counsel, Patrick C. Lynch, Rhode Island Attorney General, filed a Motion to Intervene and to Join Claim in the above proceeding. The State's motion seeks to intervene as a party plaintiff in Count I (Declaratory Judgment) and Count II (Waiver) of the Complaint of Narragansett Electric and to join a third Count, Count III (Estoppel), which was not asserted by Narragansett Electric, against Constellation.

On January 29, 2007, Constellation filed a motion to dismiss the proposed Complaint essentially recapitulating the grounds that Constellation alleges support dismissal of Narragansett Electric's Complaint. The State submits the within objection and memorandum in response to Constellation's motion.

## IV. ARGUMENT

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled facts and allegations as true and construe all reasonable inferences in the plaintiff's favor. Toledo v. Sanchez, 454 F.3d 24, 30 (1st Cir. 2006); Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 62 (1st Cir. 2004). The movant possesses a heavy burden, and must demonstrate beyond doubt that there is "no set of facts" that "would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Stanton v. Metro Corp, 438 F.3d 119, 123-24 (1st Cir. 2006).

In the case at bar, Constellation's motion to dismiss does not come close to satisfying the heavy burden that the aforementioned standard imposes on the company in order to obtain dismissal of the State's Complaint. Accordingly, the Court should deny Constellation's motion to dismiss.

## A. CONSTELLATION'S CLAIMS ARE PRECLUDED BY THE TERMS OF THE SETTLEMENT AND ORDER.

### 1. Section VIII(A) Of The Settlement Agreement Is Clear And Unambiguous.

It is a generally accepted principle that settlement agreements of the type at issue in the case at bar are governed by "common-sense canons of contract interpretation." [8]

---

[8] Narragansett Electric's memorandum in opposition to Constellation's motion to dismiss convincingly explain why the "Filed Rate Doctrine" does not apply to the case at bar. The State would reemphasize that each case cited below by Constellation stands for the proposition that federal courts do not possess the authority to entertain causes of action that seek ***damages*** which would produce a rate different from the filed rate. Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 578-79 (contract action seeking ***damages*** based on the difference between contract rate and lease payments made barred by the filed rate); Transmission Agency of North Carolina v. Sierra Pacific Power Co., 295 F.3d 918, 932 (9th Cir. 2002), cert. denied, 539 U.S. 914 (2003) (contract claim seeking ***damages*** based on a claimed entitlement of 4800 MW of transfer capacity barred by filed rate). See also Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 251 (1951) (action to recover ***damages*** for unreasonable rates charged barred by filed rate). The same principal holds true if a regulatory authority seeks to impose an allocation of power different from the amount fixed in a FERC ordered tariff. Nantahala Power and Light Co. v. Thornburg, 476 U.S. 953, 969 (1986).

By contrast, in the case at bar, Narragansett Electric and the State seek a ***declaratory ruling*** that Constellation is required to ***comply*** with the terms (specifically Section VIII(A)) of a filed settlement agreement, duly approved and accepted by FERC in an Order of the agency. There is ample authority to support the assertion of jurisdiction in such circumstances. Metrophones Telecommunications v. Global Crossing Telecommunications, Inc., 423 F.3d 1056, 1077 (9th Cir. 2005), cert. granted in part, 126 S.Ct. 1329 (2006) (unjust enrichment claim seeking exact amount that party was entitled to under federal regulations would not require district court to determine a reasonable price, let alone to set an "inconsistent" price, and therefore, was not barred); New Orleans Public Service, Inc. v. City of New Orleans, 782 F.2d 1236, 1241 n.4 (5th Cir.1986), opinion withdrawn in part on other grounds, 782 F.2d 1236 (1986), cert. denied, 107 S.Ct. 1910 (1987) (federal court possessed jurisdiction under 28 U.S.C. § 1331 to entertain claim that the terms of a FERC Order preempted a city's resolution refusing to recognize costs that the utility was required to pay under the Order); City of Cleveland v. Cleveland Electric Illuminating Co., 570 F.2d 123, 128 (6th Cir. 1978) (federal court possessed jurisdiction to enforce FERC Order requiring party to make payment for all undisputed charges for past and future services). See also Public Utility District No. 1 of Gray's Harbor County Washington v. Idacorp Inc., 379 F.3d 641, 652 (9th Cir. 2004) (federal court possessed jurisdiction to entertain declaratory relief as to issues of contract formation as those issues would not require court to determine what "fair" rate would have been).

Constellation also seeks to dismiss Counts I, II and III on the ground that the State does not possess standing. Constellation Mem. in Support of Motion to Dismiss State's Proposed Complaint at 11. The State has addressed this issue in its Reply to Constellation's Opposition to the State's Motion to Intervene. The arguments contained in the State's Reply regarding its standing in this proceeding are restated and incorporated herein by reference.

