**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| The Narragansett Electric Company,<br>Plaintiff,<br><br>v.<br><br>Constellation Energy Commodities Group, Inc.,<br>Defendant. | ) | Dkt. No. 06-404S |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PROPOSED COMPLAINT OF STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS**

Constellation Energy Commodities Group, Inc. ("Constellation") submits this reply in support of its motion pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all counts in the complaint filed by the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively, the "State"). Constellation files this reply on a conditional basis, pending determination of the State's motion to intervene, pursuant to the Court's January 19, 2007 Order. The State's opposition fails to demonstrate any grounds for denying Constellation's motion to dismiss the State's proposed complaint for lack of subject matter jurisdiction, lack of standing, and failure to state a claim on which relief can be granted.[1]

**REPLY**

The State's opposition—by arguing for an interpretation not drawn from the plain language of the Settlement Agreement, but rather supplied by the State—confirms that its claims

[1] Capitalized terms not defined herein have the meaning assigned in Constellation's opening memorandum in support of the motion.

depend on the Court assuming what FERC would deem reasonable. The State tries to deflect attention from that fact by contending that Constellation cannot attack the Settlement Agreement, but that effort is unavailing since the Settlement Agreement does not say what the State contends. Indeed, nothing submitted to FERC by the State or any other party alleges any claim to abrogating Constellation's right to an equitable adjustment under the PPAs (much less establishing a case under the Federal Power Act ("FPA") for modifying wholesale power contracts protected by the filed rate doctrine). Constellation had no duty to object to a proposed Settlement Agreement that on its face and in the supporting submissions never once mentions any claim to abrogating Constellation's PPA rights. By its express terms, the Settlement Agreement did not change or seek to change existing contracts, which means Constellation retains its right under the PPAs to seek an equitable adjustment from NEC.

Moreover, the State's allegations of reliance are palpably deficient because Constellation never signed the Settlement Agreement. The State (which signed the Settlement Agreement on March 6, 2006) cannot credibly claim to have relied on a report of the settlement judge (filed April 11, 2006), or Constellation not filing comments on the Settlement Agreement (initial comments were due March 27, 2006, and reply comments were due April 5, 2006)—because those events all took place ***after*** the State signed the Settlement Agreement. Accordingly, the State has no cognizable claim to relief before the Court.

## I. THE COURT SHOULD DISMISS THE STATE'S COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION

The State incorporates NEC's Opposition to Constellation's motion to dismiss NEC's complaint regarding the subject matter jurisdiction of this Court. The State's Opp'n to

Constellation's Mot. to Dismiss the State's Compl. ("State's Opp'n") at 10 n.8.[2] The State superficially argues that cases cited by Constellation regarding the filed rate doctrine and FERC's exclusive jurisdiction are inapplicable because the relief sought here is a declaratory ruling. *Id.* But the State cannot evade the filed rate doctrine merely by pleading a declaratory judgment claim, especially where, as here, the gravamen of its (and NEC's) claim seeks abrogation of explicit rights protected under FERC's exclusive authority. The protection for the PPAs inherent in FERC's exclusive jurisdiction applies to more than just suits for damages, and the State does not seriously dispute that the filed rate doctrine bars any court relief that affects rates.

The State's opposition underscores that its complaint pleads claims sounding in equity for relief barring Constellation from enforcing its contractual rights, which this Court cannot grant without usurping FERC's authority. Like NEC's, the State's claims depend on this Court exercising discretion over what a reasonable rate under the PPAs would be considering the circumstances giving rise to the Settlement Agreement and FERC's approval thereof (*i.e.*, that it would be reasonable to bar Constellation from enforcing its PPA rights because of the State's alleged conduct). The FPA vests FERC with sole authority over such matters and, per the filed rate doctrine, the Court lacks subject matter jurisdiction to affect the rates in the PPAs in any way. *See, e.g., Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966 (1986) (filed rate doctrine is "not limited to 'rates' per se"); *Arkansas Louisiana Gas Co. v. Hall (Arkla)*, 453 U.S. 571, 577-79 (1981); *Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246,

---

[2] The State's decision not to advance any independent basis for the Court's subject matter jurisdiction confirms that NEC will adequately represent the State's interests such that intervention is not appropriate. *Cajun Elec. Power Coop. v. Gulf States Utils.*, 940 F.2d 117, 120 (5th Cir. 1991) (state public service commission's contention that "parties will not present information to the district court on the impact of its decision on ratepayers" did not meet the inadequacy requirement for intervening). It also proves the State's faith in NEC's ability to protect the State's interests.

251-52 (1951); *Transmission Agency of N. Cal. v. Sierra Pac. Power Co. (TANC)*, 295 F.3d 918, 922 (9th Cir. 2002) (filed rate doctrine bars claims requiring court to assume how FERC would act).

The State's opposition tries unconvincingly to distinguish its claims from those barred by the filed rate doctrine, but fails because the State never addresses the FPA's complete preemption over all matters affecting wholesale power contracts. *See, e.g.*, *California v. Dynegy*, 375 F.3d 831, 843 (9th Cir. 2004). While a federal court undoubtedly has subject matter jurisdiction to enforce claims that the federal regulatory scheme promulgated by FERC preempts conflicting state action (*e.g.*, actions by the state regulator to disallow FERC mandated charges, *see, e.g., Nantahala*, 476 U.S. 953), the State does not assert such a claim here. Rather, the State's claims seek enforcement of the Settlement Agreement beyond its literal meaning, and without any explicit finding by FERC that Constellation's equitable adjustment rights are contrary to the public interest.

No case cited by the State (or NEC) upholds judicial relief over such a claim. In *TANC*, for example, the Ninth Circuit explained that "the filed rate doctrine has prohibited not just a state court (or a federal court applying state law) from setting a rate different from that chosen by FERC, *but also from assuming a hypothetical rate different from that actually set by FERC*." *Id.* (emphasis added). *TANC* observed that the Supreme Court has "expanded the reach of the filed rate doctrine beyond just rates . . . [to] any allocation of power that directly affects rates [] protected by the filed rate doctrine." *Id.* (relying on *Nantahala*, 476 U.S. at 966).

The State's complaint violates the filed rate doctrine because granting relief necessarily entails the Court assuming that FERC would find it reasonable to bar Constellation from seeking an equitable adjustment under the PPAs based on inferences and assumptions made from the

Settlement Agreement, as opposed to executing a clear directive from FERC to that effect. Strain as the State does, the operative language of Section VIII(A) does not say that Constellation cannot seek an equitable adjustment under the PPAs; nor does any submission to FERC.

In any event, because Constellation is not a party to the Settlement Agreement, any abrogation of Constellation's rights under the PPAs could only come through a FERC order making particularized findings about the PPAs. *See Town of Norwood v. FERC*, 202 F.2d 392, 400 (1st Cir. 2000) (FERC can override contract only when "it finds that the contract is contrary to the public interest"); *Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 710-11 (D.C. Cir. 2000) (contract modification allowed only upon particularized findings that the public interest requires it). FERC alone has authority to modify Constellation's PPAs, and FERC ***has not*** entered any order that finds the public interest requires abrogating Constellation's equitable adjustment rights. *Ne. Utils. Serv. Co. v FERC*, 55 F.3d 686, 689-91 (1st Cir. 1995) (describing the "public interest" test that must be satisfied to abrogate contracts protected by the filed rate doctrine).

The State's attempt to avoid the filed rate doctrine by styling its complaint as one for a declaratory ruling fails because neither Settlement Agreement, nor any FERC order says Constellation's right to an equitable adjustment under the PPAs has been abrogated. That plain reading accords with other parts of the Settlement Agreement (conveniently overlooked by the State) providing that not opposing the settlement shall not be deemed to conflict with or waive any existing contractual rights. Settlement Agreement at p. 5 ¶ 7.[3] Tellingly, the State offers no explanation for how its construction of Section VIII(A) comports with the provisions of the

---

[3] The Settlement Agreement is attached as Exhibit E to Constellation's Motion to Dismiss NEC's Complaint.

Settlement Agreement preserving existing contractual rights. The State also omits to explain why its submissions to FERC never mention the alleged abrogation of Constellation's rights.

Furthermore, none of the cases cited by the State regarding the authority of courts to interpret FERC orders apply here, where the Settlement Agreement and FERC Order[4] provide nothing specific for the Court to effectuate. The State first cites *Metrophones Telecomm., Inc. v. Global Crossing Telecomm., Inc.*, 423 F.3d 1056, 1077 (9th Cir. 2005), but in that case the plaintiff "sought recovery for unjust enrichment in the exact amount that it was entitled to be paid under the federal regulations and, consequently, *would not require the district court to determine a reasonable price*." *Id.* (emphasis added). Notably, the court in *Metrophones* distinguished its case from a prior FERC case, noting that "because [FERC] has exclusive authority to determine the reasonableness of wholesale rates, a plaintiff's claim was preempted insofar as it required the district court, at some point, to determine the fair price of the electricity that was delivered under the contract." *Id.* (quoting *Pub. Util. Dist. No. 1 of Grays Harbor County Wash. v. Idacorp Inc. (Grays Harbor)*, 379 F.3d 641, 647-48 (9th Cir. 2004)) (internal quotation marks omitted). Here, nothing explicit exists as it did in *Metrophones*; rather, the State's (and NEC's) claims depend on the Court determining that it is fair to deny Constellation its contractual rights because of what the State thought Section VIII(A) meant.

The State next cites *New Orleans Public Service, Inc. v. New Orleans (NOPSI)*, 782 F.2d 1236 (5th Cir. 1986), *opinion withdrawn in part,* 798 F.2d 858 (5th Cir. 1986), for the proposition that it is entitled to a declaratory ruling "that Constellation is required to *comply* with the … [S]ettlement [A]greement[.]" State's Opp'n at 10 n.8. But that case merely recognized

---

[4] *Devon Power LLC*, 115 FERC ¶ 61,340 (2006) (Mot. to Dismiss NEC's Compl., Ex. F, "FERC Order").

federal court jurisdiction over preemption claims. *Id.* at 1242.[5] It does not hold that this Court may grant declaratory relief that has the effect of abrogating Constellation's rights under the PPAs.

The State likewise misplaces reliance on *City of Cleveland v. Cleveland Elec. Illuminating Co.*, 570 F.2d 123 (6th Cir. 1978), because there the court enforced Federal Power Commission orders directing the City (explicitly named in the FPC orders at issue) to pay charges enumerated in the orders and underlying contracts. *Id.* Those agency orders were clear and executable. Nothing like that exists here because FERC has not issued any order ruling that the public interest requires abrogating Constellation's right to an equitable adjustment under the PPAs.

Finally, the State's reference to *Grays Harbor* supports Constellation's position. 379 F.3d 641. The Ninth Circuit noted that Grays Harbor "'cast its action' as a simple question of contract formation[.] . . . [But i]n its current form, Grays Harbor's complaint seems to require the district court, at some point, to determine the fair price of the electricity that was delivered under the contract. This determination is clearly within FERC's jurisdiction for determining the reasonableness of wholesale rates." *Id.* at 648. The court held that the relief sought by Grays Harbor was barred per the filed rate doctrine. The court granted Grays Harbor leave to amend its complaint, but it did so only because a complaint seeking relief ***as to contract formation issues*** are issues that may be decided by a court:

> A complaint that merely seeks declaratory relief as to contract formation issues would not necessarily intrude upon the rate-

[5] The First Circuit has likewise recognized the right of a utility to sue in federal court to enjoin a local regulator from denying recovery of wholesale costs incurred by mandate of the FERC. *See, e.g.*, *PSNH v. Patch*, 167 F.3d 15, 27 (1st Cir. 1998). Indeed, those decisions follow the Supreme Court's rulings in *Nantahala*, 476 U.S. 953 and *Miss. Power & Light Co. v. A.G. of Miss.*, 487 U.S. 354, 375 (1988) ("The reasonableness of rates and agreements regulated by FERC may not be collaterally attacked in state or federal courts").

> setting jurisdiction of FERC. . . . Therefore, we grant Grays Harbor leave to amend. . . . Any amended complaint must be narrowly drafted to seek declaratory relief only as to issues of contract formation. More specifically, it must not require the district court to make a determination as to what the "fair" rate would have been. Should Grays Harbor eventually prevail and receive a determination that no valid contract exists, Grays Harbor may not turn to the district court for monetary relief. Grays Harbor's only avenue for relief at that point, if any exists, would be with FERC.

*Id.* at 652-653 (internal marks, footnotes, and citations omitted).

Per *Grays Harbor*, the filed rate doctrine bars the Court from rendering any judgment that would affect the rates in the PPAs (including the right to an equitable adjustment), as NEC and the State seek. *Id.* That decision shows that the Court could entertain contract formation issues, but no such dispute exists here. Accordingly, the Court should dismiss Counts I and II for lack of subject matter jurisdiction.

The Court, likewise, lacks jurisdiction over the State's estoppel claim (Count III) because it too depends on assuming FERC meant the Settlement Agreement to effect abrogation of Constellation's PPA rights. Laying aside the complete lack of any FERC directive addressed to the PPAs, the State's conclusory allegations provide no basis upon which this Court could properly ignore the express provision of the Settlement Agreement not prejudicing contractual rights based on commenting or not on the Settlement Agreement. *See* Settlement Agreement at p.5 ¶ 7. Further, the State's contention about what the State, Constellation, or NEC supposedly said or did in conjunction with formation of the Settlement Agreement requires the Court to violate the express provision rendering communications leading to formation of the Settlement Agreement privileged and confidential under FERC's rules of practice:

> The discussions among the parties related to this Settlement Agreement and the Term Sheet took place within the context of settlement discussions concerning matters covered herein. Discussions leading up to this Settlement Agreement and the Term Sheet, the finalization of this Settlement Agreement and the Term

> Sheet, and any drafts of those documents, and any other documentation that reflects the negotiation of this Settlement Agreement and the Term Sheet are privileged and confidential in accordance with the applicable sections of the FERC's Rules of Practice and Procedure, the Federal Rules of Evidence and any other applicable rules of evidence.

*Id.* at ¶ 8 at p.5. Granting the State relief on its Count III requires the Court to assume how FERC would apply its rules of practice, and to usurp FERC's authority over the extensive proceedings leading to the Settlement Agreement and FERC's approval of it.

Even if the Court finds that it has concurrent jurisdiction with FERC over the dispute here, the Court should nonetheless abstain based on FERC's primary jurisdiction over this dispute, especially since the State and NEC seek a declaratory judgment about FERC's intentions. *Allnet Commc'n Serv., Inc. v. Nat'l Exch. Carrier Assoc., Inc.*, 965 F.2d 1118, 1121 (D.C. Cir. 1992). Federal declaratory judgments, like other forms of equitable relief, are available as a matter of judicial discretion, exercised in the public interest, not as a matter of right. *Id.* (relying on 28 U.S.C. § 22101 ("any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Declaratory judgments "are not to be used to pre-empt and prejudge issues that are committed for initial decision to an administrative body." *Allnet Commc'n*, 965 F.2d at 1121 (quoting *Pub. Serv. Comm'n*, 344 U.S. at 246)) (citation omitted). Because the relief the State and NEC seek requires FERC's special expertise, uniform interpretation, and regulatory oversight, FERC has primary (if not exclusive) jurisdiction over the dispute. *Arkansas Louisiana Gas Co. v. Hall*, 7 FERC ¶ 61,175, at 61, 322

(1979).[6] Accordingly, the Court should dismiss this suit based on FERC's exclusive or primary jurisdiction over the dispute.

## II. THE STATE'S CLAIM IS NON-JUSTICIABLE AND SHOULD BE DISMISSED FOR LACK OF STANDING

The State offers nothing new to meet its burden to establish standing (a constitutional requirement that must be met in every case) beyond the scant argument in the State's Reply supporting intervention. State's Opp'n at 10 n.8. The State concedes, as it must, that it has no standing under the PPAs because it is not an intended third party beneficiary to those contracts. The State claims only that it has standing under the Settlement Agreement because the Rhode Island legislature apparently abdicated its right to a prudence review of NEC's retail rates.

While the State applies a declaratory judgment standard, the State nevertheless bears the burden of demonstrating injury-in-fact, which it fails to meet. Contrary to the State's argument, Constellation participated in no illegal conduct; rather, Constellation seeks an equitable

---

[6] The Court should remain mindful of FERC's position on its primary jurisdiction over regulatory matters. In *United Illuminating Co. v. Dominion Energy Mktg. Inc.*, FERC discussed the need for its oversight in matters involving its regulatory responsibilities and policies with regard to provisions that it had previously accepted:

> [W]e find that it is appropriate for the Commission to exercise its primary jurisdiction over the dispute. First, the Commission has special expertise regarding the responsibility for congestion costs and losses under SOS agreements, such as the PSA at issue in this proceeding. Concepts such as "transmission congestion costs" and "reliability must-run," which may be unfamiliar to a court, are subjects frequently addressed by the Commission. Moreover, the Commission previously determined the need for, and accepted as just and reasonable, the Reliability Cost Tracker charges over which the parties now dispute. Second, while the contract at issue may be unique, there is nonetheless a need for consistent application and understanding of terminology used in the market design approved by the Commission. Third, the matters raised in the complaint are important in relation to the regulatory responsibilities of the Commission.

111 FERC ¶ 61, 224, at 62,023 (2005); *see also PPL Elec. Utils. Corp.*, 101 FERC ¶ 62, 546 (ruling on agreement because the agreement, "which PPL asks us to interpret, was approved by the Commission, it was entered into by the parties as a result of the evidentiary hearing procedures established by the Commission in the Stranded Cost Order and was negotiated and agreed to by the parties following the development of an extensive record in that proceeding. The issues . . . are directly related to the . . . policies and guidelines set forth by the Commission").

adjustment from NEC pursuant to an explicit right in the PPAs. The relationship between the State and NEC is separate and distinct from the contractual relationship between Constellation and NEC. Regardless of how the State portrays itself, its actions here seek nothing more than to interfere with Constellation's freely bargained-for right to an equitable adjustment under the PPAs.

Because subject matter jurisdiction is a constitutional requirement, litigants cannot confer federal court jurisdiction through consent, contract, or the like. *Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (U.S. 1982); *Espinal-Dominguez v. Puerto Rico*, 352 F.3d 490 (1st Cir. 2003) (stating that "litigants cannot confer subject matter jurisdiction on a federal court by 'indolence, oversight, acquiescence, or consent'") (quoting *United States v. Horn*, 29 F.3d 754, 768 (1st Cir. 1994)). Under this principle, the State cannot contrive subject matter jurisdiction by enacting legislation that supposedly abdicates its right to ensure that NEC's rates include only reasonably and prudently incurred costs in wholesale contracts. The State cannot conjure subject matter jurisdiction over its claim by giving up rights to NEC. Accordingly, the State has no injury-in-fact from Constellation's action to exercise its PPA rights.

## III. THE STATE'S COMPLAINT FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

### A. The Settlement Agreement does not bar Constellation from recovering an equitable adjustment

The State intones like a mantra that Section VIII(A) is clear and unambiguous on face, but that claim strains credibility because to explain its putative meaning the State has to import words from outside the Settlement Agreement (and also absent from any FERC order or submission to FERC). *See, e.g.,* State's Opp'n at 12. One need look no further than the actual

language of Section VIII(A) to determine that the provision says nothing about barring Constellation from exercising its PPA rights. Indeed, the State's concession that Section VIII(A) preserves "the then current Market Rules and tariffs" seemingly admits that Constellation's rights under the PPAs were not abrogated by the Settlement Agreement. *Id.*

The State's claim that Constellation is bound by the Settlement Agreement and the FERC Order is inapposite because Constellation does not contend otherwise. The State reads into the Settlement Agreement an effect on the PPAs that is not stated in the Settlement Agreement, any submission to FERC, or any order by FERC. Instead of explaining these conspicuous omissions, the State simply ignores them. FERC's silence on the PPAs, however, is fatal to the State's claims because the PPAs are protected by the filed rate doctrine and, so, cannot be modified *sub silentio.*[7]

Abrogation of Constellation's equitable adjustment rights could occur only upon FERC finding that ***the PPAs*** so adversely impacted the public interest as to require abrogation. *See, e.g., Boston Edison Co. v. FERC* (*BECo*), 233 F.3d 60, 68 (1st Cir. 2000) (holding that FERC may only override contract rates protected by the *Mobile-Sierra* doctrine "by determining that they are contrary to the public interest"); *Texaco Inc. v. FERC*, 148 F.3d 1091, 1096-97 (D.C. Cir. 1998) (ruling that "the public interest necessary to override a private contract . . . requires analysis of the manner in which ***the contract*** harms the public interest and of the extent to which abrogation or reformation mitigates ***the contract's*** deleterious effect") (emphasis added). Nothing in the Settlement Agreement finds that it is in the public interest to bar Constellation's equitable adjustment rights under the PPAs.

---

[7] The State also ignores the provisions of the PPAs allowing contractual changes only when made in writing and providing that the failure to insist on specific performance does not effect a waiver of any right under the PPAs. *See* Constellation Reply in Support of Mot. to Dismiss NEC Compl. at 13, 17 n.10.

**B. The State fails to plead a cognizable waiver claim**

The State claims that Constellation waived its right to attack the Settlement Agreement, but Constellation is not attacking the Settlement Agreement—it seeks only to enforce its contractual rights under the PPAs. The State references FERC Rule 602(f), 18 C.F.R. § 385.602(f), which states that the failure to comment on an offer of settlement constitutes a waiver, but that affect refers to a waiver of the ability to later object to that settlement. Whatever the effect of FERC Rule 602, no FERC order bars Constellation from pursuing its equitable adjustment claim because neither the Settlement Agreement, nor any submission to FERC pleads a case under section 206 of the FPA for FERC to modify Constellation's PPA rights, and because no FERC order granted that relief.

The State claims that Constellation cannot claim it is unfairly surprised by the Settlement Agreement, but that claim is ironic considering Constellation did not sign the Settlement Agreement and the State purports to rely on events post-dating its signature. Even so, the State's response is a deflection—it does not address Constellation's arguments that the State fails to plead a claim on which relief can be granted. The State's opposition cites to no case ruling that FERC can abrogate rights protected by the *Mobile-Sierra* doctrine without making findings about the public interest impact requiring such relief—none exists.

Laying aside that the State identifies no consideration that would bind Constellation to any promise, the State insists that Constellation had a duty to tell the State it did not consent to the Settlement Agreement. That claim strains credulity because Constellation had previously told the State (and NEC) that it did not consent and, obviously, Constellation's decision not to

sign the Settlement Agreement demonstrated for all that Constellation did not consent to the changes prescribed by the Settlement Agreement for signatories.[8]

In the absence of Constellation's assent to the changes prescribed by the Settlement Agreement, the State (or NEC) could only get Constellation's equitable adjustment rights abrogated by ***pleading and proving*** a claim under section 206 of the FPA. *BECo.*, 233 F.3d at 68; *Texaco*, 148 F.3d at 1096-97. When the State (and NEC) did not plead any claim under FPA section 206 to abrogate the equitable adjustment right in the PPAs, Constellation had no obligation to file with FERC any "opposition." Simply put, in the absence of an affirmative claim to relief under FPA section 206, Constellation had no challenge to answer. Consequently, because the State (and NEC) never pled (much less, proved) any claim to relief, Constellation waived none of its PPA rights by not opposing the Settlement Agreement.

**C. The State fails to state an estoppel claim**

The State also argues that Constellation is estopped from attacking the Settlement Agreement, but that merely erects a straw man (*i.e.*, Constellation attacking the Settlement Agreement) that does not exist here. Constellation seeks only to enforce its rights under the PPAs—not to attack the Settlement Agreement.

The State claims that all of the elements of estoppel are met because alleged statements or conduct of Constellation supposedly induced the State to become a party to a Settlement Agreement, which it would not have otherwise joined. First, Constellation bears no responsibility for the State's view that the Settlement Agreement said anything other than what it says. Constellation did not need to object to Section VIII(A) because neither the Settlement

[8] Constellation also voted against the Settlement Agreement in a caucus held by NEPOOL on March 3, 2006.

Agreement, nor any submission to FERC pled a cognizable claim under FPA section 206 for abrogating Constellation's equitable adjustment rights.

The State's alleged reliance on the report of FERC Settlement Judge Brenner—filed April 11, 2006, after the State, but not Constellation had signed the Settlement Agreement—is palpably deficient. The State's contention about Constellation not filing any objection to the Settlement Agreement also purports to rely on events (the March 27, 2006 deadline for initial comments on the Settlement Agreement and the April 5, 2006 deadline for reply comments) that post-date by weeks when the State signed. The State obviously cannot rely on subsequent events to take prior action. Indeed, the State never identifies any action or statement by Constellation ***before*** the State signed the Settlement Agreement inconsistent with Constellation's objection to (and March 3, 2006 vote against) the Settlement Agreement.

Most significantly, the State pleads no basis for explaining why its alleged reliance is reasonable when the State apparently signed the Settlement Agreement in the face of Constellation not signing and without nailing down why Constellation declined to sign it. The State also fails to establish that Constellation intentionally induced the State's prejudicial reliance.[9] Accordingly, Constellation's alleged conduct is not the type of unambiguous conduct required to establish estoppel. *R.I. Hosp. Trust Nat'l Bank v. Varadian*, 647 N.E.2d 1174, 1178 (R.I. 1995).

[9] Besides, the State realized other benefits from the Settlement Agreement, which it never denies favorably influenced its decision to execute that agreement.

### D. The State's preclusion arguments do not save its complaint from dismissal

#### 1. *Res judicata* and collateral estoppel do not bar Constellation from recovering an equitable adjustment

##### a. Legal standard for *res judicata* and collateral estoppel

The First Circuit set forth the "federal preclusion principles" as follows: "(1) both the . . . proceedings involved the same issue of law or fact; (2) the parties actually litigated the issue in the [prior] proceeding[]; (3) the [first] court actually resolved the issue in a final and binding judgment . . .; and (4) its resolution of that issue of law or fact was essential to its judgment, i.e., necessary to its holding." *Global Naps, Inc. v. Mass. Dep't of Telecomm. and Energy*, 427 F.3d 34, 44 (1st Cir. 2005) (quoting *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973 (1st Cir. 1995)) (alteration in original). The purpose of the common-law preclusion doctrines is the "judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise." *Astoria Fed. Savings & Loan Assoc. v. Solimino*, 501 U.S. 104, 107 (1991). *Res judicata* or claim preclusion regards the "effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). Collateral estoppel or issue preclusion regards the "effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." *Id.*[10]

[10] As this Court has noted, more caution must be given to the application of offensive, non-mutual collateral estoppel. *Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 307 (D.R.I. 2004). Among other reasons, differing burdens of proof is one reason to deny collateral estoppel. *Bath Iron Works Corp., Birmingham Fire Ins. Co. v. Dir., Office of Workers' Compensation Programs, U.S. Dep't of Labor*, 125 F.3d 18, 21 (1st Cir. 1997).

**b. *Res judicata* and collateral estoppel do not apply to this case**

First, the State's assertion of a preclusion doctrine is untimely. The State waited to seek intervention until the motion to dismiss NEC's complaint was already fully briefed. The State failed to raise this doctrine in its response to that motion to dismiss, failed to raise it in its proposed complaint, failed to raise it in any of its intervention briefing, and now in its final brief before the hearing next week raises this doctrine for the first time. The State should be barred from doing so. That being said, neither *res judicata* nor collateral estoppel apply here.

As the State concedes, for a preclusion doctrine to apply based on agency action, the agency must have been acting in a quasi-judicial capacity. The State claims that it is undisputed that FERC was acting in a quasi-judicial capacity, but both the Settlement Agreement and the explanatory statement submitted to FERC expressly recite that the Settlement Agreement has no precedential effects:

> The issues being settled have major policy implications: This case presents the fundamental policy issue of how to design a capacity market in order to resolve reliability compensation issues. ***However, the resolution reflected in this settlement is, by its nature and specific terms, non-precedential.***

Explanatory Statement in Support of Settlement Agreement ("Explanatory Statement") at 17-18.[11]

> FERC's approval of this Settlement Agreement ***shall not constitute approval of or precedent regarding any principle or issue in Docket Nos. ER03-563-030 and ER03-563-055 before the FERC.***

Settlement Agreement at p.5 ¶ 9.A. (emphasis added).

Furthermore, an administrative determination that is not arrived at using minimum procedural safeguards carries little weight. Restatement (Second) of Judgments § 83 cmt. B

[11] The Explanatory Statement is attached as Exhibit E to Constellation's Motion to Dismiss NEC's Complaint.

(1982). Here, FERC expressly "did not make a merits decision on each element of the settlement package." *Devon Power LLC*, 117 FERC ¶ 61, 133 at PP33-35 (2006). Without a merits decision on abrogation of Constellation's equitable adjustment rights under the PPAs, there assuredly can be no preclusive effect given.

The First Circuit has explained that settlements do not preclude a judicial authority from subsequently making legal and factual conclusions. *In re Bankvest Capital Corp.*, 375 F.3d 51, (1st Cir. 2004) (citing *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1038 (2d Cir. 1993) ("settlement neither requires nor implies any judicial endorsement of either party's claims or theories, and this settlement does not provide the prior success necessary for judicial estoppel.") (quotations omitted in original); *Water Techs. Corp. v. Calco Ltd.*, 850 F.2d 660, 665-66 (Fed. Cir. 1988); *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982) ("if the initial proceeding results in settlement, the position cannot be viewed as having been successfully asserted.")).

As for identity of claims or issues required for any preclusive effect, FERC did not decide the "same issue of law or facts" presented here. *Cf. Global Naps, Inc.*, 427 F.3d at 44. The State's contention that the facts underlying its complaint closely relate in time, space, origin, and motivation to approval of the Settlement Agreement ignores the obvious: that Constellation did not sign the Settlement Agreement, and neither the State nor NEC pled a case to FERC under FPA section 206 to abrogate Constellation's PPA rights. Even assuming *arguendo* that the State could avoid the formal requirements for pleading a case under FPA section 206, the State (and NEC) never filed anything with FERC contending that Section VIII(A) would—if FERC approved the Settlement Agreement—abrogate Constellation's right to an equitable adjustment. Consequently, the State cannot fairly claim there exists a common nucleus of operative facts

between the issues before FERC (whether to approve a settlement that creates a forward capacity market) and this dispute (whether Constellation may exercise its right under the PPAs to an equitable adjustment). Accordingly, in approving the Settlement Agreement FERC was not acting in a capacity upon which Constellation may be subsequently barred from asserting its PPA rights.[12]

**2. Judicial estoppel does not bar Constellation from recovering an equitable adjustment**

**a. Legal standard for judicial estoppel**

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). More specifically, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed,

---

[12] The State's cited authority does not support the holes in the State's argument. For instance, the State relies on *Porn v. Nat'l Grange Mutual Ins. Co.*, 93 F.3d 31 (1st Cir. 1996). The plaintiff there successfully sued his insurer for breach of contract in refusing to pay his claim for underinsured motorist benefits incurred during a car accident. He then brought a second action against his insurer for additional damages for allegedly mishandling his claim. The court affirmed the district court's decision to dismiss the action on *res judicata* and collateral estoppel grounds. The court concluded that "Porn's bad-faith claim would use much of the same evidence produced in the first action for breach of the insurance contract, and therefore it would have been convenient and efficient for the district court to have heard the two claims in the same action." *Id.* at 36. There are no two actions based on the same facts, issues, or parties here. Likewise, the State misplaces reliance on *Aunyx Corp. v. Canon U.S.A., Inc.* 978 F.2d 3 (1st Cir. 1992). In that case, Aunyx brought an action before the ITC (not the FTC, as the State states) the same day it brought an action in federal district court, with the latter held in abeyance pending outcome of the former. The ITC denied as untimely Aunyx's motion to amend its complaint, filed eight months after the initiation of suit. The ITC concluded Aunyx had enough information to bring this related claim with its initial claims and prejudice would result in amending the complaint at the late stage. The ITC case underwent extensive discovery and resulted in an adverse decision for Aunyx. The circuit court, in reviewing the action in district court, concluded that one of the counts that went to trial should have been dismissed based on *res judicata*. The court explained that *res judicata* applies to claims that were not heard in the first litigation because they were barred from being heard as untimely. Constellation and NEC's private bilateral contracts were never mentioned in the Settlement Agreement or anything submitted to FERC in support of that settlement; accordingly, *Aunyx* is inapposite. Also, *Figueroa v. A.T. Wall*, 2007 WL 60940, at*3 (D.R.I. Jan. 4, 2007) is inapplicable. There, a *pro se* inmate brought nearly identical claims based on the same facts in two different lawsuits (witnesses and exhibits would have been identical). The instant action was the plaintiff's third action, and the district court applied *res judicata* only to one of his claims.



WDC99 1353947-4.070626.0036

assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). While there is no specific formula courts follow in determining whether to apply judicial estoppel, the following factors are usually considered. First, the party's position must be "clearly inconsistent" with its earlier position. Second, whether the party succeeded in persuading the court with its earlier position, such that one of the courts would be misled if the second court accepted the party's second, inconsistent position. And third, whether the party asserting an inconsistent position would gain an unfair advantage, or there would be unfair detriment imposed on the opposing party in the second proceeding. *Id.* at 750-51.

**b. Judicial estoppel is inapplicable to this case**

In arguing to FERC that the Settlement Agreement should be approved, the State said nothing about abrogating Constellation's bilateral contract rights under the PPAs or that the State supported the Settlement Agreement ***only if*** FERC abrogated Constellation's right to an equitable adjustment. Because the State (and NEC) did not plead a claim under FPA section 206 to abrogate Constellation's PPA rights, Constellation had no duty to act to preserve those rights. Accordingly, the State's discourse on judicial estoppel offers nothing meaningful here because Constellation has not asserted contrary positions about its PPAs rights before FERC and this Court.

Nor has the State pled a case on which the Court may find reasonable reliance by the State. The State offers no explanation why the absence of Constellation's signature on the Settlement Agreement could reasonably have induced the State to believe Constellation assented to it, much less how the State could have relied on subsequent events. The whole point of having parties sign the Settlement Agreement was to evidence which parties assented. And, the State's

claim that Constellation will derive an unfair legal advantage if allowed to pursue its contractual rights ignores the fact that Constellation would have derived no consideration for giving up its valuable contractual right. The only benefit Constellation gets from prosecuting its equitable adjustment rights is its freely-negotiated contractual rights. Accordingly, the judicial estoppel doctrine does not apply to this case.[13]

[13] The State's judicial estoppel authority is inapposite. The State relies on *Patriot Cinemas, Inc. v. General Cinemas Corp.*, 834 F.2d 208 (1st Cir. 1987), but in that case the plaintiff (Patriot) stated to the court in the first action that it would not bring an antitrust claim in the second action, which would obviate the need for the defendant's request for a stay in the first action. As the Court explained:

> Patriot can be said to have made a bargain with the superior court. It traded its chance for success on the antitrust claim for an increased pace in the proceedings on the remaining three counts. This *quid pro quo* may well have seemed liked a good choice for Patriot . . . Now, however, Patriot wants to have it the other way: it wants to revive its antitrust claim and have it remanded to the state court while enjoying the benefit of the increased pace of its current state actions—a benefit obtained by telling the superior court that it would not proceed with its antitrust claim. This is the sort of self-serving self-contradiction, or 'playing fast and loose with the courts,' that is barred by the doctrine of judicial estoppel.

*Id.* at 213. Here, Constellation made no representation to FERC that it would not pursue its rights under its PPAs. The State also cites *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir. 1993), in which Payless filed for bankruptcy and did not reveal as required, claims it had against the defendants. Payless attained bankruptcy relief and then sought to resurrect claims it had all along. Payless was obligated to reveal this information in the bankruptcy proceedings; it would have affected the relief Payless attained therein. The court concluded that Payless's plan was to "[c]onceal your claims; get rid of your creditors on the cheap; and start over with a bundle of rights. This is a palpable fraud that the court will not tolerate[.]" *Id.* at 571 (citations omitted). "Payless, having obtained judicial relief on the representation that no claims existed, can not now resurrect them and obtain relief on the opposite basis." *Id.* Again, Constellation did not participate in anything of that sort. The State also misplaces reliance on *Alternate Sys. Concepts v. Synopsys Inc.*, 374 F.3d 23 (1st Cir. 2004), because there the plaintiff (ASC) stated in its opposition to a motion to dismiss that its claim was not as the defendant portrayed it, but rather was a claim that fell outside the defendant's statute of frauds defenses. Then later in the same litigation, ASC adopted a totally inconsistent position in its opposition to summary judgment that its claim was for a contract to which the statute of frauds applies. The district judge stated that it relied heavily on ASC's position in its first ruling denying the defendant's motion to dismiss the breach of contract claim. The defendant also conducted discovery under the assumption that ASC's claim was as it had stated in its motion to dismiss papers. The court concluded that to allow ASC to go forward with its new claim "would have been sanctioning what amounted to a sneak attack." *Id.* at 34. Contrary to here, Constellation is not embarking on a sneak attack. The Settlement Agreement to which it is not a party did not entail a cognizable claim under FPA section 206 for abrogating Constellation's equitable adjustment rights under the PPAs. So, none of these authorities provide cause for not dismissing the State's complaint.

## IV. THE STATE'S COMPLAINT PROVIDES NO EXCUSE FOR NOT ENFORCING THE ARBITRATION PROVISIONS OF THE PPAs

The State's claim that the arbitration clauses in the PPAs are not relevant, State's Opp'n at 11 n.8, improperly seeks to evade the clear promise of NEC to submit this dispute to arbitration. NEC cannot evade its promise in the 2002 and 2001 Contracts to arbitrate simply because the State (not a party to the PPAs) purports to assert the same claim.

The 2002 and 2001 Contracts direct this dispute to arbitration and the same issue under the other contracts should be referred to arbitration pursuant to the Court's powers under the Federal Arbitration Act ("FAA"). Constellation's Mot. to Dismiss NEC's Compl. at 25-33. Nothing the State (or NEC) raises casts any doubt on the arbitrability of this dispute, and the FAA directs this Court to give effect to the promise to arbitrate. Constellation's Reply in Support of Mot. to Dismiss NEC's Compl. at 16-20. The State's desire to intervene in the dispute does not nullify the arbitration agreement binding NEC and Constellation—such a ruling would eviscerate arbitration clauses and render the FAA meaningless. Whether to permit the State to intervene concerns contract interpretation and arbitration procedures, which arbitrators are well suited to answer; it is not an issue for the Court. *County Concrete Corp v. Burns & Russell Co. of Balt. City, Inc.*, 2005 U.S. Dist. LEXIS 17913 at *3 (D. Wis. 2005) (relying on *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 453 (2003)); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557 (1964) (procedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator to decide).

## CONCLUSION

For these reasons, the Court should dismiss the State's complaint for lack of subject matter jurisdiction, lack of standing, and failure to plead a claim upon which relief can be granted.

Dated: February 26, 2007

Respectfully Submitted,

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

Kenneth W. Irvin (DC Bar ID #439395)
Teresa M. Goody
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202.756.8116
Fax: 202.756.8087
E-mail: kirvin@mwe.com
E-mail: tgoody@mwe.com

*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2007, I electronically filed the foregoing *Reply in Support of Defendant's Motion to Dismiss the State's Complaint* with the Clerk of the Court for the District of Rhode Island using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Hinkley Allen & Snyder, LLP
50 Kennedy Plaza
Providence, RI 02903

*Counsel for Narragansett Electric Co.*

Leo J. Wold, Esq.
Richard Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

*Counsel for State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers*

/s/ Stacey P. Nakasian