UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.<br><br>Defendant. | C.A. NO. 06-404S |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**Introduction**

The Narragansett Electric Company ("NEC") submits this Sur-reply in opposition to the motion to dismiss or, in the alternative, to compel arbitration and stay proceedings of Constellation Energy Commodities Group, Inc. ("Constellation").

In its reply, Constellation continues to attack a complaint that NEC did not file. Contrary to Constellation's misstatements, NEC is not asking this Court to "determine rates," reform the PPAs, or usurp FERC's role. FERC's role is complete. It has spoken through its approval of the Settlement Agreement, a document that is the functional equivalent of a federal regulation. This dispute arises out of Constellation's attempt to evade the plain impact of Section VIII(A) of the Settlement Agreement – a provision that precludes Constellation from recovering the Capacity Costs that it seeks from NEC and ultimately from the Rhode Island ratepayers. Nevertheless, Constellation can not avoid

that impact; it is bound by the terms of the Settlement Agreement along with every other generator, wholesale supplier, and retailer in New England.

Further, Constellation's attempt to refer this action to arbitration is both premature and ultimately unavailing. The Court must first determine whether – as NEC and the State contend – the PPAs and the Settlement Agreement assign the responsibility for Capacity Costs to Constellation. The Court also must determine whether Constellation waived any right to recover Capacity Costs. Only if Constellation survives each of these claims does the "adjustment provision" come into play. And, even then, arbitration is inappropriate because it is mandated under only one of the four contracts.[1]

For all of these reasons, the Court should deny Constellation's motion in its entirety and should proceed to address NEC's claims on their merits.

## Argument

### I. The Federal Power Act Authorizes This Court To Enforce NEC's Rights Under The PPAs And Under The Settlement Agreement.

NEC contends in its Complaint that the PPAs assign to Constellation the responsibility to pay Capacity Costs, and that Section VIII(A) of the Settlement Agreement confirms this obligation. NEC asks this Court to declare and enforce these rights and obligations. The Federal Power Act authorizes this Court to enforce and declare NEC's rights under both the PPAs and the Settlement Agreement. 16 U.S.C. § 825(p); see City of Cleveland v. Cleveland Electric Illuminating Company, 570 F.2d 123, 124-25 (6th Cir. 1978) (16 U.S.C. § 825(p) provides courts with authority to enforce FPC orders); Occidental Chemical Corporation v. Power Authority of New York, 758 F.Supp. 854, 861

[1] Defined and capitalized terms in this Sur-reply mean the same as those in NEC's Opposition to Constellation's Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings (the "Opposition").

(W.D.N.Y. 1991) (federal court had jurisdiction under 16 U.S.C. § 825(p) in a declaratory judgment action concerning a FPC license).

Constellation's Reply creates a fiction about the relief NEC seeks in an effort to divest this Court of subject matter jurisdiction under the filed rate doctrine. Constellation argues that NEC's claims "depend on this Court exercising discretion over what a reasonable rate under the PPAs would be considering the circumstances giving rise to the Settlement Agreement and FERC's approval thereof." See Reply at 4. Constellation's contrived argument sinks under its own weight. NEC does not ask the Court to determine rates. Rather, NEC contends that the rates are established, and asks the Court to declare that (1) the PPAs and the Settlement Agreement preclude Constellation from recovering Capacity Costs and (2) Constellation has waived any right to recover such costs. These claims do not implicate the filed rate doctrine. See Compl. ¶¶34-42.

While the filed rate doctrine precludes courts from altering rates or tariffs filed with state or federal agencies, the doctrine does not preclude the Court from interpreting and enforcing the provisions of an agreement under the authority vested in it by 16 U.S.C. § 825(p), which provides the Court with the jurisdiction to enforce liabilities and duties under the Federal Power Act. See Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F.Supp.2d 631, 637 (S.D. W.Va. 2005)("The filed rate doctrine precludes courts from deciding whether a tariff is reasonable…but it does not preclude courts from interpreting the provisions of a tariff and enforcing the tariff."); U.S. v. Pacific Gas and Electric Co., 714 F.Supp. 1039, 1054 (N.D. Cal. 1989) (holding that the filed rate doctrine "does not oust this Court of jurisdiction to interpret contracts and construe statutes to the extent that such action is not rate setting."); U.S. Steel Corp. v. Lumbermens Mut. Cas.

Co., No. Civ. A. 02-2108, 2005 WL 2106580, *8 (W.D. Pa. Aug. 31, 2005) (in which the court held that the filed rate doctrine did not apply because the dispute did not concern a rate challenge, but focused on the nature and terms of an agreement between the parties for insurance premiums).

Simply stated, the filed rate doctrine does not apply here because the Court has jurisdiction under 16 U.S.C. § 825(p) to interpret and enforce the FERC-approved Settlement Agreement and to determine if Constellation waived any right to recover Capacity Costs.[2] The cases Constellation cites in its Reply do not prove to the contrary because they involve actions that were taken directly contrary to the filed rate, as opposed to the interpretation and enforcement of agreements under 16 U.S.C. § 825(p). See Nantahala Power & Light v. Thornburg, 476 U.S. 953 (1986)(holding that FERC-approved cost allocations among power suppliers can not be re-evaluated by state utility commissioners without violating the filed rate doctrine); Arkansas Louisiana Gas Co. v. Hall, 453 U.S. 571, 572 (1981) (holding that to allow a state court to award as damages a rate never filed with the FPC is contrary to the filed rate doctrine); Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 251 (1951) (holding that a plaintiff in a case involving electricity rates set by the FPC could "claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the [FPC]."); Transmission Agency of Northern California v. Sierra Pacific Power Company, 295 F.3d 918, 928-29 (9th Cir. 2002) (holding that the court does not have authority to alter

[2] As set forth in NEC's Opposition, the Court also has the jurisdiction to interpret and enforce the PPAs.

operation of a FERC-approved interstate transmission line because federal law preempts state law claims challenging this transmission of electricity).[3]

Because NEC seeks to have the Court interpret and enforce the FERC-approved Settlement Agreement and the PPAs, consistent with the Court's authority under the Federal Power Act, and because NEC's waiver claim is not barred by the filed rate doctrine, this case is properly before the Court.

## II. Constellation Can Not Evade The Impact Of Section VIII(A) On Its Claim To Recover Capacity Costs.

In its papers and arguments before this Court, Constellation attempts to evade the inescapable meaning and impact of Section VIII(A) of the Settlement Agreement. This it can not do.

The facts before the Court, even at this pleadings stage, demonstrate that in response to Rhode Island's concern that wholesale suppliers would attempt to shift responsibility for Capacity Costs to consumers, the parties added Section VIII(A) to the Settlement Agreement. Section VIII(A) specifically provides that wholesale suppliers in Rhode Island, including Constellation, will remain responsible for Capacity Costs during the Transition Period.

---

[3] Constellation also relies on cases that arose out of the California energy crisis of 2000-01, which are inapposite to the issues before the Court, as they also involve actions directly contrary to the filed rate. See Duke Energy Trading & Marketing L.L.C. v. Davis, 267 F.3d 1042 (9th Cir. 2001) (invalidating state action by then Governor Gray Davis to alter the standard financial protections and assurances of payment in the filed rate); California ex rel. Lockyer v. Dynegy, Inc., 375 F.3d 831 (9th Cir. 2004) (in which court affirmed lower court ruling that attorney general's state law claims for damages and civil penalties would impose a monetary sanction on defendants, effectively changing the filed rate); Public Utility District No. 1 of Grays Harbor County v. Idacorp Inc., 379 F.3d 641, 651 (9th Cir. 2004) (in which utility district's claim seeking rescission or reformation of a contract was dismissed under filed rate doctrine because to grant the relief sought "would require the court to set damages by assuming a hypothetical rate . . . in violation of the filed rate doctrine"); Public Utility District No. 1 of Snohomish County v. Dynegy Power Marketing, Inc., 384 F.3d 756 (9th Cir. 2004) (in which court dismissed plaintiffs' private damages claims).

In its effort to evade, Constellation attempts three routes. First, Constellation meekly contends that Section VIII(A) requires wholesale power suppliers to pay only the initial bill, but permits them to obtain full reimbursement from the retailers, and ultimately from the ratepayers. This self-serving interpretation does violence to the language of Section VIII(A), and ignores the precise concern that gave birth to the provision in the first place: ensuring that responsibility for Capacity Costs is not passed on to the ratepayers.

Second, Constellation repeatedly asserts – notably, without supporting authority – that the Settlement Agreement does not bind it because it is "not a signatory" or a "party" to the Settlement Agreement. See Reply at 2, 5. Constellation's lack of consent is immaterial. Constellation is bound by the Settlement Agreement in its entirety just like every other wholesale supplier, generator, or retailer in the region, regardless of whether they refused to sign or even objected to the Settlement Agreement.[4] A FERC-approved settlement binds non-signatories that participated in a proceeding. See Columbia Gas Transmission Corp., 31 FERC P 61,307, 1985 WL 65184, at *61681 (June 14, 1985) (noting that a FERC-adopted settlement "constitutes a final resolution of the issues for all parties to the proceeding") (emphasis added); see e.g., Mystic Development, LLC, 118 FERC P 63002, 2007 WL 25989, at *7 (2007) (noting that the standard of review provision of a settlement agreement applied to non-signatories as well as signatories).[5] For this

[4] Common sense dictates this result. The energy market could not function if non-signatories or even objectors were not bound by the FCM adopted in the Settlement Agreement.

[5] Constellation also tries to shirk Section VIII(A)'s application by claiming that the Settlement Agreement binds Constellation only so far as FERC ordered. See Reply at 2. When FERC intends that a settlement will not bind certain parties, it states so explicitly. See Columbia Gas Transmission Corp., 1985 WL 65184, at *61681 (stating that the adopted settlement binds all parties to the proceeding "except for those parties that the Commission specifically excludes from the settlement"). See e.g., Colorado Interstate Gas Co., 93 FERC P 61,185, 2000 WL 1730151, at *61610 (Nov. 21, 2000) (where settlement agreement specifically excluded non-signatories); United Municipal Distrib. Group v. FERC, 732 F.2d 202, 208-209 (D.C. Cir. 1984) (noting that Commission properly approved the settlement as to all parties except one). Here, no provision in the Order adopting the Settlement Agreement excludes Constellation in whole or in part, and Constellation has

reason, parties have the opportunity to file comments and reply comments, 18 C.F.R. § 385.602(f), and the failure by a party "to file a comment constitutes a waiver of all objections to the offer of settlement." 18 C.F.R. § 385.602(f)(3). If Constellation hoped to avoid the impact of Section VIII(A), the law required it to object to the Settlement Agreement and to take appropriate appeals. It did neither. Constellation's failure to sign the Settlement Agreement does not shield Constellation from its application.[6]

Lastly, Constellation seeks protection under the *Mobile-Sierra* doctrine. It will find no comfort there. At its most basic level, the *Mobile-Sierra* doctrine stands for the proposition that a utility contract is protected from modification unless a showing can be made that reformation is required to protect the public interest. Town of Norwood v. FERC, 202 F.3d 392 (1st Cir. 2000). First, NEC does not seek reformation of the PPAs. Second, Constellation has waived any rights it may have had to object to the Settlement Agreement's impact on its ability to recover Capacity Costs. Constellation did not object to the Settlement Agreement, but rather, waived any and all objections to it, and failed to take an appeal of the Order approving it. Compl. ¶¶25, 27-29. Third, FERC, in finding

---

pointed to no language excluding it from the Order. The Settlement Agreement, therefore, binds Constellation.

Additionally, the doctrine of res judicata precludes Constellation from now trying to avoid the Settlement Agreement's effect. "[C]ourts will apply res judicata and collateral estoppel to agency adjudicatory decisions that resolve disputed issues of fact properly before the agency which the parties have had an adequate opportunity to litigate." 2 Richard J. Pierce, Administrative Law Treatise §13.3, at 888 (2002) (internal quotations omitted). See e.g., Norwood v. Federal Energy Regulatory Commission, Nos. 06-1658, 06-2054, 2007 WL 293071, at *4-6 (1st Cir. Feb. 2, 2007) (noting that "[r]es judicata does not merely prevent re-litigation of issues actually decided but also the presentation of new grounds that could and should have been raised when the same transaction was the subject of earlier, different attacks" and holding that doctrine of res judicata barred town from challenging contract termination charge formula when Commission had ruled that the formula was reasonable).

[6] A FERC-approved settlement agreement binds even parties who contest a settlement. See Natural Gas Pipeline Co. of America, 93 FERC P 61,075, 2000 WL 1610585, at *61206 (Oct. 26, 2000) (noting that FERC's ruling on a contested settlement under the just and reasonable standard constituted "a decision on the merits that is binding on all parties, including contested parties"). Certainly, as an entity that consented to being listed as a party "waiving any and all objections" to the Settlement Agreement, Constellation is entitled to no greater right to avoid the application of the Settlement Agreement than a contesting party. Compl. ¶25.

that the settlement was contested, explicitly acknowledged in its Order that it "present[s] a just and reasonable outcome . . . consistent with the public interest." See Order at 1; Compl. ¶27. Constellation did not contest this finding or the Settlement Agreement. Constellation can not now collaterally attack Section VIII(A)'s determination that Constellation will remain responsible for Capacity Costs during the Transition Period.

## III. NEC Properly States A Claim For Waiver And Does Not Seek Contract Modification.

Constellation, by its actions and inactions during the Settlement Agreement process, waived any right it may have had to recover Capacity Costs. Constellation knew that the State of Rhode Island agreed to support the Settlement Agreement because of Section VIII(A)'s inclusion and failed to exercise any right that it had to object to Section VIII(A) or appeal the FERC Order. Compl. ¶¶ 22-29. Discovery may well reveal, among other matters, that Constellation's merger partner at the time of the Settlement Agreement negotiations, a generator that stood to profit from the Settlement Agreement, asked or instructed Constellation not to oppose Section VIII(A) or the Settlement Agreement because it benefited the combined entity. On this narrow motion to dismiss record, Constellation has not met its burden to prove that NEC can prove no set of facts to support its claim. Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002)(In ruling on a motion to dismiss, the district court must "assume the truth of all well-pleaded facts and indulge all reasonable inferences therefrom that fit the plaintiff's stated theory of liability" in the plaintiff's favor).

Constellation attempts to defeat NEC's waiver count by construing it as a claim for unilateral contract modification of the PPAs. Indeed, Constellation's contention that NEC failed to allege a "cognizable claim for waiver" because it did not "allege that there was

offer and acceptance of the contract change; mutual assent to the change; or that the parties intended to be bound by the change" misstates NEC's claim and the law of waiver. See Reply at 14-15. In fact, the cases that Constellation relies on in its Reply deal exclusively with contract modification – not waiver. See Bourg v. Bristol Boat Co., 705 A.2d 969, 971 (R.I. 1998); Constonis v. Medford Hous. Auth., 176 N.E.2d 25, 28 (Mass. 1961); Tri-City Concrete Co. v. ALA Construction Co., 179 N.E.2d 319, 320 (Mass. 1962); New England Mut. Life Ins. Co. v. Harvey, 82 F.Supp. 702, 706 (D. Mass. 1949). [7]

NEC does not seek to alter unilaterally the PPAs. Rather, NEC contends that Constellation waived any right it may have had to recover Capacity Costs and now cannot obtain additional compensation under the PPAs. See Opp'n. at 15; Compl. ¶¶ 39-42. These allegations set forth a prima facie case for waiver that withstand a motion to dismiss. See Gail v. New England Gas Co., 460 F.Supp.2d 314, 319 (D.R.I. 2006) (In ruling on a Rule 12(b)(6) motion to dismiss, "the Court takes the well-pleaded allegations in the Complaint as true and draws all reasonable inferences in favor of the plaintiffs…The motion may be granted only if it appears that the plaintiffs cannot prove any set of facts entitling them to relief.") (internal citations omitted). The Court should deny Constellation's motion to dismiss and allow NEC to proceed with its waiver claim because, "[a]s a general rule, whether a party has voluntarily relinquished a known right is

[7] Constellation also incorrectly asserts that there could be no waiver because under the PPAs "all *modifications* [must] be in writing signed by the parties…" Reply at 15 (emphasis added). But this provision governs modifications, not Constellation's waiver of its rights. Moreover, NEC's claim is not for modification of the PPAs. Thus, Constellation's reliance on Hinds v. Titan Wheel Int'l., Inc. is misplaced. See 45 Fed.Appx. 490, 492, 494 (6th Cir. 2002)(in which court addressed an express contract provision disallowing a permanent waiver of rights).

a question for the trier of fact." Violet v. Travelers Express Co., 502 A.2d 347, 349 (R.I. 1985).[8]

**IV. NEC's Claims That Constellation Is Responsible For Capacity Costs Are Properly Stated In Its Complaint, And NEC Is Entitled To A Hearing On The Merits Of Those Claims.**

NEC's Complaint and all reasonable inferences that can be drawn therefrom show that Constellation, under the PPAs, accepted responsibility to pay Capacity Costs and that Section VIII(A) of the Settlement Agreement confirms Constellation's continuing requirement to pay such costs. Compl. ¶¶9, 19, 21 and 23. Yet, Constellation tries to advance this case to a summary judgment stage by relying on arguments and documents well outside the pleadings.

Constellation's position that NEC "conflates" market risk with regulatory risk, that the Settlement Agreement does not confirm the meaning of the PPAs, and that the Change in Market Rules provision of the PPAs was triggered rests on a mischaracterization of the Settlement Agreement and the PPAs and raises issues and "alleged facts" that cannot be decided on a motion to dismiss record.[9] Because the Court should decline to consider documents outside of the pleadings, cannot resolve factual disputes on a Rule 12(b)(6) motion, and should assume the truth of NEC's factual allegations and the reasonable inferences that can be drawn therefrom, Constellation's motion should be denied. Robertson Stephens, Inc. v. Chubb Corp., C.A. No. 05-360S, 2007 WL 476328, at *1 (Feb.

---

[8] Constellation's argument that ¶7 of the Settlement Agreement precludes a finding that it acted inconsistent – or even consistent – with the PPAs ignores NEC's well-pleaded allegations that the Settlement Agreement itself, and Constellation's actions and inactions during the Settlement Agreement process, resulted in a waiver of any known right Constellation had to recover Capacity Costs. In addition, as stated previously, NEC does not claim that the PPAs were modified.

[9] Indeed, Constellation's Reply inappropriately relies upon and introduces a recent FERC document that is outside the pleadings in an attempt to show that the Change in Market Rules provision of the PPAs was triggered, thereby allowing for an adjustment. Constellation cites to a FERC Order, 117 FERC ¶61,132 (2006), that is not part of NEC's Complaint to try to shore up its arguments that it is not responsible for Capacity Costs. This Order should not be considered.

14, 2007); McElheny v. Trans Nat. Travel, Inc., 165 F.Supp.2d 190, 194 (D.R.I. 2001)(the court "does not look beyond the four corners of the Complaint."). [10]

## V. The Court Should Deny Constellation's Motion To Compel Arbitration And To Stay Or Dismiss These Proceedings.

### A. The Court must first determine NEC's claims that (1) the PPAs assign responsibility for Capacity Costs to Constellation; (2) the Settlement Agreement confirms this obligation; and (3) Constellation waived any claim to recover Capacity Costs.

NEC presents three claims that the Court must decide before the parties even reach the Change in Market Rules issue. Only if Constellation prevails on all three of these claims will the Court need to determine whether a Change in Market Rules has occurred that triggers an adjustment under the PPAs. But again, if the PPAs or Section VIII(A) assign responsibility for Capacity Costs to Constellation, the Change in Market Rules provision is never triggered.

### B. The Court, not an arbitrator, must decide whether any claims are subject to mandatory arbitration.

The questions of whether the parties agreed to be bound by a given arbitration clause and whether a binding arbitration clause exists that is applicable to the dispute are for the Court. See First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942-43 (1995);

---

[10] Conley v. Gibson, Blacksmith Invs., LLC v. Cives Steel Co., and Kiely v. Raytheon Co. do not, as Constellation argues, allow the Court to look past the allegations of the Complaint and address the merits of this proceeding by making assumptions in Constellation's favor. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (setting forth the "notice pleading" standard and noting that "a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); Blacksmith Investments, LLC v. Cives Steel Co., Inc., 228 F.R.D. 66, 71 (D. Mass. 2005) (stating that "Plaintiffs are only obligated to set forth in their Complaint factual allegations either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory" and dismissing plaintiff's breach of contract, misrepresentation, and deceit claims for failure to plead requisite elements of those causes of action and fraud with particularity); Kiely v. Raytheon Co., 914 F.Supp. 708, 712-14 (D. Mass. 1996) (dismissing promissory estoppel claim for failure to establish essential element of a promise and breach of contract claim for, inter alia, failure to allege legal harm).

AT&T Technologies, Inc. v. Comm. Workers of Am., 475 U.S. 643, 651-52 (1986). Constellation asserts that an arbitrator, and not the Court, should decide whether NEC's waiver argument "could pass Rule 12(b)(6) muster." Reply at 14, n. 11. Constellation misreads the cases. The cases upon which Constellation relies hold that an arbitrator decides whether a party has waived its right to arbitration, not whether a waiver count states a claim upon which relief may be granted. See e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 103 S. Ct. 927, 941 at n.31 (1983) (citing to Hart v. Orion Ins. Co., 453 F.2d 1358, 1360 (10th Cir. 1971) (considering whether party had waived its right to arbitration by, inter alia, filing an answer to the complaint); Germany v. River Terminal Railway Co., 477 F.2d 546, 547 (6th Cir. 1973) (noting that "[a]n agreement to arbitrate may be waived by the actions of a party which are completely inconsistent with any reliance thereon")).

**C. Not even the adjustment claim is subject to arbitration.**

Under no set of circumstances is there a basis to compel arbitration and dismiss or stay these proceedings. First, only one of the four PPAs contains a mandatory arbitration provision.[11] Constellation cites no authority to support its claim that under these

[11] The 2001 PPA does not mandate arbitration. Constellation asserts that "[b]ecause a common sense reading of the [2001] PPA demonstrates the clear intent to submit the dispute to arbitration, the Court can overlook the clerical error," but provides no relevant supporting authority. See Reply at 17. None of the cases that Constellation cites involve arbitration contracts or "clerical errors," or allow courts to correct errors in arbitration contracts. See Haverhill v. George Brox, Inc., 716 N.E.2d 138, 141-42 (Mass. App. Ct. 1999) (interpreting meaning of phrase "effective upon approval" in indemnification provision); W.P. Associates v. Forcier, Inc., 637 A.2d 353, 356 (R.I. 1994) (holding that release and indemnification agreement clearly and unambiguously discharged outstanding balance on promissory note); Potthoff v. Safety Armorite Conduit Co., 143 A.D. 161, 162-64 (N.Y. App. Div. 1911) (interpreting royalty payment provision in contract giving right to utilize patented process). Constellation's argument that the 2001 Contract is subject to arbitration fails.

Additionally, contrary to Constellation's suggestion, AT&T Tech. Inc., 475 U.S. 643 (1986), does not stand for the general proposition that courts should, when trying to decide whether a contract mandates arbitration, favor arbitration. Rather, courts apply the presumption in favor of arbitration only when

circumstances – where three contracts call for judicial resolution of an issue – the Court should refer one contract to arbitration for resolution of the identical issue. There is none. The Court can not disregard the parties' right to a judicial determination under three of the PPAs. The Third Circuit has recognized that deprivation of a party's right to a judicial decision – even in the interests of economy – yields an unacceptable result. See CTF Hotel Holdings, Inc. v. Marriott Intl., Inc., 381 F.3d 131, 139 (3rd Cir. 2004). In CTF Hotel Holdings, Inc., the Third Circuit reversed the district court's grant of a stay of a court proceeding in favor of arbitration, noting:

> We recognize the potential for judicial efficiency that lies in possible collateral estoppel because the arbitrator could make determinations relevant to CTF's federal claims. However, we have already explained that staying litigation for that reason effectively denies CTF its contracted for day in court. The right to litigate would mean little if the substance of the litigation, when CTF's day in court finally dawns, may be driven by something that may have occurred during arbitration.

Id. Here, as in CTF Hotel Holdings, Inc., to compel arbitration would create the unacceptable result of denying NEC its contracted for day in court.

Constellation attempts to dismiss the authority that NEC cited in its Opposition as irrelevant. It is not. The court in Rockel v. Cherry Hill Dodge specifically addressed the treatment of conflicting arbitration clauses contained in different documents. 847 A.2d 621, 625 (N.J. Super. 2004). It concluded that "defendant's inclusion of two conflicting arbitration provisions in the contract documents confounds any clear understanding of the parties' undertaking" and held:

---

determining whether a particular dispute falls within an arbitration clause where it is already clear that an arbitration agreement exists.

> The arbitration agreement is highly ambiguous because the parties executed two documents which contain separate and somewhat disparate arbitration clauses. This ambiguity, we conclude is fatal to the compelling of the arbitration of plaintiff's CFA [Consumer Fraud Act] claims.

Id. at 623-25. That the ambiguity in an arbitration agreement appears in one document as opposed to more than one document is beside the point. "When deciding whether to compel arbitration, the court usually begins by asking whether the parties agreed to arbitrate the dispute in question." McNeer v. Thomson McKinnon Securities, Inc., 729 F. Supp. 1306, 1307 (D. Kan. 1990). To make that determination, the court must examine the document or documents containing the alleged agreement to arbitrate. While concerning only one agreement, McNeer addressed a conflict, like that at issue here, between mandatory and voluntary arbitration. Id. at 1308. It held that when a party's agreement to arbitrate could yield two interpretations – one calling for mandatory arbitration and the other calling for voluntary arbitration, an ambiguity existed precluding arbitration. Id. In the instant case, the parties have not clearly agreed to arbitrate this dispute when three of the PPAs do not compel arbitration.[12]

The cases that Constellation cites in favor of the imposition of a stay or dismissal are inapposite. Landis v. North American Co. Same, for instance, concerned whether a court should stay judicial proceedings pending the resolution of another court proceeding,

[12] The law is clear that a court cannot compel arbitration in the absence of an unambiguous agreement to arbitrate. See Aerotech World Trade Ltd. v. Excalibur Systems, Inc., 654 N.Y.S.2d 386, 387 (N.Y. App. Div. 2 1997) (stating that "an agreement to arbitrate must be clear and unambiguous"); Lovisa Const. Co., Inc. v. Suffolk County, 108 A.D.2d 791, 792, 485 N.Y.S.2d 309, 310 (N.Y. App. Div. 1985) (noting that the language used in an agreement to arbitrate must be clear and unambiguous); Alexander Enterprises, Inc. v. Ryckwaert, 38 A.D.2d 585, 328 N.Y.S.2d 239, 240 (N.Y. App. Div. 1971) (stating that a binding arbitration agreement must be clear and unambiguous). See also Badie v. Bank of America, 67 Cal.App.4th 779, 804 (1998) (noting that "waiver of the right to a jury trial is inherent in the decision to resolve disputes in a nonjudicial forum" and "absent a clear agreement to submit disputes to arbitration … we cannot infer that the right to a jury trial has been waived").

and not whether the court should stay a judicial proceeding in favor of an arbitration. 299 U.S. 248, 249-51, 259 (1936). Baggesen v. American Skandia Life Assurance Corp. involved the plaintiff's lawsuit against two parties, one party that had a clear agreement to arbitrate with the plaintiff and another party that did not. 235 F.Supp.2d 30, 32 (D. Mass. 2002). The case at bar, conversely, presents no clear agreement to arbitrate. Only one of the contracts mandates arbitration; two provide for voluntary arbitration; and the fourth provides for neither mandatory nor voluntary arbitration. Furthermore, this proceeding will involve the same parties and the same exact issues before a court or an arbitrator. Therefore, a stay of this litigation in favor of arbitration will effectively deprive NEC of a judicial determination as to its claims.[13]

In short, there is no basis to refer this dispute to arbitration with respect to any of the issues presented.

**Conclusion**

For the reasons set forth herein, as well as the ones given in NEC's Opposition, NEC respectfully requests that this Court deny Constellation's Motion to Dismiss or, in the Alternative, to Compel Arbitration and Stay Proceedings.

---

[13] The other cases that Constellation cites are distinguishable for similar reasons. See Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 861-64 (9th Cir. 1979) (concerning an unambiguous agreement to arbitrate); Contracting Northwest, Inc. v. Fredericksburg, 713 F.2d 382, 385 (8th Cir. 1983) (same); Bowlby v. Carter Manu. Corp, 138 F. Supp. 2d. 182, 184-85 (D. Mass 2001) (same). Air Line Pilots Association v. Miller, 118 S. Ct. 1761, 1769 (1998), another case that Constellation cites in furtherance of its motion to stay, support's NEC's argument. In that case, the court addressed whether non-union employees had to exhaust arbitral remedies as part of a union-provided arbitration process before bringing a challenge in federal court. Id. at 1765. The court held that they did not, stating: "genuine as the Union's interest in avoiding multiple proceedings may be, that interest does not overwhelm objectors' resistance to arbitration to which they did not consent, and their election to proceed immediately to court for adjudication of their federal rights." Id. at 1769.

THE NARRAGANSETT ELECTRIC COMPANY

By its attorneys,

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com

Dated: February ___, 2007.

# **CERTIFICATION**

**To:**

Leo J. Wold, Esq.
Richard B. Woolley, Esq.
150 South Main Street
Providence, RI 02903

Stacey P. Nakasian, Esq.
Duffy Sweeney & Scott, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903

Kenneth W. Irvin, Esq.
Teresa M. Goody, Esq.
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 2005-3096

I hereby certify that on February ___, 2007, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com

781751 (57972/129329)