**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **C.A. NO. 06-404S** |
| **CONSTELLATION ENERGY COMMODITIES GROUP, INC.,** | ) | |
| **Defendant.** | ) | |

**<u>OBJECTION OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS TO THE DEFENDANT'S MOTION TO STAY</u>**

The State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively referred to herein as the "State"), by and through their legal counsel, Patrick C. Lynch, Rhode Island Attorney General, object to the Defendant's Motion to Stay.

In support of its objection, the State submits the accompanying memorandum of law.

Respectfully submitted,

STATE OF RHODE ISLAND
PROVIDENCE PLANTATIONS and
the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Dated: March 22, 2007

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**CERTIFICATE OF SERVICE**

I certify that on March 22, 2007, a copy of the within objection was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CONSTELLATION ENERGY COMMODITIES GROUP, INC.,**<br><br>**Defendant.** | **C.A. NO. 06-404S** |

**MEMORANDUM OF THE STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS AND THE RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS IN SUPPORT OF THEIR OBJECTION TO THE DEFENDANT'S MOTION TO STAY**

## I. PROCEDURAL BACKGROUND

On September 11, 2006, The Narragansett Electric Company ("Narragansett Electric") filed a five Count complaint against Constellation Energy Commodities Group, Inc. ("Constellation") in this Court seeking, among other things, (i) to obtain a declaration to enforce Section VIII(A) of a Settlement Agreement (the "Settlement") accepted and approved by Order of the Federal Energy Regulatory Commission ("FERC") on June 6, 2006 (the "Order"), and (ii) to obtain a declaration of its legal rights under certain Power Purchase Agreements (PPAs) with Constellation.

On October 23, 2006, Constellation filed a Motion to Dismiss, or, in the Alternative, to Compel Arbitration and Stay Proceedings. Narragansett Electric filed its opposition to Constellation's motion on December 13, 2006. Constellation filed a reply to Narragansett Electric's opposition on January 8, 2007.

On January 9, 2007, the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively referred to as the "State"), by and through their legal counsel, Patrick C. Lynch, Rhode Island Attorney General, filed a Motion to Intervene and to Join Claim in the above proceeding. In its intervention request, the State sought to obtain a declaration, among other relief, to enforce its own rights under Section VIII(A) of the Settlement. On January 29, 2007, Constellation filed a motion to dismiss the proposed complaint essentially reiterating the grounds that the company alleged supported dismissal of Narragansett Electric's complaint.

The Court heard the State's motion to intervene on February 7, 2007. After hearing and due consideration, the Court conditionally granted the State status as an ***amicus***, pending the outcome of a decision on Constellation's motion to dismiss, and a final ruling regarding the State's intervention request.

Perhaps anticipating an adverse ruling from the Court with respect to its motion to dismiss, and only days before the hearing of its motion to dismiss, Constellation, on March 1, 2007, filed a Petition for Declaratory Order with FERC seeking a ruling that Section VIII(A) does not "abrogate" or "modify" Constellation's alleged right of "equitable adjustment" under its PPAs with Narragansett Electric.

On March 5, 2007, the Court heard oral arguments on Constellation's motion to dismiss. At the conclusion of the argument, Constellation requested the Court to defer ruling on the motion, stay the proceedings, and afford FERC the opportunity to address the Petition for Declaratory Order. The Court directed Constellation to formalize its motion to stay in writing.

On March 12, 2007, Constellation filed a motion to stay with the Court, repeating the jurisdictional arguments that were contained in the papers filed in support of the company's motion to dismiss. In this second effort to avoid litigation in this forum, Constellation contends that "even if FERC does not have exclusive jurisdiction," a stay is warranted "under the doctrine of primary jurisdiction." As will be seen, Constellation's last minute effort to "bootstrap" its way into FERC by simultaneously filing a Petition for a Declaratory Order with FERC and seeking a stay in this forum under the guise that FERC possesses "primary jurisdiction," is contrary to the overwhelming weight of legal authority. The Court should deny Constellation's Motion to Stay and proceed with this action.

## II. ARGUMENT

### A. FERC DOES NOT POSSESS EXCLUSIVE JURISDICTION OF THE PENDING MATTER.

Constellation has already conceded in this proceeding that "…FERC and courts enjoy *concurrent jurisdiction* over matters of contract interpretation and enforcement…" Memorandum of Points and Authorities in Support of its Motion to Dismiss or in the Alternative to Compel Arbitration and Stay Proceedings at 15 (Filed October 23, 2006) (emphasis added). In its Petition for a Declaratory Order at 19-22 filed with FERC,

Constellation requests that the agency issue a declaratory ruling construing Section VIII(A) of the Settlement in a manner so as not to abrogate an alleged right of "equitable adjustment" that purportedly is contained in Constellation's PPAs with Narragansett Electric. Constellation's request falls squarely within the rule that the courts possess subject matter jurisdiction over matters of contract interpretation and enforcement[1], and that FERC's jurisdiction, to the extent it exists, is concurrent with that of the federal courts[2], and derives from factors relating to the "special expertise" of the agency in the area of its statutorily authorized responsibility. FERC, therefore, does not possess exclusive jurisdiction of the pending matters.[3]

### B. FERC DOES NOT POSSESS PRIMARY JURISDICTION OF THE PENDING MATTER.

The doctrine of "primary jurisdiction" is concerned with "promoting relationships between the courts and administrative agencies charged with particular regulatory duties." Board of Education of the City School District of the City of New York v. Harris, 622 F.2d 599, 606 (2nd Cir. 1979). As such, the doctrine comes into play when the agency is confronted with issues within the scope of its special competence or expertise. Id. The doctrine is not to be applied mechanically, but rather "flexibly" to

[1] The legal basis for the Court's subject matter jurisdiction in this matter is discussed in Narragansett Electric's Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 7-9, Narragansett Electric's Sur-reply in Opposition to Defendant's Motion to Dismiss at 2-5, and the Memorandum of the State in Support of Its Objection to the Defendant's Motion to Dismiss at 10, n. 8. Those arguments are restated and incorporated herein by reference.

[2] See e.g., Florida Power Company, 68 FERC P ¶ 61,351, *62,413 (1994) ("As we have explained in a number of orders, issues of interpretation of a contract on file with [FERC] are within [FERC's] ***concurrent jurisdiction*** with the courts.") (emphasis added).

[3] Constellation's motion to stay is utterly bereft of legal authority or any real argument contending that FERC possesses exclusive jurisdiction to interpret and enforce the Settlement. Constellation's Petition for Declaratory Order makes it clear that any contention of "exclusive jurisdiction" is based on an assertion of the filed rate doctrine, which has already been briefed and argued to the Court. Constellation's Petition for Declaratory Judgment, 14-16.

ensure that its application actually serves the purpose of the doctrine. United States Public Interest Research Group v. Atlantic Salmon of Maine, LLC, 339 F.3d 23, 33 (1st Cir. 2003). Thus, one court has held that the doctrine should be invoked sparingly given the obligation of the court to exercise its jurisdiction when the issues to be addressed fall squarely within the realm of judicial competence, and the primary purposes of the doctrine—the promotion of consistency, uniformity and fact resolution—would not be served. Tassy v. Brunswick Hospital Center, Inc., 296 F.3d 65, 73 (2nd Cir. 2002). Accord Board of Education of the City of New York, 622 F.2d at 607 (2nd Cir. 1980) ("court need not defer to agency where the issue involved is a strictly legal one, involving neither the agency's particular expertise nor its fact finding prowess").

This principle holds particularly true when the matter involves "contract interpretation" as it is "neither beyond the conventional expertise of judges nor within the special competence of [the agency]." Fulton Cogeneration Associates v. Niagra Mohawk Power Corp., 84 F.3d 91, 97 (2nd Cir. 1996). See Pace v. Honolulu Disposal Service, Inc. 227 F.3d 1150, 1157 (9th Cir. 2000) (case that turned on contract interpretation must be decided by federal court and not agency); Gulf States Utilities Co. v. Alabama Power Co., 824 F.2d 1465, 1474 (5th Cir. 1987) (refusal to defer contract dispute to agency was proper because fact findings regarding contract did not require special expertise of FERC). See Southern Utah Wilderness Alliance v. Bureau of Land Management, 425 F.3d 735, 756 (10th Cir. 2006) (validity of "rights of way" was not within the "special competence of the Bureau of Land Management, and therefore, it was error to defer the issue to the Bureau); PHC, Inc. v. Pioneer Healthcare, Inc., 75 F.3d 75, 81 (1st Cir. 1996) (where federal district court was already going to consider

"infringement" claim, it was error for the court to defer companion "validity" claim to agency on ground of primary jurisdiction).

Following the rule of law established by these Circuit Courts of Appeal, FERC, too, declines to assert agency jurisdiction when a petitioner requests the agency to interpret contracts. Nevada Power Company, 111 FERC P ¶ 61,111, *61,616 (2005); Dartmouth Power Associates Limited Partnership v. Commonwealth Electric Co., 73 FERC P ¶ 61,096, *61,310 (1995); Florida Power, 68 FERC P ¶ 61351, *62,413 (1994); City of Camden v. Carolina Power and Light Co., 56 FERC P ¶ 61,149, *61,149 (1991); Natural Gas Pipeline Company of America, 56 FERC P ¶ 61,250, *61,939 (1991); Arkansas Louisiana Gas Co. v. Hall, 7 FERC P ¶ 61,175, *61,323 (1979). See United Gas Pipeline Company, 27 FERC P ¶ 61,015 (1984) (where FERC declined to issue a declaratory order clarifying intent of prior opinion since matter was already pending in court). In so holding, FERC has identified the following three factors for agency consideration in any given factual setting:

> (1) whether the FERC possesses some special expertise which makes the case peculiarly appropriate for FERC decision;
>
> (2) whether there is a need for uniformity of interpretation of the type of question raised by the dispute; and
>
> (3) whether the case is important in relation to the regulatory responsibilities of the FERC.

E.g., Arkansas Louisiana Gas Company v. Hall, 7 FERC P 61,175, *61,323 (1979). Proper application of these factors to the circumstances of the pending matter requires a finding that FERC does not possess primary jurisdiction of the putative issue that Constellation contends is common to the complaints of Narragansett Electric and the

State and Constellation's Petition for Declaratory Order. The Court, therefore, should proceed to decide this litigation, including the application of Section VIII(A), and should not stay the actions of the State and Narragansett Electric.

### 1. The Interpretation Of Section VIII(A) Of The Settlement Is Within The Expertise Of Judges, Not Within The Special Expertise Of FERC.

FERC has held that when a decision-maker must determine the intention of the parties, and similar contract law issues, FERC "does not possess any special expertise concerning the construction of contract provisions…" Florida Power, 68 FERC P ¶ 61,351, *62,413 (1994). Indeed, FERC has held that construing the provisions of power transmission agreements does not require "special expertise beyond that of a court . . . Construing the contract's provision and inquiring into the parties' intent is a straight forward matter of contract interpretation that is better left to a court." Nevada Power, 111 FERC P ¶ 61,116, *61,616. The same is true if the contract that requires construction is a purchase power agreement. Whether the agreement requires one party to pass through pipeline transportation funds "does not require special knowledge or expertise peculiar to the Commission." FERC is in "no better position than a court to address such disputes," Dartmouth Power Associates, 73 FERC P ¶ 61,096, *61,310, and is "exceedingly reluctant to interfere with private contractual arrangements and has limited authority to do so." Natural Gas Pipeline, 56 FERC P 61,250, *61,939. See also City of Camden, 56 FERC P 61,149, *61,550 ("contract interpretation is best left to state common law or other applicable contract interpretation principles," and therefore, "[t]here is no special expertise that FERC can bring to this dispute…").

The Circuit Courts of Appeal and FERC, further, recognize that the construction of settlement agreements is governed by the principles for construing contracts. E.g., Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.2d 12, 17 (1st Cir. 1996); Perry v. Department of the Army, 992 F.3d 1575, 1578 (Fed. Cir. 1993); Green v. Aerosol Research Co., 374 F.2d 791, 794 (7th Cir. 1967). See also National Fuel Gas Supply Corp., 27 FERC ¶ 61,111, *3 (1984); El Paso Natural Gas Co., 20 FERC ¶ 61,443, *61,911 (1982). Thus, the issue that Constellation poses to FERC in its Petition for Declaratory Order—whether, by its express language, Section VIII(A) abrogates Constellation's alleged right of "equitable adjustment under the PPAs—is solely a contract interpretation issue involving neither the agency's particular expertise nor its fact finding prowess," Board of Education of the City of New York, 622 F.2d at 607, and falls squarely within the "traditional realm of judicial competence." Tassy, 296 F.3d at 73. Under the circumstances of the case at bar, the first criterion identified by FERC in Hall weighs heavily against the exercise of the agency's primary jurisdiction.

### 2. The Unique Factual Circumstances Surrounding Section VIII(A) Do Not Give Rise To A Need For Uniformity Of Interpretation.

Courts, as well as FERC, have held that the meaning of any particular contract provision "depends upon the intention of the parties." Hall, 7 FERC P ¶ 61,175, *61,323. See e.g., Ameren Services Co. v. Federal Energy Regulatory Comm'n, 330 F.3d 494, 498 (D.C. Cir. 2003) (FERC "must give effect to the unambiguously expressed intent of the parties"). In light of the required application of this legal principle in contract disputes, the "[a]scertainment of such intentions is a matter of case-by-case adjudication and does not invoke the considerations of uniformity. . ." Hall, 7 FERC P

¶ 61,175, *61,323. The same principle holds true for the construction of a transmission resale agreement where the issue is whether a city can use the transmission service available under the agreement to transmit power to another utility. Florida Power, 68 FERC P ¶ 61,351, *62,413. In this situation, FERC has held: "we have not identified a need for uniformity of interpretation with respect to the issues identified in this case. Indeed, it is likely that the disputed issues are unique to the resale agreement, and that resolution of the contractual dispute will have no impact beyond the parties involved." Id. See also Dartmouth Power Associates, 73 FERC P ¶ 61,096, *61,319 (similar ruling regarding power purchase agreement).

Contrary to Constellation's contention, construction of Section VIII(A) does not implicate considerations of uniformity. ISO-New England required the support of three New England states in order to recommend the Settlement to FERC. At a critical point in the negotiations, only two New England states supported the Settlement. Without the State's agreement to become a Settling Party, ISO-New England would not recommend the Forward Capacity Market ("FCM") reflected in the Settlement to FERC, and FERC would not approve the Settlement. The State, thus, became a "swing" settlement participant. Settlement participants, including Rhode Island standard offer wholesale suppliers, included Section VIII(A) in the Settlement to induce the State to become a Settling Party, thereby giving ISO-New England the three New England states that it needed to recommend the Settlement to FERC.

The unique circumstances giving rise to the inclusion of Section VIII(A) in the Settlement make it highly unlikely that a similar scenario will ever reoccur. Moreover, the issue raised by Constellation in its Petition for Declaratory Order—whether Section

VIII(A) abrogates Constellation from pursuing an alleged "equitable adjustment" under its PPAs—is limited to the parties involved, Constellation, Narragansett Electric and Rhode Island and its ratepayers. The application of Section VIII(A) is limited to Rhode Island, and no other wholesale supplier in Rhode Island has sought to evade the obvious impact of Section VIII(A). The second Hall criterion, therefore, does not invoke considerations of uniformity and weighs heavily against a stay of the pending matter. See Florida Power, 68 FERC P ¶ 61,351, *62,413 (interpretation of transmission resale agreement is limited to parties involved, and, therefore, does not trigger a need for uniformity); Dartmouth Power Associates, 73 FERC P ¶ 61,096, *61,319 (interpretation of a power purchase agreement "will not affect other public utilities since the dispute is unique to these parties").

**3. The Interpretation Of Section VIII(A) Is Not Important To The Regulatory Responsibilities Of FERC.**

FERC also recognizes that contract interpretation issues are not important to the regulatory responsibilities of the Commission since they do not involve broad issues of regulatory policy or statutory interpretation. Nevada Power, 111 FERC P ¶ 61,111, *61,616; United Gas Pipeline Company, 27 FERC P 61,015 (1984). This is true for the same reason that such issues do not require a need for uniformity, namely that "questions of contract interpretation" are "unique to the [a]greement." Dartmouth Power Associates, 73 FERC P ¶ 61,096, *61,319. See also Florida Power, 68 FERC P ¶ 61,351, *62,413 (question of whether utility was required to provide transmission service at a discounted price under contract was not "particularly important in relation to the Commission's regulatory and statutory responsibilities").

In the case at bar, the issue of whether Section VIII(A) abrogates Constellation's attempt to collect capacity costs from Narragansett Electric and Rhode Island ratepayers does not raise broad policy or regulatory issues. Section VIII(A) represents a single, contractual inducement to one settling party, is a feature unique to the Settlement and the State, and does not implicate the FCM. Section VIII(A), therefore, is not important to the regulatory responsibilities of FERC. Like the first and second criteria, the third Hall factor weighs heavily against deferring adjudication of Narragansett Electric's and the State's claims pursuant to the doctrine of primary jurisdiction.

### C. RESOLUTION OF CONSTELLATION'S PETITION FOR DECLARATORY ORDER WILL NOT RESOLVE THE STATE'S PROPOSED COMPLAINT AGAINST CONSTELLATION.

When a declaratory order will neither terminate the controversy nor remove uncertainty, FERC refuses to exercise its discretion and issue a declaratory order pursuant to Rule 207. Arkansas Power & Light Co., 35 FERC P 61,358, *61,817 (1986). In its Petition for Declaratory Order, Constellation requests FERC to issue a declaratory ruling that Section VIII(A) does not "abrogate" or "modify" Constellation's alleged right of "equitable adjustment" under its PPAs with Narragansett Electric. Under the guise of declaratory relief, Constellation is really requesting FERC to alter the plain language of Section VIII(A) and to declare that it does not mean what it says. A resolution of Constellation's petition by FERC, however, will not resolve the State's causes of action against Constellation in this forum. In its proposed complaint, the State does not contend that the PPAs were "abrogated" or "modified." Rather, in the proposed complaint, the

State alleges that *Constellation* is barred under the doctrines of claim preclusion, waiver, equitable and judicial estoppel from *asserting* its alleged rights under the PPAs. Compare Constellation Petition for Declaratory Order at 1, 19, 21, 23 with State's Proposed Complaint, Counts I, II and III.

The legal theories underpinning Constellation's Petition for Declaratory Order and the State's proposed complaint are separate and distinct. Constellation's Petition for Declaratory Order is premised on the theory of contract modification. The State's claims in this proceeding are based on legal and equitable principles of preclusion and bar. Thus, even if FERC were to rule on Constellation's petition (which the State does not believe it will for the reasons set forth above), the Court would still be required to adjudicate the State's claims contained in the proposed complaint.

The merits and outcome of Constellation's Petition for Declaratory Order are utterly irrelevant to the case at bar. Accordingly, no basis exists for the Court to stay these proceedings pursuant to the doctrine of primary jurisdiction.

## III. CONCLUSION

For all of the foregoing reasons, the State requests that the Court deny Constellation's Motion to Stay.

Respectfully submitted,

STATE OF RHODE ISLAND
PROVIDENCE PLANTATIONS and
the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

Dated: March 22, 2007

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**CERTIFICATE OF SERVICE**

I certify that on March 22, 2007, a copy of the within objection was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov