**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| The Narragansett Electric Company,<br>Plaintiff,<br><br>v.<br><br>Constellation Energy Commodities Group, Inc.,<br>Defendant. | ) | C.A. No. 06-404S |

**REPLY IN SUPPORT OF MOTION OF CONSTELLATION ENERGY COMMODITIES GROUP, INC. TO STAY**

Defendant Constellation Energy Commodities Group, Inc. ("Constellation") files this reply in support of its motion to stay this case pending the ruling of the Federal Energy Regulatory Commission ("FERC") on Constellation's petition for a declaratory ruling on whether the ISO New England capacity market settlement in *Devon Power LLC*, 115 FERC ¶ 61, 340 (2006) (the "Settlement Agreement"), abrogated or modified Constellation's rights under wholesale power sales agreements ("PPAs") with The Narragansett Electric Company ("NEC").[1] The oppositions of NEC and the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carrier (the "State") establish no cause for not staying this proceeding until FERC acts. Regardless of which way FERC rules, this proceeding will proceed more

[1] Copies of the Settlement Agreement and FERC's June 16, 2006 Order, *Devon Power LLC*, 115 FERC ¶ 61, 340 (2006), are available via the FERC's website www.ferc.gov under Docket Nos. ER03-563, and attached as Exhibits E and F to Constellation's Motion to Dismiss NEC's Complaint [docket no. 6]. A copy of Constellation's petition to FERC was filed and served March 2, 2007 [docket no. 32].

efficiently if FERC first decides Constellation's petition, and NEC and the State identify no prejudice that either will suffer during such stay.[2]

**REPLY**

The complaints of NEC and the State allege that section VIII(A) of the Settlement Agreement "bars" or "precludes" Constellation from exercising its right to an equitable adjustment under the PPAs, or that Constellation waived its PPA rights. *See, e.g.*, NEC Compl. at ¶36; State Proposed Compl. at ¶31. NEC and the State contradict themselves by arguing that FERC is owed no deference, while simultaneously contending that "FERC approved the Settlement Agreement" (NEC Opp'n to Mot. to Stay ("NEC Opp'n") at 1) and that "the State's [and NEC's] complaint clearly states that Constellation is barred by the [S]ettlement Agreement and FERC Order." March 5, 2007 Tr. at 62.19-21 (Wold).

No serious dispute exists that a stay will aid the Court in resolving this dispute. NEC and the State seek to have this Court usurp FERC's authority over the regulation of wholesale energy by interpreting section VIII(A) of the Settlement Agreement in a manner that is not plainly stated in any FERC order (indeed, NEC admits FERC has never addressed its claim at all). *See* NEC Opp'n at 5 ("the administrative record compiled by FERC in its review of the Settlement Agreement does not contain any reference to Section VIII(A), or suggest that FERC paid any particular attention to that provision."). Because NEC and the State contend the "FERC order is a final judgment on the merits," which binds Constellation by operation of FERC's rules, it makes no sense

[2] The State filed an opposition to Constellation's motion for stay, but its participation thus far in this proceeding is only as an amicus. March 5, 2007 Tr. at 2:17-19. Consequently, the State's view on the stay should be considered accordingly, and Constellation does not consent to the State's participation here in any other regard.

not to have FERC address whether FERC's order "bars" or "precludes" Constellation from exercising its right to an equitable adjustment—especially since neither NEC nor the State identify any prejudice from a stay. Mar. 5, 2007 Tr. at 63:16-17 (Wold); NEC Opp'n at 1.

## I. NO PREJUDICE RESULTS FROM THE STAY

Neither NEC nor the State contends that the stay is unfair or will prejudice them. NEC and the State make the same arguments about the Court's jurisdiction versus FERC's jurisdiction and the likelihood of Constellation succeeding at FERC, but that argument fails to show that any cause exists for denying a stay. Because they will suffer no harm from a stay until FERC rules on the central question here—whether FERC intended its approval of the Settlement Agreement to modify or abrogate Constellation's right under the PPAs to an equitable adjustment—the Court plainly acts within its discretion to grant the stay. Allowing FERC to act (even if FERC agrees with NEC) provides for judicial efficiency because FERC's ruling will dispel questions of whether FERC has jurisdiction and whether FERC acted to deny Constellation its rights.

This Court has inherent power to stay the proceedings in the interests of fairness and judicial economy, and under the circumstances here allowing FERC to act before further litigation proceeds falls easily within that discretion. *See Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254-255 (1936)); *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); Fed. R. Civ. P. 1 (permitting federal judges to manage their dockets in a way as to promote just and efficient resolutions). Moreover, the Court should stay the case pursuant to the doctrine of primary jurisdiction (which "exists for the proper distribution of power between judicial and administrative bodies and not for the convenience of the



WDC99 1370561-3.070626.0036

parties") to enable FERC to exercise its authority and to avoid inconsistent rulings. *Distrigas of Mass. Corp. v. Boston Gas Co.*, 693 F.2d 1113, 1117 (1st Cir. 1982) (citations omitted).

## II. FERC IS THE APPROPRIATE DECISION-MAKER

### A. NEC and the State Cannot Recast their Claims to Escape FERC's Jurisdiction

There is no question FERC has the power to declare what FERC intended with respect to its approval of the Settlement Agreement, which Constellation submits is an issue of FERC's exclusive authority. In any event, NEC's and the State's oppositions conveniently overlook that Count I of NEC's complaint (which the State seeks to adopt) requests that the Court "declare that the Settlement Agreement precludes Constellation from recovering Transition Period UCAP Costs from NEC." NEC Compl. ¶ 38; *see also* Mar. 5, 2007 Tr. at 62:19-21 (Wold). Likewise, Count II claims that "Constellation's action and/or inactions during the Settlement Agreement negotiations resulted in a waiver of any known right it had to recover Transition Period UCAP Costs[, and that] Constellation cannot now obtain addition compensation under the PPAs for these costs." *Id.* ¶¶ 41-42.

Considering their allegations, NEC's and State's arguments that their claims do not implicate FERC's expertise or responsibilities under the Federal Power Act ring hollow. State Opp'n to Mot. to Stay ("State Opp'n") at 7; NEC Opp'n at 5 n.5. Because Constellation did not sign the Settlement Agreement, the preclusive effect of that document on Constellation can only be as FERC ordered. Contractual intent underlying the Settlement Agreement has nothing to do with Constellation because Constellation is not a party to the Settlement Agreement. Consequently, FERC is the proper decisional

authority to address whether section VIII(A) of the Settlement Agreement "bars" or "precludes" Constellation from exercising its equitable adjustment rights under the PPAs.

### B. Under the Primary Jurisdiction Doctrine, the Court Should Allow FERC the Opportunity to Assert its Authority

The First Circuit has expressly recognized that the doctrine of primary jurisdiction requires courts "to enable a referral to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Am. Auto. Mfg. Ass'n v. Mass. Dep't of Envtl. Prot.*, 163 F.3d 74, 81 (1st Cir. 1998) (quoting *Reiter v. Cooper*, 507 U.S. 258 (1993)) (internal quotation marks omitted). Nothing adduced by NEC or the State establishes any cause for disregarding the First Circuit's direction that courts should enable an agency to exercise its jurisdiction over administrative issues implicated in civil litigation. Indeed, NEC's and the State's "preclusion" arguments explicitly rest on the contention that FERC addressed the merits of Constellation's rights under its PPAs:

> In its Petition for Declaratory Order, Constellation requests FERC to issue a declaratory ruling that section VIII(A) does not "abrogate" or "modify" Constellation's alleged right of "equitable adjustment" under its PPAs with [NEC]. Under the guise of declaratory relief, Constellation is really requesting FERC to alter the plain language of section VIII(A) and to declare that it does not mean what it says.

State Opp'n at 14.

Arguments about why FERC should not exercise its primary jurisdiction do not establish cause for this Court to deny FERC a reasonable opportunity to address what FERC meant with respect to the PPAs when it approved the Settlement Agreement. In disposing of Constellation's petition, FERC can (as we expect) rule that FERC's order approving the Settlement Agreement did not modify or abrogate Constellation's right to

an equitable adjustment under the PPAs. Such ruling would dispose of at least Counts I and II of NEC's and the State's complaint, thereby narrowing this case substantially.

NEC's and the State's oppositions also show no reason why a stay will not reasonably avoid the possibility of inconsistent rulings between this Court and FERC. Neither NEC, nor the State seriously contend that FERC has no interest in how parties before it in administrative proceedings craft settlements applicable to the wholesale energy markets. To the contrary, NEC and the State each contend FERC's regulations and precedent over FERC settlements compel the relief they seek. *See, e.g.,* March 5, 2007 Tr. at 49:10-14 (Petros) (Constellation "chose to let FERC adopt this settlement agreement as proposed, and they're now bound by it just like everybody else who was a participant to the proceeding.").

Conversely, forward action by the Court on what section VIII(A) means risks inconsistent rulings and improper disregard for FERC's regulatory duties. *United States v. W. Pac. R.R. Co.*, 352 U.S. 59 (1956); *see also In re StarNet, Inc.*, 355 F.3d 634 (7th Cir, 2004). Under these circumstances, the Supreme Court emphasized the importance of deferring judicial action to permit agencies to resolve disputes within their primary jurisdiction in *Western Pacific*. 352 U.S. 59. There, the Court referred to the Interstate Commerce Commission ("ICC") the issue of which tariff provision applied to the government's shipment of fuseless napalm bombs, that applicable to incendiary bombs or gasoline. The Court significantly based its decision to refer the matter to the ICC under the primary jurisdiction doctrine on the ICC's greater expertise in interpreting tariffs in this circumstance. The Court recognized that while tariffs may generally be interpreted by courts, the interpretation should be left to the ICC, which has specialized knowledge

of the factors that caused it to draw the distinctions among tariffs and originally determined the appropriateness of the tariff classifications and rates. When an agency's specialized knowledge of the reasons underlying a tariff is useful in interpreting the tariff, the interpretive issue is within the agency's primary jurisdiction. *Id.* at 67-69; *see also id.* at 63-64.

The First Circuit strongly adheres to this principle "absent extraordinary delay." *Ass'n of Int'l Mfr. v. Comm'r, Mass. Dep't of Envtl. Prot.*, 196 F.3d 302, 305 (1st Cir. 1999). Even when courts have concurrent jurisdiction, the First Circuit refers disputes to the agency because an initial agency resolution "would materially aid" district courts by providing the benefit of the agency's expertise and "will promote uniformity." *Pejepscot Indus. Park v. Me. Cent. R.R. Co.*, 215 F.3d 195, 205-06 (1st Cir. 2000). In *Distrigas*, for example, the First Circuit addressed whether a stay pending a FERC ruling on the meaning of disputed language in a FERC-approved tariff should be granted and concluded a stay was proper. Specifically, the court explained:

> [T]the disputed language . . . cannot be determined solely from the text itself, nor even by reference to the intent of the parties. The ultimate issue is not what those words mean in some abstract sense, but rather what FERC intended them to mean when it approved the Long Term Program. That question is obviously one as to which the agency has special insight, which would shed light on this nominally 'legal' question.

693 F.2d at 1118.

Because *Distrigas* found that "there is no 'obviously' correct interpretation of this tariff," the court concluded that "FERC's expertise and rate-setting responsibility obviously would make its advice extremely useful." *Id.* Furthermore, "when questions of tariff reasonableness are intertwined with those of tariff construction, it may be simpler

to refer the entire matter to the appropriate agency for its advice rather than trying to untangle the questions." *Id.* at 1119 (relying on *W. Pac. R.R. Co.*, 352 U.S. 59).

For those same reasons, no cause exists here for not staying this case pending FERC's decision on Constellation's petition. FERC's expertise and declaration of the effect of its order approving the Settlement Agreement are within FERC's primary jurisdiction (if not exclusive jurisdiction), and will streamline further adjudication of the claims before the Court. Accordingly, good cause exists for the Court to stay this case pending FERC's ruling on Constellation's petition to declare whether section VIII(A) of the Settlement Agreement abrogated or modified Constellation's PPAs rights.

**CONCLUSION**

For these reasons, the Court should stay this case pending the FERC's ruling on Constellation's petition for a declaratory order.

Dated: April 2, 2007

Respectfully Submitted,
/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

Kenneth W. Irvin (DC Bar ID #439395)
Teresa M. Goody
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202.756.8116
Fax: 202.756.8087

*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2007, I electronically filed the foregoing *Reply in Support of Motion of Defendant Constellation Energy Commodities Group, Inc. to Stay* with the Clerk of the Court for the District of Rhode Island using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Hinkley Allen & Snyder, LLP
50 Kennedy Plaza
Providence, RI 02903

*Counsel for Narragansett Electric Co.*

Leo J. Wold, Esq.
Richard Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

*Counsel for State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers*

/s/ Stacey P. Nakasian