**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | C.A. NO. 06-404S |

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S SUGGESTION OF THE ABSENCE**
**OF JURISDICTION AND/OR MOTION FOR STAY PENDING APPEAL**

Constellation Energy Commodities Group, Inc. ("Constellation") submits this memorandum in support of its suggestion of the absence of jurisdiction and/or motion for stay pending appeal. Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 16(a)(1)(A)–(B), Constellation appealed this Court's denial of its motion to compel arbitration and to stay this case pending arbitration by notice filed January 9, 2008. By operation of law, Constellation's appeal removes from this Court jurisdiction over all claims in this case and transfers jurisdiction to the United States Court of Appeals for the First Circuit until that court decides whether the parties' dispute must be sent to arbitration and whether any non-arbitrable claims should be stayed. Should the Court determine notwithstanding Constellation's appeal that it retains jurisdiction over some matters, for good cause the Court should nevertheless stay proceedings pending that appeal.

## INTRODUCTION

On December 11, 2007, this Court entered an order denying Constellation's motion to compel arbitration and to stay this case [Docket No. 6]. Opinion & Order (Filed Dec. 11, 2007) [Docket No. 42] (hereinafter "Op."). The Court then ordered a discovery conference for February 6, 2008, to begin full discovery in this matter. Not. of Hearing (Dec. 27, 2007). The denial of Constellation's motion is immediately appealable under the FAA, 9 U.S.C. §§ 16(a)(1)(A)–(B), and by notice filed January 9, 2008, Constellation sought appellate review of that order.

As the Court knows, The Narragansett Electric Company ("NEC") and Constellation have entered into four wholesale power purchase agreements (the "PPAs"),[1] and "at bottom [their dispute] seek[s] a declaration of the parties' rights and obligations under the PPAs and to foreclose Constellation from seeking additional compensation" as a result of the "regulatory increase in capacity costs." Op. at 10, n.11, 26. The Court read the 2001 and 2002 Contracts to "plainly evidence an intent to arbitrate" (Op. at 24), and recognized that the claims by NEC and intervenors, the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively, the "State"), "are substantially intertwined" and "largely implicate[ ] the same facts as would otherwise be in issue between NEC and

---

[1] The four PPAs are:

- Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998 and amended on January 27, 2003, March 5, 2003, and June 3, 2003) (the "20% Contract").
- Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998 and amended on January 27, 2003, March 5, 2003, and June 3, 2003) (the "36% Contract").
- Power Supply Agreement between The Narragansett Electric Company and Constellation Power Source, Inc. (dated October 5, 2001 and amended August 23, 2002) (the "2001 Contract").
- Power Supply Agreement between Narragansett Electric Company and Constellation Power Source, Inc. (dated August 23, 2002 and amended June 12, 2003) (the "2002 Contract").

Constellation." Op. at 27, 29. Because of that commonality and overlap, the claims of NEC and its ally the State are subject to arbitration and/or the Court's power to stay proceedings under the FAA.

While this Court denied Constellation's motion, Constellation submits that review on appeal will vindicate its right to compel arbitration immediately and/or to stay proceedings. Put plainly, if Constellation wins on appeal the core issues pending before this Court—*e.g.*, Constellation's right to an equitable adjustment, the impact of the FERC settlement on Constellation's equitable adjustment claim, Constellation's alleged waiver of the equitable adjustment right via its actions in the FERC proceedings, and whether Constellation is estopped from asserting that right—will be submitted to arbitration. Consequently, appeal of the order denying the motion to compel arbitration and to stay proceedings temporarily vests in the appellate court all jurisdiction to proceed with the issues in this case.

In recognition of the jurisdictional significance of its appeal, Constellation respectfully suggests this Court should vacate its scheduling order and stay proceedings until the appellate court has remanded the case. Should this Court determine that it retains jurisdiction over some matters, however, Constellation moves the Court to stay proceedings pending the appeal. Any action by this Court prior to the First Circuit's ruling would conflict with the strong federal policy favoring arbitration, risk inconsistent outcomes on core factual questions and legal issues that cut across all claims in this action, violate the policy of conserving judicial resources and avoiding parallel proceedings, impose an undue discovery burden on the parties, and irreparably harm Constellation's right to arbitration. On the other hand, a stay of this action pending appeal will not prejudice NEC or the State. Accordingly, for good cause this Court should stay all proceedings pending resolution of Constellation's appeal.

## ARGUMENT

## I. By Operation of Law Constellation's Appeal Divests This Court of Jurisdiction

### A. An Appeal Automatically Divests The District Court of Jurisdiction

"The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).[2] As the First Circuit explained, "[a]llowing more than one court to take charge of a case at any given moment disserves the interests of comity and judicial economy." *United States v. Brooks*, 145 F.3d 446, 456 (1st Cir. 1998). Thus, "as a general rule, the filing of a notice of appeal divests a district court of authority to proceed with respect to any matter touching upon, or involved in, the appeal." *Id.* at 455 (citation and internal quotation marks omitted). The only exceptions to this general divestiture rule are inapplicable here, as those situations involve (1) a defective or frivolous appeal, (2) "peripheral or ancillary aspects of the case [such] as motions for counsel fees," (3) actions "in aid of execution of a judgment that has been appealed and not stayed," or (4) orders relating to procedures "in aid of the appeal." *Id.* at 456.

The automatic divestiture rule applies with full force to appeals from orders regarding arbitrability. *See Lummus Co. v. Commonwealth Oil & Ref. Co., Inc.*, 273 F.2d 613 (1st Cir. 1959) (holding, prior to the FAA, that all proceedings should be stayed pending the outcome of

---

[2] "Denials of arbitration under the Federal Arbitration Act are, unlike most interlocutory rulings, immediately appealable." *Colon v. R.K. Grace & Co.*, 358 F.3d 1, 4 (1st Cir. 2003) (citing 9 U.S.C. §§ 4, 16(a)(1)(B)). The fact that the Court left open the possibility of reconsidering its decision down the line does not impede Constellation's right under the FAA to an immediate appeal of the Court's order denying the motion to compel arbitration and stay proceedings. *See Boomer v. AT&T Corp.*, 309 F.3d 404, 411-14 (7th Cir. 2002); *Snowden v. Checkpoint Check Cashing*, 290 F.3d 631, 635-36 (4th Cir. 2002); *Sandvik AB v. Advent Inter. Corp.*, 220 F.3d 99, 102-04 (3d Cir. 2000).

an appeal taken from an adverse arbitration decision). Since the passage of the FAA the majority of circuits addressing the issue have held that an appeal under section 16(a) of the FAA automatically divests the trial court of jurisdiction to proceed with the matter. *See, e.g., Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997) (citing *Lummus*, 273 F.2d at 613); *see also Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007); *McCauley v. Haliburton Energy Servs., Inc.*, 413 F.3d 1158, 1160 (10th Cir. 2005); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249, 1251-52 (11th Cir. 2004); *Combined Energies v. CCI, Inc.*, 495 F. Supp. 2d 142, 143 (D. Me. 2007).[3]

Any rule other than automatic divestiture upon an appeal of an FAA issue would undermine Congress' clear intent. When Congress passed the FAA, it permitted an immediate appeal when the district court refuses either to compel arbitration or to stay proceedings pending arbitration. 9 U.S.C. § 16(a)(1)(A) (permitting immediate appeal of denial of motion to stay under section 3 of the FAA); *id.* § 16(a)(1)(B) (permitting immediate appeal of denial of motion to compel arbitration under section 4 of the FAA). In doing so, Congress sought to prevent simultaneous, duplicative proceedings that would waste the resources of both the courts and the litigants. *See Blinco*, 366 F.3d at 1251-52 ("underlying reasons for allowing immediate appeal of a denial of a motion to compel arbitration are inconsistent with continuation of proceedings in the district court"). "The worst possible outcome would be to litigate the dispute, to have the court of appeals reverse and order the dispute arbitrated, to arbitrate the dispute, and finally

---

[3] *Combined Energies* notes a circuit split on whether an appeal of an order denying a motion to compel arbitration automatically divests the district court of jurisdiction when the appeal is neither frivolous nor forfeited. 495 F. Supp. 2d at 143 (citing cases). The court there concluded that automatic divestiture was the "better view." *Id.*

return to court to have the award enforced." *Bradford*, 128 F.3d at 506. Allowing an immediate appeal under section 16(a), as the Seventh Circuit has explained, "helps cut the loss from duplication." *Id.* But "combining the costs of litigation and arbitration is what lies in store if a district court continues with the case while an appeal under § 16(a) is pending." *Id.*

### B. In This Case, Constellation's Appeal Divests This Court of Jurisdiction

The divestiture rule applies in this case. Constellation's appeal raises two issues: (1) whether this Court erred when it failed to compel arbitration under the 2001 and 2002 Contracts; and (2) whether this Court erred when it refused to stay all remaining claims in the proceedings pending resolution of that arbitration. For the following two reasons, every issue in this case is "touching upon, or involved in" the appeal and thereby part of the automatic divestiture. *See Brooks*, 145 F.3d at 455.

First, the primary issue that the Court of Appeals must decide is whether the parties' dispute may remain in district court or whether some or all of it must proceed to arbitration. If the Court of Appeals compels arbitration, the core factual and legal issues raised by NEC and the State will be resolved by the arbitration, including: (1) whether the PPAs between NEC and Constellation permit Constellation to receive an equitable adjustment (NEC's Compl. Counts I, III, IV, & V; State's Compl. Count I); (2) the impact of the FERC settlement and whether Constellation waived its right to obtain an equitable adjustment via its actions in the FERC proceedings (NEC's Compl. Count II; State's Compl. Count II); and (3) whether Constellation is estopped from seeking an equitable adjustment via its actions in the FERC proceedings (State's

Compl. Count III).[4] In its motion to compel arbitration, Constellation cited authority for this Court's ability to refer these core issues to arbitration. Whether those issues are subject to arbitration is the central question now on appeal. This Court, therefore, is divested by the appeal of jurisdiction over those issues, and it is beyond this Court's authority to proceed while the Court of Appeals decides whether the issues belong in this Court or in arbitration. *McCauley*, 413 F.3d at 1160, 1163 (holding that district court was divested of jurisdiction over claims the district court found were non-arbitrable); *Lummus*, 273 F.2d at 613; *Brooks*, 145 F.3d at 455.

Second, along with deciding whether this dispute belongs in arbitration, the Court of Appeals also will decide whether this Court "must stay its own proceedings pending arbitration." *Bradford-Scott*, 128 F.3d at 506. In other words, "[w]hether the litigation may go forward in the district court is precisely what the court of appeals must decide." *Id.* Should Constellation succeed on appeal, the result will be the complete cessation of all proceedings in this Court. As the First Circuit has explained, "the filing of a notice of appeal divests a district court of authority to proceed with respect to *any* matter touching upon, or involved in, the appeal." *Brooks*, 145 F.3d at 455 (emphasis added); *see also Page v. Moseley,* 806 F.2d 291, 300 (1st Cir. 1986) (ordering arbitration for arbitrable claims and a stay of non-arbitrable claims). In this case, the very issue on appeal is whether the claims brought by NEC and the State can proceed in this Court at this time. It would defy the divestiture rule itself for this Court to proceed with this case

---

[4] Constellation's appeal implicates all of NEC's claims and all of the State's claims. Out of the three claims asserted by the State, two are identical to those already raised by NEC. (State's Compl. Counts I & II). The State's third and additional new claim is for estoppel, which is substantially similar to NEC's allegation of waiver. *Compare* NEC Compl. Count II (stating that the State only accepted the Settlement Agreement because the State thought the Agreement "precluded" Constellation from seeking an equitable adjustment), *with* State's Compl. Count III (claiming that the State only accepted the Settlement Agreement because it thought it would "bar" Constellation from obtaining an equitable adjustment). This Court recognized as much when it held that the "State is not seeking to inject any new issues into this already labyrinthine dispute." Op. at 27-28. This Court further noted that the "State argues its claims are *substantially intertwined* with questions of law and fact common to the claims made by NEC." *Id.*

when the First Circuit is deciding whether this case can proceed at all. *Bradford-Scott*, 128 F.3d at 506.

## II. Alternatively, For Good Cause, the Court Should Stay Proceedings Pending Resolution of the Appeal

To the extent the Court determines that some of the claims before it are not transferred to the Court of Appeals upon notice of Constellation's appeal, the Court should nonetheless stay proceedings pending that appeal. A trial court has the inherent discretion to stay proceedings in an action pending the resolution of proceedings elsewhere. *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 n.6 (1998); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In the context of arbitration, where concerns for preventing duplicative proceedings are particularly acute, district courts have been found to abuse their discretion in failing to stay proceedings. *See, e.g., Lummus*, 273 F.2d at 613; *McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1107-08 (2d Cir. 1990) (reversing district court's denial of a mandatory stay under section 3 of the FAA).[5] In deciding whether to stay proceedings, courts consider (1) the strong federal policy favoring arbitration, (2) the risk of inconsistent outcomes if the cases proceed simultaneously in different forums, (3) the interests of economy for both the court and the litigants, and (4) any prejudice to the parties resulting from the stay. *See Volkswagon of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 971

---

[5] Some courts apply the traditional four-part analysis under Fed. R. Civ. P. 62(c) in deciding whether to impose a stay pending appeal. *C.B.S. Employees Fed. Credit Union v. Donaldson*, 716 F. Supp. 307, 309 (W.D. Tenn. 1989). Under that test, the First Circuit has held that a court should balance the following factors: (1) likelihood of success on the merits, (2) irreparable harm absent a stay, (3) injury to other parties resulting from issuance of the stay, and (4) the public interest. *Acevedo-Garcia v. Vera-Monroig*, 296 F.3d 13, 16 n.1 (1st Cir. 2002). The analysis advanced here by Constellation addresses primarily the merits of its underlying motion to stay pending arbitration, though the factors relevant to the merits both mirror and satisfy the remaining elements of the traditional four-part analysis. Constellation will incur unrecoverable litigation costs if it is forced to conduct unnecessary discovery and simultaneously litigate in two forums. NEC and the State, on the other hand, will suffer no prejudice in staying the proceedings as the costs of delay are entirely borne by Constellation. Finally, the federal policy in favor of arbitration supports a stay of any court proceeding that could be potentially resolved in arbitration. These factors are discussed in turn as part of the merits of the stay pending arbitration.

(7th Cir. 2007) (risk of inconsistent rulings); *AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777, 783 (8th Cir. 2001) (prejudice to the parties); *Sevinor v. Merrill Lynch, Pierce, Fenner & Smith*, 807 F.2d 16, 20-21 (1st Cir. 1986) (efficiency to court and litigants). Here, these factors establish ample cause for a stay.

**A. A Stay Promotes the Strong Federal Policy Favoring Arbitration**

The FAA was enacted to codify a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). In recognition of this federal policy, federal courts have held that if there are arbitrable and non-arbitrable claims in the same action, the arbitrable claims should be given priority to the extent the arbitrable claims are likely to involve issues material to or common to the non-arbitrable claims. *See AgGrow Oils*, 242 F.3d at 783. As this Court recognized, all claims raised by NEC and the State in this case are "are substantially intertwined" and "largely implicate[ ] the same facts." Op. at 27, 29. Thus, it is appropriate that this Court stay this matter so that, if the First Circuit rules that there are arbitrable claims, the arbitrable claims will be given priority in accordance with the strong federal policy favoring arbitration. *See, e.g.*, *Morrie Mages & Shirlee Mages Found. v. Thrifty Corp.*, 916 F.2d 402, 407-08 (7th Cir. 1990) (reversing and remanding for imposition of a stay pending the arbitration of common issues in arbitrable and non-arbitrable claims), *abrogated on other grounds by IDS Life Ins. Co. v. Sun Arena, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996); *see also Page,* 806 F.2d at 300.

**B. Failure to Stay This Case Will Risk Parallel, Inconsistent Rulings**

Second, allowing this case to proceed creates a very real risk of parallel, inconsistent rulings. Because NEC and the State seek to foreclose Constellation from an equitable adjustment to cover the regulatory increase in the cost of capacity under all four PPAs, common

issues obviously cut across all their claims. In particular, the significance of the FERC settlement and its impact on performance of the PPAs, the conduct of the parties in the FERC proceedings, and the intentions of the parties when they negotiated the equitable adjustment provisions in the PPAs are all material to and common for all the claims in this action. Even if the Court of Appeals only compels arbitration on two of the four PPAs, the legal and factual issues that must be addressed under the two arbitrable PPAs are sufficiently similar to the other two PPAs that the risks of proceeding with nearly identical claims are obvious: the same case will essentially be litigated twice, the parties will be forced to incur the expense of two cases proceeding simultaneously, and there will be a very real chance that the results could be inconsistent or flatly contradictory. To avoid such problems, the appropriate response is to stay all proceedings in this Court until the First Circuit decides whether this case will proceed to arbitration and whether any non-arbitrable claims should be stayed pending the resolution of the arbitration. *See AgGrow Oils*, 242 F.3d at 783 (considering the risk of inconsistent rulings in parallel proceedings).

### C. A Stay Would Promote the Policy of Avoiding Parallel Proceedings

It would waste both litigant and judicial resources to require the parties to proceed with extensive discovery when a successful appeal would send this case to binding arbitration (without discovery)[6] and stay all other claims pending that arbitration. The Court ordered a discovery conference for February 6, 2008, to begin full discovery. Should the First Circuit later decide that this case belongs in arbitration, Constellation will have undergone substantial discovery with two parties, expending unrecoverable time, resources, and costs. This outcome is

---

[6] The 2002 PPA between the parties states that there shall be "no formal discovery conducted in connection with the arbitration." 2002 Contract, §16.2.

precisely what motivated the First Circuit in *Lummus* to stay the underlying proceedings pending appeal on the issue of arbitration. In that case, the court stated that "a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such an obligation." *Lummus*, 273 F.2d at 613; *see also Combined Energies*, 495 F. Supp. 2d at 143 (stating that "*Lummus* strongly suggests that a party should not be allowed to proceed with discovery when the other party has appealed an order denying arbitration").

The risk of premature discovery is particularly acute in cases like this one, where a successful appeal will compel arbitration of the core issues. As the First Circuit has noted in dicta, "it is wasteful to have a full trial and then determine by post-trial appeal that the whole matter should have been arbitrated and so start again." *Cozza v. Network Assocs., Inc.*, 362 F.3d 12, 15 n.1 (1st Cir. 2004).

Proceeding in the district court further wastes judicial resources because, in the event arbitration is compelled, the arbitrator's decision would resolve the core issues in dispute and would have evidentiary value as to any non-arbitrable claims. *See Sevinor*, 807 F.2d at 20. The Fifth Circuit explained that when arbitrable and non-arbitrable claims are "based on the same operative facts and are inherently inseparable," permitting the trial court to proceed on the non-arbitrable claims would render arbitration "both redundant and meaningless; in effect, thwarting the federal policy in favor of arbitration . . . and adversely affecting [appellant's] right to arbitrate." *Harvey v. Joyce*, 199 F.3d 790, 795-96 (5th Cir. 2000) (reversing district court denial of stay on non-arbitrable claims); *see also Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 328-29 (5th Cir. 1999); *Spencer Furniture, Inc. v. Media Arts Group, Inc.*, 349 F. Supp. 2d 49, 53-54 (D. Mass. 2003).

In the present case, the dispute concerns the parties' rights under the PPAs and whether Constellation may obtain additional compensation from NEC because of the "regulatory increase in capacity costs." Op. at 10, n.11, 26. Indeed, the State's estoppel claim is wholly dependent on Constellation's entitlement to an equitable adjustment under the PPAs. Only if Constellation succeeds on that argument will it become necessary to consider the State's estoppel claim, which is identical to NEC's waiver argument and amounts to no more than an affirmative defense within the arbitrator's jurisdiction to decide. *Brennan v. King*, 139 F.3d 258, 264 (1st Cir. 1998). It makes no sense for this Court to proceed with these claims at this stage because the very same issues will be fully arbitrated if the Court of Appeals reverses this Court's arbitration ruling. Because all the claims before this Court are either identical to or inextricably intertwined with the claims Constellation asserts must be submitted to arbitration, the arbitrator's resolution of the identical equitable adjustment and waiver issues "could serve to clarify and perhaps even simplify the remaining issues which must be litigated," making parallel proceedings inefficient and duplicative. *Sevinor*, 807 F.2d at 20.

**D. Staying This Case Will Not Harm Or Prejudice NEC Or The State, But Failure To Stay This Case Will Prejudice Constellation**

Finally, neither NEC nor the State will be prejudiced by staying their claims until resolution of Constellation's appeal. It is Constellation and no one else who suffers the harm from delay. Constellation presently bears all the increased costs to purchase capacity arising from the regulatory changes. Neither NEC nor its ratepayers (for whom the State acts) are paying any of those increased costs at this point. Only if Constellation succeeds will it be able to pass some or all of those costs onto NEC. Thus, preserving the status quo means that NEC and its ratepayers receive capacity without bearing any of the increased costs of the regulatory shift. Staying these proceedings does not harm either the State or NEC.

Balancing these factors, a stay of this case "would promote judicial efficiency, avoidance of confusion, and possible inconsistent results and not work undue hardship or prejudice against the plaintiff." *See DJ Mfg. Corp. v. Tex-Shield, Inc.*, 998 F. Supp. 140, 146 (D.P.R. 1998) (citation and internal quotation marks omitted). This Court therefore should exercise its discretion and stay this matter pending resolution of Constellation's appeal.

**CONCLUSION**

For these reasons, Constellation respectfully suggests that the Court is divested of jurisdiction by operation of law pending remand of Constellation's appeal of the order denying Constellation's motion to compel arbitration and to stay proceedings. Should the Court determine that it retains jurisdiction over certain matters, good cause exists nevertheless for the Court to stay all proceedings pending disposition of Constellation's appeal. Accordingly, the Court should enter an order staying this case pending the outcome of Constellation's appeal.

Dated: January 9, 2008 Respectfully Submitted,

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

Kenneth W. Irvin (DC Bar ID #439395)
Paul M. Thompson (pthompson@mwe.com)
Teresa M. Goody (tgoody@mwe.com)
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: (202) 756-8116 - Fax: (202) 756-8087
E-mail: kirvin@mwe.com
*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2008, I electronically filed the foregoing *Defendant's Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal* and *Memorandum of Points and Authorities* with the Clerk of the Court for the District of Rhode Island using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Hinkley Allen & Snyder, LLP
50 Kennedy Plaza
Providence, RI 02903
gpetros@haslaw.com
rmain@haslaw.com
*Counsel for Narragansett Electric Co.*

Leo J. Wold, Esq.
Richard B. Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903
lwold@riag.ri.gov

*Counsel for State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers*

*/s/ Stacey P. Nakasian*
Stacey P. Nakasian
*Attorney for Defendant*
*Constellation Energy Commodities Group, Inc.*