**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,**<br>**Plaintiff**<br><br>**STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS**<br><br>**Intervenor-Plaintiffs,**<br><br>**v.**<br><br>**CONSTELLATION ENERGY COMMODITIES GROUP, INC.,**<br><br>**Defendant.** | ) | **C.A. NO. 06-404S** |

**OBJECTION OF THE DIVISION OF PUBLIC UTILITIES AND CARRIERS AND STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS TO CONSTELLATION'S SUGGESTION OF THE ABSENCE OF JURISDICTION AND/OR MOTION FOR STAY PENDING APPEAL**

The State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively referred to herein as the "State") object to the Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal of Constellation Energy Commodities Group, Inc. ("Constellation"), request this Court to deny Constellation's motion for stay pending appeal, and enter such other relief as the Court deems just and proper to effectuate the adjudication of the State's Complaint forthwith.

In support of its objection, the State submits the accompanying memorandum of law.

Respectfully submitted,

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS,
and the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

Dated: January 28, 2008

**CERTIFICATION**

I certify that on January 28, 2008, a copy of the within objection was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **THE NARRAGANSETT ELECTRIC COMPANY,** | ) | |
| **Plaintiff** | ) | |
| **STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS** | ) | |
| **Intervenor-Plaintiffs** | ) | |
| **v.** | ) | **C.A. NO. 06-404S** |
| **CONSTELLATION ENERGY COMMODITIES GROUP, INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF LAW OF THE DIVISION OF PUBLIC UTILITIES AND CARRIERS AND STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS IN SUPPORT OF THEIR OBJECTION TO CONSTELLATION'S SUGGESTION OF THE ABSENCE OF JURISDICTION AND/OR MOTION FOR STAY PENDING APPEAL**

The State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers (collectively referred to herein as the "State") have objected to the Suggestion of the Absence of Jurisdiction And/Or Motion for Stay Pending Appeal of Constellation Energy Commodities Group, Inc. ("Constellation"). The State submits this memorandum of law in support of its opposition to Constellation's suggestion of the absence of jurisdiction and/or motion for stay pending appeal.

# I. ARGUMENT

## A. CONSTELLATION HAS NOT PRESENTED COMPELLING REASONS TO STAY THE STATE'S COMPLAINT.[1]

When a district court is confronted with the issue of whether or not to grant a discretionary stay with respect to non-arbitrable claims, "arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." See Chang v. Lin, 824 F.2d 219, 223 (2d Cir. 1987) (allowing arbitration and federal litigation to proceed simultaneously in the context of '33 Act claims); Tedeschi v. Applied Concepts, 2007 WL 184734 (N.D. Ohio 2007) (discretionary stay denied where non-arbitrable claims were outside the scope of limited arbitration clause). Stated another way, there is a "heavy presumption" against the deferral of non-arbitrable claims. Chang, 824 F.2d at 223. See also Pompano-Windy City Partners, Ltd., 698 F. Supp. 504, 520 (S.D.N.Y. 1988). This principle is all the more true when: (i) the independent, non-arbitrable claim is brought on behalf of a "sovereign entity," Montauk Oil Transportation Corp. v. Steamship Mutual Underwriting Association Ltd., 859 F. Supp. 669, 676 (S.D.N.Y. 1994), (ii) "the entity is not a party to the arbitration agreement," Sierra Rutile Limited v. Katz, 937 F.2d 743, 750 (2d Cir. 1991); Montauk Oil, 859 F. Supp. at 679; and, (iii) "and the sovereign's claims involve the vindication of a public right of broad social importance." Montauk Oil, 859 F. Supp. at 679 (vindication of pollution free waterways). See also Sam Reisfeld & Son Import Company v. S. A. Eteco, 530 F.2d 679, 681 (5th Cir. 1976) (federal antitrust claims should proceed to trial since such claims generally are not arbitrable); Horne v. New England Patriots Football Club,

[1] The term "Complaint," as used herein, refers to the State's Complaint that was filed with the Court on December 12, 2007.

Inc., 489 F. Supp. 465, 470 (D. Mass. 1980) (when the arbitration proceeding cannot vindicate an individual's independent statutory right protecting against age discrimination, a discretionary stay is improper).

**1. The State's Claims Are Not Subject To Arbitration.**

Under the aforementioned standard of review, Constellation has not presented the Court with compelling circumstances to stay the Complaint pending its interlocutory appeal. Most significantly, the State's claims are not subject to arbitration. No contract exists between Constellation and the State upon which Constellation can assert a right to arbitrate. Absent such a contractual right, Constellation simply does not possess the right to compel arbitration of any of the claims contained in the State's Complaint. Sierra Rutile, 937 F.2d at 750; Citrus Marketing Board of Israel v. J. Lauritzen A/S, 943 F.2d 220, 225 (2d Cir. 1991); IDS Live Insurance Co. v. Sun America, Inc., 103 F.3d 524, 529 (7th Cir. 1997); In Re: Talbott Bigfoot, Inc., 887 F.2d 611, 614 (5th Cir. 1989); Montauk Oil, 859 F. Supp. at 676. Constellation's allegation to the contrary on Page 6 of its memorandum of law is without merit.

**2. Proceeding To Adjudicate The State's Claims Will Vindicate An Important Public Right Belonging To The State of Rhode Island And Its Electric Ratepayers.**

Moreover, the State of Rhode Island is a sovereign entity, which possesses a vital interest in vindicating Rhode Island electric ratepayers' rights under Section VIII(A) of the Settlement[2] and Order[3] of the Federal Energy Regulatory Commission ("FERC") as

[2] The Settlement Agreement ("Settlement") was filed on March 6, 2006 in Devon Power LLC, et al., Docket Nos. ER03-563-030 & ER03-563-055.

[3] The Order Accepting Proposed Agreement ("Order") was issued by FERC on June 16, 2006.

soon as possible. As the Court will recall, the process that led to the consummation of the Settlement and issuance of the Order involved regulatory and consumer representatives of the six New England States, generators, transmission owners, and power suppliers, among others. The Settlement, which proposed the adoption of a Forward Capacity Market ("FCM") as an alternative to the Locational Installed Capacity ("LICAP") market, possesses region-wide economic impact, estimated at well over a billion dollars, was the product of over 30 formal settlement conferences and negotiations involving roughly 115 parties, as well as the active participation of Administrative Law Judge Lawrence Brenner, and ultimately FERC itself.

During the course of the conferences and negotiations that transpired between the settlement process participants, the State became a "swing" settlement participant. As such, in consideration of the State's agreement to execute the Settlement, the State obtained in the Settlement the promise of Standard Offer wholesale suppliers (such as Constellation) to assume the responsibility for, and not to seek recovery of, Transition Period UCAP costs.

Citing well-established precedent such as United Man. Distribs. Group v. FERC, 732 F.2d 202, 209 (D.C. Cir. 1984); FERC v. Triton Oil & Gas Corp., 712 F.2d 1450-1458-59 (D.C. Cir. 1983); Mobil Oil Corp. v. FPC, 417 U.S. 283, 312-13 (1974); New Orleans Pub. Serv., Inc. v. FERC, 659 F.2d 509, 511-12 (5th Cir. 1981); Pennsylvania Gas & Water Co. v. Fed. Power Comm'n, 463 F.2d 1242, 1246 (D.C. Cir. 1972), this Court has already ruled that the FERC Settlement "*has legal authority because it has become in effect a binding order of FERC.*" Opinion and Order at 18-19, n. 15 (emphasis added).

In the State's view, under principles of administrative claim preclusion, e.g., University of Tennessee v. Elliott, 478 U.S. 788, 797-98 (1986); United States v. Utah Construction & Mining Co., 384 U.S. 394, 422 (1966); Bath Iron Works Corp. v. Director of Workers' Compensation Programs, 125 F.3d 18, 22-23 (1st Cir. 1997); Vilanova v. United States, 851 F.2d 1, 6 (1st Cir. 1988); waiver, e.g., Exxon Corp. v. Federal Energy Regulatory Comm'n, 114 F.3d 1252, 1260 (D.C. Cir. 1997); and estoppel, Schiavulli v. School Committee of the Town of North Providence, 334 A.2d 416, 419 (R.I. 1975) (equitable estoppel), Patriot Cinemas, Inc. v. General Cinemas Corp., 834 F.2d 208, 214 (1st Cir. 1987) (judicial estoppel), the Settlement and Order are not subject to collateral attack and are *immediately, legally enforceable* against Constellation.

The State's claims seeking to enforce the Settlement and Order "involve the vindication of a public right of broad social importance." Montauk Oil, 859 F. Supp. at 679. The enforcement of Section VIII(A) of the Settlement and Order has statewide electric ratepayer impact of many millions of dollars, and is no different than the vindication by a sovereign of a pollution free waterway, id. 859 F. Supp. at 679, the pursuit of federal antitrust claims, Sam Reisfeld & Co., 530 F.2d at 681, or the vindication of federal anti-discrimination rights, Horne, 489 F. Supp. at 470. Like these other rights, public utility ratepayer interests, by their very nature, are interests "affected with the public interest." E.g., Providence Gas Co. v. Burke, 475 A.2d 193, 196 (R.I. 1984). See G.L. § 39-1-1(a)(2)("[t]he business[ ] of distributing electrical energy . . . is affected with a public interest"); G.L. § 39-1-1(2)("[s]upervision and reasonable regulation by the state in which such businesses [public utilities] . . . carry on their

operations . . . are necessary to protect and promote the convenience, health, comfort, safety, accommodation and welfare of the people, and are a proper exercise of the police power of the state").

Constellation has not presented compelling reasons to justify the imposition of a stay of the State's Complaint pending the adjudication of its interlocutory appeal. The Court, therefore, should deny Constellation's motion for stay pending appeal.

### 3. <u>A Stay Pending Appeal Will, In All Probability, Severely Prejudice Rhode Island Electric Ratepayers.</u>

While Constellation has failed to satisfy its heavy burden in this matter, the State and its electric ratepayers will, in all probability, be severely prejudiced if the Court does not proceed immediately to adjudicate their claims. Constellation, by its own estimate, seeks over $150 million from Narragansett Electric and Rhode Island electric ratepayers for Transition Period (December 1, 2006 to May 30, 2010) UCAP costs. At the same time, Narragansett Electric's wholesale standard offer supply contracts are set to expire on December 31, 2009. Under new contracts, Narragansett Electric may well experience a substantial increase in annual power supply costs, based on current market prices. By the Division's calculation, this increase could total roughly $100 million dollars based on the present market price of power. A $100 million dollar increase in annual power supply costs increases a typical residential customer bill (500 kwhs) by about $7.50 per month.

Were Constellation to somehow prevail against Narragansett Electric, the delay occasioned by its pending interlocutory appeal could necessitate payment on the resulting liability at or about the same time that the standard offer contracts expire. Rhode Island

electric ratepayers, then, would be subject to substantial "rate shock," produced by the outcome of the instant matter in combination with the rate increases that will likely occur upon the expiration of the standard offer contracts. It is absolutely critical that the Court expeditiously address the merits of the State's Complaint in order to give Rhode Island electric ratepayers certainty regarding their rates as soon as possible and to enable ratepayers to mitigate the probable "rate shock" in the unlikely event of an adverse decision. Just as importantly, expeditious adjudication of the State's Complaint will assist regulators in maintaining their objective of providing rate stability in pricing decisions in the face of the probable scenario of higher market commodity costs after December 31, 2009.

**4. Constellation Will Not Be Prejudiced If A Stay Is Denied.**

Contrary to Constellation's contention located on Pages 10 and 12 of its memorandum of law, the State's claims are not "dependent" in any way whatsoever on the outcome of the Power Producer Agreements ("PPA") litigation between Constellation and Narragansett Electric. Count I, II and III of the State's Complaint seek declaratory and injunctive relief to enforce the Settlement and Order. The claims' underpinnings rest on the theories of administrative claim preclusion, waiver and estoppel. Namely, the Settlement and Order serve as a legal and/or equitable bar to Constellation's effort to recover Transition Period UCAP costs. The State's claims relating to the enforcement of Section VIII(A), thus, arise out of Constellation's conduct before FERC and the terms of the Settlement and Order, not the PPAs' between Constellation and Narragansett

Electric.[4]

Since the State's claims are non-arbitrable, e.g., Sierra Rutile, 937 F.2d at 750; Citrus Marketing Board, 843 F.2d at 225, and are not dependent in on the outcome of the PPA litigation, whatever the outcome in the First Circuit Court of Appeals, this Court will be required to address the merits of the State's Complaint. Proceeding with the adjudication of the State's claims forthwith, therefore, will not implicate a needless expenditure of "time, resources and costs" by Constellation, or, for that matter, by the Court. Constellation will not be prejudiced if its request for stay is denied.

Constellation's reliance on Lummus Co. v. Commonwealth Oil Refining Co., 273 F.2d 613 (1st Cir. 1959) is misplaced. Lummus did not involve claims of an independent third party, which were not subject to arbitration. Nor in Lummus was one of the parties a sovereign, possessing claims the resolution of which would vindicate public rights of broad social importance.

In Lummus a single private party litigant alleged that a construction contract (which contained a standard arbitration provision) had been obtained by fraud or negligent misrepresentation. See Commonwealth Oil Refining Co. v. Lummus Co., 174 F. Supp. 485, 487 (D.P.R. 1959). Thus, when the matter reached First Circuit Court of Appeals on defendant-appellant's motion to stay, "the entire dispute" (*i.e.*, all the claims

---

[4] From the outset, it has been abundantly clear that this proceeding consists of two components: (i) Narragansett Electric's dispute with Constellation under four PPAs, and (ii) Narragansett Electric's and the State's claims against Constellation under the Settlement and Order, specifically Section VIII(A). In Component (i) only a single PPA contains a putatively applicable arbitration clause. The State's claims against Constellation *are restricted* to enforcing the State's rights under the Settlement and enforcing the Order, Component (ii), above. *None of the State's (or Narragansett Electric's claims in Component (ii)) are arbitrable*. Opinion and Order at 28.

By contending that a single putatively arbitrable PPA necessitates a stay of both components of this litigation, Constellation attempts to brush all aspects of the case before the Court with the veneer of arbitration. As discussed above, the vast weight of legal authority flatly contradicts Constellation's efforts in this regard.

of all the parties) was likely subject to arbitration. Allowing discovery of these claims, the Court reasoned, would be "inimical" to the right of arbitration. Id. at 487.

That outcome is simply not the case here, where as previously discussed, none of the claims contained in the State's Complaint are subject to arbitration, E.g., Sierra Rutile, 937 F.2d at 750; Citrus Marketing Board, 843 F.2d at 225; Montauk Oil, 859 F. Supp. at 679, or would or could be resolved by the results of the arbitration of a single PPA.[5]

Constellation's reliance on Harvey v. Joyce, 199 F.3d 790 (5th Cir. 2000) and Subway Equipment Leasing Corp, 169 F.3d 324 (5th Cir. 1999) is also in error. In Harvey, the non-signatory to a contract containing an arbitration provision (CTC) requested a stay pending arbitration. Harvey, 199 F.3d at 795. In Subway Equipment Leasing, the signatory to a contract containing an arbitration provision sought to include affiliated non-signatories (SEL, SRI and SSS) within the scope of the stay pending arbitration. Subway Equipment Leasing, 169 F.3d at 329.

In both cases, it was non-signatories that *sought* arbitration. The Fifth Circuit Court of Appeals didn't see the harm in staying the matters and allowing non-signatories to participate in the arbitration process. Forcing the signatory to try the case when the non-signatory also wanted arbitration would be "meaningless." Harvey, 199 F.3d at

[5] Sevinor v. Merrill Lynch, Pierce, Fenner & Smith, 807 F.2d 16 (1st Cir. 1986) is inapposite to the case at bar as well. In Sevinor, the First Circuit Court of Appeals upheld the district court's stay of a non-arbitrable RICO claim until an arbitration of an arbitrable 10b-5 claim had transpired. The same plaintiff and defendant were on opposite sides of both claims, and a 10b-5 violation was a predicate violation to success on the non-arbitrable, RICO claim. Id. at 18, 20. By contrast, in the case at bar, the State is not a party to the PPAs, and will not be a participant in the unlikely event of any arbitration between Narragansett Electric and Constellation. The outcome of any unlikely arbitration cannot bind the State or be accorded any evidentiary weight in the proceeding before this Court. E.g., American Renaissance Lines, Inc. v. Saxis Steamship Co., 502 F.2d 674, 677 (2d Cir. 1974) ("arbitrators do not have the power to bind a corporation which is not a party to the arbitration proceeding"). See International Broth. Of Elec. Workers, Local No. 265 v. OK Electric Co., 793 F.2d 214, 216 (8th Cir. 1986) (court properly refused request to enforce arbitration award against a non-party).

796.[6] See also Subway Equipment Leasing, 160 F.3d at 329 (although non-signatory affiliates had no right of arbitration, like DAI, they too desired arbitration and should be covered by the stay).

By contrast here, the State is not a signatory to any of the PPAs, and unlike CTC, SEL, SRI and SSS in the aforementioned cases, expressly refuses to arbitrate any of the claims contained in its Complaint, reserving instead to have its claims decided by the court of law. In these circumstances, the federal courts hold that a non-signatory to an arbitration provision, which seeks to have its claims addressed by a court, cannot be compelled to arbitrate. E.g., Citrus Marketing Board, 843 F.2d at 225; Montauk Oil, 859 F. Supp. at 679.

Constellation will not be prejudiced if the Court denies the company's motion for stay pending appeal and proceeds to adjudicate the merits of the State's Complaint as soon as possible. Nor will expeditious adjudication of the Complaint waste scarce judicial resources. The Court will have to address the merits of the Complaint, regardless of the outcome of Constellation's interlocutory appeal.

### B. CONSTELLATION'S NOTICE OF INTERLOCUTORY APPEAL DOES NOT DIVEST THIS COURT OF JURISDICTION TO ADJUDICATE THE STATE'S COMPLAINT.

Constellation also attempts to contend that the mere filing of its notice of interlocutory appeal divests this Court of jurisdiction over the State's Complaint. The vast weight of authority holds otherwise. The United States Supreme Court has held, as Constellation concedes, that the filing of the notice of appeal only "divests the district

[6] The same reasoning—inapplicable to the case at bar—governed the outcome of Spencer Furniture, Inc. v. Media Arts Group, Inc., 349 F. Supp.2d 49 (D. Mass. 2003) cited by Constellation at Page 11 of its memorandum of law. In that case, the district court held that a non-signatory (*who desired arbitration*) was entitled the benefit of the stay provisions of the FAA. Id. at 53.

court of its control *over those aspects of the case involved in the appeal.*" Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (emphasis added). The United States Supreme Court has emphasized the limitations of this principle, explaining that the principle does "not imply that an appeal from a judgment of criminal contempt based on noncompliance with a discovery order transfers jurisdiction over the entire case to the court of appeal." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 379 (1985). Thus, even though a notice of appeal had been filed, the district court was not barred from amending and certifying for appeal a denial of a motion to dismiss. Id. at 378-79.

In cases that resemble the case at bar, the Eleventh, Ninth, Fifth, and Second Circuit Courts of Appeal have followed the United States Supreme Court's observations regarding the scope of applicability of the divesture rule in an interlocutory appeal setting regarding unrelated claims or matters that were contained in the appeal. In Alice L. v. Dusek, 492 F.3d 563 (5th Cir. 2007), the Fifth Circuit Court of Appeals expressly observed that the Griggs Court limited its divestiture holding to "*those aspects of the case involved in the appeal.*" Dusek, 492 F.3d at 565 (emphasis in the original). It followed, the Court reasoned, that "where an appeal is allowed from an interlocutory order, the district court may still proceed with matters not involved in the appeal." Id. Accordingly, the Court of Appeals held that the district court possessed jurisdiction to compel discovery requests that were unrelated to the case on interlocutory appeal. Id. See also Britton v. Co-op Banking Group, 916 F.2d 1405, 1411 (9th Cir 1990) (district court possessed jurisdiction, after notice of interlocutory appeal from denial of arbitration request was filed, to enter default judgment as a discovery sanction); Pharmaceutical

Care Management Assoc. v. Maine Attorney General, 332 F. Supp.2d 258, 260 (D. Me. 2004) (interlocutory appeal of preliminary injunction does not deprive court of jurisdiction to proceed with discovery, pretrial preparation, motion practice and trial).

The Eleventh Circuit Court of Appeals has also adopted this reasoning. In Green Leaf Nursery v. E.I. Dupont de Nemours and Co., 341 F.3d 1292 (11th Cir. 2003), the Court of Appeals observed that "an interlocutory appeal does not completely divest the district court of jurisdiction . . . The district court has authority to proceed forward with portions of the case not related to the claims on appeal." Id. at 1309. Thus, as the plaintiff's RICO and spoliation claims were unrelated to the subject matter of the plaintiff's interlocutory appeal, it was entirely appropriate for the district court to rule on the defendant's Rule 12(c) motion directed at the plaintiff's RICO and spoliation claims even though a notice of appeal had already been filed. Id. See also In Re: Salomon Inc. Shareholders' Derivative Litigation, 68 F.3d 554, 556-57 (2d Cir. 1995) (district court properly declined to appoint arbitrator when party was not subject to arbitration provision) and Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53-54 (2d Cir. 2004) (following the logic of In Re: Salomon that district court was not divested of jurisdiction over nonsignatories).

Any matters that are the subject of Constellation's putative appeal relative to the alleged arbitration provision of a single PPA are completely unrelated to the claims contained in the State's Complaint, which relate to the enforcement of Section VIII(A) of the Settlement and Order. As discussed above, the claims contained in the State's Complaint are not, and cannot be, subject to arbitration since the State is not a party to the PPAs. E.g., Citrus Marketing Board, 843 F.2d at 225; Montauk Oil, 859 F. Supp. at

679. The State expressly refuses to arbitrate any of the claims contained in the Complaint. The State cannot be bound in the unlikely event of any arbitration that transpires between Narragansett Electric and Constellation on a single PPA. E.g., American Renaissance Lines, 502 F.2d at 677. This Court, then, "has authority to proceed" with the adjudication of the State's Complaint forthwith, as the State's Complaint is "not involved" in the appeal.[7] E.g., Dusek, 492 F.3d at 565; Green Leaf Nursery, 341 F.2d at 1309. Constellation's efforts to suggest the absence of jurisdiction and/or to stay the district court adjudication of the State's Complaint pending resolution of its appeal are without merit.[8]

[7] The principal cases cited by Constellation on Page 5 of its Memorandum of Law are inapposite to the case at bar relative to the State's Complaint. In Bradford-Scott Data Corp. v. Physician Computer Network, Inc., 128 F.3d 504, 505 (7th Cir. 1997), for example, the plaintiff Bradford Scott (unlike the State here), failed to argue that its claims against the defendants were clearly non-arbitrable. In the Court's words, it "was unnecessary to decide whether the district court could proceed on such a claim even when the appeal confined to a different claim is non-frivolous." Id. at 506. McCauley v. Halliburton Energy Services, Inc., 413 F.3d 1158, 1162 (10th Cir. 2005) (the same holding, *i.e.*, the plaintiff "failed to argue before the district court that Halliburton's § 16(a) appeal was frivolous"); Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 214-225 (3rd Cir. 2007) (court affirmed *denial of stay* because owner had waived right to arbitrate). Compare Blinco v. Green Tree Servicing, Inc., LLC, 366 F.3d 1249, 1251 (11th Cir. 2004) (stay pending appeal was appropriate where *all* claims *between the same parties* might be governed by arbitration provision) with Green Leaf Nursery, 341 F.2d at 1309 (where the district court could proceed to adjudicate claims that were unrelated to the merits of the interlocutory appeal).

[8] For the same reasons, Constellation's appeal vis-à-vis the State's Complaint is frivolous.

## II. CONCLUSION

For all of the foregoing reasons, the State respectfully requests the Court to deny Constellation's motion for stay pending appeal, and enter such other relief as the Court deems just and proper to effectuate the adjudication of the State's Complaint forthwith.

Respectfully submitted,

STATE OF RHODE ISLAND AND
PROVIDENCE PLANTATIONS,
and the RHODE ISLAND DIVISION OF
PUBLIC UTILITIES AND CARRIERS
By their attorney,

PATRICK C. LYNCH
ATTORNEY GENERAL

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov

Dated: January 28, 2008

**CERTIFICATION**

I certify that on January 28, 2008, a copy of the within memorandum of law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Leo J. Wold
/s/ Richard B.Woolley

Leo J. Wold, # 3613
Richard B. Woolley, # 1452
150 South Main Street
Providence, RI 02903
Tel: 401-274-4400, ext. 2218
Fax: 401-222-3016
LWold@riag.ri.gov
RWoolley@riag.ri.gov