**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | C.A. No. 06-404S |

**THE NARRAGANSETT ELECTRIC COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S SUGGESTION OF THE ABSENCE OF JURISDICTION AND/OR MOTION FOR STAY PENDING APPEAL**

This Court should deny Constellation's "Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal" because the Court retains jurisdiction to deny Constellation's filing as premature since the Court's resolution of several dispositive issues could moot the arbitrability question altogether. Before the issue of arbitrability is even reached, the Court must decide four threshold issues which are all potentially case determinative. The arbitrability inquiry is never reached if this Court determines that: (1) the Settlement Agreement confirms that responsibility for paying Capacity Costs[1] remains with wholesale suppliers such as Constellation; (2) the PPAs[2] assign Capacity Costs to Constellation; (3) Constellation, by its

[1] The abbreviated terms in this memorandum shall have the same meaning as they did in NEC's briefs in opposition to Constellation's Motion to Dismiss, or in the Alternative, to Compel Arbitration and Stay Proceedings.
[2] The four PPAs are: (1) Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (Dated December 21, 1998, and amended on January 27, 2003 and July 3, 2003) (the "20% Contract"); (2) Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company,

actions, waived any claim to pass Capacity Costs onto NEC and Rhode Island customers; or (4) the Settlement Agreement does not trigger the "Change in Market Rules" provision of the PPAs. Any appeal prior to a finding on these issues is premature.[3]

This Court deferred deciding the arbitration issue, and expressly reserved the issue for future determination. Opinion and Order dated 12/11/07 ("Op.") at 26. Moreover, as this Court found, and as Constellation concedes, arbitration cannot even be triggered under two of the four PPAs. Id. at 22-23; Constellation's Memorandum in Support of Suggestion of Absence of Jurisdiction and/or Motion for Staying Pending Appeal ("Constellation Memo") at 6. Constellation's appeal is premature. The Court should proceed to determine the four threshold issues set forth above, and only then, and only if necessary, should it determine whether any of Constellation's remaining claims are subject to arbitration. Constellation's "suggestion" and motion to stay should be denied.

## I. BACKGROUND

Since NEC filed its complaint in 2006, Constellation has tried to avoid review by this Court. Constellation first moved to dismiss NEC's claims for lack of subject matter jurisdiction, or in the alternative to compel arbitration and stay proceedings, arguing that the Federal Energy Regulatory Commission ("FERC") has exclusive jurisdiction over this dispute because NEC sought contract reformation.[4] Op. at 14. The Court dismissed this argument, holding that NEC's complaint sought "to establish that under the PPAs and the Settlement Agreement, Constellation may not shift to NEC any increase in costs that it might incur to purchase certain wholesale

---

Newport Electric Corporation and Constellation Power Source, Inc. (Dated December 21, 1998, and amended on January 27, 2003 and July 3, 2003) (the "36% Contract"); (3) Power Supply Agreement between the Narragansett Electric Company and Constellation Power Source, Inc. (Dated October 5, 2001) (the "2001 Contract"); and (4) Power Supply Agreement between the Narragansett Electric Company and Constellation Power Source, Inc. (Dated August 23, 2002, and amended August 23, 2002) (the "2002 Contract").

[3] NEC intends to file the appropriate papers in the First Circuit to oppose this premature appeal.

[4] Constellation also moved, unsuccessfully, to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

electric market products." Id. at 15 (internal quotations omitted); see also id. at 19 (acknowledging that "NEC has pleaded that the PPAs and Settlement Agreement, whether considered separately or together, obligate Constellation to pay the cost of obtaining capacity and preclude Constellation from passing that cost on to NEC").

Second, while its motion to dismiss or compel arbitration and stay proceedings was pending, Constellation sought a declaratory ruling before FERC, "requesting that the Commission declare that the Settlement Agreement has no effect on Constellation's purported right to renegotiate prices under the PPAs." Id. at 17. It also moved to stay proceedings in this Court pending FERC's decision. This Court denied Constellation's motion to stay, and FERC "expressly rejected Constellation's argument that FERC has exclusive jurisdiction over the case." Id.

Late last year, this Court denied Constellation's motion to dismiss, or in the alternative, to compel arbitration and stay proceedings. In its Order and Opinion, the Court acknowledged that threshold issues exist, precluding any final determination at this time regarding the issue of arbitrability. Id. at 26. The Court stated:

> [T]he Court is … hard-pressed at this stage to determine resolutely whether a change has been effected in the rights or obligations assigned to either NEC or Constellation … The Court cannot ascertain at this stage and on the briefing submitted whether the parties agreed, under any of the PPAs to arbitrate disputes like that presented here. The Court will decline Constellation's request that this proceeding be stayed pending arbitration; however, it will not categorically foreclose such relief in the future, at least with respect to those PPAs that may eventually be determined to require arbitration of the present dispute.

Id. at 26.

Constellation now claims – incorrectly – that this Court no longer has jurisdiction because Constellation has appealed the Court's order denying its motion to compel arbitration

and stay proceedings. Constellation's appeal has not divested this Court of jurisdiction, and the Court should proceed with the litigation of NEC's claims. Constellation's motion is premature.

## II. DISCUSSION

### A. This Court retains jurisdiction over this case.

#### 1. This Court maintains jurisdiction over NEC's claims and the threshold issues associated with them, and should allow this case to proceed to a decision on the merits.

A notice of appeal only divests the district court of its control over those specific aspects of the case involved in the appeal. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). See also Britton v. Co-op Banking Group, 916 F.2d 1405, 1411 (9th Cir. 1990) (citing 9 Moore's Federal Practice ¶ 203.11) (stating that "where an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal"); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53 (2d Cir. 2004) (noting that filing a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); Jones v. Deutsche Bank AG, No. C 04-05357, 2007 WL 1456041 at *1 (N.D. Cal. May 17, 2007) (following rule that "in the arbitrability context, an appeal of an interlocutory order does not deprive the district court of jurisdiction except as to the subject matter of the appeal").[5]

---

[5] While it is the general rule that a notice of appeal divests the district court of its control over only those specific aspects of the case involved in the appeal, the courts of appeal seem to be divided on the application of this rule in cases involving interlocutory appeals of orders denying motions to compel arbitration and/or to stay proceedings pending arbitration. Compare Bradford-Scott Data Corp., Inc. v. PCN, Inc., 128 F.3d 504, 505 (7th Cir. 1997) (interpreting the general rule to require the district court's divestiture of all aspects of the litigation) with Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990) (finding that district court is not divested of jurisdiction to proceed with the case on the merits). The First Circuit has not yet ruled on this issue. The approach set forth in Britton and its progeny, which follow the "black letter" rule of the United States Supreme Court in Griggs, is most relevant to the circumstances here because the issue on appeal is not only limited – only involving two of the four PPAs at issue - but premature. See Griggs v. Providence Consumer Discount Co., 459 U.S. 56, 58 (1982) (noting that a notice of appeal divests the district court only of its control over those specific aspects of the case involved in the appeal).

Britton and its progeny stand for the proposition that when issues exist separate and aside from the issue of arbitrability, and that where arbitrability is the only substantive issue presented on appeal (as is the case with interlocutory appeals pursuant to 9 U.S.C. § 16(a)(1)(A)-(B)) the district court is not "divested of jurisdiction to proceed with the case on the merits." Britton, 916 F.2d at 1412. See also Motorola Credit Corp., 388 F.3d at 54 (holding that "further district court proceedings in a case are not 'involved in' the appeal of an order refusing arbitration, and that a district court, therefore, has jurisdiction to proceed with a case absent a stay").

For example, in Britton, the Ninth Circuit denied a stay in the district court of all proceedings pending appeal of an order denying a motion to compel arbitration. Britton, 916 F.2d at 1408. In that case, the appellant appealed the district court's denial of his motion to compel arbitration and argued that the appeal "divested the district court of jurisdiction, making any subsequent orders, including the entry of the default judgment, null." Id. at 1411. The Ninth Circuit held that the district court could enter a default judgment in spite of the filing of the notice of appeal, finding that the issue of arbitrability was the only substantive issue presented in the appeal and so the district court was not divested of jurisdiction to proceed with the case on its merits. Id. at 1412. The Court also noted that a "dispute over abitrability is easily severable from the merits of [the] underlying dispute." Id. at n.7 (citing to Moses H. Cone Memorial Hospital v. Mercury Construction, 460 U.S. 1, 21 (1983)). See also Motorola, 388 F.3d at 53-54 (holding that the district court had jurisdiction to conduct a trial even though the defendants had filed an appeal from the denial of their motion to compel arbitration); In re Salomon, 68 F.3d 554, 561 (2d Cir. 1995) (denying motions for stay of proceedings in the district court and

upholding the trial court's decision to allow a case to proceed to trial after the opposing party had appealed the denial of its motion to compel arbitration).[6]

The rationale underlying the Britton line of cases is compelling and should be followed, especially when applied to the circumstances presented with Constellation's appeal. As this Court recognized in its Order, NEC's case involves threshold issues that could moot any question of arbitrability. See Op. at 19-20, 25-26. Before the arbitrability inquiry may even become relevant, the Court must first decide whether: (1) the Settlement Agreement confirms that responsibility for paying Capacity Costs remains with wholesale suppliers such as Constellation, (2) the PPAs assign Capacity Costs to Constellation, (3) Constellation, by its actions, has waived any claim to pass Capacity Costs onto NEC and Rhode Island customers, or (4) the Settlement Agreement triggered the "Change in Market Rules" provision. These issues are wholly independent of the question of arbitrability, and therefore, the Court retains jurisdiction.

[6]Constellation's reliance on Lummus Co. v. Commonwealth Oil & Ref. Co., Inc., 273 F.2d 613, 613 (1st Cir. 1959), for the proposition that this Court is automatically divested of jurisdiction is misplaced for several reasons. First, Lummus was decided prior to the adoption of the Federal Arbitration Act ("FAA"), and prior to the development of a significant body of case law addressing the district court's jurisdiction pending appeal of an order denying arbitration or a stay of proceedings pending arbitration. Second, the First Circuit based its decision on the appellee's failure to provide a "satisfactory answer to appellant's contention that a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such obligation." Id. at 613. Here, allowing discovery would not be inimical to any right that Constellation may have to arbitration because issues exist, separate and apart from the issue of arbitrability, that must be decided. To disallow discovery would be inimical to NEC's right to obtain discovery as to dispositive issues that do not touch on arbitrability – and inimical to NEC's right to proceed to litigation as to at least two of the PPAs where no arbitration right exists. Finally, Lummus concerned an appeal from an order staying an already proceeding arbitration, and not as here, an appeal from an order denying a motion to compel arbitration, filed while litigation was pending. Id.

Constellation's reliance on U.S. v. Brooks, 145 F.3d 446, 455-56 (1st Cir. 1998) (setting forth "[t]he only exceptions to … [the] general divestiture rule," Constellation's Memo at 4) is also unavailing. Brooks is a criminal case and did not involve an appeal from an order denying a motion to compel arbitration or stay proceedings pending arbitration. Id. at 457. Rather, it involved the very specific issue of "whether a district court, after it receives notice of a properly filed section 3731 appeal [from a pretrial order which extirpated evidence that the government considered to be substantial proof of specified elements of the charged offenses], nonetheless may swear a jury and start the trial." Id. In that case, the court was concerned with jeopardy issues, an issue clearly not present here. Id.

### 2. Constellation's appeal is premature.

This Court specifically held that the issue of arbitrability must await further findings: "the Court is also hard-pressed at this stage to determine resolutely whether a change has been effected in the rights or obligations assigned to either NEC or Constellation . . . the Court cannot ascertain at this stage and on briefing submitted whether the parties agreed, under any of the PPAs, to arbitrate disputes like that presented here." Id. at 26. Constellation's appeal is therefore premature, and there is no reason to delay determination of the threshold issues that could render moot Constellation's arbitration claim.[7] This reason alone justifies the Court's retained jurisdiction. Britton, 916 F.2d at 1412 (advising that a rule that the district court is completely divested of jurisdiction upon the filing of a notice of appeal, "allow[s] a defendant to stall a trial simply by bringing a frivolous motion to compel arbitration.").

By way of example, if the Court determines that the Settlement Agreement confirms that responsibility for paying Capacity Costs remains with suppliers such as Constellation, it need not reach the issue of arbitration because Constellation can no longer claim that there was a change in the rights or obligations of either party triggering potential arbitration under just two of the four PPAs. Similarly, if the Court determines that the PPAs assign Capacity Costs to Constellation, the "Change in Market Rules" provision is likewise not triggered, and the issue of arbitrability becomes moot. Constellation's motion to stay ignores the Court's ruling and fails to address the non-arbitrable issues. The Court should deny Constellation's motion.

[7] Read in the light most favorable to Constellation, two of the PPAs provide for an arbitrator to resolve disputes related to certain regulatory events to the extent they affect a right or obligation of a party. NEC submits that determination of the threshold issues will demonstrate that the Settlement Agreement did not alter Constellation's obligation to pay Capacity Costs, and therefore the parties will never reach the only issue that is potentially subject to arbitration under two of the PPAs.

**3. Constellation's appeal only involves two of the four PPAs and does not implicate the State of Rhode Island's claims either.**

Only two of the four PPAs contain arbitration clauses that may be triggered in the future. This Court specifically determined that "the 20% Contract and 36% Contract, on their face, do not require that the parties arbitrate any dispute unless they jointly agree to do so or the value of the dispute is less than or equal to $100,000." Op. at 22-23. These arbitration clauses are indisputably inapplicable in this case. Constellation acknowledges this point when it explains that its appeal raises the issue of "whether this Court erred when it failed to compel arbitration under the 2001 and 2002 Contracts." Constellation Memo at 6. Litigation under the 20% and 36% Contract, therefore, is not the subject of the appeal, and should proceed. Likewise, the claims of the State of Rhode Island (the "State") are not subject to arbitration and should also proceed. In this context, it makes no sense to "stay" determination of the threshold issues with respect to the 2001 and 2002 Contracts because the Court will undertake those same determinations with respect to the other contracts and the State's claims.

Constellation's appeal is, therefore, premature. This Court retains jurisdiction over the threshold and potentially dispositive issues, as well as the State's claims, which must be decided before arbitrability may even be reached, and the Court should proceed promptly to decide those issues.

**B. <u>A stay pending Constellation's appeal will not serve any purpose as the Court must decide the threshold issues first.</u>**

A stay of a case during the pendency of the appeal on an arbitration issue is not automatic.[8] <u>Jones</u>, 2007 WL 1456041 at *1; <u>Britton</u>, 916 F.2d 1412 (stating that the decision to

---

[8] As the State of Rhode Island argues in its brief, as to why Constellation has not presented compelling reasons for a stay here, "arbitration and federal litigation should proceed simultaneously absent compelling reasons to stay the litigation." <u>See</u> <u>Chang v. Lin</u>, 824 F.2d 219, 223 (2d Cir. 1987) (allowing arbitration and federal litigation to proceed simultaneously in the context of '33 Act claims). Stated another way, there is a "heavy presumption" against the deferral of non-arbitrable claims. <u>Id.</u>; Objection of the Division of Public Utilities and Carries and State

proceed with the underlying litigation pending appeal "is a proper subject for the exercise of discretion by the trial court"). In determining whether to stay an action pending appeal of an order denying a motion to compel arbitration, courts apply a four-factor test: (1) whether the movant has made a strong showing of success on the merits; (2) whether the movant will be irreparably harmed absent a stay; (3) whether issuance of the stay will injure other parties; and (4) where the public interest lies. In re Elias, 182 Fed.Appx. 3, at *4, 2006 WL 1514314, at *1 (1st Cir. 2006) (setting forth the aforementioned test for a stay pending appeal); C.B.S. Employees Federal Credit Union v. Donaldson, 716 F.Supp. 307, 309 (W.D. Tenn. 1989) (setting forth the aforementioned test for a stay pending an appeal of a denial of a motion to compel arbitration). Applying these factors to the instant case compels a finding that a stay is not appropriate.

**1. Constellation made no showing of success on the merits.**

"[T]he sine qua non of the stay pending appeal standard is whether the movants are likely to succeed on the merits." In re Elias, 182 Fed.Appx. 3, at *4. Constellation cannot succeed on the merits and in fact has made no showing that this Court was wrong in denying its motion to arbitrate at this time and ruling that the Court must proceed further with this litigation before the issue of arbitration is finally decided.[9] The threshold issues must be determined first and then, if even relevant, arbitrability examined. As this Court held, "[i]f no right or obligation of either party has been affected, then the obligation to arbitrate is not triggered." Op. at 25. Further, in arguing that this dispute is subject to arbitration, Constellation inappropriately tries to bundle the 2001 and 2002 Contracts, upon which it relies for its arbitration claim, with the 36% and 20% Contracts, which clearly provide only for voluntary arbitration contingent upon the consent of

---

of Rhode Island and Providence Plantations to Constellation's Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal ("State Memo") at 4.

[9] The issue here is Constellation's request for arbitration. The Court denied Constellation's motion to compel arbitration and stay proceedings, and ruled that the Court must proceed further before that issue is reached or decided. Constellation makes no showing that the Court is wrong.

both parties. See Constellation Memo at 9-10; Op. at 22-23 (noting that "the 20% Contract and 36% Contract, on their face, do not require that the parties arbitrate any dispute unless they jointly agree to do so or the value of the dispute is less than or equal to $100,000").

**2. Constellation will not be irreparably harmed absent a stay.**

If the Court denies Constellation's motion for a stay, it will proceed to decide the four threshold issues that precede any "adjustment" that might be subject to arbitration. The Court must first decide these threshold issues to determine whether an adjustment is appropriate. Arbitration becomes an issue **only if** an adjustment is required. Constellation is not giving up any rights at this time with this Court proceeding with the threshold issues. The Court did not "categorically foreclose" the relief of arbitration "in the future, at least with respect to those PPAs that may eventually be determined to require arbitration of the present dispute." Op. 26. Because arbitrability is not even ripe yet, Constellation cannot be irreparably harmed by this Court proceeding with the determination of the antecedent, potentially dispositive issues.

**3. Issuance of a stay will harm other parties.**

An issuance of a stay will harm the State and Rhode Island customers. The State is not a party to the PPAs. Therefore, a stay will needlessly delay the resolution of those same threshold issues raised by the State for the benefit of Rhode Island customers. The State's claims are not subject to arbitration, and therefore, there is no basis for a stay with regard to them. See State Memo at 5.

**4. The public interest lies in allowing the litigation to proceed.**

The Rhode Island customers have a significant interest in allowing the litigation to proceed. The State bargained for Section VIII of the Settlement Agreement to confirm that Constellation, and not the Rhode Island customer, retains responsibility for Capacity Costs. A

stay pending appeal will delay vindication of the Rhode Island customers' rights, which the State and NEC sought to protect during Settlement Agreement negotiations.

As pointed out by the State in its memorandum opposing Constellation's motion, a stay will also prejudice the Rhode Island customer in that NEC's wholesale standard offer supply contracts are set to expire on December 31, 2009. Under new contracts, NEC may experience a significant increase in power supply costs, thereby increasing substantially the residential customer's electricity bill. If Constellation were to prevail ultimately in this case, and if these proceedings are stayed pending appeal, the customer may have to bear the costs of NEC's resulting liability at or about the same time that the price of electricity increases when the standard offer contracts expire. See State Memo at 8-9. Further delay will expose the customers to exorbitant increases for past and future services – a "perfect storm" in the regulatory context.

## III. CONCLUSION

For the aforementioned reasons, the Court should deny Constellation's suggestion of the absence of jurisdiction and motion to stay proceedings.

Respectfully submitted,

THE NARRAGANSETT ELECTRIC COMPANY

By its attorneys,

/s/ Gerald J. Petros

Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gjpetros@haslaw.com
rmain@haslaw.com

Dated: February 11, 2008.

**CERTIFICATION**

**To:**

Teresa M. Goody, Esq.
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 2005-3096

I hereby certify that on February 11, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Robin Main (#4222)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
gpetros@haslaw.com
rmain@haslaw.com

869419 (57972/129329)