**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | ) | C.A. NO. 06-404S |

**DEFENDANT'S REPLY IN SUPPORT OF THE SUGGESTION OF THE ABSENCE OF JURISDICTION AND/OR MOTION FOR STAY PENDING APPEAL**

The objections of The Narragansett Electric Company ("NEC") and the State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers ("State") establish no grounds for concluding this Court retains jurisdiction or should not stay proceedings pending the appeal of Constellation Energy Commodities Group, Inc. ("Constellation"). NEC's objection does not because the first issue Constellation challenges on appeal concerns whether NEC's so-called "threshold issues" are for the Court or the arbitrators to decide. Because those issues apply to the PPAs with mandatory arbitration the same as to the PPAs without it, the second issue challenged by Constellation's appeal concerns the Court's determination not to stay proceedings under section 3 of the Federal Arbitration Act ("FAA") on the 1998 Contracts (and the State's claims). As a result, Constellation's appeal transferred

jurisdiction over all substantive aspects of NEC's claims—on all four PPAs—to the Court of Appeals.

The State's objection does not establish cause for continuing litigation despite the pending appeal because its main contention (that Constellation cannot compel the State to arbitrate) is beside the point. Constellation does not seek to compel the State to arbitrate, but rather appeals whether litigation on the State's claims should be stayed under FAA section 3 pending arbitration under the 2002 and 2001 Contracts. Because the State's claims "implicate[ ] the same facts as would otherwise be in issue between NEC and Constellation," *Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc.*, No. 06-404S, 2007 U.S. Dist. LEXIS 91126, at *38, *40 (D.R.I. Dec. 10, 2007), appeal of this Court's order denying a stay of the State's claims (as well as NEC's claims under the 1998 Contracts) transfers jurisdiction over those claims to the Court of Appeals. The State's status as sovereign does not change the divestiture rule, and the prejudice alleged results not from staying the litigation pending Constellation's appeal, but from NEC's refusal to engage in the 90-day arbitration mandated by the PPAs and the election of NEC and the State not to allocate an estimated allowance (subject to refunds) to ratepayers now, as NEC has done in similar circumstances. *See TransCanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 346 (D. Mass. 2005).

## I. NEC'S OBJECTION DOES NOT ESTABLISH CAUSE FOR PROCEEDING BEFORE THE COURT OF APPEALS RULES

### A. Constellation's appeal challenges whether NEC's "threshold issues" are for the Court or arbitrators to decide.

NEC acknowledges (as does the State) that an appeal divests the trial court of jurisdiction over those specific aspects of the case involved in the appeal. NEC Opposition to Defendant's Suggestion of Absence of Jurisdiction and/or Motion for Stay Pending Appeal ("NEC Opp'n") at

4; State Objection to Defendant's Suggestion of Absence of Jurisdiction and/or Motion for Stay Pending Appeal ("State Opp'n") at 4. NEC's effort to establish issues independent of the arbitrability question now on appeal, however, misses the point that whether NEC's "threshold issues" are for the Court or the arbitration to decide is precisely what Constellation has challenged on appeal.

This Court read the PPAs as requiring that the Court determine before ordering arbitration whether, in fact, the FCM Settlement[1] creates a need to amend the PPAs rather than finding (as Constellation contends) that arbitration is triggered merely by the parties having a dispute about the need to amend. *Narragansett Elec.*, 2007 U.S. Dist. LEXIS 91126, at *35. Constellation's appeal directly challenges that ruling. The appeal contends this Court erred in adopting NEC's argument that "[i]f no right or obligation of either party has been affected, then the obligation to arbitrate is not triggered," and incorrectly usurped the role of the arbitrators when the Court ruled it could not "determine resolutely whether a change has been effected in the rights or obligations assigned to either NEC or Constellation." *Id.* at *35-*36.

Obviously, the parties have a dispute about the need to amend the PPAs. On appeal, Constellation will establish that dispute suffices to trigger arbitration under the 2002 and 2001 Contracts. Indeed, the 2002 Contract provides that if one party provides notice to the other of "the need to amend" the agreement and the parties cannot reach agreement on such an amendment, then the matter is to be arbitrated. 2002 Contract, § 15.2. The 2001 Contract does likewise. *See* 2001 Contract, § 14.2 ("The intent of the Parties is that any such Replacement Rule [*i.e.*, amendment] reflect, as closely as possible, the intent and substance of the Rule being replaced as such Rule was in effect prior to such termination or amendment of the NEPOOL

[1] *See Devon Power LLC*, 115 FERC ¶ 61,340 (2006). Capitalized terms used herein have the meaning assigned in Constellation's Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal.

Agreement or elimination or alteration of the Rule. If the Parties are unable to reach agreement on such an amendment, the Parties agree to submit this matter to arbitration.").

The appeal will show the error in reading the 2002 and 2001 Contracts as allowing a bifurcation of the "need for" from the "form of" the amendment where the Court decides "need." Accordingly, Constellation's appeal puts squarely before the Court of Appeals all issues raised by NEC, including whether NEC's issues operate not as conditions precedent to arbitration, but rather as defenses to be resolved by arbitration. *See AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986) (holding that doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute"); *see also Howsam v. Dean Witter Reynolds, Inc.*, 573 U.S. 79, 84–85 (2002) (holding the FAA creates a "presumption . . . that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability") (quotations omitted).

The primary focus of Constellation's appeal is what "threshold issues" need to be decided before arbitration is triggered. Constellation's appeal, therefore, divested this Court of jurisdiction over NEC's issues because otherwise this Court and the Court of Appeal would be asserting jurisdiction over them at the same time. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("[A] federal district court and federal court of appeals should not attempt to assert jurisdiction over a case simultaneously."); *see also Page v. Moseley,* 806 F.2d 291, 300 (1st Cir. 1986) (ordering arbitration for arbitrable claims and a stay of non-arbitrable claims). Indeed, it makes little sense for this Court to proceed on the "threshold issues" when the very focus on appeal is whether NEC's issues are properly decided by the Court or arbitrators.

In these circumstances, "[c]ontinuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals." *Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997). Such "inconsistent handling" could lead to the worst and most inefficient outcome: "to litigate the dispute, to have the court of appeals revise and order the dispute arbitrated, to arbitrate the dispute, and finally return to the court to have the award enforced." *Id.* at 506. An arbitration clause reflects the parties' intentions to avoid litigation and to opt for non-judicial dispute resolution that is faster and less expensive. *Id.* Potential exposure to the "worst possible outcome" completely defeats the underlying purposes of arbitration. *Id.* Allowing for an immediate appeal under FAA section 16(a) helps to cut duplication losses and to maintain the purpose and benefit of arbitration. *Id.*

Accordingly, the appropriate course here is to complete proceedings before the Court of Appeals (Constellation's initial briefing is to be filed on March 4, 2008) so that this Court may obtain a ruling from the appeals court on whether NEC's "threshold issues" are for this Court or the arbitrators to decide. *See Griggs*, 459 U.S. at 58 ("federal district court and federal court of appeals should not attempt to assert jurisdiction over a case simultaneously"); *Combined Energies v. CCI, Inc.*, 495 F. Supp. 2d 142, 143 (D. Me. 2007) ("To assume ongoing jurisdiction over discovery would be inconsistent with the bedrock principle that once a case is appealed, jurisdiction rests with the court of appeals, not in both the court of appeals and the district court.").

**B. Constellation's appeal is not premature.**

NEC also asserts Constellation's appeal is premature because NEC contends the question of arbitrability must await further findings. That argument, however, is nothing more than the

very issue Constellation has appealed—whether or not there are unresolved "threshold issues" to be decided by this Court prior to arbitration being triggered. Sections 16(a)(1)(A) and (B) of the FAA expressly authorize interlocutory appeal from an order denying an application to compel arbitration and to stay proceedings. *Campbell v. Gen. Dynamics Gov't Sys., Corp.*, 407 F.3d 546, 550 (1st Cir. 2005).

As explained above, Constellation contends this Court erred when it read the PPAs as requiring that the Court determine before ordering arbitration whether the FCM settlement created a need to amend the PPAs, rather than simply finding that the parties have a dispute about that need. Constellation will show on appeal that the Court's ruling conflicts with the contract language and improperly attempts to reserve for the trial court the liability issue (*i.e.*, whether Constellation is or is not entitled to an equitable adjustment) and to leave to the arbitrators only the issue of damages (*i.e.*, the form of any adjustment). Nevertheless, it is evident that NEC's "threshold issues" are precisely what the Court of Appeal will address and, thus, Constellation's appeal is not premature. *See Colon v. R.K. Grace & Co.*, 358 F.3d 1, 4 (1st Cir. 2003) ("Denials of arbitration under the Federal Arbitration Act are, unlike most interlocutory rulings, immediately appealable.").

Moreover, NEC incorrectly asserts that there is no reason for the Court to delay ruling on the "threshold issues" as they could render moot Constellation's arbitration claim. That admission alone compels finding that jurisdiction over NEC's claims has transferred to the Court of Appeals because the appeal seeks to vindicate Constellation's right to have this dispute resolved by arbitration without first having to litigate NEC's putative defenses. Because this Court cannot address the issues involved in an appeal, there is every reason for this Court to suspend proceedings until the Court of Appeals rules on whether the "threshold issues" are for

this Court to decide (as NEC contends) or for the arbitration to decide (as Constellation contends). *Griggs*, 459 U.S. at 58; *Brooks*, 145 F.3d at 456.

**C. Constellation's appeal implicates all the PPAs.**

NEC asserts that Constellation's appeal only involves two of the four PPAs, but that argument is obviously wrong. Constellation has appealed this Court's denial of a stay of proceedings on the 1998 Contracts (as well as the State's claims). Thus, the 1998 Contracts are involved with Constellation's appeal, and it defies reason and comity for this Court to proceed before the Court of Appeals rules whether a stay of proceedings on the 1998 Contracts (and the State's claims) was properly denied under FAA section 3.

Moreover, no one disputes that (should the Court of Appeals compel arbitration) the same legal and factual issues addressed under the 2002 and 2001 Contracts must also be addressed under the 1998 Contracts. Indeed, NEC does not contend that its "threshold issues" apply differently to the 1998 Contracts than to the 2002 and 2001 Contracts. Because NEC's issues apply to the PPAs with mandatory arbitration the same as to the PPAs without it, a stay under FAA section 3 is plainly in order.

Section 3 mandates that "the trial of *the action*" must be stayed whenever "*the issue* involved in such suit or proceeding is referable to arbitration," 9 U.S.C. § 3 (emphasis added), and Constellation's appeal contests this Court's denial of a stay of all proceedings pending arbitration. On appeal, Constellation will establish that NEC's claims under the 1998 Contracts (and the State's claims) implicate the same core factual and legal issues as will be resolved by arbitration under the 2002 and 2001 Contracts—(1) whether the PPAs between NEC and Constellation permit Constellation to receive an equitable adjustment, (NEC's Compl. Counts I, III, IV, & V; State's Compl. Count I); (2) the impact of the FERC settlement and whether

Constellation waived its right to obtain an equitable adjustment via its actions in the FERC proceedings (NEC's Compl. Count II; State's Compl. Count II); and (3) whether Constellation is estopped from seeking an equitable adjustment via its actions in the FERC proceedings (State's Compl. Count III). That overlap makes a stay of all litigation over the PPAs mandatory under FAA section 3, and Constellation's appeal of the denial of that stay necessarily transfers jurisdiction over the claims to be stayed to the Court of Appeals.

### D. NEC establishes no basis not to follow the divestiture rule of *Lummus* or not to stay proceedings pending Constellation's appeal.

NEC's effort to distinguish *Bradford-Scott Data Corp., Inc. v. Physician Computer Network, Inc.*, 128 F.3d 504, 505 (7th Cir. 1997), which explicitly relied on the First Circuit's holding in *Lummus Co. v. Commonwealth Oil & Refining Co., Inc.*, 273 F.2d 613 (1st Cir. 1959), is unavailing. And, its efforts to distinguish *Lummus* by contending that case "concerned an appeal from an order staying an already proceeding arbitration," NEC Opp'n at 6 n.6, is inaccurate and irrelevant. While an appeal was pending on the district court order staying arbitration, *Lummus* addressed whether to stay the district court's discovery order pending resolution of that appeal. 273 F.2d at 613. *Lummus*, thus, decided the precise question presented here—whether the district court has jurisdiction to proceed with discovery when the arbitrability of the claims is being considered on appeal. *Id.*

Significantly, less than a year ago the District Court in Maine ruled "an interlocutory appeal of the denial of a motion to stay and compel arbitration under the Federal Arbitration Act divests the district court of the power to proceed with the aspects of the case on appeal." *Combined Energies*, 495 F. Supp. 2d at 143 (citing *Lummus*, 273 F.2d at 613; *Bradford-Scott*, 128 F.3d at 506). NEC offers no good reason to disregard the ruling in *Lummus* or to act contrary to *Combined Energies*; indeed, none exists.

Lastly, NEC's argument about the absence of harm to Constellation fails to abide by the principle that the failure to grant a stay pending an appeal under FAA Section 16(a) "results in a denial or impairment of the appellant's ability to obtain its legal entitlement to avoidance of litigation [as a matter of] the contractual entitlement to arbitration." *McCauley v. Halliburton Energy Services Inc.*, 413 F.3d 1158, 1161–62 (10th Cir. 2005) (rejecting minority view of *Motorola Credit Corp.*, 388 F.3d at 53–54, and *Britton*, 916 F.2d at 1412, to hold "that the district court is divested of jurisdiction while a non-frivolous § 16(a) motion is pending."). Accordingly, NEC's objection fails to establish any grounds for concluding this Court retains jurisdiction or should not stay proceedings pending the appeal.

## II. THE STATE'S OBJECTION DOES NOT ESTABLISH CAUSE FOR PROCEEDING BEFORE THE COURT OF APPEALS RULES

### A. Because the State's claims implicate the same issues as the claims of NEC subject to mandatory arbitration, appeal of the denial of stay transferred jurisdiction to the Court of Appeals.

As this Court already has found, the State's claims are substantially intertwined with questions of law and fact common to the claims made by NEC. *Narragansett Elec.*, 2007 U.S. Dist. LEXIS 91126, at *38. The State's efforts—now—to sever its claims from those of NEC cannot be squared with the Court's finding that "[t]he State is not seeking to inject any new issues" into this dispute. *Id.* at *38–39. The State's action is simply an alternative articulation of NEC's claim, which "implicates the same facts as would otherwise be in issue between NEC and Constellation." *Id.* at 39. It is this legal and factual similarity between the arbitrable and non-arbitrable claims (not any supposed effort to compel the State to arbitrate) that makes the stay appropriate. *See Sam Reisfeld & Son Import Co. v. Eteco*, 530 F.2d 679, 681 (5th Cir. 1976) (affirming district court's stay of non-arbitrable claims brought by non-signatory third parties

that "were based on the same operative facts and were inherently inseparable from the [arbitrable claims]").

The State's effort to establish that its claims are not part of Constellation's appeal relies on inapposite cases where obviously *independent* claims proceeded in the district court while an interlocutory appeal related to separate claims was pending. *See Alice L. v. Dusek*, 492 F.3d 563, 565 (5th Cir. 2007) (permitting Title IX claims to proceed in the district court during an interlocutory appeal of denial of qualified immunity on separate § 1983 claim); *Green Leaf Nursery v. E.I. Dupont de Nemours & Co.*, 341 F.3d 1292, 1309 (11th Cir. 2003) (permitting RICO and spoliation claims to proceed in the district court during an interlocutory appeal of dismissal of separate state tort claims pursuant to sovereign immunity). In neither case did the claims progressing in the district court depend upon the outcome of the interlocutory appeal.

The State also relies unconvincingly on a string of cases to argue a stay is inappropriate, but not one of them addresses facts like those here. Both *Chang v. Lin*, 824 F.2d 219 (2d Cir. 1987) and *Pompano-Windy City Partners, Ltd. v. Bear, Sterns & Co., Inc.*, 698 F. Supp. 504 (S.D.N.Y. 1988), are part of a narrow line of cases applicable only to disputes involving securities claims. As the court observed in *Pompano*, the Supreme Court's ruling in *Wilko v. Swan*, 346 U.S. 427 (1953), that alleged violations of the Securities and Exchange Act of 1933 (the "1933 Act") could never be subject to arbitration reflected a "judicial determination of Congressional constraints" as to those specific claims. 698 F. Supp. at 512. Given that backdrop of Congressional intent, *Chang* and its progeny have held that 1933 Act claims should not be stayed pending arbitration of other securities claims. This case has nothing to do with securities claims under the 1993 Act, so that reasoning is inapposite here.

The other cases cited by the State deny a stay pending arbitration because the non-arbitrable claims were separate and distinct, both legally and factually, from the arbitrable claims. In *Sierra Rutile Ltd. v. Katz*, the Second Circuit denied a stay pending arbitration because the claims in the district court "will be largely if not wholly unaffected by the resolution of claims . . . in the arbitration proceeding." 937 F.2d 743, 750 (2d Cir. 1991). The court took the same approach in *Horne v. New England Patriots Football Club*, when it denied a stay only as to "collateral or unrelated issues" based on "factually and legally independent claims . . . [w]here the arbitration proceeding cannot dispose of or even deal with [those claims.]" 489 F. Supp. 465, 470 (D. Mass. 1980). The denial of a stay in those cases applied to claims factually and legally unrelated to the issues on appeal. In contrast, because the State here "is not seeking to inject any new issues," the State has no issues independent of Constellation's appeal. *Narragansett Elec.*, 2007 U.S. Dist. LEXIS 91126, at *38–39.

### B. The State's status as "sovereign" provides no reason not to follow the divestiture rule of *Lummus* or not to stay proceedings pending appeal.

The State's status as "sovereign" establishes no cause for not following the divestiture rule or not staying proceedings pending Constellation's appeal, and the State's reliance on *Montauk Oil Transportation Corp. v. Steamship Mutual Underwriting Assoc. Ltd.*, 859 F. Supp. 669 (S.D.N.Y. 1994), is misplaced. *Montauk* addressed whether the government's claims presented the same issue referable to arbitration under a separate agreement with another party to the litigation. *Id.* at 676. Because the *Montauk* court concluded that none of the issues raised by the government's action overlapped with any arbitrable issues, it went on to consider relevant factors in deciding whether to stay non-arbitrable claims *unrelated* to the arbitrable claims, including the vindication of public rights. *Id.* at 677–78. Nowhere did *Montauk* suggest that status as "sovereign" would trump the bright line rule about divested jurisdiction upon appeal. In

fact, *Montauk* acknowledged that had the government's claims raised "an *issue* referable to arbitration" under the arbitration agreement with the third party, the government would have been subject to a *mandatory* stay under Section 3 of the FAA. *Id.* at 676 (emphasis added).

### C. The prejudice alleged by the State results from its own election and is not irreparable; in contrast, the prejudice to Constellation is irreparable.

The State's argument that the prejudice to ratepayers from staying this litigation pending Constellation's appeal outweighs any prejudice to Constellation in not staying proceedings is unavailing. First, any prejudice from reaching a resolution in this dispute contemporaneously with the PPAs expiring would be completely avoided by submitting this dispute now to the 90-day arbitration specified by the 2002 and 2001 Contracts. Second, the supposed potential for a "rate shock," State Opp'n at 9, stems from the election of NEC and the State not to allocate an estimated allowance (subject to refunds) to ratepayers now, as NEC has done in similar circumstances. *See TransCanada,* 402 F. Supp. 2d at 346. Lastly, the potential to have to pay money for an obligation has never been considered irreparable harm. *Cf. Charleshank Equity Fund II, Ltd. P'ship v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (holding no irreparable harm under Fed. R. Civ. Pr. 65 where claim for monetary damages would make the plaintiff whole).

On the other hand, the State's arguments that Constellation is not prejudiced by a denial of a stay ignores the primary basis for that prejudice—Constellation's legal entitlement to avoidance of litigation by virtue of its contractual entitlement to arbitration. That loss of the contractual entitlement has explicitly been recognized as irreparable harm. *See, e.g., McCauley*, 413 F.3d at 1162. In this case, that loss includes a palpable injury in that the arbitration provisions of the 2002 and 2001 Contracts specify that the parties' shall have "no formal discovery," which right would be eviscerated the moment Constellation must comply with the

Court's discovery orders. 2001 Contract, § 15.2; 2002 Contract, § 16.2. The State's focus on the non-arbitrability of its claims does not alter the basic truth that discovery as to the State's estoppel claims will be identical to discovery on NEC's claims under the PPAs bound for mandatory arbitration. Indeed, NEC and the State explicitly assert the same defense against Constellation's entitlement to adjust the PPAs in respect of the increased costs imposed by the FCM settlement. *See, e.g.*, NEC Opp'n at 7; State Opp'n at 6–7.

The concerns identified in *Lummus* are, thus, precisely the concerns presented to this Court: "a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such an obligation." 273 F.2d at 613. Constellation would suffer immediate prejudice to its contractual right not to engage in litigation should this Court not abide by the divestiture rule and stay proceedings pending appeal. The State's objection establishes no grounds for concluding this Court retains jurisdiction or should not stay proceedings pending resolution of Constellation's appeal.

**CONCLUSION**

NEC and the State have adduced no grounds for concluding this Court retains jurisdiction or should not stay proceedings pending resolution of Constellation's appeal. That appeal divested this Court of jurisdiction by operation of law and no claims independent of those before the Court of Appeals remain before this Court. Accordingly, the Court should stay all proceedings pending disposition of Constellation's appeal.

Dated: February 18, 2008

Respectfully Submitted,

*/s/ Stacey P. Nakasian*
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
Tel: (401) 455-0700
Fax: (401) 455-0701

Kenneth W. Irvin (DC Bar ID #439395)
Paul M. Thompson
Teresa M. Goody
McDermott Will & Emery LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: (202) 756-8000
Fax: (202) 756-8087
E-mail: kirvin@mwe.com
E-mail: pthompson@mwe.com
E-mail: tgoody@mwe.com

*Attorneys for Defendant*

*Constellation Energy Commodities Group, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 18, 2008, I electronically filed the foregoing *Defendant's Reply in Support of the Suggestion of the Absense of Jurisdiction and/or Motion for Stay Pending Appeal* with the Clerk of the Court for the District of Rhode Island using the ECF System which will send notification to the following registered participants of the ECF System as listed on the Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Hinkley Allen & Snyder, LLP
50 Kennedy Plaza
Providence, RI 02903
gpetros@haslaw.com
rmain@haslaw.com
*Counsel for Narragansett Electric Co.*

Leo J. Wold, Esq.
Richard B. Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903
lwold@riag.ri.gov

*Counsel for State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers*

*/s/ Stacey P. Nakasian*
Stacey P. Nakasian

*Attorney for Defendant*
*Constellation Energy Commodities Group, Inc.*