**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | ) | C.A. No. 06-404S |

**THE NARRAGANSETT ELECTRIC COMPANY'S MOTION TO ENJOIN PROSECUTION OF A RELATED MATTER IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Plaintiff, The Narragansett Electric Company ("NEC"), hereby moves to enjoin Defendant, Constellation Energy Commodities Group, Inc. ("Constellation"), from prosecuting the action it recently filed in the United States District Court for the District of Massachusetts captioned Constellation Energy Commodities Group, Inc. v. The Narragansett Electric Company, C.A. No. 08-40068FDS. In support of this motion, NEC states that Constellation should have pled the claims in its Massachusetts complaint as compulsory counterclaims in this action. NEC submits the accompanying memorandum of law in further support of its motion.

THE NARRAGANSETT ELECTRIC COMPANY
By its attorneys,

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Robin L. Main (#4222)
Anna M. Piazza (#6207)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com
apiazza@haslaw.com

Dated: May 5, 2008

**CERTIFICATION**

**To:**

Leo J. Wold, Esq.
Richard B. Woolley, Esq.
150 South Main Street
Providence, RI 02903

Stacey P. Nakasian, Esq.
Duffy Sweeney & Scott, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903

Kenneth W. Irvin, Esq.
Teresa M. Goody, Esq.
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 2005-3096

I hereby certify that on May 5, 2008, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com

890115 (57972-129329)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | ) | C.A. No. 06-404S |

**THE NARRAGANSETT ELECTRIC COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ENJOIN PROSECUTION OF A RELATED MATTER IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Plaintiff, The Narragansett Electric Company ("NEC"), submits this memorandum of law in support of its Motion to Enjoin Prosecution in the United States District Court for the District of Massachusetts. NEC moves this Court to enjoin Defendant, Constellation Energy Commodities Group, Inc. ("Constellation"), from pursuing an inexcusably omitted compulsory counterclaim in this case by filing a new, related action in the United States District Court for the District of Massachusetts, Central Division ("the Massachusetts action").[1] In that action, Constellation seeks to recover additional payments under two of the Power Purchase Agreements ("PPAs") between NEC and Constellation that are already before this Court. The Court should

[1] That case is captioned Constellation Energy Commodities Group, Inc. v. The Narragansett Electric Company, C.A. No. 08-40068FDS.

recognize Constellation's complaint for what it is – a new attempt by Constellation to end run this Court's prior rulings and evade this Court's jurisdiction on claims arising under the PPAs. Constellation's claims for additional payments constitute compulsory counterclaims under Federal Rule of Civil Procedure 13(a) that Constellation should have raised in response to NEC's complaint in the action currently pending before this Court ("the Rhode Island action"). These claims are logically related to NEC's Capacity Cost claims because they arise from the same aggregate of operative facts and the same contracts. The Court, therefore, should enjoin Constellation from prosecuting the Massachusetts action.

## I. FACTUAL BACKGROUND

### A. <u>The Rhode Island Action</u>

As this Court is aware, this is a dispute between a wholesale supplier of electricity, Constellation, and an electric distribution company, NEC, regarding the obligation to pay Capacity Costs. Pursuant to four PPAs between the parties and a FERC-approved Settlement Agreement, the payment of Capacity Costs is Constellation's obligation. To enforce the provisions of the PPAs, as well as the FERC-approved Settlement Agreement, NEC filed a complaint against Constellation on September 11, 2006, requesting declaratory relief and presenting claims for waiver and breach of contract. In particular, NEC requested declarations that the PPAs and the Settlement Agreement preclude Constellation from requiring NEC, and ultimately the Rhode Island ratepayer, to pay Capacity Costs. Constellation answered NEC's complaint and asserted several counterclaims, seeking additional payments under the four PPAs. Constellation chose not to plead the claim for additional payments under two of the PPAs that it now seeks to assert in the Massachusetts action.

### B. The Massachusetts Action

On April 14, 2008, Constellation filed an action against NEC in the United States District Court for the District of Massachusetts, Central Division. Constellation's claims arise from two of the PPAs at issue in the Rhode Island action: the 20% Contract and the 36% Contract.[2] In the Massachusetts action, Constellation seeks to recover additional payments for a Fuel Adjustment Factor ("FAF") under the PPAs. This FAF is

> … a cents per kilowatt-hour adder based on the incremental revenues collected, if any, attributed to the operation of the Retail Standard Offer Fuel Index ("Fuel Index") mechanism in the Companies' Standard Offer Service tariffs. The revenues attributed to the Fuel Index will be fully allocated to suppliers in proportion to the Standard Offer Service energy provided by each supplier for the applicable billing month through the Fuel Adjustment Factor. The Fuel Index, and the resulting Fuel Adjustment Factor to be paid to Supplier, will be made subject to regulatory approval and only to the extent that the Companies are allowed to collect such revenues from their retail customers taking Standard Offer Service.

20% Contract, Art. 5, at 6-7; 36% Contract, Art. 5, at 6-7. Constellation alleges that NEC breached the two PPAs and the implied covenant of good faith and fair dealing by failing to: (1) seek a FAF in its rate filings with the Rhode Island Public Utilities Commission ("RIPUC") and (2) pay a FAF to Constellation.

Constellation's alleged FAF claims arose, prior to September 11, 2006, when NEC filed the Rhode Island action, and as early as December of 2004. See Constellation's Complaint, attached as Exhibit A, at ¶ 30 (alleging that "[i]n December of 2004, NEC filed with the RIPUC its proposed Standard Offer Service Tariffs and rates for 2005" and that "NEC specified that no Fuel Adjustment Factor should be granted to Constellation … in 2005"). More specifically, on

---

[2] In its complaint, Constellation refers to the PPAs as "WSOSAs" (i.e., Wholesale Standard Offer Service Agreements). The 20% Contract is the Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (dated December 21, 1998, and amended on January 27, 2003 and July 3, 2003). The 36% Contract is the Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation, and Constellation Power Source, Inc. (dated December 21, 1998, and amended on January 27, 2003 and July 3, 2003).

May 17, 2005, TransCanada Power Marketing Ltd. ("TransCanada"), another wholesale supplier of electricity, filed identical FAF claims against NEC under similar PPAs in the United States District Court for the District of Massachusetts in Worcester. In an attempt to resolve the TransCanada claim, NEC approached Constellation in May or June of 2005 and discussed having Constellation take over TransCanada's wholesale supply obligations to NEC as a result of TransCanada's FAF claims.[3]

Notwithstanding this knowledge, Constellation decided not to assert a FAF claim against NEC in 2004. Indeed, Constellation continued to bill NEC for electricity at a price that did not include a FAF. Two years later, in response to the Rhode Island action, Constellation again decided not to assert a FAF claim against NEC. Constellation filed other counterclaims in the Rhode Island action seeking additional payments from NEC under the PPAs, but did not assert a FAF counterclaim.[4]

On March 26, 2008, in the action that TransCanada filed in the Worcester Division, Judge Saylor entered an order on the parties' summary judgment filings that effectively ruled in favor of TransCanada on its claim that its contract with NEC required NEC to pay a FAF. Constellation now seeks to assert for the first time in Worcester its extinguished compulsory counterclaim, despite years of prior inaction. For the reasons set forth below, the Court should enjoin Constellation from prosecuting the Massachusetts action.

---

[3] Those discussions did not lead to a resolution, but the parties specifically discussed TransCanada's FAF claims. See Letter dated June 7, 2005 from NEC to RIPUC, attached as Exhibit B.

[4] For these and other reasons, NEC will maintain that Constellation is now barred from asserting counterclaims in the Rhode Island action seeking additional payments for a FAF. The issue of whether Constellation can now assert these claims, both procedurally and substantively, should be determined in this action. Constellation's knowing attempt to evade a decision in this forum is reflected in its unavailing effort to anticipate this issue in the complaint filed in the Massachusetts action. See Constellation's Complaint at ¶ 20.

## II. ARGUMENT

### A. Constellation's FAF Claims Are Compulsory Counterclaims in the Rhode Island Action.

#### 1. Constellation's FAF claims are compulsory counterclaims in this action because they arise out of the same transaction and occurrence, and share a logical relationship with the Capacity Cost claims asserted by NEC and Constellation.

"A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Courts interpret liberally the scope of the phrase "transaction or occurrence," as utilized in Rule 13(a). Tapalian v. Town of Seekonk, 188 F.Supp.2d 136, 139 (D. Mass. 2002); United Fruit Co. v. Standard Fruit and S.S. Co., 282 F. Supp. 338, 339 (D. Mass. 1968). The Supreme Court, in its leading case on compulsory counterclaims, found:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship. Essential facts alleged by … (plaintiff) enter into and constitute in part the cause of action set forth in the counterclaim. That they are not precisely identical, or that the counterclaim embraces additional allegations does not matter. To hold otherwise would be to rob this branch of the rule of all serviceable meaning, since the facts relied upon by the plaintiff rarely, if ever, are, in all particulars, the same as those constituting the defendant's counterclaim.

United Fruit Co., 282 F. Supp. at 339 (citing Moore v. N.Y. Cotton Exchange, 270 U.S. 593, 610 (1926)) (emphasis added); see also E.J. Korvette Co., Inc. v. Parker Pen Co., C.A. No. 99-108, 1955 U.S. Dist. LEXIS 3988, at *6 (S.D.N.Y. Apr. 23, 1955) (stating that "an absolute identity of factual backgrounds is not required" for a counterclaim to be compulsory). Furthermore,

counterclaims may be compulsory even if they implicate different law or remedies than the original claims. Tapalian, 188 F. Supp. 2d at 139.

In determining whether a counterclaim is compulsory, courts utilize four tests.[5] Of these four tests, courts, including the First Circuit, prefer and employ most frequently the logical relationship test. Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1410; see, e.g., Iglesias v. Mutual Life Ins. Co. of N.Y., 156 F.3d 237, 241-42 (1st Cir. 1998) (applying the logical relationship test). The logical relationship test is known for its flexibility, allowing "the court to apply Rule 13(a) to any counterclaim that from an economy or efficiency perspective could be profitably tried with the main claim." Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1410.

Under the logical relationship test, "a claim qualifies as compulsory only if: it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." Iglesias, 156 F.3d at 241-42.

It is well-settled that "[w]hen the same contract serves as the basis for both the claims and the counterclaims, the logical relationship standard … [for compulsory counterclaims] has been satisfied." Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1410. Numerous courts have applied this rule. See, e.g., Preussag Int'l Steel Corp. v. Interacero, Inc., 951 F. Supp. 338, 344-45 (D.P.R. 1997) (holding that the defendants' claim regarding an overcharge in

---

[5] These four tests ask: "(1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim? (4) Is there any logical relation between the claim and the counterclaim?" Iglesias v. Mutual Life Ins. Co. of N.Y., 156 F.3d 237, 241 (1st Cir. 1998). An affirmative answer to any of these questions dictates that the counterclaim is compulsory. Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1410.

interest under a contract was a compulsory counterclaim to the plaintiff's claim for failure to pay under the same contract); Nat'l Equip. Rental, Ltd. v. Fowler, 287 F.2d 43, 45 (2d Cir. 1961) (concluding that a lessee's fraud in the inducement claim was a compulsory counterclaim in an action for breach of the lease); Montgomery Ward Dev. Corp. v. Juster, 932 F.2d 1378, 1381-82 (11th Cir. 1991) (finding that claim for reformation of contract was logically related to and compulsory in action for underpayment of contract); Bankcard Sys., Inc. v. Miller/Overfelt, Inc., 219 F.3d 770, 773 (8th Cir. 2000) (holding that counterclaims were compulsory to the previously asserted claim "because they involve[d] the facts and circumstances of the making and enforcing of the same contract"); Pentz v. Romine, 57 S.W.3d 235, 239 (Ark. Ct. App. 2001) (deciding that a breach of contract claim was compulsory in a foreclosure action because a logical relationship existed between the claims, which arose from an alleged breach of the same sales contract).

Application of the logical relationship test to this case demonstrates that Constellation's FAF claims are compulsory counterclaims that Constellation should have asserted in the Rhode Island action. Constellation's FAF claims admittedly arise from two of the PPAs that are already the subject of this action. See Constellation's Complaint ¶¶ 1, 17-18. Similarly, Constellation's counterclaims in the Rhode Island action are expressly grounded in the PPAs. See Constellation's Answer at p. 23-26 (requesting an "equitable adjustment" under the PPAs "due to intervening regulatory changes"; claiming breach of the PPAs; requesting "additional compensation" under the PPAs "as a result of the implementation of ASM Phases I and II"). This common contractual platform of the PPAs – which underlies Constellation's FAF claims, NEC's Capacity Cost claims, and Constellation's already asserted counterclaims – plainly satisfies the logical relationship test, and dictates that Constellation's FAF claims are compulsory counterclaims in the Rhode Island action. See Wright, Miller, & Kane, Federal Practice and

Procedure: Civil 2d § 1410; Preussag Int'l Steel Corp., 951 F. Supp. at 344-45; Nat'l Equip. Rental, Ltd., 287 F.2d at 45; Montgomery Ward Dev. Corp., 932 F.2d at 1381-82; Bankcard Systems, Inc., 219 F.3d at 773; Pentz , 57 S.W.3d at 239.

Furthermore, Constellation's FAF claims arise out of the same transaction and occurrence as the Capacity Cost claims. Both of these claims arise out of Constellation's actions and contractual obligations as a wholesale supplier in selling electricity to NEC. In fact, both of these claims are seeking damages for pricing adjustments Constellation alleges should have been made under the same contracts. Moreover, both of these claims implicate the same set of business dealings and negotiations that gave rise to the pricing terms under the contracts in the first instance.

Finally, the FAF claims do not require adding another party over whom this Court cannot acquire jurisdiction. Indeed, the FAF claims and the Capacity Cost claims involve the same parties, the same relationship, and the same contracts. Many of the operative facts regarding the parties' relationship, the parties' respective obligations, and the relevant regulatory scheme enter into and constitute in part the cause of action set forth in Constellation's FAF claims. That Constellation's FAF claims implicate additional allegations, or that they may involve a different body of law or different remedies, does not matter. See Moore, 270 U.S. at 610; Tapalian, 188 F. Supp. 2d at 139; E.J. Korvette Co., Inc., 1955 U.S. Dist. LEXIS 3988, at *6. See also SMS Marketing & Telecommunications, Inc. v. H.G. Telecom, Inc., 949 F. Supp. 134, 138 (E.D.N.Y. 1996) (holding that the plaintiff's claims for breach, fraud, and unjust enrichment arising from interrupted service under a telecommunications service contract were compulsory counterclaims vis à vis the defendants' claims for payments under the same contract).

**B. The Court Should Enjoin Constellation From Prosecuting The Massachusetts Action.**

"[W]hen a case is brought in one federal district court, and the case so brought embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." Nat'l Equip. Rental, Ltd., 287 F.2d at 45. See also United Fruit Co., 282 F.Supp. at 340 (stating that "unless there are unusual circumstances, the court should apply the 'general rule that the party filing later in time should be enjoined from further prosecution of his suit"). "This [rule] necessarily follows from the basic proposition that the first court to obtain jurisdiction of the parties and of the issues should have priority over a second court to do so." Nat'l Equip. Rental, Ltd., 287 F.2d at 45. Furthermore, "[s]ound judicial discretion dictates that the second court decline its consideration of the action before it until the prior action before the first court is terminated." Id. Explaining the rationale underlying this rule, one court explained

> We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter, and an injunction should issue enjoining the prosecution of the second suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice unless unusual circumstances warrant.

Id. at 46.

In United Fruit Co., 282 F. Supp. at 338-40, the United States District Court for the District of Massachusetts addressed the procedural scenario present here. In that case, United Fruit Company ("United") sued Standard Fruit and Steamship Company ("Standard") in the United States District Court for the District of Massachusetts, claiming that Standard had engaged in unfair competition by utilizing banana labels resembling those of United. Id. at 338.

Subsequent to United filing its action, Standard filed a lawsuit in the federal court for the Eastern District of Louisiana against United and its wholly owned subsidiary, seeking a declaratory judgment that Standard's labels did not infringe United or its subsidiary's trademark rights and claiming that United and its subsidiary engaged in unfair competition. Id. at 339. United filed a motion in Massachusetts to enjoin Standard "from further proceeding with its action in the Eastern District of Louisiana pending final determination of the present action now before this court." Id. After holding that both counts in the Louisiana action were compulsory counterclaims that Standard should have asserted in the Massachusetts action, the United States District Court for the District of Massachusetts enjoined United from further proceeding with the Louisiana action "pending final determination of the present action now before this court." Id. at 340. See also Nat'l Equip. Rental Ltd., 287 F.2d at 46 (affirming district court's decision to enjoin proceedings in second-filed forum where claims in second proceeding were compulsory counterclaims to claim in first proceeding).

In the TransCanada cases involving NEC, the courts faced a similar issue. TransCanada filed a lawsuit in the United States District Court for the District of Massachusetts, claiming that TransCanada was entitled to a FAF. Shortly thereafter, NEC filed a lawsuit against TransCanada in the United States District Court for the District of Rhode Island claiming that TransCanada was not entitled to a FAF. TransCanada then filed two motions: (1) a motion before the United States District Court for the District of Rhode Island to dismiss the Rhode Island action, or in the alternative, stay or transfer venue to the District of Massachusetts and (2) a motion before the United States District Court for the District of Massachusetts to enjoin NEC from prosecuting the Rhode Island action. On October 5, 2005, Judge Smith ruled in the Rhode Island action that the first-filed forum of Massachusetts should decide whether the first-filed rule should apply. The

Narragansett Electric Co. v. TransCanada Power Marketing, Ltd., C.A. No. 05-234S (D.R.I. October 5, 2005). Judge Saylor then ruled in the Massachusetts action, on November 11, 2005, that the first-filed rule did in fact apply and that the action should proceed in Massachusetts. TransCanada Power Marketing Ltd. v. The Narragansett Electric Co., 402 F. Supp. 2d 343, 354 (D. Mass. 2005) (denying motion to transfer venue to second-filed forum and to stay proceedings in first-filed forum).

Here, this Court, and not the United States District Court for the District of Massachusetts, should decide in which forum this action should proceed. Additionally, this Court should apply the presumption favoring the first-filed forum of Rhode Island, and should enjoin Constellation from prosecuting the Massachusetts action. The United States District Court for the District of Rhode Island was the first court to obtain jurisdiction over NEC and Constellation regarding their rights under the PPAs. The Rhode Island action, therefore, has priority over the Massachusetts action. NEC should be free from concurrent litigation over this subject matter, and the Court should issue an injunction to prevent the waste of resources involved in duplicative litigation.

## III. CONCLUSION

For these reasons, the Court should determine that Constellation's FAF claims are compulsory counterclaims and enjoin Constellation from prosecuting the Massachusetts action.

THE NARRAGANSETT ELECTRIC COMPANY
By its attorneys,

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Robin L. Main (#4222)
Anna M. Piazza (#7206)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com
apiazza@haslaw.com

Dated: May 5, 2008

**CERTIFICATION**

**To:**

Leo J. Wold, Esq.
Richard B. Woolley, Esq.
150 South Main Street
Providence, RI 02903

Stacey P. Nakasian, Esq.
Duffy Sweeney & Scott, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903

Kenneth W. Irvin, Esq.
Teresa M. Goody, Esq.
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 2005-3096

I hereby certify that on May 5, 2008, a copy of the foregoing memorandum of law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com

886909 (57972-129329)