**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | ) | C.A. NO. 06-404S |

**MEMORANDUM OF LAW IN SUPPORT OF THE OPPOSITION OF CONSTELLATION ENERGY COMMODITIES GROUP, INC. TO THE MOTION OF NARRAGANSETT ELECTRIC COMPANY TO ENJOIN**

Constellation Energy Commodities Group, Inc. ("Constellation") opposes the motion of The Narragansett Electric Company ("NEC") to enjoin Constellation from prosecuting its complaint before the United States District Court for the District of Massachusetts. That action (the "Fuel Adjustment Factor claim" or "FAF claim") concerns NEC's breach of the fuel adjustment provision in the parties' 1998 contracts (which is identical to the clause construed in *TransCanada Power Mktg., Ltd. v. The Narragansett Elec. Co.* ("*TransCanada II*"), No. 05-40076, 2008 U.S. Dist. LEXIS 27609 (D. Mass. Mar. 26, 2008) (attached hereto as Ex. A)). This action (the "change in law claim" or "CIL claim") does not share any operative facts with the FAF claim, but rather involves whether a regulatory change by the Federal Energy Regulatory Commission ("FERC") triggers the "change in law" provisions of the parties' contracts. Because the FAF claim pleads a separate cause of action, no grounds exist for enjoining Constellation from proceeding before the Massachusetts court and NEC's motion should be denied.

## STATEMENT OF THE CASE

The Massachusetts court has proper subject-matter and personal jurisdiction for Constellation's FAF claim against NEC, and venue is proper there. Constellation filed suit there because that court is intimately familiar with the FAF claim as it arises from the identical provision at issue in *TransCanada II,* and because of the policy issues identified in *TransCanada Power Mktg., Ltd. v. The Narragansett Elec. Co.* ("*TransCanada I*"), 402 F. Supp. 2d 343, 351-354 (D. Mass. 2005). That court's experience with the FAF claim, authority to grant the relief requested, and the absence of any connection to the dispute before this Court provide reasonable and proper grounds for having the Massachusetts court hear the FAF claim.

## I. THE MASSACHUSETTS ACTION

Constellation initiated the FAF claim on April 14, 2008, pleading claims for declaratory relief and breach of contract against NEC. Compl. ¶ 1, *Constellation Energy Commod. Group, Inc. v. The Narragansett Elec. Co.*, No. 08-40068 (D. Mass.) ("Mass. Compl.") (attached hereto as Ex. B). The FAF claim asks the Massachusetts court to determine whether NEC breached the fuel adjustment provision in the parties' two 1998 Wholesale Standard Offer Service Agreements ("WSOSAs"), which require NEC to include a Fuel Adjustment Factor in the price of wholesale power to account for increases in fuel costs over time. *Id.* The WSOSAs are governed by Massachusetts law, Mass. Compl. ¶ 16, and the fuel adjustment clause at issue is identical to the clause construed in *TransCanada II.*[1]

As the Massachusetts court found in *TransCanada II*, Article Five of the WSOSAs imposes on NEC the duty and good faith obligation to make the required Standard Offer Service

---

[1] This Court has also encountered the NEC-TransCanada Fuel Adjustment Factor litigation. In response to the filing of TransCanada's complaint in the United States District Court for the District of Massachusetts, NEC filed an identical complaint in this Court. Compl., *Narragansett Elec. Co. v. TransCanada Power Mktg., Ltd.*, No. 05-234S (D.R.I.). This Court stayed the proceeding pursuant to the "first-filed rule" to permit Massachusetts to adjudicate the dispute, Dec. & Order at 7 (Oct. 5, 2005), and subsequently dismissed the case. Order (Nov. 28, 2005).

Tariff filings with the Rhode Island Public Utility Commission ("RIPUC"), and to use reasonable efforts to obtain regulatory approval for a Fuel Adjustment Factor through 2009. Mass. Compl. ¶ 18; *TransCanada II*, at *16–22. The respective contract provisions for the fuel adjustments are indistinguishable:

| TransCanada WSOSA, Article Five | Constellation WSOSAs, Article Five |
|---|---|
| For each kilowatt-hour of Delivered Energy that Supplier provides in each month . . ., the Companies shall pay Supplier the applicable Price for the month in cents per kilowatt-hour calculated as follows:<br><br>Price = Standard Offer Wholesale Price + Fuel Adjustment Factor<br><br>Where: Standard Offer Wholesale Price in cents per kilowatt hour is as defined in Article 1 and shown in Appendix A, and<br><br>Fuel Adjustment Factor is a cents per kilowatt-hour adder based on the incremental revenues collected, if any, attributed to the operation of the Retail Standard Offer Fuel Index ("Fuel Index") mechanism in the Companies' Standard Offer Service tariffs .... The Fuel Index, and the resulting Fuel Adjustment Factor to be paid to Supplier, will be made subject to regulatory approval and only to the extent that the Companies are allowed to collect such revenues from their retail customers taking Standard Offer Service. | For each kilowatt-hour of Delivered Energy that Supplier provides in each month . . ., the Companies shall pay Supplier the applicable Price for the month in cents per kilowatt-hour calculated as follows:<br><br>Price = Standard Offer Wholesale Price + Fuel Adjustment Factor<br><br>Where: Standard Offer Wholesale Price in cents per kilowatt hour is as defined in Article 1 and shown in Appendix A, and<br><br>Fuel Adjustment Factor is a cents per kilowatt-hour adder based on the incremental revenues collected, if any, attributed to the operation of the Retail Standard Offer Fuel Index ("Fuel Index") mechanism in the Companies' Standard Offer Service tariffs .... The Fuel Index, and the resulting Fuel Adjustment Factor to be paid to Supplier, will be made subject to regulatory approval and only to the extent that the Companies are allowed to collect such revenues from their retail customers taking Standard Offer Service. |

TransCanada Compl. ¶ 16. (attached hereto as Ex. C); Mass. Compl. ¶ 17.

As in *TransCanada II*, NEC abided by its obligation to pay the fuel index until 2004. Mass. Compl. ¶¶ 28–30; *TransCanada II*, at *11-12. Thereafter, NEC filed with the RIPUC its proposed Standard Offer Service Tariffs and rates for 2005, which specified that no Fuel Adjustment Factor should be granted to Constellation (or TransCanada). Mass. Compl. ¶ 30, *TransCanada II*, at *12-13. As a result, RIPUC approved Standard Offer Service tariffs and

rates for 2005 and afterwards that provide no Fuel Adjustment Factor for Constellation. Mass. Compl. ¶ 30.

Constellation seeks in the FAF claim the same relief against NEC that the Massachusetts court awarded TransCanada for NEC's failure to fulfill its obligation under the WSOSAs to pay a fuel index to account for increases in the price of the fuel used to generate electricity. Mass. Compl. ¶ 33; *TransCanada II*, 2008 U.S. Dist. LEXIS 27609, at *34–35. NEC's action breached its obligations under the WSOSAs to file for a Fuel Adjustment Factor and (if allowed) to pay a fuel-adjusted price to Constellation, and that breach has caused Constellation substantial and ongoing damages. Mass. Compl. ¶¶ 31–32.

## II. THE RHODE ISLAND ACTION

As the Court knows, Constellation and NEC are currently involved in a declaratory judgment dispute in this forum regarding the change in law or market rules provisions of the parties' wholesale power purchase agreements. *Narragansett Elec. Co. v. Constellation Energy Commod. Group, Inc.,* 526 F.Supp.2d 260, 264–67 (D.R.I. 2007). NEC's suit (in which the State of Rhode Island has joined) stems from FERC regulatory changes that altered the price and quantity of "capacity" supplied under the parties' contracts, and addresses whether those changes trigger the "change in law" provisions in the parties' contracts. *Narragansett,* 526 F. Supp. 2d at 264–67.

The issues in the CIL claim involve Constellation's and NEC's conduct before FERC in 2006. *Id.* There is no allegation in this case concerning the fuel adjustment provisions of the WSOSAs or any of the factual allegations in the FAF claim. *Narragansett*, 526 F.Supp.2d 260. There is no overlap of factual or legal issues in these two cases beyond the existence of the two 1998 WSOSAs, which neither party disputes.

In addition, the CIL claim includes two contracts not at issue in the FAF claim, and a central dispute concerns whether those two contracts (the 2001 and 2002 PPAs) bind the parties to resolve their dispute by arbitration (while the remainder of the case is stayed pending arbitration). This Court denied Constellation's motion to compel arbitration, which Constellation has appealed. Because of the pending appeal, there is an issue as to whether this Court possesses jurisdiction to proceed with the Rhode Island declaratory judgment case, which the Court has taken under advisement.[2]

**ARGUMENT**

**I. MASSACHUSETTS AS THE FIRST-FILED FORUM SHOULD ADJUDICATE CONSTELLATION'S FAF CLAIMS**

Constellation's complaint before the Massachusetts court is the first-filed action between these parties to raise NEC's duty under the fuel adjustment provisions of the WSOSAs. The First Circuit has held that "the first filed action is generally preferred . . . [and the] burden of proof rests with the party seeking transfer; there is a strong presumption in favor of the plaintiff's choice of forum." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000). The focus of the inquiry is on the similarity of the issues pled: "a party who first brings *an issue* into a court of competent jurisdiction should be free from the vexation of concurrent litigation over *the same subject matter*." *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961) (emphasis added); *see also Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987) ("Where *identical actions* are proceeding concurrently in two federal courts . . . the first filed action is generally preferred.") (emphasis added). Because NEC has not pled anything about a FAF claim,

---

[2] *See* Mem. of Points and Authorities in Support of Defendant's Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal (Dkt. 50), at 6–7; Defendant's Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal Hr'g Tr. (Dkt. 71), 49:12-49:23, May 6, 2008.

NEC's motion does not overcome the strong presumption that Massachusetts is the proper forum to decide this matter. *TransCanada I*, 402 F. Supp. 2d at 347–48.

Moreover, none of the exceptions to the first-filed presumption apply here, and this Court has already determined that any inconvenience to NEC arising out of litigating in Massachusetts is slight and insignificant relative to the interests of federal comity. Dec. & Order at 4–6, & n.4, *Narragansett Elec. Co. v. TransCanada Power Mktg., Ltd.*, No. 05-234S (D.R.I. Oct. 5, 2005). Given its familiarity with Article 5 of the WSOSAs, allowing the Massachusetts court to proceed with the FAF claim accords with the principle that consistent treatment of the interpretation of a contractual provision warrants one court hearing all disputes over that provision. *Id.* at 6 (citing *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 623 F. Supp. 912, 916 (D.P.R. 1985)); *see also Eagle-Picher Indus., Inc. v. Am. Employers Ins. Co.*, 557 F. Supp. 225 (D.D.C. 1983) (holding that as a matter of public policy, because defendant faced same insurance dispute in multiple lawsuits, it was desirable to have only one single interpretation of certain insurance coverage provisions). Indeed, given the nature of the WSOSAs, no justification exits for having Article 5 of the WSOSAs interpreted by two different courts when the Massachusetts court possesses all the power necessary to proceed. *See Durham Prods., Inc. v. Sterling Film Portfolio, Ltd.*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoids [duplicative] litigation and inconsistent results.") (citation omitted).

NEC's reliance on this Court's decision in *TransCanada I* is misplaced. The procedural posture there was not the same as here. There NEC responded to TransCanada's first-filed complaint in Massachusetts by filing an *identical* claim in this Court. Mot. To Enjoin at 10. In accordance with the first-filed rule, this Court properly stayed the second-filed action pending

the Massachusetts court's adjudication of the identical claim. Here, Constellation's FAF claim is not a retaliatory filing reacting to a complaint previously filed about NEC's liability on the FAF claim. Rather, as between Constellation and NEC, Constellation's FAF claim is first-filed suit and is properly before the Massachusetts court. Accordingly, no cause exists for this Court to disregard the first-filed forum for the FAF claim.

## II. CONSTELLATION'S FUEL ADJUSTMENT FACTOR CLAIM IS NOT A COMPULSORY COUNTERCLAIM TO THE RHODE ISLAND ACTION

NEC's argument that the Rhode Island action is first-filed with regard to the FAF claim rests on an incorrect reading of the compulsory counterclaim mandate of Federal Rule of Civil Procedure 13(a). Under Rule 13(a), a counterclaim is compulsory when it arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a). In defining "transaction or occurrence" courts rely on, (1) the similarity of factual and legal issues; (2) whether *res judicata* or claim preclusion would bar subsequent suit; (3) whether the same evidence supports the claims; and (4) whether a logical relationship exists between the claims. 3 James Wm. Moore, *Moore's Federal Practice* ¶ 13.10[1][b] (3d ed. 2001); *see McCaffrey v. Rex Motor Transp., Inc.*, 672 F.2d 246, 248 (1st Cir. 1982).

The First Circuit relies primarily on the "logical relationship" test, which requires the claim and counterclaim to share an "aggregate of operative facts" in that, (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant. *Iglesias v. Mutual Life Ins. Co. of New York*, 156 F.3d 237, 241–42 (1st Cir. 1998); *McCaffrey*, 672 F.2d at 249 (quoting *Revere Copper & Brass Inc. v. Aetna Cas. & Surety Co.*, 426 F.2d 709, 715 (5th Cir. 1970)). Under Rule 13(a), Constellation's FAF claim is not a compulsory counterclaim to the CIL claim.

### A. The Logical Relationship Required by Rule 13(a) Does Not Exist Between the CIL and FAF Claims

The FAF claim arises out of a breach of the parties' agreement that is independent of, and not in any way implicated by the CIL action currently pending before this Court. That the two actions arise out of obligations set forth in the same contract does not suffice to make the FAF claim "logically related" to the CIL claim under Rule 13(a). Courts have rejected NEC's contention that all actions arising out of the same contract are compulsory counterclaims:

> Where the respective claims of parties are based on entirely different alleged breaches of the same contract . . . a defendants' counterclaim may be seen as permissive. [In this case, the] contractual issues underlying the original complaint are far enough removed from the issues raised by defendants' counterclaims . . . that counterclaims III, IV, and V are not compulsory within the meaning of [Federal Rule of Civil Procedure] 13(a). There is no logical relationship between the complaint and counterclaims, but merely an attenuated connection.

*Fortune Mgmt., Inc. v. Bly*, 118 F.R.D. 21, 23 (D. Mass. 1987) (citing *Cont'l Fed. S & L Ass'n. v. Delta Corp. of Am.*, 71 F.R.D. 697 (W.D. Okl. 1976)). Rule 13(a) requires more overlap than mere presence in the same contract:

> The alleged breaches involve different contract provisions and [refer] to acts of different parties during entirely different time frames. Each alleged breach by the opposing party is alleged to be unilateral on the part of the alleged wrongdoer. Entirely different evidence will be required to prove each alleged breach and the resulting damages sustained from same. The only common question is the existence of the contract in question which it appears both parties agree was entered into by the parties.

*Continental Federal*, 71 F.R.D. at 701.

Consequently, when—as here—the events triggering the alleged breaches are unrelated and the contract provisions implicated by those separate breaches are distinct, no "logical relationship" exists between the claims that would trigger the compulsory counterclaim rule. *See, e.g., Chicago & N. W. Transp. Co. v. Atchison, Topeka & Santa Fe Ry. Co.*, 367 F. Supp. 801,

805–06 (E.D. Ill. 1973) (counterclaim found not compulsory when the complaint alleged breach "pursuant to contractual terms not in issue in the counterclaim") (superseded by statute on unrelated issue); *Volpe Constr. Co. v. Trustees of Tufts College*, 1 Mass. App. Ct. 38, 40 (1973) (holding no compulsory counterclaim where court "appear[s] to be confronted with breaches of entirely separate contract provisions which stem from different factual contexts. We fail to see how facts supporting one claim would be determined with respect to the other"); *cf.* 18 Charles Alan Wright, Arthur R. Miller & Edward Cooper, *Federal Practice and Procedure* § 4409 (2d ed. 2002) (noting for purposes of *res judicata* that "[m]ultiple claims may arise for breach of a single contract by distinct acts at separate times").

As in *Fortune Management* and *Continental Federal*, Constellation's FAF claim arises from "entirely different alleged breaches of the same contract" than those involved in the CIL claims. *See* 118 F.R.D. at 23; 71 F.R.D. at 701. The CIL claim stems from FERC regulatory changes that altered the price and quantity of "capacity" supplied under the parties' contracts, and whether those regulatory changes trigger the "change in law" provisions in the parties' contracts. *Narragansett,* 526 F.Supp.2d at 264–67. Importantly, the CIL claim includes two contracts not at issue in this FAF case, as well as whether the parties pledged to arbitrate their dispute under the 2001 and 2002 contracts. *Id.*

Moreover, the FAF claim has nothing to do with regulatory changes mandated by FERC, nor any issues pled in the CIL complaint. The FAF claim exists because of NEC's unilateral decision in December 2004 to omit a Fuel Adjustment Factor from the Standard Offer Service Tariffs and rates NEC filed for 2005 and thereafter, in violation of its duty under Article 5 of the 1998 WSOSAs. Mass. Compl. ¶ 2; *TransCanada II*, at *12–13. As NEC acknowledges, the FAF breach is temporally and factually discrete from the CIL complaint, and implicates factual

and legal questions that will not be addressed in the CIL case. NEC's Mot. to Enjoin at 3. The FAF claim depends on none of the evidence at issue in the CIL case, and the aggregate core of facts on which NEC bases its CIL claim is not probative of any core aspect of Constellation's FAF claim.

Tellingly, NEC's motion omits presentation of any overlap in evidence, factual issue, or legal issue between the two cases, and instead argues only that all claims arising out of a contract are compulsory counterclaims. *Id.* at 6–8. Those cases, however, found compulsory counterclaims only because the second claim arose from the same paragraph of a contract, or from identical conduct, or consisted of an element of the first claim—none of which is present here:

- Compulsory counterclaim found when both actions required judicial interpretation of paragraph 3.2 of the parties' contract, *Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1379–82 (11th Cir. 1991);

- Action dismissed when claim "is identical to appellants' defensive counterclaim in the prior [action]," *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 45 (2d Cir. 1961);

- Compulsory counterclaim found because subsequent action asserted different legal theory of recovery for identical conduct, *Tapalian v. Town of Seekonk*, 188 F. Supp. 2d 136 140 (D. Mass. 2002);

- Claim regarding interest charges held a compulsory counterclaim to the original commission action when interest was an element of the commission calculation under the parties' contract, *Preussag Int'l Steel Corp. v. Interacero*, Inc., 951 F. Supp. 338, 340, 345 (D.P.R. 1997);

- Compulsory counterclaim found because second action was based on "identical" facts alleged in first action, *United Fruit Co. v. Standard Fruit & S.S. Co.*, 282 F. Supp. 338, 339–40 (D. Mass 1968);

- Compulsory counterclaim found because second action arose from same facts and circumstances about the making and enforcing of the contract at issue in first action, *Bankcard Sys., Inc. v. Miller/Overfelt, Inc.*, 219 F.3d 770, 773 (8th Cir. 2000);

- Claim for breach held compulsory counterclaim to original foreclosure suit (and barred by *res judicata*) because both involved same events, parties and property, *Pentz v. Romine*, 57 S.W.3d 235, 239-40 (Ark. Ct. App. 2001);

- Breach of contract, fraud, and unjust enrichment case held compulsory counterclaim to failure to pay outstanding charges action (RICO counts dismissed for failure to comply with Rule 9(b) and failure to state a claim) when both actions arose from the same transaction of termination of long distance phone lines based on failure to pay and defendant did not contest that the first judgment was on the merits, the parties are identical, and the causes of action involved are the same, *SMS Mktg. & Telecomms., Inc. v. H.G. Telecom, Inc.*, 949 F. Supp. 134, 138-40, 143-44 (E.D.N.Y. 1996); and

- Compulsory counterclaim found because basis for first action "attributable [in part] to the acts upon which plaintiffs rely here to establish their [second action]", *E.J. Korvette Co. v. Parker Pen Co.*, 17 F.R.D. 267, 269 (S.D.N.Y. 1955).

The FAF claim does not fall within the scope of compulsory counterclaims found in any of those decisions. Rather, the breach alleged against NEC underlying the FAF claim occurred over a year before the FERC regulatory changes or conduct by Constellation at issue in the CIL claim—December 2004 in the FAF claim versus March to August 2006 in the CIL claim. *Compare* Mass. Compl. ¶ 30 *with* Compl. ¶ 30. And, the contractual provisions at issue are distinct and unrelated. Moreover, the conduct alleged in the two cases is completely separate—the CIL claim concerns actions before FERC involving wholesale capacity markets, but the FAF claim concerns NEC's failure to fulfill its obligation to present fuel adjustment claims to the RIPUC.

NEC cites no case in which a court found a counterclaim compulsory when—as here—the events triggering the breaches arise from different conduct, occur over a year apart, and implicate independent contractual provisions. Because the CIL and FAF claims arise out of discrete breaches of unrelated contractual obligations, the FAF claim is not "logically related" to the CIL action and therefore not a compulsory counterclaim.

### B. Adjudication of the FAF Claim Will Not Bind the CIL Claim in Any Respect

Another aspect of the Rule 13(a) analysis considers the preclusive effect of the first case, but here *res judicata* or collateral estoppel from the CIL claim will not bar adjudication of the FAF claim. "Under the doctrine of *res judicata*, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the *same cause of action*." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 (1979) (emphasis added). *Res judicata* or collateral estoppel applies only where parties would be relitigating an identical issue or claim. *See Roy v. Jasper Corp.*, 666 F.2d 714, 715 (1st Cir. 1981). No such preclusive effect arises here because the FAF claim does not seek to relitigate the same claims or issues before this Court in the CIL declaratory action.

The CIL claim is at the incipient stage and far from a final resolution on the merits. The parties are only sorting out jurisdiction; are currently engaged in an appeal to the United States Court of Appeals over arbitrability and an accompanying stay of the remaining action pending arbitration; and have not started discovery. Even if the CIL action is resolved while the FAF claim is pending, that resolution would only be binding as to the meaning of contractual provisions at issue before this Court—not the one at issue in the FAF claim. This Court will not resolve whether NEC breached Article 5 of the WSOSAs. Likewise, a determination by the Massachusetts Court on the FAF claim will not be determinative of any disputed issue in this CIL case. In fact, the only overlap between the cases is the existence of the WSOSAs, which is not disputed. Accordingly, neither issue nor claim preclusion after the adjudication of the CIL claim would bar Constellation from bringing the instant FAF claim.

**CONCLUSION**

For the foregoing reasons, because the FAF claim is properly filed with the Massachusetts court and no cause exists to enjoin Constellation from prosecuting that claim, this Court should deny NEC's motion.

Dated: May 22, 2008

Respectfully Submitted,

/s/ Stacey P. Nakasian
Stacey P. Nakasian, Esq. (Bar No. 5069)
Duffy Sweeney & Scott, LTD.
One Turks Head Place, Suite 1200
Providence, RI 02903
(401) 455-0700-Phone
(401) 455-0701-Fax

*Attorneys for Defendant*
*Constellation Energy Commodities Group, Inc.*

Kenneth W. Irvin (DC Bar #439395)
Teresa M. Goody
Kelly M. Falls
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 20005-3096
Tel: 202.756.8116
Fax: 202.756.8087

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2008, I electronically filed the foregoing *Opposition to The Narragansett Electric Company's Motion to Enjoin* with the Clerk of the Court for the United States District Court for the District of Rhode Island using the ECF system, which will send notification to the following registered participant of the ECF System as listed on the Court's Notice of Electronic Filing:

Gerald Petros, Esq.
Robin Main, Esq.
Anna Piazza, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903

*Counsel for The Narragansett Electric Co.*

Leo J. Wald, Esq.
Richard Woolley, Esq.
Rhode Island Attorney General
150 South Main Street
Providence, RI 02903

*Counsel for the State of Rhode Island and Providence Plantations and The Rhode Island Division of Public Utilities and Carriers*

/s/ Stacey Nakasian