**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THE NARRAGANSETT ELECTRIC COMPANY,<br><br>Plaintiff,<br><br>STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS and the RHODE ISLAND DIVISION OF PUBLIC UTILITIES AND CARRIERS,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>CONSTELLATION ENERGY COMMODITIES GROUP, INC.,<br><br>Defendant. | ) | C.A. No. 06-404S |

**DEFENDANT THE NARRAGANSETT ELECTRIC COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO ENJOIN PROSECUTION OF A RELATED MATTER IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Having purposefully foregone its FAF claims until this point, Constellation Energy Commodities Group, Inc. ("Constellation") now attempts to resurrect those claims in the United States District Court for the District of Massachusetts by denying the logical relationship that they share with the Capacity Cost claims at issue in this action. Constellation's selective comparison of this action to TransCanada Power Mktg., Ltd. v. The Narragansett Elec. Co., No. 05-40076, 2008 U.S. Dist. LEXIS 27609 (D. Mass. Mar. 26, 2008) distracts this Court's attention from the proper inquiry on NEC's motion to enjoin: do the FAF claims share a logical relationship with the Capacity Cost claims such that a court should adjudicate them, if at all, in the Rhode Island action? The answer to this question is yes. The FAF claims arise from Power

Purchase Agreements ("PPAs") already before this Court; both the FAF and Capacity Cost claims derive from the same supplier-distributor relationship and concern an overlapping period of time; and the FAF and Capacity Cost claims each involve pricing adjustments to which Constellation claims it is entitled as the supplier to NEC under the PPAs. Because Constellation's FAF claims are compulsory counterclaims that it should have asserted in this action, venue in the United States District Court for the District of Massachusetts is improper. The Court should grant NEC's motion to enjoin Constellation from prosecuting the Massachusetts action.

# I. ARGUMENT

## A. Constellation's FAF Claims Are Compulsory Counterclaims.

### 1. Constellation's FAF claims and the Capacity Cost claims share a logical relationship.

Courts have consistently held that claims arising under the same contract share a logical relationship. See Pentz v. Romine, 57 S.W.3d 235, 239 (Ark. Ct. App. 2001) (where the court plainly stated "[a] logical relationship existed between the foreclosure action and the … breach-of-contract claim, for both claims arose from an alleged breach of the same sales contract"); Montgomery Ward Development Corp. v. Juster, 932 F.2d 1378, 1382 (11th Cir. 1991) (holding that a claim for reformation of a contract was logically related to a claim for failure to pay under the same contract because the claims arose from the same contractual transaction); Bankcard Sys., Inc. v. Miller/Overfelt, Inc., 219 F.3d 770, 773 (8th Cir. 2000) (holding that the plaintiffs should have asserted their contract and tort claims as compulsory counterclaims in a prior state court action that the defendants brought because the plaintiffs' claims "involve the facts and circumstances of the making and enforcing of the same contract" and their claims, like the defendants' claims, "also pertain to the February 1998 contract"); Nat'l Equip. Rental Ltd. v.

A.L. Fowler, 287 F.2d 43, 45 (2d Cir. 1960) (holding that "fraud in the inducement of the agreement [a lease], arises from the same transaction of [the] lease, and is pleadable in the New York action [for failure to pay monthly rental fee under the lease] as a compulsory counterclaim"); Preussag Intern. Steel Corp. v. Interacero, Inc., 951 F. Supp. 338, 345 (D.P.R. 1997) (holding that "[t]he defendants' claim regarding interest [under the agreement] … is a compulsory counterclaim for damages which the defendants seek to offset against the money" that they owe the plaintiff under the same agreement).

That proposition remains true, whether or not the claims derive from the same provision of the contract or the same alleged breach. Keisser Ins. Agency v. Nationwide Mut. Ins. Co., for example, involved the contractual relationship between a former agent and his insurance agency, on the one hand, and an insurance company and its affiliated companies, on the other hand. 246 F. Supp. 2d 833, 834 (N.D. Ohio 2003). The issue before the court was whether the plaintiffs' claims constituted compulsory counterclaims that the plaintiffs should have raised in an earlier action initiated by the defendant. Id.[1] The court held that the plaintiffs' claims were logically related to the defendants' claims because

> [t]hey all arise from the parties' former relationship of principal and agent. At the core of both sets of claims is the contention that the other party breached one or more of their contractual obligations to the other. The individual claims, whether state or federal, contract or tort, common law or statutory, arise from that relationship and share that common core.

Id. at 835. See also Regents of the Univ. of N.M. v. Knight, 321 F.3d 1111, 1126 (Fed. Cir. 2003) (holding that inventors' claims for patent royalties were compulsory counterclaims relative

[1] The plaintiffs asserted claims for, inter alia, breach of a Corporate Agency Agreement, based on the defendants' denial of access to a computer system; anticipatory breach of contract, based on a refusal to pay certain compensation and earnings under the Corporate Agency Agreement; and breach of contract, based on failure to remove the plaintiffs' names from business materials. Id. The defendant's claims – asserted in the earlier action – included breach of the Corporate Agency Agreement, a Systems Service and Support Agreement, an Agency Code of Ethics, and a Financial Services Compliance Manual, on account of the plaintiffs' retention of property and use of policyholder information. Id.

to a university's claims for patent ownership because the claims arose from the same contract, albeit different provisions); King Bros. Productions, Inc. v. RKO Teleradio Pictures, Inc., 208 F. Supp. 271, 275 (S.D.N.Y. 1962) (stating that "[t]he spirit and intent of Rule 13(a) requires that the entire contractual relationship be deemed to be included within the word 'transaction' in cases sounding in contract"); Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1410 (stating that "[w]hen the same contract serves as the basis for both the claims and the counterclaims, the logical relationship standard … [for compulsory counterclaims] has been satisfied").

These cases support adjudication of the FAF and Capacity Cost claims in the same action. The entire contractual relationship between Constellation and NEC falls within the meaning of "transaction," as Federal Rule of Civil Procedure 13(a) utilizes the term. Both Constellation's FAF claims and Constellation's and NEC's Capacity Cost claims arise from their supplier-distributor relationship. Underlying both sets of claims is the contention that one party breached its contractual obligation to the other. In the Rhode Island action, NEC alleges that Constellation breached the PPAs by demanding payment of Capacity Costs. NEC's Compl. ¶ 52. In the Massachusetts action, Constellation claims that NEC breached the PPAs by failing to seek and pay to Constellation a FAF. Constellation's Compl. ¶ 38. These facts alone are sufficient to compel a finding that Constellation's FAF claims are compulsory counterclaims to the Capacity Cost claims already before this Court.

Constellation's contrary position relies on very different cases. For instance, Chicago & N.W. Transp. Co. v. Atchison, Topeka & Santa Fe Ry. Co., 367 F. Supp. 801, 805-06 (N.D. Ill. 1973) and Volpe Construction Co., Inc. v. Trustees of Tufts College, 294 N.E.2d 476, 478 (Mass. App. Ct. 1973) involved materially different circumstances than those present in this

case. In Chicago & N.W. Transp. Co., the defendant's claim was based not on the contract featured in the plaintiff's complaint, but on "several orders of the Interstate Commerce Commission." 367 F. Supp. at 803-04. The court in Volpe Construction Co., Inc. construed Massachusetts Superior Court Rule 32 rather than Federal Rule of Civil Procedure 13(a). 294 N.E.2d at 477. In addition, Volpe Construction Co, Inc. concerned "breaches of entirely separate contract provisions, … stem[ing] from different factual contexts," id. at 478, a provision regarding the employment of minorities in the construction of a dormitory, on the one hand, and breach of the construction contract for failure to pay for labor and materials, on the other hand. Id. at 477. Cf. also Fortune Mgmt., Inc. v. Bly, 118 F.R.D. 21, 23 (D. Mass. 1987) (where "the only connection" between the claims and counterclaims is that they involve breach of the same contracts and only "an attenuated connection [existed] between the claims and counterclaims"); Cont'l Fed. Sav. & Loan Assoc. v. Delta Corp. of America, 71 F.R.D. 697, 701 (W.D. Okla. 1976) (holding that "[t]he respective claims of the parties appear to be based on entirely different alleged breaches of the same contract" and "two acts of different parties during entirely different time frames," and "[e]ntirely different evidence will be required to prove each alleged breach").

None of those circumstances exist in this case where the FAF and Capacity Claims share more than "an attenuated connection." Fortune Mgmt., Inc., 118 F.R.D. at 23. Both actions arise from the parties' supplier-distributor relationship, concern pricing adjustments that Constellation alleges should have been made under the PPAs, and involve an overlapping time period and substantially similar evidence. Both the FAF provision and the Change in Market Rules provision, and the claims arising thereunder, share many operative facts regarding the parties' relationship, the parties' respective obligations, and the relevant regulatory regimes. Moreover, the breaches alleged relative to the FAF claims and the Capacity Cost claims are not

"entirely different" as in Cont'l Fed. Sav. & Loan Assoc. In the Rhode Island action, NEC alleges that Constellation breached the PPAs by demanding payment of Capacity Costs. In the Massachusetts action, Constellation claims that NEC breached the PPAs by failing to seek and pay to Constellation a FAF. Thus, the breaches in both actions concern Constellation's compensation under the PPAs, the parties involved in both claims are the same and the operative time frames overlap. These claims implicate the same set of business and regulatory dealings and negotiations that gave rise to the pricing terms under the PPAs in the first instance. The authorities on which Constellation relies do not change the strong connections between the claims involved in the Massachusetts and Rhode Island actions.

**2. That the Rhode Island action implicates the 2001 and 2002 Contracts in addition to the 20% and 36% Contracts does not abrogate the logical relationship between the FAF and Capacity Cost claims.**

Claims can be logically related even if the original claims implicate additional contracts on which the compulsory counterclaims do not depend. See, e.g., Keisser Ins. Agency, 246 F. Supp. 2d at 835 (holding that a claim for breach of a Corporate Agency Agreement constitutes a compulsory counterclaim vis à vis a claim for breach of contract based on the Corporate Agency Agreement as well as a Systems Service and Support Agreement, an Agency Code of Ethics, and a Financial Services Compliance Manual). Here, that this Court has before it two additional, similar PPAs does not eviscerate the logical relationship between the FAF and Capacity Cost claims, despite Constellation's contrary insistence.[2]

[2] Constellation's res judicata analysis amounts to an academic exercise. Since a logical relationship exists between Constellation's FAF claims and the Capacity Cost claims, whether res judicata would apply to bar Constellation's FAF lawsuit is irrelevant. See Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1410 (stating that an affirmative answer to any of the 4-part test, only one prong of which concerns res judicata, supports a finding that counterclaims are compulsory). The preferred test is the logical relationship test. See Wright, Miller, & Kane, Federal Practice and Procedure: Civil 2d § 1410; see, e.g., Iglesias v. Mutual Life Ins. Co. of N.Y., 156 F.3d 237, 241-42 (1st Cir. 1998) (applying the logical relationship test); Eon Laboratories, Inc. v. Smithkline Beecham Corp., 298 F. Supp. 2d 175, 179 (D. Mass. 2003) (stating that "the logical relationship test, enjoys by far the widest acceptance among the courts").

**B. The Court Should Enjoin Constellation From Prosecuting The Massachusetts Action.**

The Court should enjoin Constellation from prosecuting the Massachusetts action. It is well-settled that "when a case is brought in one federal district court, and the case so brought embraces essentially the same transactions as those in a case pending in another federal district court, the latter court may enjoin the suitor in the more recently commenced case from taking any further action in the prosecution of that case." Nat'l Equip. Rental, Ltd., 287 F.2d at 45. See also United Fruit Co. v. Standard Fruit and S.S. Co., 282 F. Supp. 338, 340 (D. Mass. 1968) (stating that "unless there are unusual circumstances, the court should apply the general rule that the party filing later in time should be enjoined from further prosecution of his suit").

**1. This Court retains jurisdiction over the Capacity Cost dispute in spite of Constellation's appeal.**

Constellation's appeal has not divested this Court of jurisdiction. A notice of appeal only divests the district court of its control over those specific aspects of the case involved in the appeal. Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982). See also Britton v. Co-op Banking Group, 916 F.2d 1405, 1411 (9th Cir. 1990) (citing 9 Moore's Federal Practice ¶ 203.11) (stating that "where an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal"); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 53 (2d Cir. 2004) (noting that filing of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal"); Jones v. Deutsche Bank AG, No. C 04-05357, 2007 WL 1456041 at *1 (N.D. Cal. May 17, 2007) (following rule that "in the arbitrability context, an appeal of an interlocutory order does not deprive the district court of

jurisdiction except as to the subject matter of the appeal").[3] The district court, therefore, can proceed with the case on the merits. Britton, 916 F.2d at 1412. See also Motorola Credit Corp., 388 F.3d at 54 (holding that "further district court proceedings in a case are not 'involved in' the appeal of an order refusing arbitration, and that a district court, therefore, has jurisdiction to proceed with a case"). Here, this action involves several threshold issues that could moot any question of arbitrability. These issues are wholly independent of the question of arbitrability, and therefore, this Court retains jurisdiction.[4]

**2. The first-filed presumption applies in NEC's, not Constellation's, favor.**

Because Constellation's FAF claims are compulsory counterclaims that it should have asserted in this action, NEC was the first to file and should benefit from the first-filed presumption. See Nat'l Equip. Rental, Ltd., 287 F.2d at 45 (stating that "the first court to obtain jurisdiction of the parties and of the issues should have priority over a second court to do so"); see also Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) (affirming district court's decision requiring adjudication of second-filed related action in first-filed forum).

---

[3] While it is the general rule that a notice of appeal divests the district court of its control over only those specific aspects of the case involved in the appeal, the courts of appeal seem to be divided on the application of this rule in cases involving interlocutory appeals of orders denying motions to compel arbitration and/or to stay proceedings pending arbitration. Compare Bradford-Scott Data Corp., Inc. v. PCN, Inc., 128 F.3d 504, 505 (7th Cir. 1997) (interpreting the general rule to require the district court's divestiture of all aspects of the litigation) with Britton, 916 F.2d at 1412 (finding that district court is not divested of jurisdiction to proceed with the case on the merits). The First Circuit has not yet ruled on this issue. The approach set forth in Britton and its progeny, which follow the "black letter" rule of the United States Supreme Court in Griggs, is most relevant to the circumstances here because the issue on appeal is not only limited – only involving two of the four PPAs at issue – but premature. See Griggs, 459 U.S. at 58 (noting that a notice of appeal divests the district court only of its control over those specific aspects of the case involved in the appeal).

[4] Constellation's reliance on Lummus Co. v. Commonwealth Oil & Ref. Co., Inc., 273 F.2d 613, 613 (1st Cir. 1959), for the proposition that the Rhode Island federal court is automatically divested of jurisdiction, is misplaced. First, Lummus was decided prior to the adoption of the Federal Arbitration Act ("FAA"), and prior to the development of a significant body of case law addressing the district court's jurisdiction pending appeal of an order denying arbitration or a stay of proceedings pending arbitration. Second, the First Circuit based its decision on the appellee's failure to provide a "satisfactory answer to appellant's contention that a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate, if this court determines it to have such obligation." Id. at 613. Finally, Lummus concerned an appeal from an order staying an already proceeding arbitration, and not as in this action, an appeal from an order denying a motion to compel arbitration, filed while litigation was pending. Id.

Constellation cites to no case which supports application of the first-filed rule in its favor in a situation, as here, where the claims raised in the second forum constitute omitted compulsory counterclaims that the proponent should have asserted in an earlier-filed action. Constellation's reliance on Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000) is unfounded. That action involved "parallel litigation" – i.e., "identical actions … proceeding concurrently in two federal courts." Id. NEC has filed no identical action against Constellation.

**3. Efficiency considerations support enjoining Constellation from prosecuting the Massachusetts action.**

If Constellation's FAF claims are to be heard anywhere, they should be heard, in the interest of efficiency, in the related action that is already pending in this Court. See Durham Productions, Inc. v. Sterling Film Portfolio, Ltd., 537 F. Supp. 1241, 1243-44 (S.D.N.Y. 1982) (granting motion to transfer second-filed action to first-filed forum where second-filed action was subsumed within the earlier filed action and noting that "[p]endency of related actions in the transferee forum is also an important factor") cited by Constellation for the contrary proposition.

**4. Constellation's consistency considerations are beside the point.**

Constellation suggests that the United States District Court for the District of Massachusetts should adjudicate its FAF claims to ensure consistent results. The inquiry before this Court is whether Constellation's FAF claims share a logical relationship with the Capacity Cost claims at issue in this action, not whether another court has previously examined a similar issue or similar provision. Since the requisite logical relationship exists, the Court should enjoin the Massachusetts action.[5]

[5] Any concern for consistent results weighs in favor of adjudicating the FAF and Capacity Cost claims together in the Rhode Island action. Because both claims relate to pricing terms and the dispute relates to future pricing and market projections, litigation in both courts on the same contracts could lead to inconsistent results. Specifically, assuming Constellation succeeded in its claims, the damages portion of the trial in each case would evolve around projections of energy consumption in Rhode Island. If it is projected in one case that usage will be high, but low in

## II. CONCLUSION

For the aforementioned reasons and those set forth in NEC's initial memorandum in support of its motion to enjoin, NEC respectfully requests that the Court enjoin Constellation from prosecuting the Massachusetts action.

**REQUEST FOR ORAL ARGUMENT**

Pursuant to Local Rule Cv 7(e), NEC hereby requests a hearing in connection with this motion.

THE NARRAGANSETT ELECTRIC COMPANY

By its attorneys,

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Robin L. Main (#4222)
Anna M. Piazza (#7206)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com
rmain@haslaw.com
apiazza@haslaw.com

Dated: May 30, 2008

---

the other case, inconsistent pricing will result. Additionally, the contracts contain terms that make payments dependent upon how many customers will be taking standard offer service in Rhode Island. Thus, similar to the issue of energy consumption, projections of customer loads would also be an important part of the litigation. Yet, if the cases were litigated in separate forums, inconsistent results could occur.

**CERTIFICATION**

**To:**

Leo J. Wold, Esq.
Richard B. Woolley, Esq.
150 South Main Street
Providence, RI 02903

Stacey P. Nakasian, Esq.
Duffy Sweeney & Scott, LTD
One Turks Head Place, Suite 1200
Providence, RI 02903

Kenneth W. Irvin, Esq.
Teresa M. Goody, Esq.
McDermott Will & Emery, LLP
600 13th Street, N.W.
Washington, DC 2005-3096

I hereby certify that on May 30, 2008, a copy of the foregoing memorandum of law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Gerald J. Petros
Gerald J. Petros (#2931)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (Facsimile)
gpetros@haslaw.com

903237 (57972-129329)