UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| Narragansett Electric Company,<br>Plaintiff,<br><br>State of Rhode Island and Providence Plantations and the Rhode Island Division of Public Utilities and Carriers,<br>Intervenor-Plaintiffs,<br><br>v.<br><br>Constellation Energy Commodities Group, Inc.,<br>Defendant. | C.A. No. 06-404-S |

**DECISION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

This matter comes before the Court on the motion of Defendant Constellation Energy Commodities Group, Inc. ("Constellation") to stay these proceedings pending the resolution of Constellation's appeal of this Court's decision not to compel the parties to arbitration.[1] The motion is opposed by Plaintiff Narragansett Electric Company ("NEC"), as well as Intervenor-Plaintiffs State of Rhode Island and the Rhode Island Division of Public Utilities and Carriers (collectively, the "State").

[1] Constellation's motion was more fully titled as a "Suggestion of the Absence of Jurisdiction and/or Motion for Stay Pending Appeal."

I. Background and Facts

The relevant facts are set forth more fully in the Court's earlier decision denying Constellation's motion to dismiss or, in the alternative, to stay pending arbitration. See Narragansett Elec. Co. v. Constellation Energy Commodities Group, Inc., 526 F. Supp. 2d 260 (D.R.I. 2007).

NEC distributes electricity to retail customers in Rhode Island. Constellation is a wholesale supplier of electricity. As a wholesale supplier, Constellation purchases electricity from generators and sells that electricity to retail distributors like NEC. NEC and Constellation entered into four "Power Purchase Agreements" ("PPAs"),[2] pursuant to which Constellation supplies

---

[2] The four PPAs, executed between 1998 and 2002, are:

(1) Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (Dated December 21, 1998, and amended on January 27, 2003 and July 3, 2003) (the "20% Contract");

(2) Wholesale Standard Offer Service Agreement between Blackstone Valley Electric Company, Eastern Edison Company, Newport Electric Corporation and Constellation Power Source, Inc. (Dated December 21, 1998, and amended on January 27, 2003 and July 3, 2003) (the "36% Contract");

(3) Power Supply Agreement between the Narragansett Electric Company and Constellation Power Source, Inc. (Dated October 5, 2001) (the "2001 Contract"); and

(4) Power Supply Agreement between the Narragansett Electric Company and Constellation Power Source, Inc. (Dated August 23, 2002, and amended August 23, 2002) (the "2002 Contract").

Blackstone Valley Electric Company, Eastern Edison Company,

wholesale power to NEC for distribution to certain of NEC's retail customers.

Certain regulatory changes embodied in a multi-party settlement agreement ("Settlement Agreement") approved by the Federal Energy Regulatory Commission ("FERC") have resulted in an increase in the cost of energy purchased by Constellation. NEC claims that Constellation is contractually bound by the PPAs to cover this increased cost, whereas Constellation contends that each of the PPAs provides it with a right to an "equitable adjustment" that should allow it to recover at least some of the increased cost. Additionally, both NEC and the State allege that the FERC-approved Settlement Agreement itself obligates Constellation to bear the increased energy costs, notwithstanding any provision of the PPAs.

In keeping with its interpretation of the PPAs, on August 1, 2006, Constellation wrote to NEC and demanded that the parties initiate negotiations to determine "appropriate compensation" for Constellation in light of the increased energy costs. NEC then filed this action, premised on diversity and federal question jurisdiction, alleging that Constellation had breached the PPAs and seeking a judgment declaring the rights of NEC and Constellation

---

and Newport Electric Corporation were predecessor companies of NEC. Constellation Power Source, Inc. was the predecessor company of Constellation.

under the PPAs and the Settlement Agreement. Constellation moved to dismiss NEC's complaint on the ground that two of the PPAs require NEC and Constellation to arbitrate the kind of disputes engendered by NEC's complaint.[3] The Court denied the motion, essentially for the reason that it could not yet determine whether the implementation of the Settlement Agreement constituted an event that would trigger the arbitration clauses. At the same time, the Court granted the State's motion to intervene. The State subsequently joined in NEC's Counts I and II for declaratory judgment and waiver, respectively, and asserted its own claim of estoppel against Constellation.

After the Court denied Constellation's motion to dismiss and granted the State's motion to intervene, Constellation timely appealed to the First Circuit Court of Appeals. That appeal is currently pending. Constellation now contends that its appeal strips this Court of jurisdiction over the claims asserted by NEC and the State, and mandates a stay of this entire action until such time as the appeal is concluded.

---

[3] At most, two of the four PPAs contain potentially applicable arbitration clauses. As explained in the Court's decision denying Constellation's motion to dismiss, the 2001 Contract contains an error which NEC argued renders that contract's arbitration clause invalid. The Court rejected NEC's argument, but even so it is undisputed that two of the PPAs <u>do</u> <u>not</u> contain potentially applicable arbitration clauses.

## II. Discussion

The Federal Arbitration Act ("FAA")[4] provides for immediate appeals from orders "refusing a stay" of litigation in favor of arbitration and from orders denying motions to compel arbitration. 9 U.S.C. § 16(a)(1)(A)-(C). The filing of a notice of appeal "is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); see also Bradford-Scott Data Corp. v. Physician Computer Network, Inc., 128 F.3d 504, 505 (7th Cir. 1997) ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.") (citation omitted). The crucial question is whether "those aspects of the case involved in the appeal," Griggs, 459 U.S. at 58, include NEC's claims tied to

[4] The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, was enacted to counter "centuries of judicial hostility to arbitration agreements," Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 225 (1987) (internal quotation marks omitted), and "to place arbitration agreements 'upon the same footing as other contracts.'" Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (citation omitted). The FAA facilitates this objective by providing that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If one party to a contract containing an arbitration clause files suit in a district court, the other party may move to stay or dismiss the action on the ground that the FAA requires the arbitration clause of the contract to be enforced. See id. § 3 (authorizing a motion to stay); id. § 4 (authorizing a petition to compel arbitration).

the PPAs lacking an arbitration provision, as well as NEC's and the State's claims tied to the FERC-approved Settlement Agreement.

The Court is mindful of, and essentially concurs with, the well-reasoned, recent decision issued by Judge Woodcock in Combined Energies v. CCI, Inc., 495 F. Supp. 2d 142 (D. Me. 2007). In that case, Judge Woodcock reviewed the authority regarding interlocutory appeals of the denial of a motion to stay and compel arbitration under the FAA, and concluded that such an appeal "divests the district court of the power to proceed with the aspects of the case on appeal." Id. at 142. Therefore, he granted the defendant's motion to stay discovery pending appeal of its motion to stay and to compel arbitration. Id.

As Judge Woodcock noted, on this issue, a split exists among the circuits. Id. at 143; see Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 215 n.6 (3d Cir. 2007) (expressing agreement with "the majority rule of automatic divestiture where the Section 16(a) appeal is neither frivolous nor forfeited"); McCauley v. Halliburton Energy Servs., Inc., 413 F.3d 1158, 1162-63 (10th Cir. 2005) (finding automatic divestiture of trial court jurisdiction unless appeal is frivolous or forfeited); Blinco v. Green Tree Servicing, LLC, 366 F.3d 1249, 1251 (11th Cir. 2004) (finding automatic divestiture unless appeal is frivolous); Bombardier Corp. v. Nat'l R.R. Passenger Corp., No. 02-7125, 2002 WL 31818924, at *1, 2002 U.S. App. LEXIS 25858, at *2 (D.C. Cir. Dec. 12, 2002)

(denying a motion to stay as unnecessary because the circuit court has "exclusive jurisdiction to resolve the threshold issue whether the dispute is arbitrable, and the district court may not proceed until the appeal is resolved"); Bradford-Scott, 128 F.3d at 505 (endorsing automatic divestiture rule, reasoning that "[c]ontinuation of proceedings in the district court largely defeats the point of the appeal and creates a risk of inconsistent handling of the case by two tribunals"); but see Motorola Credit Corp. v. Uzan, 388 F.3d 39, 65 (2d Cir. 2004) (finding no automatic stay); Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990) (finding no automatic stay).

Judge Woodcock concluded, based on his reading of the First Circuit's decision in Lummus Co. v. Commonwealth Oil Refining Co., 273 F.2d 613 (1st Cir. 1959), that the majority view favoring an automatic stay of those issues involved in the appeal is the better view.[5] Combined Energies, 495 F. Supp. 2d at 143. He also noted that the "divestiture of jurisdiction occasioned by the filing of a notice of appeal is especially significant when the appeal is an

---

[5] In Lummus Co. v. Commonwealth Oil Refining Co., 273 F.2d 613 (1st Cir. 1959), the defendant appealed an order staying arbitration, and moved to delay discovery until after resolution of the appeal. Id. at 613. The First Circuit granted the motion to stay discovery, explaining that "a court order of discovery would be affirmatively inimical to appellee's obligation to arbitrate . . . ." Id. The Court noted that "if arbitration is to be had of the entire dispute, appellee's right to discovery must be far more restricted than if the case remains in a federal court for plenary trial . . . ." Id.

interlocutory one," such as is the case with an appeal from a decision denying arbitration. Id. at 144 (quoting Stewart v. Donges, 915 F.2d 572, 575 (10th Cir. 1990)). Donges explained that the "interruption of the trial proceedings is the central reason and justification for authorizing such an interlocutory appeal in the first place."[6] Donges, 915 F.2d at 576.

Judge Woodcock's reasoning is persuasive, but Combined Energies does not completely answer the question presented here. Importantly, the context of his decision was a two-party litigation involving the application of an arbitration clause in a single contract. See Combined Energies, 495 F. Supp. 2d at 142. In other words, in that case, the entire litigation would be arrested if the First Circuit determined that the arbitration clause applied to the dispute between the parties. There were, apparently, no other claims involving other contracts or other parties. Thus, whether any part of the litigation could proceed before the district court was precisely what the court of appeals was being asked to decide. Here, in contrast, there are four contracts at issue, only two of which, at most, contain potentially applicable arbitration clauses. In addition, NEC has asserted additional claims that are not

---

[6] Section 16(a)(1)(C) of the FAA expressly authorizes an appeal from an order "denying an application . . . to compel arbitration . . . ." 9 U.S.C. § 16(a)(1)(C); see also Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 550 (1st Cir. 2005) ("[W]e have jurisdiction to review, here and now, the lower court's denial of the company's motion to stay proceedings and compel arbitration.").

contract-based. So has the State, which is not a party to any contract with Constellation, let alone any contract with an arbitration clause.

Constellation nevertheless argues that its appeal of the order denying arbitration mandates a stay of the entire action until such time as the First Circuit decides its appeal. Constellation argues that, if the First Circuit compels arbitration, "the core factual and legal issues raised by NEC and the State will be resolved by the arbitration," and thus "every issue in this case is 'touching upon, or involved in' the appeal." Constellation's Mem. Supp. Mot. Stay, at 6. In support of this theory, Constellation relies on § 3 of the FAA, which provides that,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

Under § 3, a stay is mandatory for those issues that are referable to arbitration. See McMahon, 482 U.S. at 226 ("[A] court must stay its proceedings if it is satisfied that an issue before it is arbitrable . . . ."). In regard to non-arbitrable issues, however, the FAA is silent. For its part, Constellation argues that the Court should stay the entire action until the conclusion

of arbitration. This view has some superficial appeal based on the language of § 3, at least when read in isolation. It states that a court shall "stay the trial of the action" -- i.e., not part of the action -- if suit is "brought . . . upon" an arbitrable issue. 9 U.S.C. § 3 (emphasis added).

While Constellation's interpretation of Section 3 is not unfounded, it runs counter to the overall purpose of the FAA, as well as the interpretation adopted by the courts that have considered the question. First, although the FAA reflects a "liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), its purpose is not to elevate such agreements above all other considerations. It makes arbitration agreements "as enforceable as other contracts, but not more so." Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n. 12 (1967) (emphasis added). Under the FAA, arbitration "is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit" and "may limit by contract the issues which they will arbitrate." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989). "[T]he federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." Id. at 476. Therefore, while the Court is not opposed to enforcing any valid arbitration agreements that exist between NEC and Constellation, it

will not do so by papering over the contracts without arbitration clauses, or the claims that are not even based on any contract.

Second, the First Circuit has held that a party seeking to enforce an arbitration clause is not "entitled as of right to an order staying litigation of all -- or even most of -- [its] claims," though, "[o]f course, the district court in its discretion could stay litigation of nonarbitrable claims pending the outcome of an arbitration proceeding." McCarthy v. Azure, 22 F.3d 351, 361 & n.15 (1st Cir. 1994). Other circuits similarly have adopted this view. See, e.g., Klay v. All Defendants, 389 F.3d 1191, 1204 (11th Cir. 2004) ("When confronted with litigants advancing both arbitrable and nonarbitrable claims . . . courts have discretion to stay nonarbitrable claims."); Pryner v. Tractor Supply Co., 109 F.3d 354, 361 (7th Cir. 1997) ("[T]he cases, perhaps concerned lest the tail wag the dog, treat the question whether to stay the entire case as discretionary in cases involving both arbitrable and nonarbitrable issues.") (citing cases and secondary sources); Am. Recovery Corp. v. Computerized Thermal Imaging, Inc., 96 F.3d 88, 97 (4th Cir. 1996) ("Enforcement of agreements to arbitrate under the Federal Arbitration Act may require piecemeal litigation . . . and the decision to stay the litigation of non-arbitrable claims or issues is a matter largely within the district court's discretion . . . .")

In Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985), the Supreme Court, recognizing the inevitability of occasional piecemeal litigation, endorsed this interpretation of § 3:

> The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation, at least absent a countervailing policy manifested in another federal statute.

Id. Similarly, in Moses H. Cone Mem'l Hosp., the Supreme Court noted that, at the district court's discretion, litigation may proceed against parties not subject to an arbitration agreement, even though claims against arbitrating parties have been stayed. See 460 U.S. at 20 & n.23. "That decision," the Court held, "is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket." Id. at 20 n.23.

The primary exception to the exercise of this discretion arises when a partial stay risks "inconsistent rulings" because the pending arbitration is "likely to resolve issues material to [the] lawsuit." AgGrow Oils, L.L.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 242 F.3d 777, 783 (8th Cir. 2001). The factors that bear on this inquiry include "the risk of inconsistent rulings, the extent to which parties will be bound by the arbitrators' decision, and the prejudice that may result from delays." Id. When these factors weigh in favor of staying the entire action pending

arbitration, it may be an abuse of a district court's discretion to allow the nonarbitrable issues to proceed absent a stay.[7]

For example, in Morrie Mages & Shirlee Mages Found. v. Thrifty Corp., 916 F.2d 402 (7th Cir. 1990), abrogated on other grounds, IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996), the Seventh Circuit held that a district court's refusal to stay nonarbitrable issues pending the arbitration of related, arbitrable issues constituted an abuse of discretion. The buyer and seller to a corporate transaction had been ordered to arbitrate a controversy arising out of their purchase agreement, which contained an arbitration clause. The buyer's guarantor also was implicated in the lawsuit but had not executed a similar arbitration provision in its agreement to guarantee the buyer's performance. Refusing the guarantor's motion to stay its litigation with the buyer pending the result of the buyer-seller arbitration, the district court reasoned that the guarantor had failed to incorporate an arbitration clause into its agreement with the buyer and therefore could not benefit from a stay. Reversing, the Seventh Circuit held that a stay was required because the nonarbitrable issue of the guarantor's liability was "completely dependent upon the arbitrable issues of the fact and extent of [the

[7] Of course, a district court actually may prefer to stay the entirety of an action in the hope that arbitration might resolve the issues remaining for litigation. See, e.g., Hikers Indus., Inc. v. William Stuart Indus. (Far East) Ltd., 640 F. Supp. 175, 178 (S.D.N.Y. 1986).

buyer's] liability." Id. at 407. The Court stressed the "potential for impairment of the issues before the arbitrator due to the collateral estoppel effect of the [buyer-guarantor] litigation." Id. The Court ordered the district court to enter a stay and await the result of the buyer-seller arbitration.

Here, the potential for impairment is not present. The claims of NEC and the State that are based on the Settlement Agreement are completely independent from any claims based on the potentially arbitrable contracts between NEC and Constellation. Moreover, the NEC-Constellation contracts that indisputably do not provide for arbitration are independent from the contracts that do or may provide for arbitration. In other words, they are not interdependent to the extent that liability under one is conditional upon liability under another. Compare Morrie Mages, 916 F.2d at 407 (stay was required because the nonarbitrable issue of guarantor's liability to buyer was "completely dependent upon the arbitrable issues of the fact and extent of [the buyer's] liability" under arbitrable contract between buyer and seller). Undoubtedly, should the dispute between NEC and Constellation proceed on two tracks - litigation and arbitration - several factual and legal issues will be common to both venues. However, this possibility is not sufficient justification to force NEC (and the State) to submit to a procedure that they simply did not bargain for.

III. Conclusion

For the foregoing reasons, Constellation's motion for a stay is DENIED.

IT IS SO ORDERED.

William E. Smith
United States District Judge
Date: 6/17/08