Unum Life Insurance Company of America v. Cappello, 278 F. Supp. 2d 228, 233 (D.R.I. 2003); Lopez Morales v. Hospital Hermanos Melendez, Inc., 447 F. Supp. 2d 137, 141 (D.P.R. 2006), reconsideration denied, 460 F. Supp. 2d 288 (2006). Under these canons, when a contract is clear and unambiguous on its face, the role of the Court is to enforce the contract as written. Kelly v. Tillotson-Pearson, Inc., 840 F. Supp. 935, 944 (D.R.I. 1994). A contract is not ambiguous simply because litigants disagree about its proper interpretation. Federal Deposit Insurance Corp. v. Singh, 977 F.2d 18, 22 (1st Cir. 1992). When a contract can bear, within the realm of reason, only a single plausible interpretation, it should be so construed by the court. Newport Plaza Assoc., L.P. v. Durfee Attleboro Bank, 985 F.2d 640, 645 (1st Cir. 1993). See also Boston Five Cents Savings Bank v. Secretary of the Dept. of Housing and Urban Development, 768 F.2d 5, 8 (1st Cir. 1985) (where no "reasonable person" could differ about what contract means, it should be enforced according to its terms).

Section VIII(A) of the Settlement Agreement, which was accepted and approved by FERC in the Order, provides as follows:

Clause:

1 The current UCAP products shall be retained for the period commencing on December 1, 2006 and ending on May 30, 2010 (the "Transition Period") as provided for in Part VIII.I.

2 Payments will be made to UCAP entitlement holders, and made by UCAP obligation holders including wholesale standard offer suppliers in Rhode Island as under the current Market Rules and tariffs;

---

Lastly, Counts I, II, and III of the State's Complaint arise as a result of Constellation's conduct, representations and inaction in Devon Power LLC, et al., and its violation of Section VIII(A). Thus, Constellation's efforts to invoke an arbitration clause in its PPAs (see Constellation Mem. in Support of Its Motion to Dismiss Narragansett Electric's Complaint at 25-33) does not have any relevance to, or bearing on, the State's claims in this proceeding.

> 3 it being understood that the agreement of wholesale standard offer suppliers in Rhode Island to make UCAP payments is contingent upon the agreement of the state of Rhode Island utility regulatory authorities to support the settlement.[9]

The first clause provides that the unforced capacity ("UCAP") products in effect at the time of the Settlement are to be retained for the Transition Period (December 1, 2006 through May 30, 2010).

The second clause provides that UCAP entitlement holders—those entities possessing generation capacity that are entitled to UCAP payments—receive payment from UCAP obligation holders, those entities that ISO-NE has determined must make such payments based on the electricity needs served by each entity. "UCAP obligation holders" are expressly defined to include "wholesale standard offer suppliers in Rhode Island."[10] The UCAP payments are to be made "as under the current Market Rules and tariffs," ***i.e.,*** under the then current Market Rules and tariffs pursuant to which Constellation made UCAP payments and could not seek reimbursement from Narragansett Electric or the ratepayers.

The third clause reflects "the agreement" of wholesale standard offer suppliers in Rhode Island, such as Constellation, "to make UCAP payments" is conditioned upon the support of the "state of Rhode Island utility regulatory authorities" for the Settlement.[11]

---

[9] Section VIII(A) has been divided into its component clauses for ease of reference.

[10] It is undisputed that Constellation is a "wholesale standard offer supplier." See Power Purchase Agreements ("PPAs") filed under seal and referenced as Exhibits A, B, C and D in the appendix to the memorandum in support of Constellation's motion to dismiss Narragansett Electric's complaint.

[11] Both the Division and Commission, Rhode Island's utility regulatory authorities, executed the Settlement.

As written, Section VIII(A) clearly and unambiguously requires wholesale standard offer suppliers, such as Constellation, to make capacity payments under the Market rules and tariffs in effect as of the date of the consummation of the Settlement for the period between December 1, 2006 through May 30, 2010. No other "plausible interpretation" "within the realm of reason" exists. See Singh, 977 F.2d at 22; Boston Five Cents Savings Bank, 768 F.2d at 8.[12] The Complaint plainly states a viable claim.

### 2. **Constellation Is Bound By The Terms Of The Settlement Agreement And Order.**

Authorities that have addressed the issue hold that "even if there is a lack of unanimity" of all parties regarding a settlement proposal, the settlement agreement may still be "approved" by an agency and is to be "treated as a decision on the merits." Mobil Oil Corp. v. Federal Power Comm'n, 417 U.S. 283, 312 (1974); United Municipal Distributors Group v. Federal Energy Regulatory Comm'n, 732 F.2d 202, 209 (D.C. Cir. 1984); Triton Oil & Gas Corp. v. Federal Energy Regulatory Comm'n, 712 F.2d 1450, 1458-59 (D.C. Cir. 1983); Placid Oil Co., SoLa II v. Federal Power Comm'n, 483 F.2d 880, 893 (5th Cir. 1974), affirmed, 94 S.Ct. 2328 (1974); Pennsylvania Gas and Water Co. v. Federal Power Comm'n, 463 F.2d 1242, 1249 (D.C. Cir. 1972). See also In Re: United Gas Pipe Line Co., 57 FERC P 61161, 1991 WL 297132 (1991) ("settlement is

[12] Constellation attempts to introduce ambiguity into the meaning of the Settlement Agreement by referencing Paragraph 31 of the Order. That clause provides "Transition payments will be made by unforced capacity (UCAP) obligation holders (load-serving entities)." Order, Para. 31. Capacity costs for load serving entities are determined by ISO-NE based on the electricity needs served by each entity. In the PPAs, Constellation accepted the responsibility to pay for capacity costs associated with the electricity that Constellation supplies to Narragansett Electric. By virtue of Constellation's contractual acceptance of its duty to pay for theses costs, Constellation is the "load-serving entity" for the term of the PPAs. Section VIII(A) confirms Constellation's status in this regard by expressly defining the term "UCAP obligation holder" to include "wholesale standard offer suppliers" such as Constellation. Paragraph 31 of the Order is completely consistent with Section VIII(A) of the Settlement.

binding on all the parties even though not all are accord as to the result"). As a decision on the merits, "the terms of the settlement form the substance of an order binding on all the parties, even though not all are in accord to the result. This is in effect a 'summary judgment' granted on 'motion' by the litigants where there is no issue of fact." Pennsylvania Gas and Water Co., 463 F.2d at 1246.

The Court of Appeals for the District of Columbia Circuit explained what has become the uniformly accepted rationale underpinning this rule of law:

> …the court must passively await the appearance of a litigant before it; once the court's process has been invoked, the litigant is entitled to play out the contest . . . On the other hand, the regulatory agency is charged with a duty to move on its own initiative where and when it deems appropriate; it need await the appearance of no litigant nor the filing any complaint; once the administrative process is begun it may responsibly exercise its initiative by terminating proceedings at virtually any stage on such terms as its judgment on the evidence before it deems fair, just and equitable . . . Only by exercising such "summary judgment" or "administrative settlement" procedures when called for can the usual interminable length of regulatory agency proceedings be brought within the bounds of reason and the agencies' competence to deal with them.

Pennsylvania Gas and Water Co., 463 F.2d at 1246.

This rule applies whether a settlement agreement is contested before an agency, New Orleans Public Service, Inc. v. Federal Energy Regulatory Comm'n, 659 F.2d 509, 512 (5th Cir. 1981) (approval of a contested settlement is like the granting a motion for summary judgment), or whether a settlement participant merely fails to join in the settlement. Mobil Oil Corp., 417 U.S. at 312; United Municipal Distributors Group, 732 F.2d at 209; Triton Oil & Gas Corp., 712 F.2d at 1458-59; SoLa II, 483 F.2d at 893; Pennsylvania Gas and Water Co., 463 F.2d at 1249. In all events, parties should not be invited to "unwind the results of previous . . . settlement agreements by couching them as

"noncontested" and "non-adjudicated." In Re: El Tropicano, Inc., 128 B.R. 153, 159 (Bankr. W.D. Tex. 1991). See In Re: Northwest Central Pipeline Corp., 27 FERC P 61430, 1984 WL 56900 (1984) (intervenor is still bound to settlement agreement even though it did not agree to the settlement; any other result would "disrupt the orderly procedures and permit parties in all FERC proceedings to avoid FERC's decisions simply because they disagree").

FERC, itself, has warned settlement participants of the consequences of passively sitting back and neither objecting to nor executing a proposed settlement:

> We should note, however, that the nonsigning intervenors have been fully advised of the terms of the offer of settlement and given every opportunity to present any objections to its acceptance. Although they have been well aware of the importance of disposing of this controversy, the intervenors who have not signed the settlement agreement have not called to our attention any consideration which in their view would tend to weigh against acceptance. We do not mean by this, of course, to shift our responsibility, but, nevertheless, we are of the opinion that valid objections should be timely considered.

In Re: Union Oil Co. of California and Louisiana Land and Exploration Co., 23 F.P.C. 75, 1960 WL 83096 (1960). In order to ensure against a settlement participant engaging in a strategy of "passive opposition," FERC rules provide that a party that desires to preserve contested issues should obtain a severance of that issue from the rest of the settlement. 18 C.F.R. § 385.602(h). FERC has employed the severance tool to enable a party to preserve its rights to litigate a contested issue while approving uncontested portions of matters to "bring needed stability to the industry, end protracted litigation and thereby benefit customers." In Re: Duke Trading and Marketing Co., 117 FERC P 61039, 2006 WL 2881647 (2006).[13]

[13] It is undisputed that Constellation neither sought nor obtained severance in Devon Power LLC, et al.

Pursuant to the overwhelming weight of authority, the Order accepting the Settlement is equivalent to the granting of a summary judgment. Whether or not Constellation executed the Agreement, Constellation is bound to the terms of the Settlement (including Section VIII(A)) through the Order.

**3. The Doctrine Of Claim Preclusion Bars Constellation's Efforts From Obtaining Capacity Payments From Narragansett Electric And Rhode Island Ratepayers.**

The United States Supreme Court has reasoned that "when an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it, the courts have not hesitated to apply ***res judicata*** [claim preclusion] to enforce repose." University of Tennessee v. Elliott, 478 U.S. 788, 797-98 (1986); United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966); Bath Iron Works Corp. v. Director of Workers' Compensation Programs, 125 F.3d 18, 22-23 (1st Cir. 1997); Vilanova v. United States, 851 F.2d 1, 6 (1st Cir. 1988); El Tropicano, Inc., 128 B.R. at 159.

The doctrine applies when a settlement participant has had a full and fair opportunity to litigate claims or issues in the administrative proceeding, Bath Iron Works, 125 F.3d at 22, and therefore, applies when claims either were raised or "***could have been raised***" in the prior proceeding. Porn v. National Grange Mutual Insurance Company, 93 F.3d 31, 34 (1st Cir. 1996); Aunyx Corp. v. Canon U.S.A., Inc. 978 F.2d 3, 6 (1st Cir. 1992) (quoted language emphasized in the original); Figueroa v. A.T. Wall, 2007 WL 60940, 3 (D.RI. 2007). The purpose of the doctrine is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication." Allen v. McCurry, 449 U.S.

90, 94 (1980). See also Kale v. Combined Insurance Company of America, 924 F.2d 1161, 1165 (1st Cir. 1991), cert. denied, 112 S.Ct. 69 (1991) (purpose of doctrine is to avoid "claim-splitting").

In addition to the requirement that the administrative agency act in a quasi-judicial capacity, the First Circuit Court of Appeals has required the presence of the following three criteria in order for a court to find that the doctrine of claim preclusion applies: (i) a final judgment on the merits in the earlier proceeding, (ii) a sufficient identity of claims or issues must exist in the two proceedings, and (iii) an identity of parties or their privies in the two proceedings. E.g., Kale, 924 F.2d at 1165 (1st Cir. 1991); Figueroa, 2007 WL 60940 at 3.

An identity of parties or their privies exists if the parties are identical, or, if a nonparty "substantially controlled a party's involvement in the initial litigation." Gonzalez v. Banco Central Corp., 27 F.3d 751, 758 (1st Cir. 1994). See also New Hampshire Motor Transport Assoc. v. Town of Plaistow, 67 F.3d 326, 328 (1st Cir. 1995), cert. denied, 116 S.Ct. 1352 (1996) (privity established if a party "controlled or managed" the original state court litigation behind the scenes).

A sufficient identity of claims or issues exists if "both sets of claims—those asserted in the earlier action and those asserted in the subsequent action—derive from a common nucleus of operative facts." Gonzalez, 27 F.3d at 755; Kale, 924 F.2d at 1166. Under this "transactional" approach, the First Circuit Court of Appeals gives weight to such factors as whether the "facts are related in time, space and origin, whether they form a convenient trial unit and whether their treatment as a unit conforms to the parties' expectations." Porn, 93 F.3d at 34; Aunyx Corp., 978 F.2d at 7.

In the case at bar, it is undisputed that FERC was acting in a quasi-judicial[14] capacity when it approved the Settlement by means of the Order. Moreover, each part of the three-part Kale test is satisfied.

It is undisputed that the Order represents a final Order of FERC on the merits. Further, the parties or their privies in Devon Power LLC, et al. and this proceeding are identical. Constellation and the State were settlement participants in Devon Power LLC, et al.; the State and Constellation are a plaintiff and the defendant, respectively in the proceeding before this Court.[15]

Lastly, the claims or issues in this proceeding and Devon Power LLC, et al. are "identical." The facts underlying the Complaint in the case at bar and the approval of the Settlement in Devon Power LLC, et al., are closely related in "time, space, origin and motivation."

In Devon Power LLC, et al., Constellation did not report back to Judge Brenner regarding any opposition it had to the Settlement. Nor did Constellation file comments or an objection to the Settlement as required by FERC rules. By the representations, conduct and inaction of Constellation and/or its privy, Judge Brenner, the State and FERC were led to believe that the company did not oppose the Settlement. As a result of

---

[14] "A term applied to the action, discretion, *etc.* of public administrative officers or bodies, who are required to investigate facts, or ascertain facts, hold hearings, and draw conclusions from them, as a basis for their official exercise, and to exercise discretion of a judicial nature." Black's Law Dictionary at 650 (5th ed. 1983).

[15] Constellation also may be bound in this proceeding by another route as well, namely by the conduct of a putative privy in Devon Power LLC, et al., FPLE. FPLE's affiliate, FPL, had entered into an agreement to acquire control of Constellation through a merger transaction on or about December 19, 2005. The transaction was pending when the Settlement was executed by the State on March 6, 2006 and when FERC approved the Settlement on June 16, 2006. FPL and Constellation announced a termination of their merger on or about October 26, 2006. For the purposes of the application of claim preclusion, an issue of fact exists as to whether FPL substantially controlled or directed Constellation's actions in Devon Power LLC, et al.

this conduct, *etc*., the State became a Settling Party and FERC accepted the Settlement via the Order.

These operative facts are virtually identical to those that give rise to the pending proceeding. In the case at bar, it is this very same conduct of Constellation and/or its privy that led to the FERC's approval of Section VIII(A) of the Settlement via the Order. Further, it is the Settlement and Order that the State alleges bars Constellation from attempting to recover capacity payments from Narragansett Electric and Rhode Island's ratepayers.

The criterion of "trial convenience" is also satisfied. This factor "aims at conserving judicial or administrative resources." Porn, 93 F.3d at 36. Instead of filing an objection or comments to the Settlement as required by FERC rules, Constellation led Judge Brenner and the State, among others, to believe that Constellation did not oppose the Settlement. It would have been far "more convenient and efficient" for FERC "to have heard" Constellation's opposition to Section VIII(A) of the Settlement in Devon Power LLC, et al.

Lastly, "treating the underlying facts as a trial unit [before FERC]" would have conformed to all of the settlement participants' expectations. Constellation was clearly aware of Section VIII(A). Constellation further "knew" it possessed an obligation to report back to Judge Brenner regarding any opposition it had to the provision and to file written comments with FERC objecting to the provision. See Porn, 93 F.3d at 36 (party's claim barred because he knew facts relating to claim should have been alleged in original proceeding); Aunyx Corp., 978 F.2d at 8 (party's claim barred because it knew enough about the facts of its case to have been able to assert claim at the outset before FTC).

Simply stated, "one would reasonably expect" that Constellation's objections to Section VIII(A) and the rest of the terms of the Settlement would have been heard by FERC together in a single proceeding before the agency. Porn, 93 F.3d at 36; Figuerora, 2007 WL 60940 at 4 (case should have been brought "only once").[16]

The foregoing analysis convincingly shows that Constellation is bound by the terms of the Order approving and accepting the Settlement. The Settlement, moreover, is clear and unambiguous on its face: Constellation must make UCAP payments pursuant to the tariffs and market rates in effect when the Settlement was executed for the Transition Period. The State, therefore, is entitled to a declaratory judgment, among other relief, barring Constellation from obtaining UCAP payments from Narragansett Electric and Rhode Island ratepayers that conflict with these plain and unambiguous obligations that the Settlement imposes on Constellation. Constellation's motion to dismiss, therefore, must be denied.

## B. CONSTELLATION HAS WAIVED ITS RIGHT TO ATTACK THE AGREEMENT AND ORDER.

FERC Rule 602(f) provides a follows:

(f) Comments.

> (1) A comment on an offer of settlement must be filed with the Secretary who will transmit the comment to the Commission, if the offer of settlement was transmitted to the Commission, or to the presiding officer in any other case.

[16] Constellation opines that the "Settlement expressly mandates market rule changes." Constellation Reply at 11. The Settlement Agreement actually mandates the opposite proposition, namely the envisioned Market Rules must be "consistent with," and "in furtherance of," all the terms contained in the Settlement Agreement.

> (2) A comment on an offer of settlement may be filed not later than 20 days after the filing of the offer of settlement and reply comments may be filed not later than 30 days after the filing of the offer, unless otherwise provided by the Commission or the presiding officer.
>
> (3) Any failure to file a comment constitutes a waiver of all objections to the offer of settlement.
>
> (4) Any comment that contests an offer of settlement by alleging a dispute as to a genuine issue of material fact must include an affidavit detailing any genuine issue of material fact by specific reference to documents, testimony, or other items included in the offer of settlement, or items not included in the settlement, that are relevant to support the claim. Reply comments may include responding affidavits.

The Court of Appeals for the District of Columbia Circuit has held that under "Rule 602(f)(3)," "petitioners [are] required to raise or risk waiver of all their objections to the settlement during the 20-day comment period." Exxon Corp. v. Federal Energy Regulatory Comm'n, 114 F.3d 1252, 1260 (D.C. Cir. 1997). This is true even if petitioners have heard from the presiding Administrative Law Judge "whether or not petitioners would be severed from the agreement." Id. Under Rule 602(f)(3), the petitioners "cannot be heard to complain that they were unfairly surprised or never had any opportunity to submit all their objections…" Id.

An Administrative Law Judge of FERC has interpreted Rule 602(f)(3) in the same way. In Texas Gas Transmission Corp., 23 FERC 63043 (1983), Texas Gas filed a settlement with FERC, which resolved all but two issues. Id. The initial comment on the settlement expired on April 21, 1983. Id. On April 26, 1983, Texas Gas filed a motion requesting immediate certification to FERC. Id. According to Texas Gas, no useful purpose would be served by waiting the expiration of the date for filing reply comments as no comments had been received in opposition to the settlement. Id. The Judge granted

Texas Gas' motion, reasoning, "failure to file comments constitutes a waiver of all objections to the offer of settlement under Rule 602(f)(3)." Id. See also Eastern Shore Natural Gas Co. 30 FERC 63010 (1985) (where another FERC ALJ ruled that a failure to file comments "constitutes a waiver of all objections to the offer of settlement under Rule 602(f)(3)").

The First Circuit Court of Appeals has arrived at the same conclusion in an analogous setting. In Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980), the United States District Court for the District of Maine referred defendant's motion for summary judgment to a United State Magistrate for a recommendation. Id. at 604. The Magistrate filed his recommendation granting summary judgment on August 2, 1979 and forwarded the report to the parties on the same date. Id. Federal law provided that within ten days after being served with a copy of the recommendation, a party "may serve and file written objections" to such proposed finding and recommendations as provided by rules of the court. Id. The plaintiff did not file an objection to the recommendation within the ten-day time period, and the federal district court entered an Order on September 5, 1979, approving the recommendation dismissing the action. Id.

On appeal, the First Circuit Court of Appeals affirmed the decision of the district court. Id. at 605. The Court of Appeals reasoned that the word "may" should be construed as "shall." Id. If a party "wishes further consideration" from the court regarding a motion, he is required to file his objections with the court within the designated ten-day period. Id.

The First Circuit Court of Appeals has repeatedly reaffirmed the holding of Park Motor Mart. In Henley Drilling Co. v. Henley Drilling Co., 36 F.3d 143, 150-51 (1st Cir.

1994), the Court of Appeals held that cross-appellants' "claims" were "waived because of their "failure to object to the magistrate-judge's report and recommendation within the ten-day period prescribed by 28 U.S.C. § 636(b)(1)(C). Again, in Templeman v. United States Postal Service, 981 F.2d 1245 (1st Cir. 1992), the Court of Appeals reiterated that the "failure to raise objections to the Report and Recommendation waives the party's right to review in district court, and those not preserved by such objection are precluded on appeal."

The First Circuit Court of Appeals has also applied the Park Motor Mart waiver rule to the situation where an appellant seeks review of the findings of an administrative law judge in federal district court, the matter is referred to a magistrate, and the appellant fails to object to the magistrate's recommendation within the mandatory time-period. Ocasio Vazquez v. Secretary of Health and Human Services, 29 F.3d 619 (1st Cir. 1994); Borden v. Secretary Health and Human Services, 836 F.2d 4 (1st Cir. 1987). In these instances, the appellants were deemed to have waived his or her right to challenge the administrative law judge's findings.

In the case at bar, it is undisputed that Constellation did not file an objection or written comments to the Settlement. Constellation's noncompliance in this regard is not only contrary to Rule 602(f)(3), but also is no different than a litigant who fails to object to a federal magistrate's recommendation within the prescribed time-period for filing an opposition. See e.g., Park Motor Mart, 616 F.2d at 604.[17] A similar result should apply

[17] Constellation contends that Paragraph 7 of the Settlement precludes Constellation from waiving its rights to attack the Order. Constellation Mem. in Support of Motion to Dismiss State's Proposed Complaint at 15. By its terms, Paragraph 7 only applies to "Settling Parties"—parties designated on Pages 1 and 2 of the Agreement, not Constellation. Moreover, by its terms, Paragraph 7 does not absolve a party when he or she violates a FERC rule or the provisions of a settlement that is accepted and approved by FERC in an Order of the agency.

in the case at bar. By its conduct before FERC, Constellation waived all of its objections to the Settlement and Order, and is therefore, barred from attacking the Settlement and Order in this proceeding in any manner, including by raising the Mobile Sierra doctrine.[18]

## C. CONSTELLATION IS ESTOPPED FROM ATTACKING THE TERMS AND VALIDITY OF THE SETTLEMENT AND ORDER.

The doctrine of equitable estoppel requires proof that a statement or conduct by a person against whom the estoppel is claimed induced the person claiming estoppel to act or fail to act to his injury. E.g., Payphone LLC v. Brooks Fiber Communications of Rhode Island, 126 F. Supp. 2d 175, 180 (D.R.I. 2001); Schiavulli v. School Committee of the Town of North Providence, 334 A.2d 416, 419 (R.I. 1975). A party is judicially estopped from asserting a position in one legal proceeding, which is contrary to a position that it has asserted in another. Lydon v. Boston Sand & Gravel Co., 175 F.3d 6, 12 (1st Cir. 1999); Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988). Applying these principles to the case at bar, Constellation's motion to dismiss Count III on the ground that the State has not pled facts sufficient to make out *prima facie* case of estoppel is completely without merit.

### 1. The State Has Pled A Prima Facie Case Of Equitable Estoppel More Than Sufficient To Defeat Constellation's Motion To Dismiss

For the purposes of adjudicating Constellation's Rule 12(b)(6) motion, the Court must accept all well-pled facts and allegations as true and construe all reasonable inferences in the non-movant's favor. E.g., Toledo, 454 F.3d at 30; Hernandez, 367 F.3d

---

[18] For the reasons lucidly explained in Narragansett Electric's opposition papers, the Mobile Sierra doctrine is inapplicable in any event.

at 62. Applying this standard to the case at bar, the State has more than adequately pled a ***prima facie case*** of equitable estoppel sufficient to defeat Constellation's motion to dismiss. Each of the criteria that comprise the doctrine are present in the pending proceeding, namely a representation(s) or conduct resulting in the State's acting or failing to act to its injury. E.g., Payphone LLC, 126 F. Supp. at 180; Schiavulli, 334 A.2d at 419.

On January 31, 2006, Constellation represented to a representative of the State (and Judge Brenner), among others, that the company would oppose the FCM contained in the Settlement. By the conclusion of the meeting, Constellation was to report back to Judge Brenner and counsel to National Grid and the State if the company had any opposition to Section VIII(A) of the Settlement. At no time did Constellation report back to the State's counsel that the company had any opposition to Section VIII(A) of the Settlement. At no time did Constellation file an objection or comments with FERC regarding the Settlement as required by FERC's rules. Judge Brenner and the State were of the clear understanding that Constellation did not oppose the Settlement. Judge Brenner reported his understanding in this regard to FERC on April 11, 2006. Exhibit D at 2.

Had the State known that Constellation opposed Section VIII(A), the State would have opposed the Settlement in its entirety. The FCM would not have been established as the State was a "swing" settlement participant. Exhibit A, Para. 18. The State's ratepayers would not now be subject to Constellation's alleged claim under the PPAs of an "equitable adjustment" estimated by Constellation at between $100-$150 million. Exhibit A, Para. 19. The State has adequately pled a ***prima facie*** case of equitable

estoppel that is more than sufficient to defeat Constellation's motion to dismiss. See e.g., Toledo, 454 F.3d at 30; Hernandez, 367 F.3d at 62. Constellation's motion, therefore, should be denied.

### 2. Constellation Is Judicially Estopped From Attacking The Terms And Validity Of The Settlement And Order.

While "equitable estoppel focuses on the relationship between the parties to the prior litigation," the doctrine of "judicial estoppel looks to the connection between the litigant and the judicial system." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3rd Cir. 1988), cert denied, 109 S.Ct. 595 (1988). In the First Circuit, a party may not assert a position in one legal proceeding, which is contrary to a position that it has already asserted in another. Lydon, 175 F.3d at 12. Judicial estoppel's goals "are to maintain the integrity of the judicial system and to protect parties from opponents' unfair strategies." Lydon, 175 F.3d at 13; Patriot Cinemas, Inc. v. General Cinemas Corp., 834 F.2d 208, 214 (1st Cir. 1987). Judicial estoppel has been applied to bar a party that is under a duty to disclose, and then breaches that duty by "failing to disclose," thereby taking an inconsistent position in another proceeding. In the seminal case of Oneida Motor Freight, Inc. v. United Jersey Bank, the Third Circuit Court of Appeals held that a Chapter 11 debtor's failure to list a potential claim in a bankruptcy proceeding judicially estopped the debtor from pursuing the same claims in a subsequent federal court proceeding. Oneida Motor Freight, 848 F.2d at 419. According to the Third Circuit Court of Appeals, the current suit "speaks to a position clearly contrary to its Chapter 11 treatment of the bank's claim as undisputed." Id.

The First Circuit Court of Appeals has adopted the rule of Oneida Motor Freight. In Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc., 989 F.2d 570 (1st Cir. 1993), cert. denied, 114 S. Ct. 344 (1993), the Court of Appeals held that a party that failed to dislose a claim in a Chapter 11 proceeding was judicially estopped from asserting a prepetition claim in federal court. Payless Wholesale Distributors, 989 F.2d at 571. As in Oneida Motor Freight, "disclosure [was] important, in this case, not only to the bank as an adversary and as a creditor but to other creditors and to the bankruptcy court." The "silence" of the debtor in the bankruptcy court proceeding concerning its present claim was "deafening." Id.

The First Circuit Court of Appeals, further, has not limited the application of the doctrine of judicial estoppel to bankruptcy matters. The Court of Appeals has applied the doctrine in numerous instances to bar a party from taking inconsistent positions in different proceedings. See Alternate System Concepts, 374 F.3d at 34 (party judicially estopped from resurrecting breach of contract claim when it had previously characterized its claim as a breach duty to negotiate in good faith); Lydon, 175 F.3d at 13 (employer judicially estopped from asserting employee's action preempted when it had asserted the action was not preempted before an arbitrator); Patriot Cinemas, 834 F.2d at 214 (party judicially estopped from reviving antitrust claim in federal court when it had asserted in state court that it would not pursue the claim).

Just as importantly, the First Circuit Court of Appeals has observed that while a litigant's "stated intention not to pursue certain claims is different from the 'classic' case of judicial estoppel, such inconsistencies may present an even *stronger* argument than do the classic cases for application of the doctrine." Alternate System Concepts, 374 F.3d at

34 (emphasis in original). See also Wagner v. Professional Engineers in California Government, 354 F.3d 1036, 1050 (9th Cir. 2004) (party estopped from recharacterizing a claim after Court was led to believe that the claim was of a different nature). Whether the application of estoppel fits into the "classic case" or is a case of non-disclosure when there is a duty to disclose, the guiding inquiry in the First Circuit is whether the litigant is "playing fast and loose with the courts." Patriot Cinemas, 834 F.2d at 212; Payless Wholesale Distributors, 989 F.2d at 571.

The application of these general and specific principles to the case at bar yields one result: Constellation is judicially estopped from attacking the terms of the Settlement and Order, and the State is entitled to a declaration and/or other relief, that Constellation is barred from seeking capacity payments from Narragansett Electric and Rhode Island ratepayers. Constellation was under a duty to disclose its comments regarding Settlement to Judge Brenner and FERC or forever waive any objections it had or might have had to the Settlement. FERC Rule 602(f)(3) expressly provides that in the proceedings before FERC, "any failure to file a comment constitutes a waiver of all objections to the offer of settlement." 18 C.F.R. § 385.602. This obligation is no different from, and no less critical to the integrity of the process before FERC, than the duty of a debtor to disclose its claims in a bankruptcy proceeding, Oneida Motor Freight, 989 F.2d at 571, or, the duty of a party to disclose a position he or she has taken in a prior proceeding that is contrary to the position the party takes before this Court involving the same parties and subject matter. E.g., Patriot Cinemas, 834 F.2d at 214.

In the pending action, Constellation contends, for a variety of reasons, that Section VIII(A) of the Settlement does not bind the company, and repeatedly opposes

the clear and unambiguous meaning of Section VIII(A). For example, Constellation alleges that its "determination not to object to the Settlement Agreement cannot form the basis for finding that Constellation waived an express right in the PPAs." Constellation Mem. in Support of Motion to Dismiss Narragansett Electric's Complaint at 20-24; Constellation Reply at 13; Constellation Mem. in Support Motion to Dismiss State's Proposed Complaint at 13.

Each ground that Constellation raises in the case at bar in order to avoid or oppose the Settlement and Section VIII(A) stakes a position that is directly contrary to that which Constellation led Judge Brenner, FERC and the State to believe constituted Constellation's position with respect to the Settlement, namely that Constellation did not oppose the Settlement and Section VIII(A). Constellation did not file an objection or comments with FERC regarding the Settlement as required by FERC's rules. At no time between February 1, 2006 and March 6, 2006 did Constellation report back to the State's counsel (and on information and belief Judge Brenner as well) that it had any opposition to Section VIII(A) of the Agreement. Judge Brenner and the State were of the clear understanding that Constellation did not oppose the Settlement, including Section VIII(A). Judge Brenner reported his understanding in this regard to the FERC on April 11, 2006. Exhibit D at 2. FERC accepted the Settlement by the Order on June 16, 2006.

Constellation's representations and conduct before Judge Brenner and FERC, along with the company's "silence" when it had a duty to disclose, far surpass the standard threshold for triggering the application of judicial estoppel. The representations and conduct, combined with Constellation's "deafening silence," when it had an affirmative duty to disclose, actually misled Judge Brenner, FERC and the State to

believe that Constellation did not oppose the Settlement and Section VIII(A). See Payless Wholesale Distributors, 989 F.2d at 571. Constellation should not be permitted to "play fast and loose" with FERC (and now with this Court) in this manner. Id.

Lastly, although not a mandatory component of a claim of judicial estoppel, it is clear that absent a ruling of estoppel, Constellation will derive an unfair legal advantage or benefit as a result of its contradictory positions. See Alternate Systems Concepts, 374 F.3d at 33 ("benefit not a *sine qua non* to the applicability of judicial estoppel" but evidenced by litigant's attempt to switch legal position's in "mid-stream" to gain tactical advantage). See also Patriot Cinemas, 834 F.2d at 214 ("harm to an opponent is not an invariable prerequisite to judicial estoppel") Constellation may be permitted to secure an estimated $100-$150 million in capacity payments from Narragansett Electric and ratepayers to which it is not entitled.

As a matter of law, then, Constellation is judicially estopped from attacking the terms and validity of the Settlement. Constellation may not now contend in this proceeding that the company is not bound to comply with the terms of the Settlement, or, that the Settlement, including Section VIII(A), are invalid. Constellation's motion, which seeks dismissal of the Complaint, on the ground that the State has not pled a *prima facie* case of estoppel, should be denied.

## V. CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court deny Constellation's Motion to Dismiss to dismiss, or, in the Alternative to Compel Arbitration and Stay Proceedings, and further that the Court deny Constellation's Motion to Dismiss State's Proposed Complaint.

Respectfully submitted,

STATE OF RHODE ISLAND
PROVIDENCE PLANTATIONS and
the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Dated: February 12, 2007

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**CERTIFICATE OF SERVICE**

I certify that on February 12, 2007, a copy of the within memorandum of law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov